FILED

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

' 2016 AUG 12  P 12: 34

|  |  |
|---|---|
| STEVEN KNURR, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| ORBITAL ATK, INC., DAVID W. THOMPSON, and GARRETT E. PIERCE, | ) ) ) |
| Defendants. | ) ) ) ) |

Case No. 1:16 CV 1031
TSE /MSN

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff Steven Knurr ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Orbital ATK, Inc. ("Orbital" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Orbital securities between June 1, 2015 and August 9, 2016, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Orbital develops and produces aerospace, defense, and aviation-related products for the U.S. Government, allied nations, prime contractors, and other customers in the United States and internationally.  The Company was formed through a February 2015 merger between Orbital Sciences Corporation and Alliant Techsystems Inc.  The Company is headquartered in Dulles, Virginia, and the Company's shares trade on the NYSE under the ticker symbol "OA."

3.     In September 2012, Orbital entered into a $2.3 billion long-term contract (the "Contract") with the U.S. Army to manufacture and supply small caliber ammunition at the U.S. Army's Lake City Army Ammunition Plant.  The Contract is managed by the Small Caliber Systems Division within Oracle's Defense Systems Group.

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Orbital lacked effective control over financial reporting; (ii) as a result, the Company failed to record an anticipated loss on the Contract after the loss became evident in 2015, as required by generally accepted accounting principles ("GAAP"); and (iii) as a result of the foregoing, Orbital's public statements were materially false and misleading at all relevant times.

2

5.     On August 10, 2016, pre-market, Orbital announced that the Company would miss its Form 10-Q filing deadline for its most recent quarter, and stated that:

> [T]he Company's previously issued financial statements for the fiscal year ended March 31, 2015 ("fiscal 2015"), the nine-month transition period ended December 31, 2015 ("2015 transition period"), the quarters in fiscal 2015 and the 2015 transition period, and the quarter ended April 3, 2016 (the "Restated Periods"), and related reports of independent registered public accounting firms thereon, should no longer be relied upon as a result of the misstatements described below. The Company expects to restate (the "Restatement") the financial statements for the Restated Periods. . . .

> The misstatements which the Company has identified relate primarily to its $2.3 billion long-term contract (the "Contract") with the U.S. Army to manufacture and supply small caliber ammunition at the U.S. Army's Lake City Army Ammunition Plant. The Contract, which is accounted for under the percentage of completion revenue recognition method, is managed by the Small Caliber Systems Division within the Defense Systems Group. The contract was entered into in September 2012 and is for a term of up to 10 years (an initial term of seven years plus three additional years at the option of the Army).

> After considering the misstatements . . . the Company believes that the Contract will result in a net loss over its 10-year term. Under generally accepted accounting principles, the Company is required to record the entire anticipated forward loss provision for a contract in the period in which the loss becomes evident. The Company believes that a forward loss provision should have been recorded for the Contract in fiscal 2015, which was the first year of large-scale production under the Contract.

> . . .

> ***The Company believes that the misstatements that caused the Restatement indicate the existence of one or more material weaknesses in its internal control over financial reporting and disclosure controls and procedures during the Restated Periods.*** The Company will report those material weaknesses in its amended reports and in its Quarterly Report on Form 10-Q for the quarter ended July 3, 2016.

(Emphasis added.)

6.     On this news, Orbital's share price fell $17.98, or 20.25%, to close at $70.79 on August 10, 2016.

3

7.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10.    Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b), as Orbital is headquartered in this District and a significant portion of Defendants' actions, and the subsequent damages, took place within this District.

11.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchanges.

## PARTIES

12.    Plaintiff, as set forth in the attached Certification, acquired Orbital securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.    Defendant Orbital is incorporated in Delaware, and the Company's principal executive offices are located at 45101 Warp Drive, Dulles, Virginia 20166. Orbital's common stock trades on the NYSE under the ticker symbol "OA."

4

14.     Defendant David W. Thompson ("Thompson") has served at all relevant times as the Company's Chief Executive Officer, President, and Director.

15.     Defendant Garrett E. Pierce ("Pierce") has served at all relevant times as the Company's Chief Financial Officer.

16.     The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Orbital develops and produces aerospace, defense, and aviation-related products for the U.S. Government, allied nations, prime contractors, and other customers in the United States and internationally.   The Company was formed through a February 9, 2015 merger between Orbital Sciences Corporation and Alliant Techsystems Inc. and is headquartered in Dulles, Virginia.

18.     In September 2012, Orbital entered into a $2.3 billion long-term contract with the U.S. Army to manufacture and supply small caliber ammunition at the U.S. Army's Lake City Army Ammunition Plant.

