UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| STEVEN KNURR, Individually and on Behalf of All Others Similarly Situated,<br><br>                       Plaintiff,<br><br>     vs.<br><br>ORBITAL ATK, INC., et al.,<br><br>                       Defendants. | Civil Action No. 1:16-cv-01031-TSE-MSN<br><br><u>CLASS ACTION</u> |

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE PENSION TRUST'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

**I.   INTRODUCTION**

Other than arguing that the Construction Laborers Pension Trust of Greater St. Louis (the "Pension Trust") does not claim to have suffered the largest loss, neither of the competing movants (or even Defendants) have asserted any substantive reason why the Pension Trust could not be appointed as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* Dkt. Nos. 17, 20, 25. As shown below, Pension Trust is the only movant that satisfies ***all*** of the PSLRA's requirements, and it should be appointed lead plaintiff.

By contrast, Arkansas Teacher Retirement System ("ATRS") is presumptively barred from serving as lead plaintiff because it has already served as lead plaintiff in ***thirty-two cases since 2013***. That far exceeds the PSLRA's "5-in-3 rule," which limits a person from serving as lead plaintiff in no more than 5 securities class actions during any 3-year period. *See* Dkt. No. 18. And, while it is clear that "the burden is upon the presumptively barred candidate to demonstrate why the bar should not be applied in a given case," *In re Unumprovident Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS

- 1 -

24633, at *20 (E.D. Tenn. Nov. 6, 2003), ATRS has ignored that statutory provision altogether in both of its prior submissions. ATRS cannot meet its burden to explain why the PSLRA's presumptive bar does not apply here, other than by contending that, as an "institutional investor," it should be exempt from that statutory bar. But that putative exemption is not based on the statutory language; rather, it is based on a comment made in a conference report. Yet, "the statute itself provides no explicit blanket exception from the professional plaintiff rule for institutional investors." *Id.* at *15-*16. For this reason alone, ATRS's motion should be denied.

Furthermore, if ATRS is appointed lead plaintiff, Defendants have stated their intention to vigorously challenge ATRS' ability to satisfy the Rule 23 adequacy requirement, which would undoubtedly distract ATRS from its duties to the class, and create a conflict between it and the putative class. *See* Dkt. No. 25. In situations like this, "[c]ourts have refused to approve as lead plaintiff investors, like [ATRS], with the largest loss that are subject to unique defenses or are otherwise infirm." *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 377, 379 (E.D. Va. 2003) (Lee, J.) (denying motion by movant that was "subject to numerous and significant 'unique defenses,' which render it an inadequate plaintiff"); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000) (Ellis, J.) (denying motion by movant that "may have been subject to unique defenses"). For this reason as well, ATRS' motion should be denied.

**II.     ARGUMENT**

    **A.     The Pension Trust Should Be Appointed Lead Plaintiff**

The Pension Trust filed a timely motion, suffered a substantial loss, is typical and adequate, selected qualified counsel, and is not subject to any unique defenses, including the PSLRA's presumptive 5-in-3 bar. *See* 15 U.S.C. §78u-4(a)(3)(B); Dkt. No. 8. Recognizing this, one other movant and the Defendants have not challenged the Pension Trust's application. Dkt. No. 17 (not

challenging the Pension Trust's motion); Dkt. No. 25 (not identifying any potential Rule 23 arguments against the Pension Trust). In one paragraph of its 8-page opposition brief, however, ATRS asserts that it should be appointed lead plaintiff because "St. Louis Laborers cannot meet the threshold requirement of having asserted the largest financial interest." Dkt. No. 20 at 8. ATRS's assertion that it should be deemed the presumptive lead plaintiff based solely on the value if its financial interest, however, is mistaken.

A "movant's financial interest is just a beginning point." *Cable & Wireless*, 217 F.R.D. at 377. Although the Pension Trust did not suffer the greatest loss, it is the only movant that meets all of the statutory requirements for appointment as lead plaintiff; therefore, it should be appointed as the lead plaintiff. *See MicroStrategy*, 110 F. Supp. 2d at 439-40 (denying motion by institutional investor with largest loss because it "did not satisfy a procedural predicate required for the statutory presumption"). As previously shown (*see* Dkt. Nos. 18, 25), and shown further in §II.B below, even though it incurred a greater loss, ATRS does not satisfy the other PSLRA criteria for appointment.

Therefore, ATRS's motion should be denied. Instead, the Pension Trust's motion for appointment as lead plaintiff should be granted.

### B.  ATRS Is Not Eligible To Serve As Lead Plaintiff; Even If It Was, ATRS Will Be Subject To A Unique Challenge By Defendants.

