IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| STEVEN KNURR, et al., )<br>Plaintiffs, )<br> )<br> )<br>v. )<br> )<br> )<br>ORBITAL ATK, INC. et al., )<br>Defendants. )<br> )<br> ) | Case No. 1:16-cv-1031 |

## MEMORANDUM OPINION

On August 10, 2016, defendant Orbital ATK, Inc. ("Orbital") announced that it had previously failed to report a loss on a major contract. Following this announcement, Orbital's publicly traded share price fell, and shortly thereafter an Orbital stockholder filed a securities fraud class action lawsuit against Orbital pursuant to the Private Securities Litigation Reform Act ("PSLRA").

As is typical in these types of cases, an early order of business is the requirement to appoint a lead plaintiff and counsel to pursue the case on behalf of the class. Although there are three proposed lead plaintiffs here, only two institutional investors remain as candidates for the appointment of lead plaintiff. Both are fully qualified to serve in that role. Under the PSLRA, however, the proposed lead plaintiff who suffered the largest loss due to Orbital's alleged fraud is presumed to be the best representative for the class. There is no dispute as to which institutional investor suffered the largest loss, but there is a catch: the institutional investor that suffered the largest loss has also served as lead plaintiff in at least 16 securities class action cases over the last three years. In this respect, the PSLRA cautions that "a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class

actions brought as plaintiff class actions . . . during any 3-year period," except as otherwise permitted and "consistent with the purposes of this section." 15 U.S.C. § 78u-4(a)(3)(B)(vi) ("Five-in-Three Provision" or "Provision"). Accordingly, the questions presented in this case are: (1) whether institutional investors are exempt from the PSLRA's Five-in-Three Provision and (2) whether the institutional investor in this case that exceeds the limit of the Five-in-Three Provision should nonetheless be appointed as lead plaintiff.

### I.

The facts relating to these threshold motions may be succinctly summarized.

The named plaintiff in this case is Steven Knurr, who purchased Orbital securities before August 10, 2016 and suffered a loss when Orbital's share price dropped. The proposed lead plaintiffs are two institutional investors: (1) the Construction Laborers Pension Trust of Greater St. Louis ("St. Louis Laborers") and (2) the Arkansas Teacher Retirement System. St. Louis Laborers and Arkansas Teacher Retirement System claim fraud-related losses of $116,762.10 and $396,501.10, respectively. Two individual investors, Christopher B. Cooper and John Kim, also filed a joint motion for appointment as lead plaintiffs, but withdrew their motion after the record reflected that their alleged fraud-related losses were less than the fraud-related losses claimed by St. Louis Laborers and Arkansas Teacher Retirement System.

Defendants are: (1) Orbital ATK, Inc., a manufacturer of aerospace and defense products for the U.S. government, allied nations, and other customers; (2) David W. Thompson, Orbital's Chief Executive Officer, President, and Director, and (3) Garrett E. Pierce, Orbital's Chief Financial Officer. Orbital's shares are publicly traded on the New York Stock Exchange.

The complaint alleges that defendants made materially false and misleading statements concerning Orbital's internal accounting procedures. Specifically, the complaint alleges that

Orbital entered into a $2.3 billion contract with the U.S. Army in September 2012 to manufacture ammunition. For almost a year — between June 1, 2015, and May 9, 2016 — Orbital filed numerous financial reports with the U.S. Securities and Exchange Commission purporting to state the company's revenue and net income. According to the complaint, the reports failed to disclose a loss on the Army contract when the loss became apparent in 2015. As a result, the complaint alleges that the statements defendants made in their financial reports from June 1, 2015 to May 9, 2016 were materially false and misleading. When Orbital announced on August 10, 2016 that it had made misstatements in its financial reports, Orbital's share price dropped $17.98 (20.25%) that day.

