IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| STEVEN KNURR, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.: 1:16-cv-01031-TSE-MSN |
| ORBITAL ATK, INC., et al., | ) ) | |
| Defendants. | ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# Table of Contents

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     PLAINTIFFS' ALLEGATIONS DO NOT SUPPORT A STRONG INFERENCE
        OF SCIENTER ................................................................................................... 2

        A.      The Size and Impact of the Restatement Does Not Contribute to Any
                Inference of Scienter ............................................................................... 3

        B.      Plaintiffs Have Not Identified Any Relevant "Red Flags" .................................... 6

        C.      Neither an SEC Investigation Nor Unrelated Resignations Can Contribute
                to an Inference of Scienter .................................................................... 8

        D.      Defendants Had No Cognizable Motive to Commit Fraud .................................. 9

        E.      The More Compelling Inference Is that Defendants Acted Innocently ............... 10

        F.      Plaintiffs Fail to Adequately Plead Corporate Scienter ...................................... 13

III.    THE COMPLAINT DOES NOT ADEQUATELY PLEAD A SECTION 14(A)
        CLAIM............................................................................................................. 14

**Table of Authorities**

**Page(s)**

**Cases**

*Adams v. Standard Knitting Mills, Inc.*,
  623 F.2d 422 (6th Cir. 1980) ................................................................16

*In re Akorn Sec. Litig.*,
  2017 WL 878559 (N.D. Il. Mar. 6, 2017)...............................................12

*In re BearingPoint, Inc. Sec. Litig.*,
  525 F. Supp. 2d 759 (E.D. Va. 2007) ....................................................13

*Beck v. Dobrowski*,
  559 F.3d 680 (7th Cir. 2009) .................................................................15

*In re BISYS Sec. Litig.*,
  397 F. Supp. 2d 430 (S.D.N.Y. 2005).....................................................9

*Brooks v. Walls*,
  279 F.3d 518 (7th Cir. 2002) .................................................................15

*Carlucci v. Han*,
  907 F. Supp. 2d 709 (E.D. Va. 2012) ......................................................6

*City of St. Clair Shores Gen. Emps. Ret. Sys. v.*
  *Inland W. Retail Real Estate Tr.*,
  635 F. Supp. 2d 783 (D. Ill. 2009) ...................................................16, 19

*City of Dearborn Heights v. Align Tech.*,
  856 F.3d 605 (9th Cir. 2017) ...................................................................9

*In re Computer Scis. Corp. Sec. Litig.*,
  890 F. Supp. 2d 650 (E.D. Va. 2012) .........................................11, 13, 14

*Coppage v. Mann*,
  906 F. Supp. 1025 (E.D. Va. 1995) ........................................................15

*Cozzarelli v. Inspire Pharm. Inc.*,
  549 F.3d (4th Cir. 2008) ...................................................................8, 10

*Dasho v. Susquehanna Corp.*,
  461 F.2d 11 (7th Cir. 1972) ...................................................................15

*Digital Vending Servs. Int'l, Inc. v. Univ. of Phoenix, Inc.*,
  2013 WL 5533233 (E.D. Va. Oct. 3, 2013)............................................15

*In re E.Spire Commc'ns, Inc. Sec. Litig.*,
  127 F. Supp. 2d 734 (D. Md. 2001).......................................................10

## Table of Authorities
(continued)

Page(s)

*Epstein v. World Acceptance Corp.*,
203 F. Supp. 3d 655 (D.S.C. 2016) ......................................................................9

*Fait v. Regions Fin. Corp.*,
655 F.3d 105 (2nd Cir. 2011)...............................................................................18

*Frank v. Dana Corp.*,
646 F.3d 954 (6th Cir. 2011) ...............................................................................12

*Katz v. Odin, Feldman & Pittleman*,
332 F. Supp. 2d 909 (E.D. Va. 2004) (Ellis, J.)..................................................17

*Lane v. Page*,
581 F. Supp. 2d 1094 (D.N.M. 2008) ..................................................................16

*Little Gem Life Scis., LLC v. Orphan Med., Inc.*,
537 F.3d 913 (8th Cir. 2008) ...............................................................................16

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
513 F.3d 702 (7th Cir. 2008) ...............................................................................12

*Masterson v. Commonwealth Bankshares, Inc.*,
2 F. Supp. 3d 824 (E.D. Va. 2014) ........................................................................8

*Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*,
576 F.3d at 172 ....................................................................................................13

*In re McKesson HBOC, Inc. Sec. Litig.*,
126 F. Supp. 2d 1248 (N.D. Cal. 2000) ....................................................16, 18, 19

*In re MicroStategy, Inc. Sec. Litig.*,
115 F. Supp. 2d 620 (E.D. Va. 2000)  .............................................................3, 4, 6

*Okla. Firefighters Pension & Ret. Sys. v. Ixia*,
2015 WL 1775221 (C.D. Cal. Apr. 14, 2015) .......................................................7

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
135 S. Ct. 1318 (2015)....................................................................................17, 18

*Owens v. Jastrow*,
789 F.3d 529 (5th Cir. 2015) .................................................................................2

*Pipefitters Local No. 636 Defined Benefit Plan v. Tekelec*,
2013 WL 1192004 (E.D.N.C. Mar. 22, 2013) .......................................................5

*In re Pretium Res. Inc. Sec. Litig.*,
2017 WL 2560005 (S.D.N.Y. June 13, 2017) ......................................................10

**Table of Authorities**
(continued)

Page(s)

*Sandberg v. Virginia Bankshares, Inc.*,
    979 F.2d 332 (4th Cir. 1992), *rev'd on other grounds sub nom. by
    Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) ...............................................15

*Svezzese v. Duratek*,
    67 F. App'x 169 (4th Cir. 2003) ...................................................................................2, 3, 11

*Tyler v. Liz Claiborne, Inc.*,
    814 F. Supp. 2d 323 (S.D.N.Y. 2011)..........................................................................................7

*In re VeriFone Holdings Inc. Sec. Litig.*,
    704 F.3d 694 (9th Cir. 2012) ....................................................................................................12

*W. Palm Beach Police Pension Fund v. DFC Global Corp.*,
    2015 WL 3755218 (E.D. Pa. June 16, 2015)...............................................................................9

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994) ....................................................................................................10

*Yates v. Mun. Mortg. & Equity, LLC*,
    744 F.3d 874 (4th Cir. 2014) ........................................................................................... *passim*

