UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| STEVEN KNURR, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ORBITAL ATK, INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)  Civil Action No. 1:16-cv-01031-TSE-MSN<br>)<br>)<br>)<br>)<br>)<br>) |

**LEAD AND NAMED PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION
OF DOCUMENTS FROM DEFENDANTS**

Pursuant to Rules 26, 34, and 37(a)(1)(B) of the Federal Rules of Civil Procedure, and Local Civil Rule 37(A), Lead Plaintiff Construction Laborers Pension Trust of Greater St. Louis and Named Plaintiff Wayne County Employees' Retirement System (together, "Plaintiffs") bring this Motion to Compel Defendants Orbital ATK, Inc. ("Orbital ATK"), David W. Thompson, Garrett E. Pierce, Blake E. Larson, and Hollis M. Thompson (collectively, "Defendants") to produce relevant, responsive documents in response to Plaintiffs' First Requests for Production of Documents ("RFPs") after August 1, 2016.

**I.   INTRODUCTION**

Defendants objected to producing responsive documents after August 1, 2016, an arbitrary cutoff that is *before* May 28, 2015 and August 9, 2016, inclusive (the "Class Period"), *before* Orbital ATK announced the need for a restatement which led to the stock drop that is subject of this lawsuit, *before* Orbital ATK fired certain wrongdoers who contributed to the restatement, *before* Orbital ATK issued its restatement, and *before* certain defendants held a meeting with investors to explain the reasons for the restatement.  Courts have routinely held that documents created after the Class

Period are discoverable. *See, e.g.*, *In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 272 (3d Cir. 2005) ("both post-class-period data and pre-class data could be used to 'confirm what a defendant should have known during the class period,' noting that 'any information that sheds light on whether class period statements were false or materially misleading is relevant.'") (quoting *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001)).

The events in this case relate to Orbital ATK (and its predecessor) entering into a contract to produce ammunition for the U.S. Army in 2012 (the "Lake City Contract") and failing to disclose that the Lake City Contract would result in a nearly $400 million loss. Orbital ATK disclosed the need for a restatement in August 2016, restated in February 2017, and provided further details to investors regarding the causes of the restatement in June 2017. Orbital ATK admitted the losses should have been reported in its fiscal years 2013 and 2014.

Plaintiffs' RFPs define the "Relevant Time Period" as February 1, 2012 through the present date. Defendants take no issue with the early part of the time period, but argue that they should not have to produce responsive documents created after August 1, 2016.[1] Through an extensive meet and confer process, Defendants agreed to produce documents after that date, but only for a handful of narrow requests. The responsive documents created after August 1, 2016 that they seek to withhold from the vast majority of requests, however, are undeniably among the most relevant to the claims in this case. Having agreed that the requests seek relevant information, Defendants have no

---

[1] Defendants' General Objection Number 4 as to the relevant time period is set forth in Defendants' Objections to Plaintiffs' First Request for Production of Documents, served March 21, 2018. (Ex. C). Defendants' actual production of documents contains virtually no documents dating after August 1, 2016. After conferring with counsel, attempts have been made to address Defendants' unilateral time period restriction, but Defendants have improperly attempted to limit their production to a narrow set of documents carefully crafted to avoid production of the most relevant documents as set forth herein.

credible basis for arguing that such documents are relevant only if they were created on August 1, 2016, but not if created, for example, on August 2, 2016.

Defendants' primary argument is that counsel was hired to assist in an internal investigation relating to the restatement on or about August 1, 2016 and it would be hard for them to log the purportedly privileged documents. Setting aside whether any such documents are privileged, privilege logs are routinely produced in all cases and the need to create a log is hardly a basis to avoid producing non-privileged relevant documents. Making matters worse, Defendants have relied upon events that post-date August 1, 2016 in defending the claims in this case, while simultaneously withholding any documents that might test or refute those defenses. For example, Defendants argued in their motions to dismiss that an internal investigation exonerated the individual defendants of wrongdoing such that Plaintiffs could not sufficiently allege scienter. (*See, e.g.*, ECF No. 68 at 15-16; ECF No. 82 at 11). In addition, they have provided an interrogatory response claiming, in part, that gunpowder price increases in October 2016 caused the restatement. (*See* Ex. A at 10).

