UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| STEVEN KNURR, Individually and on Behalf of All Others Similarly Situated, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ORBITAL ATK, INC., *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 1:16-cv-01031-TSE-MSN<br><br><u>CLASS ACTION</u> |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL
<u>PRODUCTION OF DOCUMENTS FROM DEFENDANTS</u>**

In opposing the motion to compel, Defendants ignore the numerous cases cited by Plaintiffs holding that post-class period documents are both relevant and discoverable. *See* ECF No. 133 at 2, 10. Instead, Defendants rely upon unsupported and meritless reasons to evade this well-established law in order to avoid producing some of the most critical evidence that will help Plaintiffs prove their claims and disprove Defendants' asserted defenses. Since Defendants have failed to support their time period objection, the motion to compel should be granted.

**I.    Defendants' Arbitrary Cutoff of August 1, 2016, is Contrary to Both Well-
Established Law in Securities Cases and Prior Rulings in this Case**

In their opening brief, Plaintiffs noted that Defendants had not provided in the meet and confer process any case law in support of their request to cutoff discovery before the end of the Class Period. *Id.* at 10. In their opposition brief, Defendants still have not identified a single securities fraud class action that supports their position because, as the cases cited by Plaintiffs make clear, it is

routine for defendants in these cases to produce documents, including emails, well beyond the end of the Class Period. *See id.* at 2, 10, 12-13.

Defendants ignore, rather than attempt to distinguish, the abundance of cases holding that documents post-dating the Class period are relevant and discoverable. Defendants also ignore, and do not respond to, the Fourth Circuit's clear direction that "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003); *see also Turnage v. Clarity Servs.*, No. 3:14CV760 (HEH-RCY), 2015 U.S. Dist. LEXIS 106553, at *2-3 (E.D. Va. July 22, 2015) ("[U]nless otherwise limited by court order, . . . [p]arties may obtain discovery regarding *any* nonprivileged matter that is *relevant* to any party's claim or defense.") (Emphasis in original)[1]. Rather, Defendants rely upon cases from outside the Fourth Circuit that involve truck accidents, lower stakes and other clearly distinguishable circumstances, all of which speak volumes to the lack of merit of their objection.[2]

---

[1] Internal citation and quotations are omitted and emphasis is added, unless otherwise noted.

[2] The cases relied on by Defendants demonstrate the weakness of their legal arguments as none of these cases involved a securities class action, an arbitrary time period cutoff for all requests, or the stakes involved in this case, and each is readily distinguishable. *See Rembrandt Diagnostics, LP v. Innovacon, Inc*., No. 3:16-cv-0698 CAB (NLS), 2017 U.S. Dist. LEXIS 164015, at *18 (S.D. Cal. Oct. 3, 2017) (denying motion to compel in patent infringement action where request would have required the review of over 1 million emails and court was persuaded search was not likely to yield responsive information); *Frieri v. Sysco Corp*., No. 3:16-cv-01432-JLS-NLS, 2017 U.S. Dist. LEXIS 124425, at *24 (S.D. Cal. Aug. 4, 2017) (involving objections to individual requests seeking "all documents," not a time period objection); *Coleman v. Reed*, No. CIV-15-1014-M, 2016 U.S. Dist. LEXIS 118430, at *7-8 (W.D. Okla. Aug. 22, 2016) (modifying time period for production of cell phone records pursuant to third-party subpoena in case involving automobile accident to one hour before and during accident where only relevant issue was whether driver was distracted at time of accident); *Moody v. Turner Corp*., No. 1:07-cv-692, 2010 WL 11538157, at *4 (S.D. Ohio Sept. 21, 2010) (finding magistrate judge's order was not clearly erroneous in ERISA action where magistrate judge denied extensive search of defendants' law firm's electronically stored information).

