1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         Alexandria Division




------------------------------:
                              :
STEVEN KNURR, etc.,           :
                Plaintiff,    :
                              :
     -vs-                     :         Case No. 1:16-cv-1031
                              :
                              :
ORBITAL ATK, INC., et al.,    :
                Defendants.   :
                              :
------------------------------:
```

MOTIONS HEARING

April 20, 2018

Before:  Michael S. Nachmanoff, Mag. Judge

<u>APPEARANCES:</u>

John C. Herman and Craig C. Reilly, Counsel for Plaintiff

Lyle Roberts, Daniel Sachs, and George Anhang,
Counsel for the Defendants Orbital ATK, Inc., D.W. Thompson,
G.E. Pierce, B.E. Larson, and H. Thompson

2

```
1              NOTE:  The case is called to be heard at 9:58 a.m. as
2    follows:
3              THE CLERK:  Steven Knurr, et al. versus Orbital ATK,
4    Incorporated, et al., case number 16-cv-1031.
5              Counsel, please note your appearances for the record.
6              MR. HERMAN:  Good morning, Your Honor.  John Herman
7    from Robbins Geller for the plaintiff class.  With me this
8    morning is Craig Reilly.
9              THE COURT:  Good morning.
10             MR. HERMAN:  Good morning.
11             MR. ROBERTS:  Good morning, Your Honor.  Lyle Roberts
12   with Shearman & Sterling for the responding defendants.  And
13   with me is Dan Sachs from the Cooley law firm and George Anhang
14   from Shearman & Sterling.
15             THE COURT:  Good morning.  This matter comes before
16   the Court on plaintiff's motion to compel.  I've received the
17   pleadings, including the reply brief, and I've had the
18   opportunity to review them.  I'll hear argument at this time.
19   You don't need to repeat everything that's been put in the
20   briefs.
21             MR. HERMAN:  Thank you, Your Honor.
22             Today we're ten days from the substantial
23   pre-document production completion date of May 1.  We've
24   received two productions.  One on April 6, which was
25   represented to us to be the bulk of the responsive documents.
```

1   That consisted of about 150,000 documents.  In that production,

2   there was exactly one document that post-dates August of 2016,

3   one out of 150,000 documents.

4           We received a second production on April 13.  It

5   contained about a little over 12,000 documents.  8,000 or so of

6   those were duplicates of the first set.  We're not complaining

7   about that, we're just pointing that out.  And then there were

8   an additional 30 documents in that production that post-date

9   August of 2016.

10          So out of the two productions we've received to date,

11  there are 31 documents that post-date August of 2016.  We don't

12  know why those 31 documents were cherry-picked to present to

13  us, but that's all we've gotten.

14          We've received objections to our document requests

15  that include a general objection that anything after August 1,

16  2016, is too burdensome and not proportional to the needs of

17  the case.

18          We've not received Rule 34 responses telling us what

19  documents are going to be produced and what documents are not

20  going to be produced.  We expect to receive those after some

21  extensions next week.

22          So we're sitting here ten days from the document

23  completion date with 31 cherry-picked documents that post-date

24  August 2016.  We've been told that's the bulk of the responsive

25  documents.  And there are a tremendous amount of documents that

4

1    we need to prepare expert reports that we don't have.

2          Before I get into the actual material events that

3    occurred after August 1 of 2016, let me point out that

4    defendants have cited no case, and we aren't aware of any, that

5    supports the notion that you can cut off document production

6    prior to the class period ending.

7          THE COURT:  Well, I understand the arguments and I've

8    read the cases.  Let me try and focus the argument to get at

9    what I think is important here.  How do you understand the

10   defendants' position on page 6 of their opposition with regard

11   to what it is they -- that is in dispute here?

12         As I read it, it says the company will produce

13   non-e-mail documents that post-date August 1, 2016.

14         Is it your understanding that the only disagreement

15   here is whether or not e-mails after August 1, 2016 will be

16   produced.  I understand what you've represented, that you've

17   only received 31 documents in total that date August 1 or

18   later.

19         But based on your communications back and forth, is

20   it your understanding that in the coming days they are going to

21   produce all requested documents other than e-mails for the time

22   period that you're requesting?

23         MR. HERMAN:  That's not my understanding, Your Honor.

24         My understanding is that if we tell them particular

25   documents after August 1, 2016, they will consider giving them

5

1    to us.  But there's been no representation that they're going

2    to produce all responsive documents other than e-mail after

3    August 1 of 2016.

4                 THE COURT:  Well, let me ask you to sit down and I'll

5    ask this question of Mr. Roberts so that I can understand

6    what's been written here.