### Materially False and Misleading Statements Issued During the Class Period

19.     The Class Period begins on June 1, 2015, when Orbital filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended March 31, 2015 (the "FY 2015 10-K").   For the quarter, Orbital reported net income of $67.5 million, or $1.14 per diluted share, on revenue of $1.12 billion, compared to net income of $39.5 million, or $0.67 per diluted share, on revenue of $1.16 billion for the same period in the prior year.   For fiscal year 2015, Orbital reported net income of

5

$202.48 million, or $5.60 per diluted share, compared to net income of $340.92 million, or

$10.42 per diluted share, for fiscal year 2014.

> 20.     In the FY 2015 10-K, with respect to the Contract, Orbital stated, in part:

> **_The Company's business could be adversely impacted by reductions or changes in NASA or U.S. Government military spending._**

> As a substantial portion of the Company's sales are to the U.S. Government and its prime contractors, the Company depends heavily on the contracts underlying these programs. Significant portions of the Company's sales come from a small number of contracts. The military small-caliber ammunition contract, which is reported within Defense Systems Group, contributed 13%, 9% and 19% to the Company's sales in fiscal 2015, 2014 and 2013, respectively. No other single contract contributed more than 10% of our sales in fiscal 2015. The Company's top five contracts, all of which are contracts with the U.S. Government, accounted for approximately 30% of fiscal 2015 sales. The loss or significant reduction of a material program in which the Company participates could have a material adverse effect on the Company's operating results, financial condition, or cash flows.

> . . .

> The Company's small-caliber ammunition operations for the U.S. military and U.S. allies are conducted at the LCAAP in Independence, Missouri. Lake City is the Army's principal small-caliber ammunition production facility and is the primary supplier of the U.S. military's small-caliber ammunition needs. The Company took over operation of this facility in 2000 and is responsible for the operation and management, including leasing excess space to third parties in the private sector. In September 2012, the Company was awarded a new contract for the continued production of ammunition and continued operation and maintenance of LCAAP. The production contract runs through September 2019 and the facility contract runs through September 2020, with an option to extend the contract to 2023. As a result of the significant competition for this contract, the Company has experienced a lower profit rate in the Small-Caliber Systems division following the implementation of our new contract. In addition, future levels of government spending cannot be predicted with certainty and thus the Company's production under this contract cannot be predicted with certainty.

> . . .

> Significant increases in commodities can negatively impact operating results with respect to our firm fixed-price contract to supply the DoD's small-caliber ammunition needs and our sales within commercial ammunition. Accordingly, we have entered into futures contracts in order to reduce the impact of metal price

6

fluctuations. The majority of the impact has been mitigated on the seven-year contract with the U.S. Army by the terms within that contract, which is expected to continue into 2019. We have entered into futures contracts and purchase orders for the current expected production requirements for fiscal 2015 for both the small-caliber ammunition supply contract and the production of commercial ammunition, thereby mitigating near term market risk; however, if metal prices exceed pre-determined levels, the Defense Systems Group's operating results could be adversely impacted.

21.     The FY 2015 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the FY 2015 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

22.     On August 6, 2015, Orbital issued a press release and filed a Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter ended July 5, 2015 (the "Q2 2015 8-K"). For the quarter, Orbital reported net income of $76.6 million, or $1.28 per diluted share, on revenue of $1.13 billion, compared to net income of $65.9 million, or $1.10 per diluted share, on revenue of $1.06 billion for the same period in the prior year. Orbital also reported that "Defense Systems Group (DSG) revenues and corporate eliminations were flat compared to the same period in 2014."

23.     On August 11, 2015, Orbital filed a Quarterly Report on Form 10-Q with the SEC, reiterating the financial and operating results previously announced in the Q2 2015 8-K and announcing in full the Company's financial and operating results for the quarter ended July 5, 2015 (the "Q2 2015 10-Q"). The Q2 2015 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     On October 27, 2015, Orbital issued a press release and filed a Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter ended October 4, 2015 (the "Q3 2015 8-K"). For the quarter, Orbital reported net income of $80.0 million, or $1.35 per diluted share, on revenue of $1.14 billion, compared to net income of $69.0 billion, or $1.15 per diluted share, on revenue of $1.11 billion for the same period in the prior year. Orbital also reported "a $34 million decrease in Defense Systems Group (DSG) revenues."