The PSLRA 5-in-3 rule expressly provides that "a person may be a lead plaintiff … in ***no more than 5*** securities class actions … ***during any 3-year period***." 15 U.S.C. §78u-4(a)(3)(B)(vi) (emphasis added). ATRS acknowledges it has been ***appointed*** to serve as lead plaintiff in ***sixteen*** cases in the last three years alone. *See* Dkt. No. 12-1. In fact, ATRS has ***served*** as lead plaintiff in ***thirty-two*** cases since 2013, is a named plaintiff in another case, and is seeking to serve as lead plaintiff in two more cases (including this case). *See* Dkt. No. 18. Thus, there is no dispute that ATRS has triggered the presumptive bar. *See* Dkt. No. 25 at 1, 3 n.2. That should end the inquiry.

Instead of acknowledging the 5-in-3 bar to its appointment as lead plaintiff in this action, ATRS can be expected to contend that: (1) the legislative history explains that the presumptive bar does not apply to institutional investors; and (2) even if the bar applies to institutional investors, the Court should exercise its discretion in lifting the bar in this case because ATRS suffered the largest loss. Neither position has merit.

Indeed, "the plain language of the statute contains no such exclusion" for institutional investors who seek to exceed the 5-in-3 statutory bar. *See Stengle v. Am. Ital. Pasta Co.*, 2005 U.S. Dist. LEXIS 43816, at *20 (W.D. Mo. Dec. 19, 2005); *Thompson v. Shaw Grp., Inc.*, 2004 U.S. Dist. LEXIS 25641, at *20 (E.D. La. Dec. 14, 2004) (recognizing that while a court has "discretion to exempt institutional investors (such as public pension fund[s]) from the statutory limitation," the "exemption . . . is not absolute").[1] As one court observed, if "Congress had intended to grant a blanket exemption from operation of the rule to institutional investors like [ATRS], it could easily have stated that 'unless the person is an institutional investor and except as the court may otherwise permit.'" *Telxon*, 67 F. Supp. 2d at 821 (citation omitted). "For whatever reason, Congress chose not to speak in such absolutes." *Id.* Thus, following *Telxon*, the Court should apply the statute, even if ATRS urges the Court to ignore it.

Furthermore, ATRS will likely argue, as it has in other cases, that the "Conference Committee grants courts discretion to avoid the unintended consequence of disqualifying institutional investors from serving more than five times in three years." *See* H.R. Conf. Rep. No.

---

[1] *See also Chiaretti v. Orthodontic Ctrs. of Am., Inc.*, 2003 U.S. Dist. LEXIS 25264, at *6 (E.D. La. Aug. 28, 2003) (finding that institution "falls within the clear cautioning instruction of the Act"); *Unumprovident*, 2003 U.S. Dist. LEXIS 24633, at *17 (recognizing that "courts have declined to carve out a blanket exception to the professional plaintiff rule for institutional investors"); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 1999) (the "text of the statute contains no flat exemption for institutional investors"); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 820 (N.D. Ohio 1999) (the "statute itself contains no express blanket exception for institutional investors").

104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.  There are at least two flaws with that interpretation of the Report.

First, as a practical matter, in the two decades since the PSLRA was enacted, the 5-in-3 rule has *only* been discussed in the context of institutional investors, *not* individual investors.  In this respect, the PSLRA succeeded in eliminating the so-called "professional plaintiffs"—individuals who owned nominal amounts of stock and sought to control securities cases by winning the race to the courthouse.  In their place, however, we have witnessed the rise of institutional investors that own large amounts of stock repeatedly seeking to serve as lead plaintiff in dozens and dozens of cases.

While institutional plaintiffs may have been encouraged to seek leadership roles in securities cases, the new repeat-plaintiff phenomenon appears to be the result of the "law of unintended consequences."  What was intended as an infrequent exception to the 5-in-3 rule, based on a specifically shown need, has become routine.  Other courts, having uncritically granted exemptions from the 5-in-3 rule to institutional investors, have entrenched certain institutional investors as lead plaintiff over and over again—even though the PSLRA was enacted in part to prevent "repeat plaintiffs."  *See Chiaretti*, 2003 U.S. Dist. LEXIS 25264, at *5 ("A primary tenet of the PSLRA is to protect a class from representation by *repeat plaintiffs*, who may not adequately monitor numerous litigations and counsel simultaneously.") (emphasis added); *Aronson*, 79 F. Supp. 2d at 1156 ("This provision gives the Court considerable discretion to bar *repeat litigants*, creating a rebuttable presumption that the same plaintiff should not direct more than five securities actions in three years.") (emphasis added).  Indeed, reading an exemption for institutional investors into the 5-in-3 rule into the PSLRA "would transform a preference for institutional investors into a monopolization of PSLRA actions by institutional investors." *Telxon*, 67 F. Supp. 2d at 821.  Surely, Congress did

not mean merely to displace one type of "repeat plaintiff" (individual "professional plaintiffs") by allowing a new type (entrenched institutional investors).