On August 12, 2016, two days after Orbital's announcement, named plaintiff Steven Knurr, consistent with the PSLRA, filed this class action under Rules 23(a) and (b)(3), Fed. R. Civ. P., individually and on behalf of all others similarly situated. The proposed class consists of all those who purchased or acquired Orbital securities between June 1, 2015 and August 9, 2016 (the class period) and incurred losses when Orbital announced that it had included misstatements in its financial reports. Plaintiff alleges that defendants violated § 10(b), Rule 10b-5, and § 20(a) of the Securities Exchange Act of 1934. As required by the PSLRA, plaintiff published a notice on a national wire service announcing the complaint and notifying members of the proposed class of their right to move for appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Accordingly, St. Louis Laborers and Arkansas Teacher Retirement System filed motions for appointment as lead plaintiff.

## II.

Analysis properly begins with an overview of the PSLRA and the process for selecting a lead plaintiff. Congress enacted the PSLRA to "combat abuse of the class action machinery in

3

securities fraud cases by ensuring that these class actions are [not] controlled . . . by law firms or professional plaintiffs with only nominal interests at stake." *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 434 (E.D. Va. 2000). Instead, Congress sought to ensure that "reasonably sophisticated plaintiffs with large or at least, relatively large financial stakes in the case" would act as lead plaintiffs. *Id.*

The text of the PSLRA reflects that purpose. To begin with, all proposed plaintiffs must file a sworn certification "setting forth certain facts designed to assure a court that the named plaintiff (i) has suffered more than a nominal loss, (ii) is not a professional litigant, and (iii) is otherwise interested and able to serve as a class representative." *Id.* at 432; *see also* 15 U.S.C. § 78u-4(a)(2)(A). Importantly, and as relevant here, all proposed plaintiffs in their certifications must "identif[y] any other action under this chapter, filed during the 3-year period preceding the date on which certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class." 15 U.S.C. § 78u-4(a)(2)(A)(v).

The next step under the PSLRA requires the first plaintiff who filed the action to publish a notice in a national business publication within 20 days of filing the complaint. *Id.* § 78u-4(a)(3)(A)(i). That notice must inform members of the purported plaintiff class about the pendency of the action and advise the members that, within 60 days of filing the notice, any member can move the court for appointment as lead plaintiff. *Id.* § 78u-4(a)(3)(A)(i)(II). Plaintiff Steven Knurr complied with this requirement by publishing an appropriate notice. A lead plaintiff must then be appointed within 90 days of the publication of the notice. *Id.* § 78u-4(a)(3)(B)(i).

The PSLRA provides guidance on the appointment of a lead plaintiff. Specifically, the PSLRA states that the court "shall appoint as lead plaintiff the member or members of the

4

purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id.* § 78u-4(a)(B)(i). The statute provides for a "sequential procedure for litigants and the district court to follow in determining who among the members of the alleged class is the 'most adequate plaintiff' to serve as the lead plaintiff." *In re Microstrategy*, 110 F. Supp. 2d at 432. In particular, the court "shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that": (i) filed the action or moved the court for appointment as lead plaintiff, (ii) has "the largest financial interest in the relief sought by the class," and (iii) "otherwise satisfies the requirements of [Rule 23, Fed. R. Civ. P.]." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The inquiry under Rule 23, Fed. R. Civ. P., is not as "searching as the one triggered by a motion for class certification, because the inquiry focuses solely on whether the person will be an appropriate class representative, and not whether the class may ultimately be certified." *In re MicroStrategy*, 110 F. Supp. 2d at 435. Thus, the inquiry under the third factor considers only whether (i) the proposed lead plaintiff's "'claims and defenses . . . are typical of the claims or defenses of the class' and (ii) whether the movant 'will fairly and adequately protect the interests of the class.'" *Id.* (quoting Rule 23(a)(3)(4), Fed. R. Civ. P.).

The proposed lead plaintiff that satisfies those three factors is presumed to be the "most adequate plaintiff," and that presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" (i) will not protect the class's interests or (ii) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Additionally, the PSLRA's Five-in-Three Provision limits parties from serving as lead plaintiff in more than five securities class action cases during any three-year period. *Id.* § 78u-4(a)(3)(B)(vi).