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) ......................................................................................................8

**Statutes**

15 U.S.C. § 78u-4 .............................................................................................................................14

17 C.F.R. § 240.10-b-5 ...............................................................................................................14, 15

Private Securities Litigation Reform Act of 1995 ..........................................................................18

Securities Exchange Act of 1934
    § 14(a) ......................................................................................................................................14, 15

**Other Authorities**

Restatement (Third) Of Agency § 5.03 (2006)...............................................................................14

## I.   INTRODUCTION

In the Fourth Circuit, it is well-established that allegations of accounting violations or irregularities are insufficient to adequately plead a securities fraud claim.  As Plaintiffs' Opposition ("Opp.") confirms, however, this case is based on nothing more than Orbital ATK's financial restatement related to its Lake City Contract.  The Complaint is devoid of any factual allegations, documents, or witness statements that would tend to show that Defendants knew, or were severely reckless in not knowing, about the accounting error that led to the restatement *before* the Company's senior management discovered, and promptly disclosed, the error as part of a voluntary internal review.  Instead, Plaintiffs are reduced to making "must have known" allegations based on the size of the contract, the nature of the accounting error, and the Individual Defendants' positions as officers and directors.  The Fourth Circuit has routinely found these types of allegations to be insufficient to plead a strong inference of scienter (*i.e.*, fraudulent intent).  Plaintiffs' failure to provide any facts linking the Individual Defendants to knowledge of the accounting error is especially glaring given the Audit Committee's intensive investigation, which found that the Company did not accurately calculate the estimated costs of the Lake City Contract earlier because certain lower-level personnel had failed to communicate negative information and concerns about the costs to senior management and the Board of Directors.  Based on all of the facts properly before the Court, the more cogent and compelling inference is that Defendants acted innocently.  Unable to refute the foregoing argument, Plaintiffs instead sidestep governing law, parade inapposite cases, and put forward assertions contradicted by their own Complaint or documents referenced in it.  Plaintiffs do the same with respect to their ill-conceived Section 14(a) claim.  Defendants respectfully request that the Court dismiss the Complaint with prejudice.

1

## II.   PLAINTIFFS' ALLEGATIONS DO NOT SUPPORT A STRONG INFERENCE OF SCIENTER

As Defendants demonstrated in their Opening Brief ("Br."), Plaintiffs' securities fraud claims must be dismissed because the Complaint has failed to allege the required "strong inference of scienter" as to any of the Defendants.[1]  Plaintiffs' response is to assert that because (i) the Individual Defendants had oversight responsibility as officers and directors of the Company (Opp. at 10-13), (ii) the accounting errors related to an estimate of costs and the Company had historic information about these costs (Opp. at 13-17), and (iii) the Lake City Contract and the related restatement were of a significant size (Opp. at 17-20), they have established that Defendants must have known about the accounting error when it occurred.

Under Fourth Circuit precedent, however, these types of allegations are clearly deficient. *Yates*, 744 F.3d at 890 ("[I]n accordance with several of our sister circuits, we reject plaintiffs' contention that the individual defendants must have acted intentionally or recklessly . . . merely because (1) they were senior executives, and (2) [the operations at issue] represented a core business of the Company.").  Without "additional detailed allegations establishing the defendants' actual exposure to the . . . problem," these "must have known" allegations cannot create a strong inference of scienter.  *Id.*  Indeed, in its *Duratek* decision, the Fourth Circuit rejected a nearly identical Complaint *based on the exact same type of accounting error* as insufficient because it did not provide "any evidence that [Defendants] knew of or recklessly

---

[1] Plaintiffs' insistence that Defendants have failed to properly engage in the holistic analysis mandated by *Tellabs* is an attempt to hide the weakness of each of the Complaint's scienter allegations.  (*See* Opp. at 3.)  As the Fifth Circuit has recognized, in complex cases like this one, the "best [way to] make sense of scienter allegations [is] by first looking to the contribution of each individual allegation" before "follow[ing] this initial step with a holistic look at all of the scienter allegations." *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015).  The approach is frequently employed by the Fourth Circuit, *see Yates v. Mun. Mortgage & Equity, LLC*, 744 F.3d 874, 890 (4th Cir. 2014), and Defendants used the same analysis here.

disregarded the problematic accounting practices." *Svezzese v. Duratek*, 67 F. App'x 169, 170-71, 73 (4th Cir. 2003). The same is true here.

Although Defendants argued in their opening brief that *Duratek* was "on all fours" with this case and should guide the outcome (Br. at 14), Plaintiffs wait until thirty pages into their Opposition to even address the case and then do so only in a cursory fashion. (Opp. at 30.) According to Plaintiffs, *Duratek* is distinguishable because in that case the company "failed to account for unexpected changes in costs." (Opp. at 30.) This is a distinction without a difference. Both Duratek and Orbital ATK applied percentage-of-completion ("POC") accounting to long-term contracts, but did not accurately estimate the associated costs over the lifetime of the contract. *See Duratek*, 67 F. App'x at 171. When the companies discovered that the actual costs would be higher than estimated, and that this should have been evident in earlier financial periods, they issued restatements. *See id.* ("Duratek allegedly failed to track and compare the actual costs of processing radioactive waste at its facilities, which turned out to be higher than expected, with its estimates of total costs."). Moreover, the financial impact of the restatements were virtually identical (a fact that Plaintiffs do not dispute). (*See* Br. at 19 n.17.) The only remaining question is whether Plaintiffs have alleged additional facts that could create a strong inference of scienter and distinguish this case from *Duratek*. They have not.

A.      **The Size and Impact of the Restatement Does Not Contribute to Any Inference of Scienter**

Plaintiffs have not alleged anything about the Restatement that contributes to an inference of scienter. Indeed, as set forth in Defendants' Opening Brief, none of the special factors considered by this Court in its *MicroStrategy* decision are present here. (Br. at 16-19.) Plaintiffs take issue with that conclusion in three respects, but can only do so by distorting *MicroStrategy*.

First, Plaintiffs assert that this case is "similar to *MicroStrategy*" because "the Lake City

Contract's losses converted what was purportedly a profitable contract into a massive loss."
(Opp. at 18.)   In *MicroStrategy*, however, accounting errors forced the defendant to admit that
*the entire company's* profitability had been illusory.  115 F. Supp. 2d at 637.  The restatement in
that case therefore amounted to a "night-and-day difference with regard to [*the company's*]
representations of profitability."  *Id.* (emphasis added).  In contrast, it is undisputed that even
after the restatement, Orbital ATK reported a substantial profit in *each* of the affected fiscal
years.  (Br. at 18-19.)