Rather than providing a legitimate basis for withholding, Defendants appear to be seeking a tactical advantage in delaying production of the documents to minimize Plaintiffs' ability to use them with experts and in depositions given the July 9, 2018 discovery cutoff. Thus, the volume of documents that Plaintiffs will now receive late in the discovery period is multiplying, leaving Plaintiffs with less time to review the documents than Defendants are taking to review – their own – documents.

Thus, since the documents are clearly discoverable and since Defendants seek to use documents and information created after August 1, 2016 in defending the claims in this case, Defendants should be compelled to produce documents created after August 1, 2016.

## II. PROCEDURAL HISTORY

Orbital ATK was formed through the February 9, 2015 merger ("Merger") of Orbital Sciences Corporation ("Orbital Sciences") and Alliant Techsystems Inc. ("Alliant"). This is a federal securities class action brought against Defendants on behalf of all persons who purchased shares of Orbital ATK common stock during the Class Period, or exchanged shares of Orbital Sciences common stock for shares of Orbital ATK common stock in the Merger. Plaintiffs allege that Defendants made a series of false and misleading statements in various SEC filings, conference calls, and investor meetings with respect to Merger synergies, the performance of the Lake City Contract, Orbital ATK's financial results, and Orbital ATK's internal controls.

Generally, Plaintiffs allege that Orbital ATK failed to disclose that Orbital ATK was losing nearly $400 million on the Lake City Contract. By failing to disclose these massive losses in the proxy statement prior to the Merger, shareholders who tendered shares of Orbital Sciences suffered losses. In addition, by failing to disclose the massive losses during the Class Period, shareholders who acquired shares of Orbital ATK after the Merger also suffered losses through the artificial inflation of Orbital ATK's stock price. When Orbital ATK belatedly admitted the losses were "evident" and restated its financial results to reflect the Lake City Contract loss, its stock price dropped by approximately $18 per share. Plaintiffs assert claims for securities fraud and misstatements in merger proxy solicitation.

Lead Plaintiff's complaint was filed on April 24, 2017. (ECF No. 53). Defendants moved to dismiss the complaint (ECF No. 67), which was granted in part and denied in part in two opinions. (ECF Nos. 75-76). The §10(b) claim and related §20(a) claims were dismissed with leave to amend. (ECF No. 75). The Court denied the motion to dismiss the claims under §§ 14(a) and 20(a) with respect to certain statements in the proxy statement. (ECF No. 76). On October 10, 2017, Lead Plaintiff filed an amended complaint, asserting claims under §§ 10(b), 14(a), and 20(a). (ECF No.

78). Defendants again moved to dismiss the amended complaint (ECF No. 81), which was granted in part, and denied in part. ( ECF Nos. 99 and 100). Thus, claims under §§ 10(b), 14(a), and 20(a) are presently pending. (*Id.*)

Pursuant to the Private Securities Litigation Reform Act of 1995, all discovery was stayed in this action while the motions to dismiss were pending. After denying the final motion to dismiss, the Court entered an Order on March 2, 2018, directing, *inter alia*, that discovery may begin immediately and must be completed on or before June 8, 2018. (ECF No. 101). The parties' joint motion to extend the discovery period by three months was denied in part, and the schedule was extended one month. (ECF No. 121).

On March 6, 2018, right after discovery opened, Plaintiffs served the RFPs on Defendants. (*See* Ex. B). Defendants served objections (*see* Ex. C) but have yet to serve responses. The parties have engaged in an extensive meet and confer process to resolve the objections, which discussions are ongoing, but have reached an impasse as to Defendants' time period objection.

### III. RELEVANT FACTUAL BACKGROUND

#### A. The Lake City Contract and the Merger

In April 2000, Alliant entered into a contract to operate the Lake City Army Ammunition Plant ("Lake City") and manufacture small caliber ammunition (*i.e.*, bullets) for the U.S. military. Under this contract, its largest contract, Alliant manufactured billions of rounds of small caliber ammunition. As its contracts to operate Lake City were concluding in 2012, Alliant submitted a hotly contested and "aggressive" bid to operate Lake City for an additional seven-year term, with a three-year extension option. Unknown to the public, the bid was priced hundreds of millions of dollars below historical costs of production. As a result of the low-ball bid, Alliant won the Lake City Contract, under which production was to begin in October 2013. The Lake City Contract was purported to be a major win, but, in reality, it would result in a nearly $400 million loss. Despite