Moreover, the parties and this Court have already recognized the relevance of post-August 2016 events and information. In addition to the numerous post-August 2016 events cited in Plaintiffs' opening brief (ECF No. 133 at 10-13), in early 2017, Lead Plaintiff sought, Defendants did not oppose, and this Court granted two motions for extensions of time to file Lead Plaintiff's complaint based on the need to wait for the Restatement process to conclude. *See* ECF Nos. 46, 47, 51 & 52. In both instances, Lead Plaintiff noted that "Orbital's restated financial statements, issuance of its financial results for the last three quarters of 2016, and related disclosures regarding the material weaknesses in internal controls will be relevant to the claims in this case," and requested an extension of time until after those events occurred in February and April 2017. ECF Nos. 46 & 51. Defendants did not oppose either motion (*see id.*), and the Court granted both motions "for good cause" (ECF Nos. 47 & 52). Thereafter, in June 2017, Defendants made additional disclosures about the Restatement, which were included in the Amended Complaint. *See, e.g.*, ECF No. 78 at 228. By failing to object to extensions of time-based on post-Class Period, Defendants have conceded the relevance of post-Class Period events and essentially waived the objection to produce documents after August 1.

**II.     Defendants' Proportionality Argument Is Without Merit as Reflected by the Routine Production of Post Class Period Documents and Emails in Securities Class Actions**

Defendants' unsupported claims of burden (*see* ECF No. 135 at 7) should be rejected. ***First***, "the party claiming that a discovery request is unduly burdensome must allege specific facts that indicate the nature and extent of the burden, usually by affidavits or other reliable evidence; conclusory assertions of burden and expense are not enough." *Romanyk Consulting Corp. v. EBA Ernest Bland Assocs., P.C.*, No. AW-12-2907, 2013 U.S. Dist. LEXIS 89485, at *14-15 (D. Md. June 26, 2013) (rejecting undue burden claim and granting motion to compel). Here, Defendants use adjectives and characterizations – rather than ***any*** affidavits, search data, hit lists, cost estimates, or

3

other hard facts – to claim documents from after August 1, 2016, should be withheld from discovery, which is insufficient to show any burden, much less "undue" burden. *See id.*; *Stoney Glen, LLC v. S. Bank & Tr. Co.*, No. 2:13cv8-HCM-LRL, 2013 U.S. Dist. LEXIS 146675, at *8 (E.D. Va. Oct. 2, 2013) ("[T]he objecting party must do more to carry its burden than make conclusory and unsubstantiated arguments.").[3] In contrast, Plaintiffs have cited several cases overruling time period objections, and Defendants' inability to distinguish or cite to countervailing cases only confirms their objection is without merit and the production of documents, and emails, after the Class Period is routine in securities class actions.[4]

***Second***, Federal Rule of Civil Procedure 26(b)(1) provides that proportionality is to be considered in the context of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Each of these factors weighs in favor of permitting discovery of documents (including email) after August 1, 2016.

As to importance, the Supreme Court "has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and

---

[3] The 2015 changes to the Federal Rules did not change this or otherwise allow conclusory assertions of burden to substitute for proof. *See, e.g.*, Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment ("Nor is the change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional" because "[a] party claiming undue burden or expense ordinarily has far better information – perhaps the only information – with respect to that part of the determination.").

[4] While Orbital claims its production of 160,000 documents has been "huge" (ECF No. 135 at 1), that is a relative concept, as much larger productions are routine in cases of this magnitude. *See, e.g.*, *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 840 (E.D. Va. 2016) (3.2 million pages of documents produced*); In re Pfizer Inc.*, 288 F.R.D. 297, 305 (S.D.N.Y. 2013) (approximately 40 million pages of documents produced); *In re Volkswagen "Clean Diesel" Mktg.*, No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 173165, at *669 (N.D. Cal. Oct. 18, 2017) (more than 20 million pages of documents produced).

civil enforcement actions . . . ." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). While Defendants argue that the PSLRA sought to minimize the expense of defending meritless cases by setting a high bar for ***pleading*** securities fraud cases and staying discovery until a ruling on the motion to dismiss (*see* ECF No. 135 at 4), Defendants overlook that Judge Ellis has held that the high bar was met in this case and the PSLRA stay has been lifted. ECF Nos. 99-101.

As to the stakes and amount in controversy, this case involves the loss of over $1 billion in market capitalization as a result of inappropriate conduct, as admitted by Defendants, of at least some employees who have since been fired. *See, e.g.*, ECF No. 72 at ¶¶137, 226-230; ECF No. 99 at 26-27. For years before and after a multi-billion dollar merger, the Company failed to report nearly $400 million in losses and other relevant information, causing shareholders to be induced to vote in favor of the merger and for inadequate consideration and to purchase stock after the merger at artificially inflated prices. *See generally* ECF No. 72 at ¶¶1-10, 258-260. The Company was ultimately forced to tell investors it was withdrawing all of the financial statements it had issued after the merger and restating them to report inferior financial performances. (*See id.* at ¶¶128-130). The amount in controversy in this case is undoubtedly higher than the vast majority of cases, and, far from an individual or small company with limited resources, Orbital ATK is a massive corporation that is being acquired for $9.2 billion[5] and has immense resources and insurance, all of which weighs in favor of production.