7                 MR. HERMAN:  Yes, sir.

8                 THE COURT:  Mr. Roberts.

9                 MR. ROBERTS:  Certainly, Your Honor.

10                Well, obviously, I stand by our papers.  I think

11   we're quite clear in there that we do intend to produce

12   non-e-mail documents.  And the only thing that we're debating

13   about here is the burden and proportionally of an e-mail

14   search.

15                And I'm happy to -- I can either -- I don't know if

16   you want me to sit down after that statement or would you like

17   me to go ahead and explain why I think that's the problem here.

18                THE COURT:  No, no, that's helpful, you don't need to

19   sit down yet, but let me just make sure I'm understanding.

20                MR. ROBERTS:  Okay.

21                THE COURT:  And that's how I read your statement in

22   the opposition.  It appears that you are agreeing and have

23   agreed to produce documents that post-date August 1, 2016.  And

24   that those documents include, but are not limited to, the

25   illustrative documents that you've -- that you've noted there.

6

1    Things like Board materials, press releases, personnel files.

2    Those would not be the only things that you intend to produce,

3    but that you intend to produce all responsive documents setting

4    aside the e-mails; is that correct?

5            MR. ROBERTS:  Subject to our objections, of course,

6    Your Honor.  But, yes.

7            THE COURT:  Okay.  So why don't you help me

8    understand, if you are conceding that these requests, setting

9    aside the e-mails, for documents after August 1, 2016, are fair

10   game for discovery purposes, why should the e-mails not be

11   produced?

12           MR. ROBERTS:  Sure.  So it's not a matter of not

13   producing them, Your Honor.  What we've tried to work out with

14   the plaintiffs is some prudential limitations on that

15   production.  It's not that we think that they -- no e-mails

16   should be produced from that period forward.  It's just --

17           THE WITNESS:  So, and to be clear on that, you're not

18   making an argument that simply because the class period ends on

19   August 9, I think it is, 2016, that the plaintiffs don't have a

20   right to seek documents that might help them understand what

21   happened during the class period and leading up to the

22   allegations that they have the burden to prove, even if those

23   arose -- those documents arose in 2017 or later?

24           MR. ROBERTS:  I'm not making that argument at all,

25   Your Honor.

7

1              THE COURT:  Thank you.

2              MR. ROBERTS:  It is entirely, as I think we explained

3    in our papers, I hope clearly, entirely a burden and

4    proportionality argument as specifically the e-mail.  And I can

5    offer you today some more information on that.

6              We have explained to the plaintiffs when they told us

7    they were contemplating this motion, that we were gathering

8    those e-mails and we're trying to get statistics to them so

9    they can understand exactly what the burden is here and that

10   this motion would be premature.  They filed it anyway.

11             We have been looking quite diligently to come up with

12   those statistics.  And I can provide them to the Court right

13   now as they've come in over the last 24 hours.

14             As you know, it is quite difficult to gather years

15   and years worth of data from over a large number of facilities,

16   de-duplicate all that data, then run the search terms through

17   in order to get these kind of statistics for you.  But I have

18   them now.

19             For the -- just the slightly less than one-year

20   period, Your Honor, from August 1, 2016, to June 30, 2017, if

21   we were to run the same search terms that we ran for the

22   earlier five-year period, from 2011 to 2016, using the same

23   search terms and the same custodians for that one-year period,

24   that search generates 48,711 unique e-mails.

25             And of those e-mails, 28,314, or about 60 percent,

1    contain privilege terms.  And may need after review to be

2    withheld.

3              And then, of course, on top of that, Your Honor,

4    because the plaintiffs have refused to agree to any date to cut

5    off up to the present, we would be talking yet another year

6    after that, and probably a similar number of 50,000 e-mails and

7    30,000 or so that may be privileged and have to be reviewed.

8              So we're trying -- what we're trying to do here is

9    simply get some prudential limitations on that in light of the

10   fact that the last misstatement in this case that is alleged --

11   that is said to have took place, took place in May 2016.  And

12   in light of the fact that we were sued in this case in August

13   2016.

14             So it's not surprising that we're getting, you know,

15   hit rates of 60 percent of the e-mails having privilege terms

16   in them because, of course, after, you know, we're being sued,

17   no surprise there is a ton of privilege e-mails going on.