25.     On November 5, 2015, Orbital filed a Quarterly Report on Form 10-Q with the SEC, reiterating the financial and operating results previously announced in the Q3 2015 8-K and announcing in full the Company's financial and operating results for the quarter ended October 4, 2015 (the "Q3 2015 10-Q"). The Q3 2015 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q3 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26.     On February 29, 2016, Orbital issued a press release and filed a Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter and year ended December 31, 2015 (the "2015 8-K"). For the quarter, Orbital reported net income of $52.3 million, or $0.88 per diluted share, on revenue of $1.14 billion, compared to net income of $44.5 million, or $0.74 per diluted share, on revenue of $747 million for the same period in the prior year. For calendar year 2015, Orbital reported net income of $169.6 million, or $2.85 per diluted share, on revenue of $4.37 billion, compared to net income of $166 million, or $2.78 per diluted share, on revenue of $3.00 billion for calendar year 2014. Orbital also reported "a $23 million decrease in Defense Systems Group ("DSG") adjusted revenues."

8

27.    On March 15, 2016, Orbital filed a Transition Report[1] on Form 10-K with the SEC, reiterating the financial and operating results previously announced in the 2015 8-K and announcing in full the Company's financial and operating results for the quarter and nine months ended December 31, 2015 (the "Transition Report").

28.    In the Transition Report, with respect to the Contract, Orbital stated, in part:

Our small-caliber ammunition operations for the U.S. military and U.S. allies are conducted at the LCAAP in Independence, Missouri. The LCAAP is the U.S. Army's principal small-caliber ammunition production facility and is the primary supplier of the U.S. military's small-caliber ammunition needs. We took over operation of this facility in 2000 and are responsible for the operation and management, including leasing excess space to third parties in the private sector. In September 2012, we were awarded a new contract for the continued production of ammunition and continued operation and maintenance of the LCAAP. The production contract runs through September 2019 and the facility contract runs through September 2020, with an option to extend the contract to 2023. As a result of the significant competition for this contract, we have experienced a reduction in profit margin in the Small Caliber Systems division following the implementation of the contract. In addition, future levels of government spending for small-caliber ammunition cannot be predicted with certainty and thus our production under this contract cannot be predicted with certainty.

29.    The Transition Report contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Transition Report was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.    On May 5, 2016, Orbital issued a press release and filed a Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter ended April 3, 2016 (the "Q1 2016 8-K"). For the quarter, Orbital reported net income of $69.8

---

[1] In the 2015 Transition Report, the Company stated, in part: "In March 2015, we changed our fiscal year from the period beginning on April 1 and ending on March 31 to the period beginning on January 1 and ending on December 31. As a result, this report on Form 10-K (the "10-K") is a transition report and includes financial information for the transition period from April 1, 2015 through December 31, 2015."

million, or $1.19 per diluted share, on revenue of $1.07 billion, compared to a net loss of $40.7 million, or $0.87 per diluted share, on revenue of $970 million for the same period in the prior year. Orbital also reported "a $65 million decrease in Defense Systems Group (DSG) sales."

31.     On May 9, 2016, Orbital filed a Quarterly Report on Form 10-Q with the SEC, reiterating the financial and operating results previously announced in the Q1 2016 8-K and announcing in full the Company's financial and operating results for the quarter ended April 3, 2016 (the "Q1 2016 10-Q"). The Q1 2016 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32.     The statements referenced in ¶¶ 19-31 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Orbital lacked effective control over financial reporting; (ii) as a result, the Company failed to record an anticipated loss on the Contract after the loss became evident in 2015, as required by generally accepted accounting principles ("GAAP"); and (iii) as a result of the foregoing, Orbital's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

33.     On August 10, 2016, pre-market, Orbital announced that the Company would miss its Form 10-Q filing deadline for its most recent quarter, and stated that:

> [T]he Company's previously issued financial statements for the fiscal year ended March 31, 2015 ("fiscal 2015"), the nine-month transition period ended December

31, 2015 ("2015 transition period"), the quarters in fiscal 2015 and the 2015 transition period, and the quarter ended April 3, 2016 (the "Restated Periods"), and related reports of independent registered public accounting firms thereon, should no longer be relied upon as a result of the misstatements described below. The Company expects to restate (the "Restatement") the financial statements for the Restated Periods. . . .

The misstatements which the Company has identified relate primarily to its $2.3 billion long-term contract (the "Contract") with the U.S. Army to manufacture and supply small caliber ammunition at the U.S. Army's Lake City Army Ammunition Plant. The Contract, which is accounted for under the percentage of completion revenue recognition method, is managed by the Small Caliber Systems Division within the Defense Systems Group. The contract was entered into in September 2012 and is for a term of up to 10 years (an initial term of seven years plus three additional years at the option of the Army).