Second, and as Judge O'Malley recognized in *Telxon*, "the Conference Committee has no authority to grant courts discretion to do anything." *Id*. Rather, the "statute is the law, not what the Conference Committee says the statute means." *Id*. at 820 & n.30 (recognizing that the "Conference Report does not constitute the law, but is, instead, a gloss placed on the law by members of the House and Senate (or, more accurately, their staff), which is intended to persuade members of both houses to vote in favor of the law"). Thus, the statute should be followed, not the Report.

Indeed, even if the Court determines that the statutory text is ambiguous, and that it may look to the Conference Report for clarity, that inquiry will yield a reading consistent with the PSLRA purpose of limiting repeat plaintiffs: The Conference Report merely recognizes that "[i]nstitutional investors seeking to serve as lead plaintiff ***may need*** to exceed this limitation." H.R. Conf. Rep. No. 104-369, at 35 (emphasis added). Thus, while Courts may have the discretion to lift the presumptive bar when a specific need has been shown, the "Court should not lightly appoint a professional plaintiff, and in this case there is no need to do so" where another person "can adequately represent the class." *Stengle*, 2005 U.S. Dist. LEXIS 43816, at *20.[2] In this case, the Pension Trust can adequately represent the class, and there is no need to allow ATRS to exceed the 5-in-3 bar.

Moreover, the PSLRA "places the burden on [ATRS] to demonstrate why the [5-in-3] bar should not be applied in this instance." *Telxon*, 67 F. Supp. 2d at 820; *Unumprovident*, 2003 U.S. Dist. LEXIS 24633, at *20 (same). ATRS has not even attempted to do so in its prior filings. *See* Dkt. Nos. 12 & 20. For good reason: there are no circumstances present here that would otherwise

---

[2] It is also important to recognize that "Congress also desired to increase client control over plaintiff's counsel, and allowing simultaneous prosecution of six securities actions," or thirty-two, in ATRS' case, "is inconsistent with that goal." *Aronson*, 79 F. Supp. 2d at 1156.

warrant the Court exercising its discretion to permit ATRS to exceed the presumptive bar yet again. *See* Dkt. No. 18 at 13-14 (identifying recognized grounds for exceeding bar).

Furthermore, "the applicability of the statutory bar to [ATRS] obviates the relevance of the amount of its financial interest." *Thompson*, 2004 U.S. Dist. LEXIS 25641, at *22 (finding it "sounder to appoint IIG as Lead Plaintiff, which also has a substantial stake in the litigation if not equal to Detroit P&G's financial interest").[3] That reasoning is particularly pertinent here because ATRS has touted its financial interest as the primary determinant for its appointment as lead plaintiff instead of the Pension Trust.

Finally, Defendants have indicated their intent to challenge ATRS' ability to meet the Rule 23 adequacy requirements. *See* Dkt. No. 25. Because ATRS is already burdened with overseeing well over the five cases Congress intended, and will be side-tracked defending itself against Defendants' vigorous attacks here, the Court should be even more skeptical of lifting the bar in this case.

Consequently, ATRS' motion for appointment as lead plaintiff should be denied because ATRS is subject to the presumptive 5-in-3 bar and has failed to meet its burden to demonstrate why that bar should be lifted in this case. Instead, the Pension Trust—an institutional investor that also suffered a substantial loss and which otherwise satisfies the Rule 23 requirements—should be appointed as the lead plaintiff.

---

[3] *See also Cunha v. Hansen Natural Corp.*, 2009 U.S. Dist. LEXIS 61086, at *20 (C.D. Cal. July 13, 2009) (declining to appoint institutional investor with largest loss as lead plaintiff because it was subject to the presumptive bar and an "alternative institutional investor" stood "ready and able to assume the function" of lead plaintiff); *Chiaretti*, 2003 U.S. Dist. LEXIS 25264, at *6 (same); *Unumprovident*, 2003 U.S. Dist. LEXIS 24633, at *17 (same); *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 457 (S.D. Tex. 2002) (same); *Aronson*, 79 F. Supp. 2d at 1157 (same).

### III. CONCLUSION

The Pension Trust is the only qualified institutional investor that satisfies all of the PSLRA's requirements for appointment as lead plaintiff. Its motion should be granted.

DATED: October 31, 2016

Respectfully submitted,

THE OFFICE OF CRAIG C. REILLY
CRAIG C. REILLY, VSB #20942


*/s/ Craig C. Reilly*
CRAIG C. REILLY

111 Oronoco Street
Alexandria, VA 22314
Telephone: 703/549-5354
703/549-2604 (fax)
craig.reilly@ccreillylaw.com

Liaison Counsel

ROBBINS GELLER RUDMAN
 & DOWD LLP
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
 & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

[Proposed] Lead Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2016, I filed the foregoing pleading or paper through the Court's CM/ECF system, which sent a notice of electronic filing to all registered users.

|  |  |
|--|--|
|  |  |

*/s/ Craig C. Reilly*
Craig C. Reilly, Esq.
VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-5355
EMAIL craig.reilly@ccreillylaw.com
*Liaison Counsel for Movant*