5

## III.

At the outset, it is important to recognize that both Arkansas Teacher Retirement System and St. Louis Laborers are well qualified candidates to serve as lead plaintiff. Both timely filed motions for appointment as lead plaintiff. *See id.* § 78u-4(a)(3)(B)(iii)(I)(aa). Both incurred large losses due to defendants' alleged fraud: Arkansas Teacher Retirement System lost $396,501.10 and St. Louis Laborers lost $116,762.10. Both satisfy the typicality and adequacy requirements of Rule 23, Fed. R. Civ. P. Their securities claims are typical of the proposed class because the claims relate to Orbital's alleged violations of securities laws and, as a result, both proposed lead plaintiffs will advance the same legal theories as other class members. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) ("[Typicality] is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."). Both proposed lead plaintiffs also satisfy the adequacy requirement because there is no indication that their interests are adverse to the interests of the proposed class. Both have also unquestionably retained competent, experienced counsel, and both have sufficient resources to litigate this action vigorously. *See id.* (stating that adequacy is satisfied where class counsel is qualified, competent, and experienced, and where class members do "not have interests that are antagonistic to one another") (internal quotation marks omitted).

Although both are fully qualified, Arkansas Teacher Retirement System is entitled to a presumption as the most adequate plaintiff solely because it incurred a larger loss than St. Louis Laborers: $396,501.10 compared to St. Louis Laborers' loss of $116,762.10. Yet the lead plaintiff selection analysis cannot end here. St. Louis Laborers contends that Arkansas Teacher Retirement System cannot serve as lead plaintiff because Arkansas Teacher Retirement System

has, by its own admission, served as lead plaintiff in at least 16 securities class actions in the last three years. Accordingly, St. Louis Laborers argues that the PSLRA's Five-in-Three Provision prohibits Arkansas Teacher Retirement System from serving as lead plaintiff.[1] In response, Arkansas Teacher Retirement System contends that the PSLRA's Five-in-Three Provision does not apply here because (i) institutional investors like Arkansas Teacher Retirement System are totally exempt from the Five-in-Three Provision and (ii) even if institutional investors are not exempt, Arkansas Teacher Retirement System should nonetheless be discretionarily appointed. Each of those contentions is addressed in turn.

---

[1] Defendants contest the adequacy of Arkansas Teacher Retirement System on the ground that attorneys from the law firm Labaton Sucharow LLP, Arkansas Teacher Retirement System's proposed co-lead counsel, made campaign contributions to a member of Arkansas Teacher Retirement System's Board. This fact, defendants contend, raises the specter of a disqualifying pay-to-play relationship between Arkansas Teacher Retirement System and its counsel. To begin with, there is significant doubt whether it is even appropriate for a defendant to participate in this fashion in the lead plaintiff selection process. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (stating that the most adequate plaintiff presumption "may be rebutted only upon proof *by a member of the purported plaintiff class*" that the presumed plaintiff does not satisfy the statutory requirements) (emphasis added); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) (stating that the PSLRA's language makes clear that "only class members may seek to rebut the [most adequate plaintiff] presumption, and the court should not permit or consider any arguments by defendants or non-class members"). Although there is substantial force to this point, at the same time it seems short-sighted to preclude any party from disclosing facts that may undermine a plaintiff's eligibility to serve as lead plaintiff, inasmuch as there is the prospect that in the absence of such disclosure, another lead plaintiff would have to be appointed later. *See* Transcript of Oral Argument at 28–29, *In re Comput. Scis. Corp. Sec. Litig.*, No. 1:11-cv-610 (E.D. Va. Aug. 26, 2011), ECF No. 37 (informing defendant, during hearing on appointment of lead plaintiff in a securities class action case, that it would "ill become you . . . if you have some fatal shot to fire under Rule 23 [Fed. R. Civ. P.] class certification that you don't advise me of it now, so I have to appoint some other person later on"). In any event, neither the propriety of allowing defendant to participate in this process nor the merits of defendants' argument need be addressed here because Arkansas Teacher Retirement System, for a different reason, will not be appointed lead plaintiff.