Second, Plaintiffs assert that POC accounting is "simple," just like the accounting rules at
issue in *MicroStrategy*.  (Opp at 18-19.)  However, POC accounting is anything but "simple" and
courts have refused to agree with that characterization.  (Br. at 17-18.)  Indeed, as Plaintiffs
concede, when Alliant won the Lake City Contract, it informed investors that the Contract had
been aggressively bid (Compl. ¶¶ 44-45) and that there would have to be significant cost-cutting
at the plant, including "driving efficiency improvements, reducing workforce, and using excess
capacity to manufacture ammunition for commercial sales and splitting the overhead."  (Compl.
¶ 3.)  Accordingly, in assessing the expected profitability of the Contract, Alliant (and later
Orbital ATK) were required to estimate its ability to reduce their costs over the entire length of
the contract for all of these items and more.  This is nothing like the accounting rules at issue in
*MicroStrategy*, which merely stated that the defendant should not recognize revenue before it
was actually received.  *MicroStrategy*, 115 F. Supp. 2d at 638.

Nor does the fact that "Orbital ATK had 12 years of experience with Lake City and
detailed cost records to know precisely the cost of manufacturing these high-volume, low-cost
products" (Opp. at 18; *see also id.* at 19-20) convert this complicated estimate of *future* costs into
a simple analysis.  Because the Company intended to *improve* on its historical performance by

cutting costs, Plaintiffs must allege facts demonstrating that the Individual Defendants knew, or were severely reckless in not knowing, that the Company's cost-saving measures would be insufficient.  Merely pointing out that the Company had *historical* cost data cannot possibly satisfy that pleading burden.  And, as Plaintiffs are forced to concede, the Company did achieve *$400 million in cost savings* related to the Lake City Contract.  (Br. at 20.)  Plaintiffs make no attempt to reconcile that inconvenient fact with their obviously erroneous assertion that "massive cost savings were unachievable."  (Opp. at 28.)

Moreover, in the Restatement, Orbital ATK acknowledged that a portion of the losses associated with the Lake City Contract either were "evident" or "should have been evident" to *the Company* in 2012 or 2013.  (*See* Compl. ¶¶ 145-46, 183.)  Of course, the Restatement also stated that "negative information was suppressed, and concerns . . . about cost overruns were not escalated appropriately to higher-level Company management . . . ."  (Ex. 5 at 70.)  Particularly in light of this further disclosure, nothing in the Restatement itself demonstrates that the losses were "evident" *to the Individual Defendants*.[2]  Without further allegations showing that the losses were evident to the Individual Defendants themselves, Plaintiffs cannot use Orbital ATK's voluntary disclosure of an accounting mistake to create an inference of scienter.  *See Pipefitters Local No. 636 Defined Benefit Plan v. Tekelec*, 2013 WL 1192004, at *13 (E.D.N.C. Mar. 22, 2013) ("courts have rejected the 'circular logic' that because a company later disclosed adverse

---

[2] Plaintiffs fail to transform Pierce's explanation about why the Company ultimately did not achieve the necessary cost reductions into an admission that the cost reductions were always impossible.  (Opp. at 27.)  Pierce did *not* say that the Company's senior management had concluded it would be unable to achieve the required cost savings prior to its disclosure of the accounting error.  (Br. at 20.)  As for information about the degree of success of the cost-saving measures in the "many months prior to the class period" (Opp. at 14), Plaintiffs fail to allege any facts demonstrating that the Individual Defendants received that information, and the Audit Committee investigation determined that some or all of it was suppressed.  (*See infra* at 12-13.)

news, executives must have known about the adverse news before it was disclosed yet kept it quiet").[3]

Finally, Plaintiffs frivolously suggest that the Company's updates to the market as to the scope and impact of the restatement support an inference of scienter.  (Opp. at 16.)  In *MicroStrategy*, this Court found an inference of scienter where the Company "originally cited a different – if not an outright false and misleading – reason for its need to restate its financials."  115 F.Supp.2d at 641.  Here, in contrast, Orbital ATK consistently and accurately disclosed from the beginning that the basis for the restatement was that the loss position of the Lake City Contract should have been evident at an earlier time.  (Br. at 7-10.)

## B.   Plaintiffs Have Not Identified Any Relevant "Red Flags"

In their Opposition, Plaintiffs concede that "red flags" only contribute to an inference of scienter if they "would have revealed the errors *prior* to their inclusion in public statements." (Opp. at 13; *accord* Br. at 19.)  None of Plaintiffs' alleged "red flags" satisfy this requirement.

**The First Restatement.**  Plaintiffs contend that the Individual Defendants should have discovered the erroneous cost estimates for the Lake City Contract based on a prior restatement made by the Company in March 2016.  (Opp. at 15-16.)  Plaintiffs rely on superficial similarities between the two restatements (they both involved contracts using the percentage-of-completion accounting method), but ignore fundamental differences.  Specifically, as the Company disclosed, the prior restatement arose out of its failure to account for certain Orbital Sciences

---

[3] Plaintiffs cite *dicta* in *Carlucci v. Han*, 907 F. Supp. 2d 709 (E.D. Va. 2012) for the proposition that "a strong inference of scienter can be alleged where defendants 'had access to information suggesting his public statements were not accurate, or failed to check information that he had a duty to monitor.'"  (Opp. at 15 (quoting *Carlucci*, 907 F. Supp. 2d at 729).)  The Fourth Circuit, however, subsequently recognized that such allegations do *not* establish a strong inference of scienter.  *See Yates*, 744 F.3d at 890.  To plead scienter, Plaintiffs must allege facts creating a strong inference of knowledge or recklessness; supposed "access" to information does not suffice.  *Id.*

legacy contracts "based on the estimate of remaining effort on such contracts at the acquisition date," *i.e.*, the date the Company *acquired those contracts through the merger.*  (*See* Compl. ¶ 116.)  It would have been impossible for Orbital ATK to make the same error in accounting for the Lake City Contract, which was *not* acquired from Orbital Sciences through the merger.  In other words, nothing about the prior restatement would have caused the Individual Defendants to engage in a review of the Lake City Contract.  (Br. at 22-23.)