being "evident" well before the Merger, the Lake City loss and other material information were not disclosed in Merger documents, or in post-Merger conference calls, releases, or SEC filings. Thus, Orbital Sciences shareholders were induced to vote in favor of the Merger and tender their stock for inadequate consideration and Orbital ATK shareholders who purchased after the Merger paid artificially inflated prices. Unbeknownst to these shareholders, Orbital ATK was not as profitable as it appeared, and the Lake City Contract, rather than a major victory, was an anchor on the Company's profitability.

### B. Orbital ATK Discloses the Lake City Contract Loss

On August 10, 2016, Orbital ATK announced that it would have to restate its financial statements to reflect that it would lose hundreds of millions of dollars as a result of the Lake City Contract. More specifically, Orbital ATK announced that: (i) it was not able to file its quarterly report for second quarter 2016 on time; (ii) all the financial statements it issued after the Merger should no longer be relied upon; (iii) it would be restating all of those financial statements due to material misstatements contained therein relating to its Lake City Contract; and (iv) contrary to prior statements that internal controls were operating effectively, in fact, Orbital ATK's internal controls over financial reporting were not effective and suffered from material weaknesses. Orbital ATK reported that the loss would "reduce previously reported pre-tax operating income by approximately $400 million to $450 million, after-tax net income by approximately $250 million to $280 million, and the applicable balance sheet accounts including retained earnings by approximately $250 million to $280 million." Orbital further stated that "a forward loss provision should have been recorded for the Contract in fiscal 2015, which was the first year of large-scale production under the Contract."

On November 3, 2016, Orbital ATK announced that its quarterly report for the second quarter 2016 would be further delayed, that it would not be releasing its quarterly report for the third quarter of 2016, and that it had still not completed the restatement. Notably, contrary to its August

6

2016 statement that the loss should have been reported in 2015, Orbital ATK said during a November 8, 2015 conference call that the majority of the forward loss was evident at the inception of the Lake City Contract in fiscal 2013.

### C. The Restatement

On February 24, 2017, Orbital ATK finally restated its financial statements and filed its Amended Form 10-K for the nine-month transition period ending December 31, 2015 ("Amended 2015 Form 10-KT"). In the Amended 2015 Form 10-KT, Orbital ATK restated its prior financial results. It disclosed that the Audit Committee determined that those previously issued financial statements, as well as the last three quarters of 2013, all quarters in fiscal 2014, and the first quarter financial statements for 2016 "should no longer be relied upon as a result of misstatements." The Amended 2015 Form 10-KT said that the restatement was primarily related to the Lake City Contract wherein "misstatements in the estimation of contract costs at completion caused a forward loss provision to not be timely identified and recorded in prior periods." The Amended 2015 Form 10-KT stated that the Lake City Contract would result in a $373.5 million loss, all of which was "evident" before the Merger and the start of the Class Period. The company admitted that there had been "material weaknesses" in its "internal controls" which contributed to these misstatements.

### D. The Internal Investigation and SEC Investigation

As a result of the critical errors in its financial reporting, Orbital ATK's Audit Committee initiated an internal investigation. As part of this investigation, Orbital ATK revealed that it had fired or disciplined senior employees who engaged in wrongdoing that contributed to the issuance of the false financial statements. According to the Amended 2015 Form 10-KT, based on the internal investigation initiated by the Audit Committee, it was determined that "personnel at the Small

7

Caliber Systems Division[2] and, in some cases, Defense Systems Group, acted inappropriately," and its accounting improprieties were the product of, among other things, "a bias toward maintaining a targeted profit rate," "inappropriate use of management reserves to maintain the targeted profit rate," and failures to "follow up and inquire further into indicators that cost overruns were occurring." Moreover, as to "Small Caliber Systems Division management," the Amended 2015 Form 10-KT noted that they engaged in the inappropriate conduct "due to pressure to achieve cost savings and maintain a targeted profit rate." Orbital ATK's Amended 2015 Form 10-KT also acknowledged that it was the subject of an investigation by the SEC.