As to the importance of the information and the parties' relative access to information, this factor also favors ordering production. Unlike a breach of contract case where parties have relatively equal access to information, Plaintiffs in this case are public shareholders with a huge

---

[5] *See* News Release, *Northrop Grumman to Acquire Orbital ATK for $9.2 Billion* (Sept. 18, 2017), *available at* http://investor.northropgrumman.com/phoenix.zhtml?c=112386&p=irol-newsArticle&ID=2301136.

informational disadvantage (which is why securities laws were passed to protect them) and the vast majority of evidence lies in Defendants' hands. Defendants have not attempted to refute the importance of the events occurring after August 1, 2016 with regard to liability, scienter, causation for the stock drop, or damages, either in their response to this Motion or in response to Lead Plaintiff's request for extensions of time to file its complaint. *See supra* at 2-3. Nor could they. After August 1, 2016, the Company reported the need for a restatement (*see* ECF No. 72 at ¶¶128-130), shareholders and analysts reacted to the restatement news (*see id.* at ¶¶137-141), and the Company calculated the financial impact of the restatement (*see id.* at ¶¶143-147), determined the cause of the restatement and fired certain responsible individuals (*see id.* at ¶¶219, 226; ECF No. 133-1 at 7), issued corrected financial statements (*see* ECF No. 72 at ¶¶146-150), determined and admitted that the Company's accounting policies had not complied with GAAP and needed to be changed (*see id.* at ¶150), and publicly reported to investors all of these findings and the reasons for the restatement up to and through June 2017. *See id.* at ¶228. Thus, there is no doubt that relevant and discoverable documents were created during that time period.

Defendants admit they intend to use documents from after August 1, 2016, to defend the case (*e.g.*, relating to gunpowder price increases and the results of the investigation) and their sword and shield argument regarding the time period only highlights the unfairness of denying Plaintiffs' access to such evidence. *See, e.g.*, *Harding v. Dana Transp., Inc.*, 914 F. Supp. 1084, 1092 (D.N.J. 1996) (holding that defendants cannot "offer[] only a superficial glance at certain information" concerning the findings of an internal investigation while "attempting to maintain the secrecy of the remainder"). Defendants' claim that producing unfavorable documents is burdensome rings hollow in light of their stated intention to search for and produce post August 1, 2016 documents that they

6

intend to use and reveals that their objection is directed at gaining a tactical advantage in the litigation. .

### III. Privilege Logs and Internal Investigations Are Routine in Cases Involving a Restatement and Do Not Create an Undue Burden

Defendants suggest that, in a restatement case, Plaintiffs do not need documents created after the last false statement and also suggest that the existence of an internal investigation creates an unreasonable burden in producing a privilege log. *See* ECF No. 135 at 9-10. Both these propositions are flawed and unsupported.

***First***, for all the reasons noted in the preceding sections and in Plaintiffs' opening brief (ECF No. 133 at 10-13), it is well established that documents after the Class Period and during the restatement and investigation process are highly relevant, discoverable, and likely to contain some of the best evidence for the plaintiffs. This is not the first restatement case that involved an internal investigation. As Judge Ellis said at the hearing on the first motion to dismiss, "Every time I see in the newspapers a restatement, I can count on it just like the sun rising in the east and the next pope being Catholic that there will be a 10b-5 action." July 14, 2017 Hearing Transcript at 47. In fact, 40 of the top 100 securities class action settlements involved restatements,[6] and in moving to dismiss, Defendants claimed that if courts denied motions to dismiss in all restatement cases, "courts would be awash" with such cases (ECF No. 68 at 2). In light of the high volume of restatement cases, Defendants' failure to cite a single such case holding that documents created after the last false statement are irrelevant or that the production of privilege logs would be unduly burdensome makes clear their objection has no merit. Defendants' failure to cite a case where a defendant ***even***

---

[6] *See* Ex. D (ISS Securities Class Action Services, *The Top 100 U.S. Class Action Settlements of All time (As of 31 December 2017)*, at 30 (2018)).