18             So that's the -- really what we're looking to do.

19   And we've tried to get the plaintiffs to assist us in narrowing

20   this down.  And I would just like to go through a little bit of

21   that briefly.

22             We said to the plaintiffs, propose some narrower

23   search terms.  They declined.  We said to the plaintiffs, give

24   us specific categories of documents so we can collect from this

25   period.  I think that's what you were referring to, Your Honor,

9

1  when you mentioned about the categories.  And they gave us some

2  categories.  They said, we would like Board materials, we would

3  like personnel files.  And we said, yep, we'll collect those

4  for you.  We understand those are -- you know, you need those

5  for your case, we'll collect them.  And we agreed to produce

6  those.

7        And then said to us, yeah, but we want all the e-mail

8  anyway.  We said to the plaintiffs, how about a recognition

9  that we have tens of thousands of potentially privileged

10 documents here and we need to do a categorical privilege log

11 for those.  You know, that would at least provide some relief.

12 And they said they'd think about it.

13       So after all of that, Your Honor, they filed a

14 motion to compel.  And what they say in the motion to compel

15 just created the confusion that we started with right here, was

16 that we've refused to provide any documents after August 1,

17 2016.  That's not true.  They know that's not true.

18       And I'm a little concerned as to why we're taking up

19 the Court's time with issues that I think have been pretty

20 clear and are clear in our papers.

21       So I guess what I would just like to point out as

22 well, Your Honor, is that the plaintiff's understand the need

23 for prudential limitations like this.  They have responded to

24 us about their own discovery, and they have said they will

25 produce documents only between February 9, 2015 through

10

1    November 7, 2017 -- I mean, 2016.  So that's a year-and-a-half,

2    Your Honor.  We've already produced five years worth of

3    documents.  They want to produce a year-and-a-half.

4            So they get the notion there should be cutoffs.  And

5    they certainly think there should be for their discovery, but

6    somehow for our discovery it should be absolutely open-ended

7    and we should have to -- you know, we should have to do it all.

8            So again, I would just like to say that, you know,

9    I've practiced in this court a long time.  And, you know, I

10   think the idea here is the parties respect the tight deadlines

11   we have, they look to make reasonable compromises.

12           I think in our papers we proposed a reasonable

13   compromise.  We said, limited search terms used for that period

14   from August 1, 2016, to February 24, 2017, that's when the

15   final restatement was issued.

16           And if you look, Your Honor, at their opening

17   paragraph in their motion, all the events that they list as the

18   things they need for, all up to February 24, 2017.  So we

19   didn't pick a date out of random.  We're picking the date even

20   they agree these are events that they need to know about.

21           And with the categorical privilege log.  We think

22   that's a reasonable compromise.  And I think we're still

23   waiting for the plaintiff's reasonable compromise here, and

24   that's really the problem we're having.

25           THE COURT:  Thank you.  Let me ask you a couple of

11

1    questions before you sit down.

2            MR. ROBERTS:  Absolutely.

3            THE COURT:  And then I'll give Mr. Herman a chance to

4    respond and help me understand what's going on.

5            With regard to the documents that you've referenced

6    in your opposition and that you've confirmed to the Court that

7    you intend to produce, what is the timeline for producing

8    those?

9            In other words, are those documents that are going to

10   be produced later today?  I assume that they would be produced

11   very soon because the --

12           MR. ROBERTS:  Sure.

13           THE COURT:  -- substantial production deadline I

14   recall was set for May 1 --

15           MR. ROBERTS:  We expect --

16           THE COURT:  -- when we were here last.

17           MR. ROBERTS:  I'm sorry, Your Honor.  We expect by

18   May 1 to have produced 250,000 electronic documents.

19   Obviously, subject a little bit to this resolution over this

20   e-mail issue, you know, we would --

21           THE COURT:  Well I'm trying to segregate out --

22           MR. ROBERTS:  Right.

23           THE COURT:  -- the e-mails from the things that don't

24   seem to be in dispute.  And so, what I'm asking about is the

25   timing of those materials so that plaintiffs can understand

12

1   that.

2           MR. ROBERTS:  Sure.  I think, Your Honor, as we told

3   the plaintiffs consistently, we expect to meet the May 1

4   deadline.  There may, of course, be some items we have to

5   identify that we are still collecting, and that's I think

6   provided for in how we set this up.  Right?  That it be

7   substantially completed by May 1.  And if there is anything we

8   didn't have completed, we would tell them exactly what it was.