After considering the misstatements . . . the Company believes that the Contract will result in a net loss over its 10-year term. Under generally accepted accounting principles, the Company is required to record the entire anticipated forward loss provision for a contract in the period in which the loss becomes evident. The Company believes that a forward loss provision should have been recorded for the Contract in fiscal 2015, which was the first year of large-scale production under the Contract.

. . .

The Company intends to amend its Transition Report on Form 10-K for the 2015 transition period, and its Quarterly Report on Form 10-Q for the quarter ended April 3, 2016, as soon as reasonably practicable. The Company may determine to amend the Forms 10-Q for the quarterly periods ended June 29, 2014, September 28, 2014, December 28, 2014, July 5, 2015 and October 4, 2015 or to include the restated financial information for those interim periods in its amended Form 10-K for the 2015 transition period. In addition, in view of the ongoing work in this regard, the Company will not file its upcoming Quarterly Report on Form 10-Q for the quarter ended July 3, 2016 by August 12, 2016. The Company expects to file that Quarterly Report and the above-described amended reports with the Securities and Exchange Commission ("SEC") as soon as reasonably practicable.

. . .

*The Company believes that the misstatements that caused the Restatement indicate the existence of one or more material weaknesses in its internal control over financial reporting and disclosure controls and procedures during the Restated Periods.* The Company will report those material weaknesses in its amended reports and in its Quarterly Report on Form 10-Q for the quarter ended July 3, 2016.

(Emphasis added.)

34.    On this news, Orbital's share price fell $17.98, or 20.25%, to close at $70.79 on August 10, 2016.

35.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Orbital securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.    Excluded from the Class are Defendants herein; the officers and directors of the Company, at all relevant times; members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which Defendants have or had a controlling interest.

37.    The members of the Class are so numerous that joinder of all members is impracticable.    Throughout the Class Period, Orbital securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Orbital or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

12

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Orbital;

- whether the Individual Defendants caused Orbital to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Orbital securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

13

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

42.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Orbital securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Orbital securities between the time Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

43.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants for Violations of
### Section 10(b) and Rule 10b-5 Promulgated Thereunder)

45.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.     This Count is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Orbital securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Orbital securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

48.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Orbital securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Orbital's finances and business prospects.

49.     By virtue of their positions at Orbital, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

50.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Orbital, the Individual Defendants had knowledge of the details of Orbital's internal affairs.

51.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Orbital. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Orbital's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements,

16

the market price of Orbital securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Orbital's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Orbital securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

52.     During the Class Period, Orbital securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Orbital securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Orbital securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Orbital securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

53.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure

17

that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against the Individual Defendants)

55.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.     During the Class Period, the Individual Defendants participated in the operation and management of Orbital, and conducted and participated, directly and indirectly, in the conduct of Orbital's business affairs. Because of their senior positions, they knew the adverse non-public information about Orbital's misstatement of income and expenses and false financial statements.

57.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Orbital's financial condition and results of operations, and to correct promptly any public statements issued by Orbital which had become materially false or misleading.

58.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Orbital disseminated in the marketplace during the Class Period concerning Orbital's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Orbital to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Orbital within the meaning of Section 20(a) of the Exchange Act. In this capacity, they

participated in the unlawful conduct alleged which artificially inflated the market price of Orbital securities.

59.     Each of the Individual Defendants, therefore, acted as a controlling person of Orbital. By reason of their senior management positions and/or being directors of Orbital, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Orbital to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Orbital and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

60.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Orbital.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 12, 2016

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

_____
Steven J. Toll

Steven J. Toll (Va. Bar # 15300)
Daniel S. Sommers
S. Douglas Bunch
Elizabeth A. Aniskevich (Va. Bar # 81809)
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005-3965
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: stoll@cohenmilstein.com
        dsommers@cohenmilstein.com
        dbunch@cohenmilstein.com
        eaniskevich@cohenmilstein.com

*Liaison Counsel for Plaintiff*

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
        ahood@pomlaw.com
        mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

20

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1. I, _____Steven Knurr_____, make this declaration pursuant to Section

27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange

Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Orbital ATK, Inc. ("Orbital" or the "Company"), and

authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Orbital securities at the direction of plaintiffs counsel or in order to

participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired Orbital securities during the class period, including providing testimony at deposition and trial, if

necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Orbital

securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set

forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses

directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


Executed _____8/11/2016_____
                    (Date)


_____
                    (Signature)


_____Steven Knurr_____
                    (Type or Print Name)

**ORBITAL ATK, INC. (OA)**                                              **Knurr, Steven**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 8/9/2016 | Purchase | 400 | $88.7900 |