**A.**

The PSLRA's Five-in-Three Provision states that: "a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions . . . during any 3-year period," except at the court's discretion and consistent with the statute's purposes. 15 U.S.C. § 78u-4(a)(3)(B)(vi). Arkansas Teacher Retirement System first argues that the Five-in-Three Provision completely exempts institutional investors from the five-in-three limit.

The Supreme Court has stated that the "task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). To state the obvious, an exemption for institutional investors appears nowhere in the statute's text. *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 820 (N.D. Ohio 1999) ("The statute itself contains no express blanket exception for institutional investors.").[2] And to state what is even more obvious, it is Congress's prerogative, not the courts', to add words to the PSLRA. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2033 (2015) ("The problem with [the respondent's] approach is the one that inheres in most incorrect interpretations of statutes: It asks us to add words to the law to produce what is thought to be a desirable result. That is Congress's province."). If Congress wished to include an exemption for institutional investors, it could have easily stated something to the effect of: *"with the exception of institutional investors, a person may be a lead plaintiff . . . ." See in re Telxon Corp.*, 67 F. Supp. 2d at 821. Because

---

[2] *See also Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 1999) ("The text of the [Five-in-Three Provision] contains no flat exemption for institutional investors. Indeed, looking at the section as a whole . . . institutional investors are already heavily favored by the requirement that the lead plaintiff have the 'largest financial interest' in the litigation.").

8

Congress did not include any such language, an exemption for institutional investors cannot be judicially grafted onto the statute. *See Iselin v. United States*, 270 U.S. 245, 251 (1926) ("What the government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function.").[3]

Arkansas Teacher Retirement System's argument to the contrary focuses on the word "person" in the Five-in-Three Provision, arguing that this word should be interpreted to mean "individual person," thereby excluding institutional investors from the Provision. That argument is flawed in several respects. To begin with, it is doubtful that Congress would have hidden a major exemption in a single word, especially where there is no other language in the Five-in-Three Provision indicating that such an exemption exists. *Compare Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (Scalia, J.) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions — it does not, one might say, hide elephants in mouseholes.").

Furthermore, under the Dictionary Act, the word "person" in a statute is defined to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals," unless "the context indicates otherwise." *See* 1 U.S.C. § 1.[4]

---

[3] *See also Ebert v. Poston*, 266 U.S. 548, 554 (1925) ("A casus omissus does not justify judicial legislation."); *Petteys v. Butler*, 367 F.2d 528, 538 (8th Cir. 1966) (Blackmun, J., dissenting) ("My own reaction is that either the statute means what it literally says or that it does not; that if the Congress intended to provide additional exceptions, it would have done so in clear language.").

[4] The Dictionary Act provides instructions on how to interpret certain words (for example, "words importing the plural include the singular") and defines words that commonly appear in statutes, such as "person," "officer," and "writing." *See* 1 U.S.C. § 1; *see also Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 199 (1993).

Here, the context does not indicate otherwise. To the contrary, it supports construing the word "person" to include entities such as institutional investors. Subsection 78u-4(a)(B)(iii)(I) states that the court shall presume that "the most adequate plaintiff in any private action under this chapter is the *person* or group of persons that [satisfies the requirements]." There is no question that "person" in that subsection includes institutional investors; after all, Arkansas Teacher Retirement System applied as a "person" seeking lead plaintiff status under that subsection. Therefore, if "person" in § 78u-4(a)(B)(iii)(I) includes institutional investors, then it follows that the word "person" in the Five-in-Three Provision should also include institutional investors. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) ("[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning.").[5] In sum, the Dictionary Act's definition of the word "person," as well as the surrounding statutory context, supports the conclusion that the word "person" in the Five-in-Three Provision applies to institutional investors, as well as individual persons.

Arkansas Teacher Retirement System seeks to avoid this conclusion by contending that the PSLRA's Conference Report reflects Congress' intent to exempt institutional investors from the Five-in-Three Provision. *See* H.R. Conf. Rep. 104-369, at 35 (1995) ("Institutional investors seeking to serve as lead plaintiff may need to exceed [the limit on lead plaintiffs] *and do not represent the type of professional plaintiff this legislation seeks to restrict*.") (emphasis added).[6] That argument fails for the simple reason that Congress enacts, and the President signs, statutes

---

[5] *See also* Caleb Nelson, *Statutory Interpretation* 88 (2011) (stating that federal courts "regularly apply" the "presumption of consistent usage" principle when interpreting statutes).