**Core Operations.**  Plaintiffs rely heavily on the supposed "importance" of the Lake City Contract and the Individual Defendants' "monitoring" of the contract.  (Opp. at 10-13.)  As a threshold matter, these allegations cannot create a strong inference of scienter without "additional detailed allegations establishing the defendants' actual exposure to the accounting problem."  *Yates*, 744 F.3d at 890.  No such allegations exist here.  In any event, the Complaint repeatedly overstates the significance of the Lake City Contract.

Plaintiffs contend that the Lake City Contract was one of Orbital ATK's "core operations."  (Opp. at 11-13.)  A "core operation" for purposes of a scienter analysis, however, constitutes "nearly all of a company's business."  *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 343-44 (S.D.N.Y. 2011) (rejecting allegation that business constituting 16% of sales was "core" business).[4]  A contract that accounted for approximately 10% of the Company's total sales – as the Lake City Contract allegedly did in 2014, 2015, and 2016 – obviously does not meet that definition and no inference of scienter can be drawn on this basis alone.  *Id.*[5]

---

[4] *See also Okla. Firefighters Pension & Ret. Sys. v. Ixia*, 2015 WL 1775221, at *30 (C.D. Cal. Apr. 14, 2015) (contracts that "could have accounted only for less than 20%" of the defendant's business are "insufficiently substantial to warrant a finding that software service and maintenance contracts were 'core'").

[5] Plaintiffs' other allegations about the importance of the Lake City Contract fare no better.  According to Plaintiffs, the Lake City Contract "was the Company's most sensitive contract" because, *inter alia*, it required the Company to maintain a security clearance.  (Opp. at 12; *see*

**Lower Profit Rate.**  In their Opposition, Plaintiffs assert that "Defendants use faulty logic in arguing that their statements that the Lake City Contract was operating 'at a lower profit rate' were sufficient to disclose the red flags to investors."  (Opp. at 16.)  But the only faulty logic here belongs to Plaintiffs.  In their Opening Brief, Defendants correctly established that, because they disclosed the lower profit rate to investors, *the lower profit rate itself* cannot constitute a hidden red flag that supports an inference of scienter.  (Br. at 21-22.)  Plaintiffs offer no argument that suggests otherwise, and their cases are inapposite.  *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 608-09 (4th Cir. 2015) (plaintiffs pointed to specific "FDA briefing document" with recommendation against approval of relevant drug, which defendants were aware of but never disclosed); *Masterson v. Commonwealth Bankshares, Inc.*, 2 F. Supp. 3d 824, 834 n.7 (E.D. Va. 2014) (defendant argued that claim was barred by affirmative defense of "good faith").[6]

### C.   Neither an SEC Investigation Nor Unrelated Resignations Can Contribute to an Inference of Scienter

Plaintiffs remaining allegations likewise cannot support any inference of scienter. Plaintiffs cite district court decisions from other circuits to show that the mere existence of an SEC investigation supports an inference of scienter (Opp. at 20-21), but disregard the Fourth Circuit's ruling that such assertions are "too speculative to add much, if anything, to an inference of scienter."  *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d, 618, 628 n.2 (4th Cir. 2008).

---

*also* Compl. ¶ 168.)  The Lake City Contract was hardly unique in this regard – the Company had numerous contracts with the U.S. Government, including contracts with several branches of the U.S. military and NASA.  (*See* Ex. 2 at 5, 35.)

[6] Plaintiffs also cite several other supposed "red flags" without any explanation of how they could have revealed the accounting error.  Nothing about "the Lake City Contract's aggressively bid price" or "the decision not to send the Lake City Contract to Vista," (Opp. at 14), created a red flag about the Company's *cost estimates* for the Contract.

Plaintiffs also rely on DeYoung's decision not to seek re-election to Orbital ATK's board (Opp. at 20), but ignore the nearly six-month gap between the announcement of his decision and the Restatement.  (Br. at 27.)  Plaintiffs' attempt to connect DeYoung's decision to the earlier restatement also is unavailing, because that restatement had nothing to do with the Lake City Contract.  (Br. at 27.)  For the same reason, the resignation of Hollis M. Thompson, Orbital ATK's Vice President of Financial Reporting in February 2016 (Opp. at 20) lends no support to an inference of scienter.  Hollis Thompson's resignation occurred six months *after* the announcement of the Restatement and the Company did not state that his resignation had anything to do with the accounting error (nor do Plaintiffs allege otherwise).[7]  (Compl. ¶ 212.); *City of Dearborn Heights v. Align Tech.*, 856 F.3d 605, 622 (9th Cir. 2017).  Finally, although Plaintiffs note that Orbital ATK fired several low-level employees *for concealing information from the Individual Defendants* (*see* Opp. at 20; *see also* Ex. 5 at 70), that clearly provides no support for an inference of scienter *as to the Individual Defendants themselves*.[8]

### D.    Defendants Had No Cognizable Motive to Commit Fraud

Plaintiffs also cannot support an inference of scienter by citing non-suspicious stock sales or generic financial motives common to all executives.  Although DeYoung and Thompson sold stock during the class period, Plaintiffs fail to show those sales were "unusual or suspicious."

---

[7] Indeed, *prior* to his resignation, the Company already had disclosed that "personnel responsible for the inappropriate behaviors … are no longer employed by the Company." (Compl. ¶ 211.)  *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 447 (S.D.N.Y. 2005) ("hard to see how the resignation of an executive who has not been named as a defendant in this action could create an inference of *scienter* with respect to the seven individuals who have been named").

[8] The cases Plaintiffs rely on do not suggest otherwise.  *Epstein*, 203 F. Supp. 3d at 671, 674-75 (resignation of three of the four *individual defendants*, plus the company's auditors); *W. Palm Beach Police Pension Fund*, 2015 WL 3755218, at *15, 17 (resignation of president and COO who was "in charge of implementing the relevant regulations" that formed basis of claim; court acknowledged that it was unusual situation and "[g]enerally, the resignation of key officers is insufficient to show scienter to commit the alleged fraud").