### E. Investor Presentation and Acquisition by Northrop Grumman

On June 30, 2017, Orbital ATK filed with the SEC an investor presentation providing an update on the restatement. In this presentation, Orbital ATK discussed reasons for the restatement and disclosed that it had: (i) strengthened financial and accounting practices; (ii) upgraded experience and professionalism of personnel in its finance organization; (iii) expanded and intensified training programs for personnel on controls and procedures; (iv) changed its auditors from PwC to Deloitte; and (v) confirmed it had terminated responsible personnel. In addition, Orbital ATK announced it was being acquired by Northrop Grumman Corporation ("Northrop Grumman"), which undoubtedly engaged in due diligence relating to the restatement and Lake City Contract issues.

## IV. ARGUMENT

### A. Legal Standard

As the Fourth Circuit has recognized, "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy*

---

[2] The Lake City Contract was reported in the Small Caliber Systems Division, which is within Orbital ATK's Defense Systems Group.

*Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003); *see also Turnage v. Clarity Servs.*, No. 3:14cv760 (HEH-RCY), 2015 U.S. Dist. LEXIS 106553, at *2-3 (E.D. Va. July 22, 2015) ("[U]nless otherwise limited by court order, . . . [p]arties may obtain discovery regarding *any* nonprivileged matter that *is relevant* to any party's claim or defense. . . . In short, discovery is broad in scope and freely permitted." (Emphasis in original)).[3] Rule 26(b)(1) of the Federal Rules of Civil Procedure allows parties to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" while "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Relevancy means only "that the fact must be germane to a claim or defense alleged in the pleading for information concerning it to be a proper subject of discovery," and "discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on claims and defenses of the parties." 6 James Wm. Moore, *Moore's Federal Practice – Civil* §26.42[1] (2015). Although the amendments to Rule 26 were intended to "restor[e] proportionality" as a consideration for the parties and the Court in shaping discovery, "the change does not place on the party seeking discovery the burden of addressing all proportionality considerations." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment ("Nor is the change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional."). Rather, because "[a] party claiming undue burden or expense ordinarily has far better information – perhaps the only information – with respect to that part of the

---

[3] Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

9

determination," the burden remains on the responding party to show that the burdens imposed by a particular discovery request are not proportional to the needs of the case. *Id.*

### B.      Documents that Post-Date August 1, 2016 Are Relevant to Plaintiffs' Claims and Proportional to the Needs of the Case

Defendants have presented no case to Plaintiffs that has cut off discovery at the end of the Class Period, much less before the end of the class period. Rather, courts routinely hold documents dated after the Class Period are relevant and, among other things, may provide insight into the performance of a company during the class period, insight into defendants' state of mind, or reveal efforts to cover up fraud or avoid detection. *See, e.g.*, *In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922 DSF, 2012 U.S. Dist. LEXIS 124438, at *19 (C.D. Cal. Mar. 12, 2012) ("It is also beyond dispute that discovery is not limited to the class period."); *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 970 (N.D. Cal. 2005) ("The proposed class period dates function only to define the plaintiff class, not to restrict the universe of relevant or actionable facts in this case."); *In re Control Data Corp. Sec. Litig.*, No. 3-85-1341, 1987 U.S. Dist. LEXIS 16829, at *7-8 (D. Minn. Dec. 10, 1987) ("There are numerous instances in securities fraud litigation where post-offering statement, documents, or conduct have been treated as admissible evidence on the issue of scienter, intent, and knowledge. Likewise, pre-offering statements, conduct, and documents have been found relevant to these issues."), *aff'd*, 1988 U.S. Dist. LEXIS 18603 (D. Minn. Feb. 22, 1988); *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 237 (S.D.N.Y. 2006) (holding that a statement made 13 months after the close of the class period was relevant to show "what Defendants should have known during the Class Period").

In this case, given the numerous critical events taking place after August 1, 2016, the documents are clearly relevant. Orbital ATK did not even announce the need for a restatement until nine days after Defendants' artificial cutoff, on August 10, 2016. In defending the claims that they

10

knew or recklessly disregarded the losses, Defendants have suggested, among other things, that a gunpowder increase in October 2016 contributed to the restatement. While the argument seems to be an uphill battle for Defendants as it will be hard to explain how an event in October 2016 could have masked losses that were admitted to be "evident" in fiscal 2013 and 2014, Plaintiffs are still entitled to discovery on the defense.