7

***attempted*** to make the argument, much less one where they succeeded, proves they are attempting to withhold documents in this case that are routinely produced in similar cases.

  ***Second***, Defendants' claim that the internal investigation is a unique circumstance creating an undue burden is equally lacking. Internal investigations are routinely required when a publicly-traded company admits its financial statements were false and need to be withdrawn. Indeed, restatements often lead to SEC investigations and lawsuits, just as in this case, and defendants conduct investigations to argue against an inference of scienter and seek leniency from the SEC. *See, e.g.*, *Ross v. Career Educ. Corp.*, No. 12 C 276, 2012 U.S. Dist. LEXIS 155037, at *25 (N.D. Ill. Oct. 30, 2012) (rejecting defendants' reliance on an internal investigation to negate scienter and finding it was "equally plausible and compelling" that "defendants initiated the inquiry as an exercise in damage control and to head off further investigations"); *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1246 (N.D. Cal. 2008) ("[O]fficers and directors are not exonerated when their own audit committee finds nothing wrong in the company's accounting practices. To rule otherwise would create a huge fox-guards-the-chicken-house loophole in our private securities law enforcement."). Moreover, the production of privilege logs and non-privileged documents after the class period ends, and during the restatement and internal investigation process, is routine. In contrast to Defendants' position that post-class period documents should not be produced at all in such cases, several courts have held that even the internal investigation materials created after the Class Period ends are not privileged. *See, e.g.*, *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 230 F.R.D. 433, 435 (D. Md. 2005) (ordering production of memorandum prepared by outside counsel as part of an investigation into the company's restatement, finding it was not protected work product despite the fact that the company was "[u]ndoubtedly . . . also preparing for [class action] litigation"

because "the investigation would have been undertaken even without the prospect of preparing a defense to a civil suit.").

Here, Defendants put the cart before the horse by asserting all documents relating to the internal investigation are privileged and therefore creation of a privilege log would be so burdensome that they should not even have to produce the ***non-privileged*** documents. Defendants' time period objection is an attempt to take two bites at the same apple – by raising the unsupported argument that documents after August 1, 2016, should not be produced at all, they are seeking to avoid having to meet their burden of showing the subset of such documents relating to the internal investigation are privileged. This objection should be seen for what it is and rejected.

***Third***, Defendants' argument that, if this motion is granted, the Court should limit Defendants' obligations to produce a privilege log (*see* ECF No. 135 at 11-12) raises a separate matter that is not properly before the Court. While the parties have fully met and conferred regarding the time period objection,[7] they have not done so with regard to arguments concerning the privilege log.[8] The parties were unable to reach agreement on the time period objection because Defendants offered to produce very few documents after August 1, 2016, and only subject to unreasonable conditions. Defendants' proposal in the meet and confer, and repeated in their brief, to

---

[7] In an attempt to portray Plaintiffs as unreasonable, Defendants make several statements in their Opposition along the lines of "Plaintiffs have declined to narrow their requests" (ECF No. 135 at 2), "Plaintiffs' Motion … [does not affirm] that a 'good faith effort to narrow the area of disagreement has been made'" (*id*. at 6, n.1), and that "Plaintiffs' Motion is premature, and comes before the parties have completed their meet and confer responsibilities." *Id*. at 10. These claims are untenable. In fact, the parties have been meeting and conferring on this precise issue for weeks, including a substantial effort by Plaintiffs to offer compromises that Defendants have rejected.

[8] While Defendants claim "Plaintiffs have not agreed to Responding Defendants' request to provide a categorical privilege log" (ECF 135 at 12 & n.6), they fail to say that Defendants have not responded to Plaintiffs' repeated requests for even basic information necessary for Plaintiffs to consider or state their agreement or disagreement to the proposal. Defendants make suggestions regarding their privilege log, for the first time, in their response brief.