9           THE COURT:  But you have not taken the position that

10  the substantially complete deadline is the date to produce

11  everything?  It is the final date for production.  Right?

12  There's been a rolling production?

13          MR. ROBERTS:  Oh, yes, of course, Your Honor.  We're

14  producing every week.  So we have produced April 5.  And then

15  we produced the following Friday, and the following Friday.  So

16  we have been producing on a rolling basis.  Every Friday since

17  our initial production they have received a production.

18          THE COURT:  Okay.  And with regard to the e-mails, as

19  I understand it, you're concern is not that there may be

20  responsive e-mails that are appropriate for them to collect,

21  but that the process of reviewing the 48,000, or whatever the

22  number ends up being, is going to be terribly time consuming

23  because there's going to be a significant number of terms that

24  appear to relate to privilege.  And so, there's going to have

25  to be a detailed review on your part as to what should properly

13

1    be withheld and what should be turned over; is that correct?

2              MR. ROBERTS:  Exactly right, Your Honor.

3              THE COURT:  I take it with regard to the e-mails that

4    have already been produced for the period leading up to August

5    1, 2016, you went through this same process?

6              MR. ROBERTS:  We did, Your Honor.  And I can say, we

7    had -- I believe the statistic was 170,000 that needed to be

8    reviewed for privilege.  We have had 34 attorneys working

9    around the clock to accomplish that.  We expect it to be

10   accomplished in time for May 1, and we will produce anything

11   that is not privileged out of that group to the -- to the

12   plaintiffs.

13             THE COURT:  And I guess my final question would be,

14   having done that process, but having cut it off at August 1,

15   2016, why would the defendants not have simply done the search

16   terms and reviewed for privilege for the entire time period

17   until -- waiting until we're here today to discuss when that

18   would begin?

19             MR. ROBERTS:  Well, to be fair, Your Honor, I don't

20   think we've waited until today to discuss.  We told the

21   plaintiffs in March that that was what we thought was a

22   reasonable cutoff, and we would like to understand what it is

23   they needed from past that period that we could do.

24             So this is not an issue that we sprung on them at the

25   last minute.

14

1          I think Mr. Herman seemed to suggest in his remarks

2     that somehow only when they looked at the documents they

3     received did they realize this was -- this was a problem.  We

4     told them before we produced document 1 that we wanted to work

5     with them to try to find a way for this -- for this additional

6     period.

7          So, I mean, again, Your Honor, I think there -- I

8     take your point that there has to be some ability to limit

9     things in a prudential way.  They have insisted on e-mails up

10    to today with no cutoff of time whatsoever.

11         THE COURT:  I will address that with Mr. Herman in a

12    moment.  I guess what I'm trying to do is talk through and find

13    a practical solution given the time deadlines that both parties

14    face here.  And I appreciate your representations.  However, I

15    guess I'm concerned that there's no argument that the

16    plaintiffs have made requests for documents beyond August 1,

17    2016, and you have conceded and intent to produce responsive

18    documents on a timeline that exceeds August 1, 2016.

19         On the other hand, what I'm hearing is that you

20    believe that the amount of privileged information might

21    dramatically increase after August 1, 2016; is that correct?

22         MR. ROBERTS:  That's correct.

23         THE COURT:  And, therefore, the burden on the

24    defendants would be greater to look through those documents.

25         MR. ROBERTS:  Correct, Your Honor.

15

```
1              THE COURT:  But, of course, this isn't before me on a
2    motion for a protective order.  It's before me on a motion to
3    compel.
4              So the first thing I have to consider is whether or
5    not what they're asking for is appropriate.  And I don't really
6    hear an argument that it's not.  It's really the mechanics of
7    how the defendants are going to have to go through to produce
8    responsive documents and then produce something that they can
9    review to determine whether or not documents withheld have been
10   appropriately withheld and whether they'll need to challenge
11   that.
12             MR. ROBERTS:  I will quibble with only one thing,
13   Your Honor, which is to say, I think we are making a -- when
14   you say "appropriate," I think we are making a burden and
15   proportionality argument that is part of the appropriateness
16   analysis under Rule 26, and especially under, of course, our
17   new amendments to Rule 26 that we are all dealing with.
18             So I think we are, you know, assessing that from an
19   appropriateness standard as well under, you know, under the
20   discovery rules that we're all -- we're all living with.
21             THE COURT:  I appreciate that, and I don't want to
22   get hung up on semantics.  I will say, and I'll let you address
23   it, the one thing I do not have is something addressing
24   burdensomeness in terms of a declaration, in terms of the cost
25   and time.