[6] Arkansas Teacher Retirement System also cites decisions in which courts have relied on the same Conference Report to hold that the Five-in-Three Provision exempts institutional investors. *See, e.g., In re Extreme Networks Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2016 WL 3519283, at *4–8 (N.D. Cal. June 28, 2016).

10

— not conference reports. *See in re Telxon Corp*, 67 F. Supp. 2d at 820 ("The Conference Committee's pronouncements [in the PSLRA Conference Report] are not the law and are not a part of the statute. . . . The statute is the law, not what the Conference Committee says the statute means."). Indeed, conference reports are not even helpful aids in construing statutes. As Justice Story once put it, "[w]hat passes in [C]ongress upon the discussion of a bill can hardly become a matter of strict judicial inquiry; and if it were, it could scarcely be affirmed, that the opinions of a few members, expressed either way, are to be considered as the judgment of the whole house, or even of a majority." *Mitchell v. Great Works Milling & Mfg. Co.*, 17 F. Cas. 496, 498 (C.C.D. Me. 1843) (No. 9,662) (per Story, J.).

By relying on the Conference Report, Arkansas Teacher Retirement System is essentially arguing that the text of the Five-in-Three Provision is merely evidence of Congress's intent, and that the true meaning of the statute is found in the Report. That argument fails because it would "demean the constitutionally prescribed method of legislating to suppose that [the legislature's] elaborate apparatus for deliberation on, amending, and approving a text is just a way to create some *evidence* about the law, while the *real* source of legal rules is the mental processes of legislators." *See Matter of Sinclair*, 870 F.2d 1340, 1344 (7th Cir. 1989) (Easterbrook, J.) (emphasis in original).[7] In sum, Arkansas Teacher Retirement System's attempt to use the Conference Report to manufacture an ambiguity in the text of the PSLRA fails because the "mental processes" of legislators, even if formalized in a committee report, are unpersuasive in light of the fact that the Five-in-Three Provision plainly contains no exemption for institutional

---

[7] *See also Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 240 (2011) (Scalia, J.) ("[Because] our interpretation of [the statute] is the only interpretation supported by the text and structure of the [statute], even those of us who believe legislative history is a legitimate tool of statutory interpretation have no need to resort to it.").

11

investors. *See Gemsco, Inc., v. Walling*, 324 U.S. 244, 260 (1945) ("The plain words and meaning of a statute cannot be overcome by a legislative history which, through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction.").[8]

### B.

Although the PSLRA's Five-in-Three Provision does not contain a flat exemption for institutional investors, it plainly gives courts discretion to waive the Five-in-Three Provision when doing so would be "consistent with the purposes of this section."[9] 15 U.S.C. § 78u-4(a)(3)(B)(vi). Arkansas Teacher Retirement System contends that the Five-in-Three Provision should be lifted here because it suffered the largest loss and is best-equipped to litigate this case.

Arkansas Teacher Retirement System's argument would be more persuasive if it were the only institutional investor seeking appointment as lead plaintiff. *See In re Telxon*, 67 F. Supp. 2d at 822 ("If, for instance, the Court were forced to choose between an institutional investor that had exceeded the five actions in three years rule and a single investor whose loss was dwarfed by that institutional investor, or a group of *unrelated* investors, then it certainly would be consistent with the purposes of the PSLRA to allow the institutional investor to serve as lead plaintiff.

---

[8] *See also Ex parte Collett*, 337 U.S. 55, 61 (1949) ("[T]here is no need to refer to the legislative history where the statutory language is clear."); *License Cases*, 46 U.S. (5 How.) 504, 612 (1847) (opinion of Daniel, J.) ("[H]ow often words introduced for the purpose of explanation are themselves the means of creating doubt or ambiguity!").