*Yates*, 744 F.3d at 890.  Plaintiffs concede that all of DeYoung's sales occurred immediately after he left his operational role as CEO of Alliant because of the merger.  (Opp. at 24.) Although DeYoung continued to serve as a director of Orbital ATK, stock sales are common once an executive leaves an operational role.  *Cf. Cozzarelli*, 549 F.3d at 628.  As to Thompson, Plaintiffs' attempt to infer scienter solely based on the *timing* of his sales (Opp. at 24-25) disregards the Fourth Circuit's mandate that both the "timing *and* amount" of the insider trading must be suspicious.  *Yates*, 744 F.3d at 890 (emphasis added).  Thompson's sale of less than 5% of his holdings was not suspicious as a matter of law.  (Br. at 25 (citing numerous decisions).)[9]

Plaintiffs' remaining motive allegations fail at every level.  Plaintiffs cite the bonuses received by the Individual Defendants, but make no attempt to connect those bonuses to the performance of the Lake City Contract.  (Opp. at 25-26.)  Indeed, there does not appear to be *any* connection between the Lake City Contract and either "Operations and Integration Milestones" or bonuses contingent on the closing of the merger.  *See In re Pretium Res. Inc. Sec. Litig.*, 2017 WL 2560005, at *12 (S.D.N.Y. June 13, 2017) (rejecting motive allegations because of "an insufficient link between the [alleged fraud] and Defendant Quartermain's bonus").  In addition, Plaintiffs' allegation that Thompson and Pierce wanted the merger to succeed amounts to nothing more than the inadequate assertion they were concerned about job security.  (Br. at 26.)

### E.       The More Compelling Inference Is that Defendants Acted Innocently

In examining whether Plaintiffs have met their scienter pleading burden, the Court must

---

[9] Moreover, Plaintiffs do not dispute that three out of the four Individual Defendants (Thompson, Pierce, and Larson) retained all or nearly all of their holdings throughout the class period.  (Br. at 25-26 & n.23.)   If Defendants knew they held overvalued stock, they would have sold more than "a minuscule fraction of their holdings" to avoid "reaping the same large losses" as other shareholders.  *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1427 (9th Cir. 1994) (quotations omitted); *accord In re E.Spire Commc'ns, Inc. Sec. Litig.*, 127 F. Supp. 2d 734, 743 (D. Md. 2001) (minuscule stock sales "can be construed as negating the inference that there was fraud").

review the facts in their entirety and "[i]f the inference that defendants acted innocently, or even

negligently, [is] more compelling than the inference that they acted with the requisite scienter,

the Complaint must be dismissed." *In re Computer Scis. Corp. Sec. Litig.*, 890 F. Supp. 2d 650,

661 (E.D. Va. 2012) (quotations omitted).  Any fair review of the facts properly before the Court

leads to the dismissal of Plaintiffs' securities fraud claims.  As set forth above, the supposed

indicia of scienter identified by Plaintiffs amounts to nothing more than: (a) Orbital ATK

reported a large financial restatement, and (b) the Individual Defendants were officers and/or

directors of the Company with the usual oversight responsibilities and financial incentives

inherent in those positions.  As the Fourth Circuit held in its *Duratek* decision, however, this type

of pleading does not, and cannot, satisfy the strong inference standard because Plaintiffs "fail to

point to any *evidence* that [the company's] management knew of or recklessly disregarded the

problematic accounting practices."  67 F. App'x. at 173 (emphasis added).

   In contrast to the lack of any indicia of scienter put forward by Plaintiffs, the competing

inference that Defendants acted innocently is cogent and compelling.  Estimating costs over the

life of a ten-year contract requires complicated projections involving not just the cost of raw

materials (as Plaintiffs repeatedly suggest), but also overhead and labor expense.  Lower-level

employees provided detailed cost information and estimates that were difficult for senior

management, who were not involved in the day-to-day operations at the Lake City plant, to

second guess.  Moreover, $400 million in cost savings related to the Lake City Contract *were*

achieved, belying Plaintiffs' contention that the Individual Defendants should have known that

"massive cost savings were unachievable."  Under these circumstances, it is not surprising that

the Audit Committee's months-long investigation concluded that the Individual Defendants did

not know about the accounting error related to the Lake City Contract until senior management

engaged in its own review of the issue and promptly disclosed the accounting error to the

Company's investors.  *See, e.g.*, *Yates*, 744 F.3d at 888 ("We also find it significant that it was

MuniMae's management – and not some outside entity – that ultimately disclosed that the

Company would have to consolidate the remaining LIHTC Funds in January 2007 (thus

conceding the Company's earlier error).").  Moreover, the Company regularly updated investors

about accounting issues both during the Class Period (as to issues unrelated to the Lake City

Contract) and after the Class Period (as to the scope and impact of the Lake City Contract error).

This conduct also tends to negate any inference of scienter.  *Id.* at 892.[10]

Finally, Plaintiffs' half-hearted attempts to undermine the impact of the investigation are

unavailing.  (Opp. at 29.)  The investigation found that the Company's senior management and

Board, which includes all of the Individual Defendants, did not receive the necessary information

about the Lake City Contract costs that would have allowed them to discover the accounting

error earlier.  (Ex. 5 at 70.)  Moreover, the Company's auditors agreed with the Company's

conclusion that there were material weaknesses related to the Small Caliber Systems Division,

which the auditors noted were "described . . . under Item 9A" in the 2015 Form 10-K/A.  (*See*

Ex. 5 at 55.)  In a passage of Item 9A that Defendants referred to in their opening brief (Br. at

---

[10]  Indeed, as the cases Plaintiffs themselves cite in support of their holistic analysis make clear, courts routinely require far more indicia of scienter before concluding that the PSLRA's heightened pleading standard has been met.  (*See* Opp. at 26-30 (citing *In re VeriFone,* 704 F.3d at 708-09 (individual defendants provided supply chain controller with inaccurate accounting adjustments to meet quarterly earnings targets); *In re Akorn,* 2017 WL 878559, at *12 (individual defendants (a) dismissed two auditing firms that concluded company's internal controls over financial reporting were deficient and (b) refused to remediate deficiencies); *Frank*, 646 F.3d at 961-62 (6th Cir. 2011) (individual defendants made optimistic statements about company's financial performance "while one of their key product lines was operating at fifty percent of earnings, multiple factories failed to meet their budgets, and the price of steel rose seventy-five to 120 percent" and company subsequently went bankrupt); *Tellabs Inc.*, 513 F.3d at 706 (company flooded customers with products "to create an illusion of demand").)