Next, information regarding Defendants' disclosures in November 2016, which conflict in part with their disclosures in August 2016, is also discoverable. Moreover, the termination of employees in January 2017 that committed wrongdoing, the restatement in February 2017, and the related explanations for the restatement from February to June 2017 are clearly relevant. That an internal investigation was ongoing during this period and Defendants replaced their auditors are also highly relevant events. In the 2017 restatement, Orbital ATK disclosed that it had initiated an internal investigation into its previously issued financial statements and the material weaknesses in its internal controls. Documents regarding this investigation will postdate Defendants' cut-off date and are relevant to, among other things, the cause for the restatement and Defendants and other employees' state of mind at the time of the alleged false statements.

Significantly, Defendants intend to use the internal investigation like a sword and shield, as shown in their motions to dismiss, and undoubtedly will continue to argue that the Company's internal investigation found higher level employees within the Small Caliber Systems Division and Defense Systems Group were to blame, but the Defendants were not directly involved in any misconduct, acted in good faith, and did not commit any intentional wrongdoing. (*See, e.g.*, ECF No. 68 at 15-16; ECF No. 82 at 11; ECF No. 115 at 77). Defendants cannot use these findings affirmatively in defending the case, while simultaneously seeking to withhold information to undermine their defense such as information regarding the limited scope of the investigation,

11

Ddefendants' role in supervising the investigation and participating in its publicly stated findings, and the factual basis for those publicly stated conclusions. *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 230 F.R.D. 433, 437 (D. Md. 2005) (holding where a defendant "offensively has disclosed information pertaining to its internal investigation in order to improve its position with investors, financial institutions, and the regulatory agencies, it also implicitly has waived its right to assert work product privilege" to the documents supporting such information); *Harding v. Dana Transp., Inc.*, 914 F. Supp. 1084, 1092 (D.N.J. 1996) (holding that defendants cannot "offer[] only a superficial glance at certain information" concerning the findings of an internal investigation while "attempting to maintain secrecy of the remainder").

Finally, the 2017 announcement of the acquisition of Orbital ATK by Northrop Grumman certainly involved due diligence into Orbital ATK's previous financial misstatement and issues with its internal controls. Documents produced to Northrop Grumman related at least to the restatement and the Lake City Contract are relevant to Plaintiffs' claims. Each of these events, and the documents relating to these events, are relevant to the alleged misstatements in the Amended Complaint and to Defendants' state of mind, issues that are central to this case.

In the circumstances of this case in particular, Defendants cannot credibly suggest that all of the events and documents created after August 1, 2016 are irrelevant or that discovery after August 1, 2016 is not even reasonably calculated to lead to discoverable information. *See also Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 249 n.13 (3d Cir. 2009) ( "both post-class-period data and pre-class data could be used to confirm what a defendant should have known during the class period because any information that sheds light on whether class period statements were false or materially misleading is relevant."); *King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 7 (D.D.C. 1987) ("documents

which bear a date after the filing of a complaint may relate to events occurring prior to the filing of the complaint bearing on the central issues in this case.").

For all these reasons, Defendants' objection to producing documents after August 1, 2016 should be overruled, and they should be compelled to produce all such documents responsive to Plaintiffs' requests.

### C. Defendants' Need to Produce a Longer Privilege Log Is Not a Basis to Withhold Relevant Documents

As the objecting party, Defendants bear the burden of demonstrating why this discovery should not be allowed. *Humanscale Corp. v. CompX Int'l, Inc.*, No. 3:09-CV-86, 2009 WL 5091648, at *2 (E.D. Va. Dec. 24, 2009) (granting motion to compel over the objecting party's objection); *Castle v. Jallah*, 142 F.R.D. 618, 620 (E.D. Va. 1992) (holding plaintiff was entitled to the requested documents as the objecting party had failed to meet its burden to support its privilege objection). To date, Defendants have not provided the expected size of a production of responsive materials after August 1, 2016 or any data, statistics, or information supporting that purported burden. To the extent Defendants' concern is privilege, the Federal Rules of Civil Procedure contemplate the production of privilege logs, which itself makes clear that the need to create a log is not a sufficient burden to justify withholding non-privileged, relevant documents. *See* Fed. R. Civ. P. 26(b)(5)(B). Rather, redactions, privilege logs, and similar efforts are commonplace and not out of proportion to the discovery needs of a case. *See, e.g.*, *Brown Bear v. Cuna Mut. Grp.*, 266 F.R.D. 310, 321 (D.S.D. 2009) (compelling production of documents over undue burden objection reasoning that non-movant "does not cite and the court is not aware of any binding authority that concludes that a review of numerous files in order to redact insureds' personal information and segregate privileged information necessarily makes producing such documents an undue burden."). Moreover, if the privilege logs were somehow more burdensome in this case than any other,