9

use unidentified narrower search terms and custodians than they agreed to use for pre-August 1, 2016 is intended to capture only those documents Defendants intend to use, such as relating to the purported gunpowder defense. *See* ECF No. 135 at 9 n.3. Such a heads-I-win-tails-you-lose proposition is no offer at all. Moreover, Defendants condition even the proposed narrow and unreasonably limited production on Plaintiffs waiving their right to a sufficient privilege log, leaving Defendants with unfettered discretion to assert privilege. The proposal and conditions are unreasonable, which is why a ruling on the merit of the time period objection is required. After ruling on this motion, the parties can meet and confer regarding any separate issue regarding the privilege logs.[9]

## IV. Defendants' Meritless Time Period Objection Is Delaying Third Party Production

In addition to delaying Defendants' production of highly relevant documents, the objection is impacting third party production. For example, Defendants' auditors are not committing to produce documents after August 1, 2016 and will only "revisit the scope" of their production if the Court denies this motion to compel. Ex. E at 1-2. That third parties will similarly withhold confirms the issue is ripe for resolution and Defendants' attempt to insist upon ever more meet and confers is an attempt to buy more time to review documents that already should have been reviewed while also gaining a tactical advantage in the litigation by reducing the time Plaintiffs have to review – and use – the documents in discovery.

---

[9] For example, while Defendants focus on emails to outside counsel in suggesting that some generic log that identifies broad categories of documents is enough, they ignore whether certain categories of documents (such as those that are neither to nor from lawyers or those that show the document was shared with third parties) should require full privilege logs. For example, it would not be enough for Defendants to simply state that they are withholding "emails relating to legal advice" without disclosing details that would prove waiver or otherwise support a challenge.

## V. Defendants' Purported Cooperation in Discovery Is Both Irrelevant and Inaccurate

Unable to support their arbitrary August 1, 2016 cutoff or substantiate their claims of burden, Defendants raise a red herring by attempting to direct the Court's focus to other discovery they have produced.[10] That Defendants are unreasonably withholding some of the best documents from Plaintiffs is not excused by their claim that at they are not unreasonably withholding all relevant and discoverable documents.[11] Far from providing complete and prompt discovery responses, Defendants have delayed and extended every discovery response to date, all of which is prejudicing Plaintiffs.

Judge Ellis denied the parties' joint request to extend the three-month discovery schedule to six months and instead granted a one-month extension. ECF No. 121. In doing so, Judge Ellis noted that the case has been pending for 19 months and the parties should have been preparing for discovery. *Id.* at 2 n.1. Notwithstanding that the PSLRA stayed discovery during the motions to dismiss, which prevented Plaintiffs from serving discovery, Plaintiffs did prepare and promptly

---

[10] In their Opposition, Defendants represent to the Court that they have been producing some documents after August 1, 2016 and made an initial production on April 6, 2018 and "additional substantial document productions every week." ECF No. 135 at 5. In truth, Defendants have made only two document productions in this case. Defendants' first document production, on April 6, 2018, contained approximately 150,000 documents and just one single document from the post-August 2016 time period. Defendants' second document production, on April 13, 2018, contained 12,734 documents, 7,902 of which (nearly two-thirds) were duplicates of documents in their first production. Thus, Defendants' second production contained only 4,832 new documents and only 30 documents from the post-August 2016 time period.

[11] Oddly, Defendants are attempting to swap documents after 2016 for documents prior to 2012 in order to inflate their production numbers. Plaintiffs' requests for production sought documents for a time period beginning on February 1, 2012, extending the relevant time period earlier for only a handful of requests. Despite this, Defendants unilaterally decided to run a broad search for documents starting on January 1, 2011, more than a year earlier than requested. Defendants' decision to produce documents from 2011 rather than documents after August 2016, proves their burden arguments are without merit and they are simply attempting to withhold more damaging documents.

11

issued document requests, interrogatories, requests for admission, and third party subpoenas upon the start of discovery. However, as Defendants have confirmed (*see, e.g.*, ECF No. 135 at 4-5), they were inactive during the 19 months and did not even start reviewing their documents. Their failure to prepare for discovery is inexcusable considering that the Court denied their motion to dismiss the §14(a) claims seven months ago, in September of 2017. *See* ECF No. 76. There is substantial factual overlap between the §14(a) and §10(b) claims, as both involve false statements resulting from the failure to disclose the Lake City losses as admitted in the Restatement. Rather than spending time reviewing produced documents, Plaintiffs to date have been largely forced to engage in countless and lengthy meet and confers regarding Defendants' delayed responses, refusals to respond, deficient document productions and interrogatories, and overly aggressive objections (such as the present time period objection).