```

1          And I appreciate that you've now given me some

2     numbers of total e-mails.  But I think that's important for the

3     Court to have.

4          MR. ROBERTS:  I appreciate that, Your Honor.  And, of

5     course, as I described, we have been working diligently to come

6     up with these statistics for you.

7          Now having gotten them in the last 24 hours, I would

8     be happy, of course, to submit to the Court a declaration that

9     explain exactly what the costs would be associated with

10    reviewing that amount of privileged material as well.  I just

11    didn't have the number to be able to asses the cost until now.

12    And, of course, that was a function in large amount because of

13    our very tightened time frames here.

14          THE COURT:  Thank you.  Mr. Herman.

15          MR. HERMAN:  Thank you, Your Honor.

16          Let me first respond to a couple of points.  And this

17    is, obviously, a very fast-moving case, so I'm not making any

18    accusations of counsel by any stretch.  But I will tell you

19    that there have been two productions in this case.  One on

20    April 6, one on April 13, and that's it.  Okay.  There's not

21    been this every Friday kind of thing.  Maybe we'll get one

22    today, I don't know.  But those are the only two that we've

23    gotten.

24          So within 24 hours of receiving those productions,

25    our ESI team is able to produce a report to me that tells me

17

1    the exact number of hits on search terms.  The custodians, the

2    total number of documents.  I get those statistics within 24

3    hours of receiving that production.

4           So the fact that I'm finding out in court on our

5    motion to compel the exact number of potentially problematic

6    e-mails from this time period for the very first time, is

7    surprising.  I mean, that's something that these folks can do

8    very, very quickly.

9           In terms of the burden of reviewing privileged

10   information.  If you take a look at what's going on in this

11   case, come August of 2016 the company figures out it needs to

12   restate hundreds of millions of dollars of financial statement

13   errors.

14          At that point in time, this is a big company with a

15   big, huge problem, they bring in a lot of lawyers.  And then

16   some very, very critical events, which are in our papers and I

17   won't belabor here, go on for the next nine months, leading up

18   to the termination of multiple employees, leading up to a

19   number of restatements of years of financials.  None of that do

20   we have.

21          So there's 48,000 e-mails.  We don't think it's

22   tremendously burdensome to go through those and produce the

23   relevant ones.

24          We can deal with the privilege log issues at a later

25   point in time.  What Mr. -- what I heard Mr. Roberts say is

1    that they had search terms that hit on privilege.  That hasn't

2    mean they are to and from a lawyer.  That just means it has

3    legal or something within the body of the e-mail.

4            So we don't know how many of those actually come to

5    or from a lawyer.  And my suspicion is it is significantly less

6    than 28,000.  But I don't know that because we don't have the

7    data.  I just heard about it for the first time.

8            THE COURT:  What is your position with regard to Mr.

9    Roberts' suggestion that documents after June 30, 2017, really

10   don't fall within the scope of information that would be

11   potentially relevant because that's one of the reasons for the

12   restatement were announced?

13           MR. HERMAN:  We had actually proposed that exact

14   date, and it's a compromise, June 30, 2017.  That would be an

15   extra nine months of data.  That would go through all of the

16   critical restatements.

17           And I believe, just to be clear, the last restatement

18   came out in April of 2017.  This would be a couple months past

19   that.

20           But those restatements are extremely important in

21   this case.  That's going to put the entire puzzle together.  So

22   those are critical documents for us to get.  And the e-mails

23   leading up to them, that puts the puzzle together for our

24   experts.  Those are documents that we do need.

25           I heard Mr. Roberts say that we're going to get all

19

1    responsive documents to our requests subject to a privilege

2    that come after that.  We welcome that, we appreciate that.  I

3    don't think we had that representation before.

4           But in terms of the e-mails themselves, we can work

5    on the privilege issue, I'm convinced of that.  We can get

6    together and try to figure out a way to deal with that.  But we

7    do need the underlying documents that aren't privileged.

8           THE COURT:  Thank you.  Mr. Roberts.

9           MR. ROBERTS:  May I very briefly, Your Honor?

10          THE COURT:  Very briefly.

11          MR. ROBERTS:  Just to clear up I think a little bit

12   of confusion about the proposed dates.

13          Mr. Herman referenced June 30, 2017.  I think what we

14   had said in our papers was February 24, 2017.  And there is a

15   very good reason for that.  I would point Your Honor to their

16   opening paragraph of their motion to compel.  This is what they

17   say.