[9] The fact that the PSLRA affords courts discretion to waive the Five-in-Three Provision is further evidence that the Provision does not contain a flat exemption for institutional investors. After all, if courts can exempt any proposed lead plaintiff from the Provision, then there would be little need to add an additional exemption for institutional investors. *See In re Telxon*, 67 F. Supp. 2d at 821 ("[T]he purported blanket exemption reflected in the Conference Report cannot be squared with the more limited grant of discretion contained in the statute itself. It would turn the grant of discretion into a mandatory instruction *requiring* courts to excuse an institutional investor from the rule.").

. . ."). But here, the choice is not so limited. St. Louis Laborers is an institutional investor that is fully qualified to serve as lead plaintiff. Although St. Louis Laborers did not suffer the largest loss, it lost a significant amount of money, and it otherwise meets the requirements to qualify for the most adequate plaintiff presumption. Furthermore, there is no question that both Arkansas Teacher Retirement System and St. Louis Laborers have the experience and resources to litigate this action effectively on behalf of the class.[10] Thus, appointing St. Louis Laborers as lead plaintiff in lieu of the presumptive most adequate plaintiff promotes the PSLRA's purpose. *See In re Cendant Corp.*, 264 F.3d at 273 ("[T]he purpose of the [PSLRA is] to encourage institutional investors to serve as lead plaintiff.").[11] In short, there is simply no reason to exempt Arkansas Teacher Retirement System from the Five-in-Three Provision when St. Louis Laborers is fully qualified to serve as lead plaintiff.

## IV.

The final issue is whether St. Louis Laborers' choice of proposed lead counsel should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). St. Louis Laborers has selected the law firm Robbins Geller Rudman & Dowd LLP ("Robbins Geller") to serve as lead counsel. There is no

---

[10] Arkansas Teacher Retirement System's choice to select two law firms to serve as co-lead plaintiff counsel is worth noting because it creates the concern that "fees would be unnecessarily increased" and efficiency reduced. *See In re Microstrategy*, 110 F. Supp. 2d at 440. In any event, the point plays no role in the decision that St. Louis Laborers should serve as lead plaintiff.

[11] Because St. Louis Laborers is fully qualified to serve as lead plaintiff, the decisions Arkansas Teacher Retirement System relies on are inapposite. *See, e.g., In re Diamond Foods, Inc. Sec. Litig.*, 281 F.R.D. 405, 409–10 (N.D. Cal. 2012) (lifting the Provision in favor of an institutional investor that had shown an ability to manage the litigation and whose loss was seven times greater than another institutional investor); *In re Netflix, Inc. Sec. Litig.*, No., 2012 WL 1496171, at *2, 6 (N.D. Cal., Apr. 27, 2012) ("The Court is not moved to disqualify Arkansas Teacher or Boston as a professional plaintiff only to turn and appoint the unrelated strangers of the Fish Group.").

question that Robbins Geller is qualified to litigate this class action lawsuit — it has a long record of success in these types of cases. St. Louis Laborers has also selected Craig C. Reilly as liaison counsel. Again, there is no question that Mr. Reilly is qualified to serve in that position. Indeed, he has previously been approved to serve as liaison counsel in a securities class action case in this district. *See Glaser v. Verisign, Inc.*, No. 1:13-cv-60 (E.D. Va. Apr. 12, 2013) (Order), ECF No. 37 (appointing Robbins Geller as lead counsel and Mr. Reilly as local counsel in a securities class action case). As a result, St. Louis Laborers' choice of Robbins Geller as lead counsel and Mr. Reilly as local counsel will be approved. *See In re Microstrategy*, 110 F. Supp. 2d at 438 ("[A] district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources . . . .").

V.

For the foregoing reasons, (i) St. Louis Laborers' motion for appointment as lead plaintiff will be granted, (ii) St. Louis Laborers' motion to appoint Robbins Geller as lead counsel and Craig C. Reilly as liaison counsel will be approved, and (iii) Arkansas Teacher Retirement System's motion, as well as Cooper and Kim's motion, for appointment as lead plaintiff will be denied.

An appropriate order will issue.

Alexandria, Virginia
November 10, 2016

/s/
T. S. Ellis, III
United States District Judge