10), Item 9A clearly "describes" the material weaknesses in question as involving the

"suppression of information …."  (Orbital ATK 2015 Form 10-K/A, at 139-40 (Feb. 23, 2017)

https://www.sec.gov/Archives/edgar/data/866121/000086612117000005/oa-

12312015x10xkta.htm#s789C130447DB6F7AAB03A493B8C92708.)  The fact that the lower

level employees did not provide "falsified documents" (Opp. at 29) is irrelevant.  And while the

Individual Defendants do not argue that they have been exonerated by the investigation (*id.*), the

investigation clearly is a factor that "weighs heavily against scienter."  *In re BearingPoint, Inc.*

*Sec. Litig.*, 525 F. Supp. 2d 759, 771 (E.D. Va. 2007), *aff'd in part, rev'd in part on other*

*grounds*, 576 F.3d 172 (4th Cir. 2009).

### F.      Plaintiffs Fail to Adequately Plead Corporate Scienter

Apparently aware that they cannot adequately allege that Defendants possessed the

requisite scienter, Plaintiffs attempt to salvage their securities fraud claims by asserting that the

scienter of the lower-level employees fired after the Restatement can be imputed to the

Company.  (Opp. at 31-33.)  This argument directly contradicts the Court's carefully reasoned

decision in *Computer Sciences*.  In *Computer Sciences*, the Court recognized that in the Fourth

Circuit (and several other circuits), "in order for a corporation to be liable for securities fraud, 'at

least one corporate agent' must have 'acted with the requisite state of mind.'"  890 F. Supp. 2d at

664 (quoting *Matrix*, 576 F.3d at 189).  Consequently, "corporate liability for securities fraud

depends on at least one of its agents *making* a false or misleading statement with scienter."[11]  *Id.*

---

[11] Plaintiffs incorrectly assert that the discussion of corporate scienter in *Matrix* is inconsistent
with *Computer Sciences*.  (Opp. at 31-33.)  In *Matrix*, the Fourth Circuit agreed that if "General
Motors announced that it had sold one million SUVs in 2006, and the actual number was zero,
[t]here would be a strong inference of corporate scienter, since so dramatic an announcement
would have been approved by corporate officials sufficiently knowledgeable about the company
to know that the announcement was false."  576 F.3d at 190 (quotations omitted).  In other
words, under extreme circumstances (not present here), courts can *assume* that one of the

at 665 (emphasis added).  Indeed, "[a] contrary conclusion would be tantamount to the unacceptable proposition that a fraud, though ordinarily a deliberate act, could be the result of a series of acts none of which was both done with scienter and imputable to the company."  *Id.* (quotations and brackets omitted.)

Plaintiffs urge this Court to disregard its own decision in *Computer Sciences* because *one* court – the Sixth Circuit – has adopted a more expansive approach to corporate scienter.  (Opp. at 32-33.)  Not only is the Sixth Circuit's approach inconsistent with Fourth Circuit precedent and *Computer Sciences*, but, as this court recognized, it would lead to the "unacceptable proposition" that corporations could face liability under Rule 10b-5 *even though none of the agents responsible for the act were liable*.  The Sixth Circuit's rule must therefore be rejected. *Computer Scis.*, 890 F. Supp. 2d at 664-65; *accord* Restatement (Third) Of Agency § 5.03 (2006) ("a principal may not be subject to liability for fraud if one agent makes a statement, believing it to be true, while another agent knows facts that falsify the other agent's statement").

Even if the Sixth Circuit standard applied, which it does not, the Complaint contains no allegations that any of the terminated lower-level employees actually "furnished information" that went into the alleged false statements.  Moreover, Plaintiffs would then need to have adequately pled that at least one of these individuals acted with scienter, and there are no allegations to that effect in the Complaint either.

## III.   THE COMPLAINT DOES NOT ADEQUATELY PLEAD A SECTION 14(A) CLAIM.

Plaintiffs make a series of curious arguments in an effort to skirt the PSLRA's heightened state-of-mind pleading standard for Section 14(a) claims, which they apparently realize their Complaint does not satisfy.  *See* 15 U.S.C. § 78u-4 (plaintiff must "state with particularity facts

---

employees who made the misleading statements had the requisite scienter.  That does not mean the scienter of employees who did *not* make the statements can be imputed to the company.

giving rise to a strong inference that the defendant acted with *the required state of mind*" (emphasis added)). *First*, Plaintiffs suggest that the Fourth Circuit in its unpublished decision in *Hayes* ruled that a Section 14(a) claim has *no* state-of-mind element. (Opp. at 34-35.) But in *Sandberg v. Virginia Bankshares, Inc.*, the Fourth Circuit expressly reserved decision on the issue of whether the state-of-mind requirement for Section 14(a) is scienter – *i.e.*, the court concluded there was a state-of-mind requirement, but reserved judgment on the exact nature of that requirement. (Br. at 31.) Thus, Plaintiffs cannot be right that under existing Fourth Circuit law, there is no state-of-mind requirement at all. If Plaintiffs are suggesting that *Hayes* decided the issue left open in *Sandberg*, they are mistaken. *Hayes* is silent on the issue, beyond noting that the Supreme Court has not addressed it either. 78 F. App'x at 864 n.1. Whenever the Fourth Circuit chooses to address the issue deferred in *Sandberg*, it surely will not do so *sub silentio* in an unpublished decision.

Plaintiffs cite one out-of-circuit appellate decision (*Beck v. Dobrowski*) that expressly concluded that Section 14(a) has no state-of-mind requirement because negligence "is not a state of mind." 559 F.3d 680, 682 (7th Cir. 2009). But *Beck* conflicts with this Court's view of negligence.[12]  *See Coppage v. Mann*, 906 F. Supp. 1025, 1036 (E.D. Va. 1995) (stating that there is a "continuum of mind states" from "simple negligence" to "intent to harm") (Ellis J.); *see also*

---

[12] *Beck's* holding also is suspect because *Beck* explicitly disagreed with the Seventh Circuit's ruling in *Dasho* that Section 14(a) has a mental state requirement that is the same as Rule 10b-5's. *Beck*, 559 F.3d at 682; *Dasho v. Susquehanna Corp.*, 461 F.2d 11 29-30 & n.45 (7th Cir. 1972). At that time, the Seventh Circuit required only negligence for a Rule 10b-5 claim, so the court in *Dasho* also applied a negligence standard to Section 14(a). *Dasho*, 461 F.2d at 29-30 & n.45. But the Supreme Court in *Ernst* later overruled that narrow aspect of *Dasho*, holding that Rule 10b-5 requires scienter. 425 U.S. at 201. *Ernst* left intact *Dasho's* other rulings, *i.e.*, that Section 14(a) has a mental state requirement, and that it is the same as Rule 10b-5's. The court in *Beck* appears to have lacked authority to displace these rulings of a prior panel of the Seventh Circuit. *Brooks v. Walls*, 279 F.3d 518, 522 (7th Cir. 2002); 7th Cir. R. 40.