Defendants could seek narrow relief relating to the logs, rather than arbitrarily withhold non-privileged documents after August 1, 2016.

Rather than a legitimate concern for burden, Defendants appear to be seeking to gain a strategic advantage by withholding highly relevant information that might undermine several of their defenses regarding gunpowder price increases and self-serving Company investigation findings determined, at least in part, by the very individual and corporate defendants in this case. Notably, the Company findings were not released until well after this securities case was filed, which itself calls into question its purported objectivity. Apart from the investigation, the very restatement itself, the termination of wrongdoers, and the disclosure of additional information regarding the amount and reasons for the restatement all occurred after August 1, 2016.

Plaintiffs would be severely prejudiced if Defendants were able to use documents and events post-dating August 1, 2016 in defending the case while depriving Plaintiffs of access to documents that refute, undermine, or assist in cross-examining witnesses at trial regarding such claims. Moreover, Plaintiffs would be deprived of documents that will be highly favorable to proving Plaintiffs' claims as Judge Ellis has held that the scienter of the very individuals fired in January 2017 may be attributed to the corporation. (*See* ECF No. 99 at 26-27). Indeed, in denying Defendants' motion to dismiss, Judge Ellis expressly relied on and quoted from Orbital ATK's Amended 2015 10-KT, filed in February 2017:

> The AC alleges, and Orbital ATK's 2015 Amended Form 10-KT confirms, that an internal investigation by the Audit Committee revealed that "personnel at the Small Caliber Systems Division and, in some cases, Defense Systems Group, acted inappropriately[.]" AC ¶ 210. In particular, the Small Caliber Systems Division had "a bias toward maintaining a targeted profit rate," which led to "inappropriate use of management reserves to maintain the targeted profit rate," and failures to "follow up and inquire further into indicators that cost overruns were occurring." *Id.* Moreover, the Amended Form 10-KT discloses that the Small Caliber Systems Division management actively "suppress[ed] information . . . related to cost overruns and the override of certain controls due to pressure to achieve cost savings and maintained a

14

targeted profit rate." *Id*. 1190. The AC thus specifically alleges that lower-level employees in the Small Caliber Systems Division acted with the requisite fraudulent intent when they furnished false information on Lake City Contract cost overruns and profit rates to corporate officers for inclusion in SEC filings and other public reports.

*Id.*

Defendants are now seeking to withhold information regarding the basis for those terminations and the internal findings of the very wrongdoing that they claim caused the restatements. At a minimum, Plaintiffs are already prejudiced by the delay in receiving such critical information which provides less time to prepare for and effectively use such information in depositions.

## V. CONCLUSION

For the reasons set forth above, the Defendants should be compelled to produce documents dating after August 1, 2016.

Dated: April 13, 2018

*/s/ Craig C. Reilly*
Craig C. Reilly, Esq. (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-5355
EMAIL craig.reilly@ccreillylaw.com
*Liaison Counsel for Lead Plaintiff*

*Lead Counsel for Lead Plaintiff:*

ROBBINS GELLER RUDMAN
      & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
      & DOWD LLP
JAMES E. BARZ
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 312/674-4674
312/674-4676 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2018, I filed the foregoing pleading or paper through the Court's CM/ECF system, which sent a notice of electronic filing to all registered users:

    */s/ Craig C. Reilly*
    Craig C. Reilly, Esq.
    VSB # 20942
    111 Oronoco Street
    Alexandria, Virginia 22314
    TEL (703) 549-5354
    FAX (703) 549-5355
    EMAIL craig.reilly@ccreillylaw.com
    *Liaison Counsel for Lead Plaintiff*