For example, Plaintiffs have had and are continuing to have ongoing meet and confers regarding the sufficiency of Defendants' answer to the complaint, privilege claims regarding the internal investigation, and search terms and custodians. As to the latter, Plaintiffs' request to receive and confer has been outstanding for weeks and continually delayed.[12] Defendants have sought extensions on all discovery so far, including their Rule 26(a) disclosures, document production, interrogatory responses, and Plaintiffs' Rule 30(b)(6) deposition notice. Defendants objected to the document requests, but failed to provide responses, which are severely past due. In short, having failed to prepare for discovery in the 19 months since the case was filed, and seven months since their motion to dismiss the case in its entirety was denied, Defendants can hardly complain about their burden of playing catch up.

---

[12] Contrary to Defendants' assertion, Plaintiffs do not agree that the search terms used by Defendants are "largely sufficient." Plaintiffs have repeatedly requested basic information regarding custodians, relevant sources, and search terms in order to meaningfully participate in the process of using custodians and search terms proposed by Defendants. Defendants have ignored these requests.

To the contrary, Defendants' delays are severely prejudicing Plaintiffs and threatening the parties' ability to meet the schedule. The parties will be 49 days into discovery by the time this motion is heard with only 80 days left. Defendants have had seven months since the denial of their motion to dismiss the §14(a) claim and 49 days since the issuance of the document requests, yet despite having admitted to using 30 document reviewers, Defendants have produced less than half of what they are agreeing to produce, which does not include documents subject to this motion. Plaintiffs will now have 80 days left in the discovery period to review these documents, review subsequent productions from Defendants, their auditors, and other third parties, complete class certification briefing, complete expert discovery, and take depositions, while continuing to meet and confer and engage in motion practice. Far from prompt cooperation, Defendants are attempting to bury the needle in the haystack by hiding within a mass of likely irrelevant documents the documents they collected and identified in the restatement process on many of these issues. *See also Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 249 n.13 (3d Cir. 2009) ("[B]oth post-class-period data and pre-class data could be used to confirm what a defendant should have known during the class period because any information that sheds light on whether class period statements were false or materially misleading is relevant.").

Rather than making up for these deficiencies with robust and "detailed" interrogatory responses as they suggest, their deficient interrogatory responses, which they fail to note the parties are in the process of meeting and conferring on, only compound the prejudice from the document delays. Many of the interrogatory responses paraphrase prior public disclosures, are vague, or refer to unidentified documents that are not identified by Bates number and for which it is unclear if the documents have or will ever be produced. For example, Defendants refuse to identify specific people and refer instead to vague categories of people such as "several team members," "managers,"

13

"Lake City personnel," or "some Lake City team members." *See, e.g.*, ECF No. 133, Ex. A at 6. By refusing to name names in the interrogatory response, and delaying production of relevant documents, Defendants are hindering Plaintiffs' ability to identify sufficient custodians and search terms. The sufficiency of the interrogatories, like the privilege claims, and purported privilege log burden, are issues for another day, but given Defendants' inaccurate assertions, a fair response was warranted.

## VI. CONCLUSION

For all these reasons, Defendants' objection to producing documents after August 1, 2016, should be overruled and Plaintiffs' motion to compel should be granted.

DATED:  April 19, 2018    THE OFFICE OF CRAIG C. REILLY
CRAIG C. REILLY, VSB #20942


      */s/ Craig C. Reilly*
CRAIG C. REILLY

111 Oronoco Street
Alexandria, VA  22314
Telephone:  703/549-5354
703/549-2604 (fax)
craig.reilly@ccreillylaw.com

*Liaison Counsel for Lead Plaintiff*

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ
FRANK RICHTER
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 312/674-4674
312/674-4676 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
MAUREEN E. MUELLER
KATHLEEN B. DOUGLAS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN C. HERMAN
PETER M. JONES
Monarch Tower, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA 30326
Telephone: 404/504-6500
404/504-6501 (fax)

*Lead Counsel for Plaintiff*

VANOVERBEKE MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)

*Additional Counsel for Plaintiff Wayne County Employees' Retirement System*

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2018, I filed the foregoing pleading or paper through the Court's CM/ECF system, which sent a notice of electronic filing to all registered users:

*/s/ Craig C. Reilly*
Craig C. Reilly, Esq.
VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-5355
EMAIL craig.reilly@ccreillylaw.com
*Liaison Counsel for Lead Plaintiff*