18          They say they need these documents because the cutoff

19   that -- the August 2016 date was before Orbital ATK announced

20   the need for restatement.  Before Orbital ATK fired certain

21   wrongdoers.  Before Orbital ATK issued it's restatement.  And

22   before certain defendants held a meeting with investors to

23   explain the reasons for the restatement.

24          All of those things took place on or before February

25   24, 2017.  So I think they've made it very clear actually what

20

1    is the time frame they really need documents from, and that's

2    why we proposed that in our papers as the right cutoff date.

3              I just wanted to be clear about that.

4              THE COURT:  Do you wish to be heard, Mr. Herman?

5              MR. HERMAN:  Briefly, Your Honor.  Which is, there

6    were a number of events between February and June of 2017.

7    Most importantly was there was a restatement in April of 2017

8    of the financial papers.

9              There was the termination of the chief accounting

10   officer, Mr. Hollis Thompson, who left at the end of February,

11   I believe.

12             Gary DeSalvo, who was a small caliber employee,

13   resigned in April of 2017.

14             So there are a number of events that led us to that

15   June 2017 date.  And most of those are covered in our --

16   probably in our reply brief.

17             THE COURT:  Thank you.  This matter comes before the

18   Court on plaintiff's motion to compel.  I've listened carefully

19   to the arguments of counsel and reviewed the pleadings.  And I

20   find that the motion should be granted with the following

21   caveats.

22             Based on defendants' representation, I find that

23   they've already agreed to produce responsive documents other

24   than the e-mails for the time period requested.

25             I find that with regard to the e-mails, while I

21

1    appreciate the arguments regarding burdensomeness, I do not

2    find that the defendants have met their -- their burden to

3    establish that it is going to be overly expensive or difficult

4    to review these documents and to create a privilege log as

5    requested by the rules.

6            I am not ruling one way or the other on whether or

7    not the form of the privilege log should be one which is

8    individually tailored or categorical in nature.  There

9    certainly should be no reason why the parties cannot work out

10   an appropriate structure for a privilege log that gives

11   plaintiffs the ability to efficiently and effectively review

12   whether or not they can raise a challenge to documents by

13   category or individually.

14           And to the extent you cannot do so, the Court will

15   entertain such a motion.  But I will tell you that I'm not

16   encouraging the parties to do so.  I would expect that you'll

17   be able to reach an agreement on the form of that privilege

18   log.

19           I will permit the end date to be June 30, 2017.  I

20   see no basis for extending it up until the present.  However,

21   there are events and reasons why documents up through June 30,

22   2017, could potentially be relevant.  And if these search terms

23   are going to be run putting in that date rather than the

24   February date, does not create an undue burden on the

25   defendants.

22

1          I appreciate that this is not easy for both sides

2     given Judge Ellis' ruling and the time that you have.  I am

3     mindful that the plaintiff's expert disclosures are due on June

4     1.  That is a date that the parties should expect will stay

5     where it is.  Which is why I set the substantial production

6     date for May 1, so that they could have 30 days.

7          So I encourage the parties to have meaningful

8     discussions to the extent there are disagreements that arise.

9     And I expect both sides to work hard to find compromises if

10    necessary.  Otherwise, we'll be back here and I will address,

11    if necessary, any issues related to a privilege log or

12    otherwise on documents that have not been resolved.

13          Are there any other issues I need to resolve this

14    morning?

15          MR. HERMAN:  Nothing from the plaintiff, Your Honor.

16          THE COURT:  For the defendant?

17          MR. ROBERTS:  No, Your Honor.

18          THE COURT:  Thank you very much.  Court will be in

19    recess.

20          NOTE:  The hearing concluded at 10:26 a.m.

21          -------------------------------------------------

22

23

24

25

23

1

2          C E R T I F I C A T E  of  T R A N S C R I P T I O N

3

4

5          I hereby certify that the foregoing is a true and

6    accurate transcript that was typed by me from the recording

7    provided by the court.  Any errors or omissions are due to the

8    inability of the undersigned to hear or understand said

9    recording.

10

11          Further, that I am neither counsel for, related to,

12   nor employed by any of the parties to the above-styled action,

13   and that I am not financially or otherwise interested in the

14   outcome of the above-styled action.

15

16

17

18

19

20                        /s/ Norman B. Linnell

21                     Norman B. Linnell

22                     Court Reporter - USDC/EDVA

23

24

25