*Digital Vending Servs. Int'l, Inc. v. Univ. of Phoenix, Inc.*, 2013 WL 5533233, at \*5 (E.D. Va. Oct. 3, 2013) ("In the Fourth Circuit, a culpable *state of mind* . . . includes . . . gross *negligence*, or ordinary *negligence*." (emphasis added)). Other courts have likewise treated negligence as a "state-of-mind" (and therefore the PLSRA's pleading standard applies).[13]

*Second*, Plaintiffs make the fallback argument that even if Section 14(a) has a state-of-mind requirement, it is not scienter. But Plaintiffs do not even attempt to refute Defendants' showing that an examination, in accordance with *Ernst*, of Section 14(a)'s legislative history and the relevant statutory scheme establish that scienter is the correct standard. (Br. at 31-33.) Instead, Plaintiffs imply this Court should simply defer to the decisions of other courts, even though Plaintiffs' cited authority is not controlling, does not apply the required *Ernst* analysis, and suffers from other deficiencies. (Br. at 36 n.29.) For instance, under the Ninth Circuit's rule on pre-2007 unpublished opinions (9th Cir. R. 36-3) – which is more restrictive than the Fourth Circuit's analog (4th Cir. R. 32.1) – a litigant cannot rely on *Knollenberg* within the Ninth Circuit except in narrow circumstances not present here. So that decision would seem to merit little, if any, weight *outside* the Ninth Circuit.

In an event, given that the Supreme Court and Fourth Circuit have both expressly left the issue open – and in light of Sixth Circuit law (Br. at 33-36)[14] – Plaintiffs' bald claim that

---

[13] *See, e.g., Little Gem Life Scis., LLC v. Orphan Med., Inc.*, 537 F.3d 913, 916 (8th Cir. 2008); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000). Plaintiffs cite two cases (Opp. at 37), but the court in *Lane* concluded it did not need to reach the issue, and even noted the "apparent trend" in the case law was that negligence *is* a state of mind (581 F.Supp.2d at 1115-16), and the court in *Inland W. Retail Real Estate* likewise noted that the majority view is that negligence is a state of mind. 635 F.Supp. 2d at 791 n.2.

[14] *Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422 (6th Cir. 1980), *reh'g and reh'g en banc denied* (1980), *cert. denied sub nom Adams v. Peat, Marwick, Mitchell & Co.*, 449 U.S. 1067 (1980). Plaintiffs incorrectly suggest the Sixth Circuit has limited the scienter element to accountants. (Opp. at 35 n.13.) But the Sixth Circuit has stated, without qualification, that "[i]n this Circuit section 14(a) does in fact require proof of scienter to state a claim." (Br. at 35.)

"[c]ourts are nearly unanimous in their agreement that scienter is not an element of a [14(a)] claim" is overreaching.  (Opp. at 34 (emphasis added).)  It also is misguided for Plaintiffs to pluck a sentence from the Court's decision in *Borak* and suggest the Supreme Court thereby indicated a preference for negligence that this Court must follow.  (Opp. at 35.)   Again, the Supreme Court has expressly reserved the issue.  (Br. at 31.)

*Third*, Plaintiffs make the remarkable argument that they have, in fact, adequately alleged scienter – *i.e.*, that Defendants knowingly or recklessly engaged in acts and omissions that violated Section 14(a).  (Opp. at 37-39.)  But the Complaint alleges no such thing.  In fact, it pleads *the opposite*.  The Complaint specifies that the Section 14(a) claims "are based *solely* on negligence, *not on knowing or reckless conduct*."  (Compl. ¶ 240) (emphases added).   To the extent that Plaintiffs are attempting to add new and contradictory scienter allegations to the Complaint, that is obviously impermissible.  *Katz v. Odin, Feldman & Pittleman*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004) (Ellis, J.) (it is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss" (citations omitted)).  In any event, as shown *infra*, the Complaint does not even adequately plead negligence, so it certainly does not adequately plead scienter.

Finally, even assuming *arguendo* that negligence, and not scienter, were the required mental state for a Section 14(a) claim, Defendants' opening brief showed that the Complaint fails to satisfy the applicable negligence pleading standard, *i.e.*, the PSLRA's "strong inference" standard, which requires an inference of negligence that is "cogent and compelling" as compared to other explanations which may be inferred from the facts alleged.

**Thompson and Pierce**.  The Complaint does not adequately plead that Thompson and Pierce were negligent with regard to their opinion that the Merger was fair and in shareholders'

best interests, because (*inter alia*) the Complaint fails to establish that Thompson and Pierce did *not actually believe* their opinion.  (Br. at 36-38.)  On this issue, Plaintiffs' citation to *Omnicare* is unavailing. [15]  To the extent that Plaintiffs are asserting that the "omit[ted] material fact" at issue was that "the Lake City Contract had been bid hundreds of million below costs" (Opp. at 37), *Omnicare* requires in these circumstances that Plaintiffs plead knowledge of that omitted fact.  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1329-31 (2015).  Although Plaintiffs state they have "adequately alleged scienter" as to that fact and others (Opp. at 37), Plaintiffs' assertion is belied by their own Complaint, which expressly disclaims scienter with regard to the Section 14(a) claims.  (*See* Compl. ¶ 240.)

Plaintiffs do not satisfy their PSLRA pleading burden with respect to any of the *other* statements in the Joint Proxy because, based on the allegations in the Complaint, other facts properly considered on this motion, and the case law cited in Defendants' opening brief (Br. at 36-39), the inference that Thompson and Pierce acted *reasonably* is stronger (indeed, considerably stronger) than any inference that they may have acted negligently.[16]  Rather than address the inference of non-negligence that plainly exists, Plaintiffs put forward in their

---

[15] Plaintiffs also argue confusingly that Thompson's and Pierce's views on whether the merger was "fair" and in stockholders' "best interests" were not opinions because the determination of the merger exchange ratio was a "'determination' of value," not "merely an opinion." (Opp. at 36 (emphasis added).)  But a person's views on whether an evaluation is "fair" are plainly subjective.  *See*, *e.g*., *Fait v. Regions Fin. Corp*., 655 F.3d 105, 110 (2nd Cir. 2011).

[16] They include: (i) Plaintiffs' own allegations that it was "*after* the Merger" that "Orbital ATK had the data to see that production costs under the new Lake City Contract were exceeding revenues" (Compl. ¶ 6 (emphasis added); *see also* Compl. ¶¶ 173, 184); (2) the fact that Thompson and Pierce did perform due diligence, and were provided with audited Alliant financial statements, and (iii) the fact that the Merger Agreement contained a variety of key representations and warranties by Alliant regarding: (a) the truth and accuracy of Alliant's SEC filings, (b) Alliant's compliance with GAAP; and (c) the lack of any material weaknesses in Alliant's internal controls over financial reporting.  (Compl. ¶¶ 254–55, 259.)  Thompson and Pierce were entitled to rely on the financial statements, representations, and warranties, and it is reasonable to infer that they did, in fact, rely on them.  (Br. at 36-39.)

18

Opposition a number of meritless legal arguments.  For instance, Plaintiffs argue that *McKesson* is distinguishable here because it involved a different form of accounting fraud.  (Opp. at 38.)  But the relevant rulings in *McKesson* – *e.g.*, that a company's reliance on the audited financial statements of a merger partner negates an inference of negligence as to errors in those statements (Br. at 37) – are not dependent on the specific nature of the accounting fraud at issue.

In addition, although Plaintiffs do not dispute that Thompson and Pierce performed due diligence, Plaintiffs suggest their due diligence was faulty because they "fail[ed] to respond to the numerous red flags."  (Opp. at 38.)  However, the Complaint itself alleges that, despite any purported "red flags," it was "just before" the Merger that production under the Lake City Contract "ramped up," and, as a result, it was "*after* the Merger" that "Orbital ATK had the data to see that production costs under the new Lake City Contract were exceeding revenues." (Compl. ¶ 6 (emphasis added); *see also* Compl. ¶¶ 173, 184.)   Even once the accounting issue was identified, it was only after months of intensive work by the Audit Committee and its advisors that conclusions were reached about the Contract's loss position *and* which financial periods were affected.  (Br. at 7-10.)  These facts – viewed holistically with the other allegations and facts described above – simply do not support a "strong inference" that prior to the Merger, Thompson and Pierce negligently made false statements in the Joint Proxy.

Tellingly, Plaintiffs do not cite a single case in which a plaintiff was deemed to have pled a strong inference of negligence on the basis of an alleged failure to perform adequate due diligence in *any* circumstances relating to a Merger, let alone the ones present here.  The one case that Plaintiffs do cite – *Inland W. Retail* (Opp. at 38) – is not only a non-merger case, but also holds that Section 14(a) has *no state of mind element at all*.  635 F. Supp. at 791.  That the only case that Plaintiffs cite in support of their negligence theory is a case that does not require

that a negligence state-of-mind be pled – much less require a "strong inference" of negligence – speaks volumes about the deficiencies of Plaintiffs' allegations.

**Mark DeYoung.**  Defendants established that there were three additional independent bases on which Plaintiffs' 14(a) claim against DeYoung should be dismissed.  (Br. at 38-39.) Nothing in Plaintiffs' Opposition undermines any one, much less all three of those bases.[17]  It also is unavailing for Plaintiffs to suggest that they have adequately pled their Section 14(a) claim because at the time of the Merger, DeYoung – by virtue of his prior involvement with the Lake City Contract – supposedly knew or must have known that the Joint Proxy was false or misleading.  As shown above, the Complaint specifically states that the "Joint Proxy Claims are based *solely* on negligence, and *not on knowing or reckless conduct*."  (Compl. ¶ 240 (emphases added).)  Plaintiffs cannot defeat dismissal of their Section 14(a) claim against DeYoung by contradicting their own Complaint.

Dated:  June 19, 2017                                  Respectfully submitted,

**KIRKLAND & ELLIS LLP**                 **COOLEY LLP**


<u>*/s/ Michael S. Petrino*</u>                      <u>*/s/ Lyle Roberts*</u>
Michael A. Petrino (Va. Bar No. 77187)      Lyle Roberts (Va. Bar No. 45808)
Andrew B. Clubok (*pro hac vice*)            George Anhang (*pro hac vice*)
Kirkland & Ellis LLP                        1299 Pennsylvania Avenue, N.W.
655 Fifteenth St., NW                       Suite 700
Washington, DC 20005                        Washington, DC  20004
Telephone: (202) 879-5000                   Telephone: (202) 842-7800
Facsimile: (202) 879-5200                   Facsimile: (202) 842-7899

---

[17] With regard to Defendants' showing that DeYoung did not solicit proxies from Orbital Sciences' shareholders (Br. at 38), Plaintiffs baldly state, "[t]he law is *clear* that, since it was a joint proxy, he is liable."  (Opp. at 39.)  Rather than citing appellate case law establishing that the law actually is "clear" in the Fourth Circuit (or any other circuit) on this point, Plaintiffs instead cite just two out-of-circuit district court cases.  (Opp. at 39.) (emphasis added).)  Defendants already explicitly addressed the first case (Br. at 38 n.30) and that discussion is equally relevant to the second case.

Michael.Petrino@Kirkland.com

Joshua Z. Rabinovitz (*pro hac vice*)
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654

Shireen A. Barday (*pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

*Counsel for Defendant Mark W. DeYoung*

lroberts@cooley.com
ganhang@cooley.com

*Counsel for Orbital ATK, Inc., David W.
Thompson, Garrett E. Pierce and Blake E.
Larson*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of June, 2017, I will electronically file the foregoing

with the Clerk of the Court using the CM/ECF system, which will then send a notification of

such filing (NEF) to counsel of record.

/s/ Lyle Roberts
Lyle Roberts (Va. Bar No. 45808)
COOLEY LLP
1299 Pennsylvania Avenue, NW,
Suite 700
Washington, DC  20004
Telephone:  (202) 842-7800
Facsimile:  (202) 842-7899
lroberts@cooley.com

*Counsel for Orbital ATK, Inc., David W.*
*Thompson, Garrett E. Pierce and Blake E.*
*Larson*