UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| STEVEN KNURR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> ORBITAL ATK, INC., *et al.*, <br><br> Defendants. | Civil Action No. 1:16-cv-01031-TSE-MSN <br><br> <u>CLASS ACTION</u> |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO COMPEL PRODUCTION OF CERTAIN INTERNAL
<u>INVESTIGATION-RELATED DOCUMENTS FROM DEFENDANTS</u>**

Pursuant to Rules 26, 34, and 37(a)(3)(B) of the Federal Rules of Civil Procedure, and Local Civil Rule 37(A), Lead Plaintiff Construction Laborers Pension Trust of Greater St. Louis and Named Plaintiff Wayne County Employees' Retirement System ("Plaintiffs") bring this Motion to Compel Defendants Orbital ATK, Inc. ("Orbital ATK" or the "Company"), David W. Thompson, Garrett E. Pierce, Blake E. Larson, and Hollis M. Thompson (collectively, "Defendants") to produce relevant, responsive documents, information and testimony regarding the Company's internal investigation of the circumstances surrounding the misstatements in the accounting for the Lake City Contract and related matters, referred to in the Company's 2015 Form 10-KT/A (the "Internal Investigation").

This motion is required because Defendants have asserted a broad privilege claim over essentially all information regarding the Internal Investigation and have yet to provide (i) a detailed privilege log, (ii) a fulsome description of the categories or portions of documents and information

over which they are asserting privilege and whether there are categories of documents that they are not claiming privilege over, or (iii) information to determine if they have met their burden of showing the privilege has not been waived through various disclosures to third parties.  Moreover, Defendants have refused to commit to whether or when such information will be provided, if at all. Therefore, Defendants have failed to meet their burden of showing the information is privileged.  In addition, based upon the information obtained to date, it is clear that the Internal Investigation was conducted for business purposes and therefore information relating to it is not privileged, and to the extent any information could qualify as privileged, the privilege has been waived due to public disclosures, reliance on the Internal Investigation in defending this case, and disclosures to third parties.  As a result, Plaintiffs seek an Order compelling Orbital ATK to:

> (a)     produce Internal Investigation-related documents responsive to Plaintiffs' First Request for Production of Documents to Defendants Orbital ATK, Inc., David W. Thompson, Garrett E. Pierce, Blake E. Larson, and Hollis M. Thompson ("RFP"), *e.g.*, No. 16,[1] including documents that provide the basis for the publicly disclosed Internal Investigation findings, including witness interview memoranda, reports summarizing the Internal Investigation's findings, and any documents gathered in connection with the Internal Investigation that existed prior to its commencement;

> (b)     supplement information responsive to Plaintiffs' First Set of Interrogatories (Nos. 1-15) to Defendant Orbital ATK, Inc. ("Interrogatories") Nos. 8, and 12(c); and

> (c)     provide a witness to testify as to Topic 1 of Plaintiffs' Notice of Federal Rule of Civil Procedure 30(b)(6) Deposition of Orbital ATK, Inc. ("30(b)(6) Notice"), and any other topic upon which Defendants intend to withhold testimony regarding the Internal Investigation.

---

[1]     Plaintiffs further seek to compel responses to RFP Nos. 17-18, 20, 23, and 26 to the extent that Defendants are withholding responsive information related to the Internal Investigation.

## II.    INTRODUCTION

This is a federal securities class action brought on behalf of investors who suffered hundreds of millions of dollars in losses when Orbital ATK announced that it was withdrawing and restating its prior financial statements because the Company had failed to disclose a nearly $400 million loss on its largest contract, the Lake City Contract.[2]  The Internal Investigation began before any lawsuit was filed and was conducted to determine why the Company issued the previously issued false financial statements, and to assure investors that issues underlying the Restatement were isolated and remediated.

The Court is familiar with the basic allegations in this case because it is now the second time Plaintiffs are forced to file a motion to compel clearly discoverable information.  *See* ECF Nos. 132-133.  Apparently, Defendants neglected to undertake a review of their relevant documents for the 19 months this case has been pending and for the seven months since the Court made clear it was not dismissing the Section 14(a) claims in this case.  ECF No. 77.  When the Court denied, in part, Defendants motion to dismiss the factually related Section 10(b) claims, Defendants were ill-prepared to meet the Court ordered schedule.  The parties sought a three-month extension, which the Court denied in part, granting only a one-month extension.  ECF No. 121.  The Court stated that the case had been pending for "almost 19 months" during which the parties should have developed "clear strategies for completing discovery."  *Id*.  Since Defendants had not done so, they are now struggling to comply with the Court's schedule, which has resulted in them making unsupportable objections that appear directed at buying more time to review and produce their documents.  Previously, Defendants objected to producing any documents after an arbitrary August 1, 2016 cutoff, even though they stated they intended to use some of those documents to defend the case.

---

[2]    All defined terms herein shall have the same definitions as set forth in Lead Plaintiff's Amended Complaint for Violations of the Federal Securities Laws.  ECF. No. 78.

ECF Nos. 133, at 11-12; 137, at 6-7. Not only were the materials clearly relevant, but the sword and shield tactic was highly prejudicial to Plaintiffs. *See id*. The Court granted Plaintiffs' motion to compel. ECF No. 139.

The present motion to compel stems from yet another instance of Defendants' selective use of documents and information to assert defenses, while simultaneously withholding documents, information and testimony from Plaintiffs that might undermine those defenses. Defendants' refusal to provide documents and responses related to the Internal Investigation is improper because the materials are non-privileged and highly relevant and Defendants have failed to specifically articulate and concrete burden in providing such information.

As to documents, Defendants rely on a general objection to all RFPs that documents are protected by the attorney-client privilege and the work product doctrine. *See* Orbital ATK's Objections to Plaintiffs' First RFP, p. 3. *See* Ex. A. With regard to the Interrogatories, Defendants make an even more vague objection that Internal Investigation information and documents are protected by the "work product doctrine or applicable privileges." *See* Orbital ATK's First Responses to Plaintiffs' First Set of Interrogatories and Orbital ATK's Second Responses to Plaintiffs' First Set of Interrogatories Response, Nos. 8 and 12(c) (collectively the "Interrogatory Responses"). *See* Exs. B and C, respectively. Finally, on April 25, 2018, Defendants notified Plaintiffs that they would not be producing a witness to testify as to Topic 1 of the 30(b)(6) Notice (*see* Ex. D) at the 30(b)(6) deposition scheduled for May 8, 2018, citing blanket privilege protection.

While Courts have held certain information relating to internal investigations can be privileged in some cases, in cases involving the circumstances here, courts decline to find the information privileged. First, Defendants have yet to agree to provide a detailed line-by-line privilege log, or any declaration or affidavit providing sufficient information and details to

demonstrate non-waiver of their purported privileges.[3]  This alone necessitates a finding that they have failed to meet their burden of showing the information is privileged.  More than just a conclusory assertion is required for a party to meet its burden of showing privilege.  *See Twigg v. Pilgrim's Pride Corp.*, No. 3:05-CV-40, 2007 U.S. Dist. LEXIS 14669, at *26-27 (N.D. W. Va. Feb. 28, 2007) (holding proponent waived attorney client and work product privilege by failing to "provide any privilege log or otherwise specify in any manner why the material sought was protected from discovery.")

Second, in this case, documents and information relating to the Internal Investigation are not privileged because they were primarily created for business purposes, not "because of" litigation.  *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 230 F.R.D. 433, 435 (D. Md. 2005) (holding investigative memorandum regarding company's restatement was not protected work product because "the investigation would have been undertaken even without the prospect" of preparing for litigation).  Instead, as admitted by Defendants, these documents were created to advance Orbital ATK's business objectives, including determining the cause of the Restatement, and assuring investors that such cause was isolated and remediated.  The Internal Investigation began approximately five weeks **before** the announcement of the Restatement, or the filing of any lawsuit regarding it, and extended to issues beyond the Restatement.  Therefore, Defendants' work product privilege assertion has no merit.

Third, even if Defendants' naked assertions of privilege were sufficient to meet their burden and the Internal Investigation materials were created in anticipation of litigation, any such privilege has been waived because Defendants are improperly using privilege as both a sword and a shield.

---

[3]    Instead Defendants have offered to provide only a categorical privilege log, which Plaintiffs deem as inappropriate and insufficient to assert or access Defendants' sweeping purported privilege in this case.

*See Royal Ahold*, 230 F.R.D. at 437 (holding where a company "offensively" disclosed information pertaining to its internal investigation, it "implicitly [] waived its right to assert work product privilege as to the underlying memoranda supporting its disclosures.")  For example, during the motion to dismiss briefing, Defendants argued that the Internal Investigation demonstrated their good faith and negated any inference of scienter.  *See, e.g.*, ECF No. 69 at 24, n.21 ("it is not clear that any of the Individual Defendants could have discovered that cost estimates were not going to be realized no matter how closely they monitored the Company's Lake City operations given that, according to the Audit Committee's investigation, information was withheld from them").  In addition, Defendants have established that they will continue to selectively use the Internal Investigation in support of various "affirmative" defenses they have asserted.  *See* Interrogatory Response No. 14 (citing the Internal Investigation's findings as support for six of Defendants' Affirmative Defenses).  Defendants cannot selectively rely on information arising from and relating to the Internal Investigation while withholding from Plaintiffs other documents and information that would support Plaintiffs' claims or at least permit Plaintiffs to test the asserted defenses through cross examination of witnesses.  Plaintiffs are entitled to documents and information regarding the scope of the Investigation, Defendants' role in overseeing the Investigation, and information that was ignored or not considered.

Fourth, again, assuming *arguendo* that work product or attorney-client privilege did attach to documents or the information, Defendants have waived any purported privilege by disclosing information and documents regarding the Internal Investigation to the SEC and Northrop Grumman Corporation ("Northrop").  *See e.g.*, *Luna v. Marvell Tech. Grp., Ltd.*, No. C 15-05447 WHA, 2017 U.S. Dist. LEXIS 155343, at *2 (N.D. Cal. Sept. 22, 2017) (finding defendant waived work-product or attorney-client privilege as to documents created in connection with defendant's audit

6

committee's investigation by presenting the investigation's findings to the SEC and publishing them in a press release). The SEC has launched a non-public investigation into Orbital ATK regarding the Restatement and the Company's ineffective controls, and just hours before this motion was due to be filed, Defendants confirmed that they orally shared "protected" information with the SEC. Orbital ATK is in the process of being acquired by Northrop and Defendants do not deny information was shared with Northrop regarding the Internal Investigation. Either way, Defendants have not provided sufficient details or information to support their burden of showing non-waiver, and thus all such nonpublic information disclosed to the SEC or Northrop (either through production of documents or orally in meetings) must also be disclosed to Plaintiffs.

Thus, since the documents, information, and testimony are clearly discoverable and because Defendants' privilege assertions fail, Defendants should be compelled to: (a) produce Internal Investigation-related documents responsive to RFP, *e.g.*, No. 16,[4] including documents that provide the basis for the publicly disclosed Internal Investigation findings, including witness interview memoranda, reports summarizing the Internal Investigation's findings, and any documents gathered in connection with the Internal Investigation that existed prior to its commencement; (b) supplement information responsive to the Interrogatories Nos. 8, and 12(c); and (c) provide a witness to testify as to Topic 1 of the 30(b)(6) Notice, and any other topic upon which Defendants intend to withhold testimony regarding the Internal Investigation.

## III.    RELEVANT FACTUAL BACKGROUND

The facts concerning this Action have been set forth by Plaintiffs in the Complaint (ECF No. 78), and the Court's orders concerning Defendants' motions to dismiss. ECF Nos. 75, 76, and 99.

---

[4]    Plaintiffs further seek to compel responses to RFP Nos. 17-18, 20, 23, and 26 to the extent that Defendants are withholding responsive information related to the Internal Investigation.

A.      **The Internal Investigation and Public Disclosure of Its Findings**

The Internal Investigation was done primarily for business purposes.  Relevant here, the Internal Investigation began in July of 2016, after the Company learned of a buildup of unbilled receivables emanating from the Lake City Contract.  *See* Interrogatory Resp. No. 8.  The previous month, the Lake City Contract's unbilled receivables were at a staggering $177 million.  *Id*. According to the Company, the Investigation was initiated because "the Audit Committee of the Board of Directors, in consultation with senior management, determined that the Company should conduct an . . . investigation . . . of the circumstances surrounding the misstatements in the accounting for the Lake City Contract and related matters."  *See* Amended 2015 Form 10-KT, at 139.  The Company was assisted in the Internal Investigation by counsel and forensic accountants.

Over six months later, on February 24, 2017, Orbital ATK disclosed the Internal Investigation's results in its Amended 2015 Form 10-KT.  The Amended 2015 Form 10-KT dedicated an entire section to the "Internal Investigation" and it was mentioned over half a dozen times throughout.  The Company publicly disclosed the Internal Investigation's findings, including that "[c]ertain personnel at the Small Caliber Systems Division[5] and . . . Defense Systems Group, acted inappropriately" and with respect to the Lake City Contract that "(a) there likely was a bias toward maintaining a targeted profit rate; (b) . . . inappropriate use of management reserves to maintain the targeted profit rate; (c) some members of the Small Caliber Systems Division finance staff failed to follow up and inquire further into indicators that cost overruns were occurring . . .; and (d) negative information was suppressed, and concerns at the Small Caliber Systems Division about cost overruns were not escalated appropriately."  Amended 2015 Form 10-KT, at 70.  The Company's public statements disclosed the amount of the Restatement, the existence of material

---

[5]    The Lake City Contract was reported in the Small Caliber Systems Division, which is within the Defense Systems Group of Orbital ATK.

weaknesses in internal controls, and remedial steps taken in response by the Company.  Amended 2015 Form 10-KT.

The Amended 2015 Form 10-KT further assured the public that the Investigation found no other issues as it consisted of a "comprehensive and intensive review of all relevant material contracts throughout the Company" and concluded that no material adjustments to the accounting for any additional contracts was required, and no circumstances similar to those at the Small Caliber Systems Division were discovered in other divisions.  In response to the Internal Investigation's findings, the Company further stated that "it ha[d] taken and will continue to take significant and comprehensive remedial actions" to address its material weaknesses.  *Id*. at 139.

On June 30, 2017, Orbital ATK filed with the SEC an investor presentation announcing that the Company was being acquired by Northrop.  The presentation updated investors on the Restatement, and touted the Internal Investigation's "diligent[]" work to "resolve issues leading to restatements" and inquiry into the "accounting for [the] Lake City Contract"; as well as the "comprehensive and decisive remedial actions taken" to prevent restatements in the future.  *Id*. at 2, 6.  Specifically, the presentation discussed how Orbital ATK had: (1) strengthened financial and accounting practices; (2) upgraded experience and professionalism of personnel in its finance organization; (3) expanded and intensified training programs for personnel on controls and procedures; (4) changed its auditors from PwC to Deloitte; and (5) confirmed it had terminated responsible personnel.  *Id*. at 2.

### B.    Defendants' Reliance on the Internal Investigation in Defending the Claims Against the Individual Defendants

During the motion to dismiss briefing, Defendants never contested that they made the alleged false and misleading statements, that the statements were materially false and misleading, or challenged loss causation.  *See* ECF Nos. 67-68, 81-82.  Rather, Defendants' sole argument in

moving to dismiss was that Plaintiffs failed to sufficiently allege that any of the false statements were made with scienter (*i.e.*, with knowledge or extreme recklessness). *Id*. In arguing that neither the Individual Defendants nor the Company acted with scienter, Defendants repeatedly relied on the fact that the Internal Investigation did not find any wrongdoing by the Individual Defendants or any Company employee whose knowledge could be imputed to the corporation. *Id*. For example, in their motion to dismiss briefings Defendants argued that the Internal Investigation found they engaged in no wrongdoing and that Plaintiffs had "no facts" to counter those findings or suggest they were "false":

- the Individual Defendants "could not have accurately estimated the costs associated with the Lake City Contract *because they never received the necessary information*." *See* ECF No. 68 at p. 15 (emphasis in original).

- "it is not clear that any of the Individual Defendants could have discovered that cost estimates were not going to be realized *no matter how closely they monitored* the Company's Lake City operations given that, according to the Audit Committee's investigation, *information was withheld from them.*" *Id*. at 24, n.21.

- "*Plaintiffs ask the court to infer that the Audit Committee* and the Company's outside auditors *falsely found that the necessary information about the Lake City Contract was concealed from the Individual Defendants*. It is far more likely, however, that these individuals and entities . . . did their jobs properly and accurately concluded that the Individual Defendants did not know about the errors." *Id*. at 29.

- Plaintiffs "*allege no facts suggesting that the conclusion of the Audit Committee investigation* that information about the accounting error was withheld from DeYoung *was false.*" *Id*. at 39.

- "the Audit Committee's months-long *investigation concluded that the Individual Defendants did not know about the accounting error* related to the Lake City Contract until senior management engaged in its own review of the issue." ECF No. 72, at 11-12.

- "Lower-level employees provided detailed cost information and estimates that were *difficult for senior management*, who were not involved in the day-to-day operations at the Lake City plant, *to second guess*." *Id*. at 11.

- Defendant H. Thompson, "was not a member of either the Small Caliber Systems Division or the Defense Systems Group, and, instead, *was one of the corporate officers from whom Orbital ATK's lower-level employees inappropriately concealed*

10

*information*. The Restatement makes it clear that these corporate officers were not subject to adverse employment actions." ECF No. 82, at 11(emphasis in original).

- "Finally, the Audit Committee's months-long ***investigation concluded that lower-level employees withheld crucial information from Orbital ATK's senior officers*** (like Hollis Thompson)." ECF No. 86, at 15.

- "As to the Audit Committee investigation, Plaintiffs do not suggest that this Court should reach a different conclusion with respect to Hollis Thompson. Instead, Plaintiffs reprise their argument that this Court should disregard the Audit Committee's conclusion because an internal investigation cannot 'exonerate' defendants." (Opp. at 24-25.). *Id.*, n.17.

As a result, the Court dismissed the Individual Defendants from the fraud claims, but found, based on the wrongdoing of the lower-level managers, that scienter was sufficiently alleged as to the Company. ECF Nos. 75, 76, and 99. Notably, as to the Section 14(a) claims, Defendants argued, as a matter of law, that scienter was an element, but the Court rejected the argument and found negligence was sufficient to establish liability and denied the motion to dismiss as to the Individual Defendants and Company. ECF No. 76. Having lost the legal issue, Defendants will now make the same factual arguments in defending the negligence claims as they made in defending the fraud claims. For example, the Individual Defendants will claim the same purported findings from the Internal Investigation show they were not negligent because information was concealed from them; the information concealed was "crucial" to identifying the losses; they could not have discovered the accounting fraud no matter how closely they monitored Lake City; and that the Plaintiffs have "no facts" to call into doubt the Internal Investigation findings in defending the pending negligence claims.

Defendants' intention is clear as they have asserted that they will rely on the Internal Investigation to support a number of purported "affirmative" and other defenses. *See* Second Responses to Interrogatories, No. 14 (addressing the basis for and facts supporting each and every

11

defense and counterclaim asserted in Defendants' answer).  For example, Defendants cite to the Internal Investigation's findings in support of six affirmative defenses claiming:

- lack of knowledge/good faith (Aff. Def. Nos. 5, 6, 13);

- lack of scienter (Aff. Def. No. 7);

- "reasonable reliance upon" others (Aff. Def. No. 32); and

- conduct of others (Aff. Def. No. 21).

### C. The Company Is Attempting to Refute and Recast the Internal Investigation Findings Regarding the Fired Employees to Escape Liability

As noted above, in seeking to dismiss the fraud claims at the pleadings stage and the negligence claims at summary judgment or trial against the Individual Defendants, their main defense is to argue that the lower level managers who were fired for engaging in "inappropriate" conduct suppressed all "crucial" information, making it impossible to detect the accounting fraud. *See, e.g.*, ECF No. 68, at 10, 21.  However, in seeking to evade liability for the senior managers by arguing they were victims of fraudulent behavior by subordinates, Defendants painted themselves into a corner as to corporate liability because the Court held the scienter of the lower level managers can be attributed to the Company.  *See* ECF No. 99, at 26.

In an attempt to escape the logical outcome of their arguments, Defendants are now making the contradictory arguments that although the Internal Investigation accurately found the lower level managers concealed the crucial information required for senior management to catch the accounting misstatements such that the Individual Defendants were not negligent, the lower level managers basically never should have been fired because they did not really conceal it but honestly believed the numbers but themselves received bad information from a faulty computer system.  In doing so, they are keeping the Internal Investigation findings they believe help the Individual Defendants, while trying to undermine and water down the Internal Investigation findings that hurt the Company

12

and Defendants.  For example, Plaintiffs served Interrogatories asking for exactly who suppressed information, who it was suppressed from, and what was the nature of the information that made it so crucial to detection of the Lake City losses.[6]  In contrast to the Internal Investigation findings that the fired individuals suppressed and ignored negative information and engaged in inappropriate conduct as a result of a bias to hit a targeted profit rate, all of which, as the Court found, support a finding of scienter,[7] Defendants Interrogatory Responses now disavow such language and claim "the Company is not aware of any evidence that any Lake City personnel falsified the EBIT number or intentionally misled any corporate-level personnel" and argue the good faith of those individuals in claiming the "Lake City personnel were confident that the cost reductions. . . were possible . . ."  *See* Ex. B at 3.  In fact, Defendants now claim those individuals were misled by a software program and state the "Lake City personnel were operating with incomplete cost information."  *Id.*  This reversal calls into question whether the individuals should have been fired at all, much less in such a public manner that undoubtedly harmed their future employment prospects.  In any event, it makes it free from doubt that the Internal Investigation will be critical evidence used by both parties in this case.  To avoid creating a misleading impression through Defendants telling only half the story, Plaintiffs need full discovery regarding matters such as the scope of the Internal Investigation, the individuals directing the Internal Investigation, the information that supported its findings and any information that was not considered, discounted, or ignored.

---

[6]   Unfortunately, Defendants refused to name the names of such individuals or identify the information that was suppressed which is the subject of a simultaneously filed motion to compel.

[7]   For example, the Company publicly disclosed the "personnel at the Small Caliber Systems Division and, in some cases, Defense Systems Group, acted inappropriately" and that these fired individuals engaged in conduct including suppressed certain negative information, ignored and failed to follow up on cost overruns, overrode internal controls, engaged in the "inappropriate use [of] management reserves" and did so as a result of pressure to achieve cost savings and maintain a targeted profit rate.  *See* Amended 2015 Form 10-KT.

13

**D.      Defendants Disclosed Information Regarding the Internal**
**Investigation to Third Parties**

While Defendants are seeking to withhold information and documents from Plaintiffs

regarding the Internal Investigation, they have selectively disclosed it to others, including the SEC,

which has an ongoing investigation into the Restatement, and Northrop, which sought information

regarding the Restatement as part of its due diligence in seeking to acquire Orbital ATK.  Orbital

ATK has orally disclosed information regarding the Internal Investigation to both the SEC and had

discussions regarding the Restatement with Northrop.  To hinder Plaintiffs' effort to challenge the

privilege assertion, however, Defendants have refused to provide any details on what documents

were provided to Northrop, what information was orally disclosed to Northrop or the SEC, and have

only stated that, as of now, none of the documents withheld from Plaintiffs were provided to the

SEC.

Northrop and Orbital ATK have been engaging in due diligence as part of the acquisition

process.  In Orbital ATK's Proxy, it disclosed that on July 11, 2017, the Company met with

Northrop to provide an overview of its business, including, among other things, "Orbital ATK's

recent financial restatement."  *See* October 25, 2017 Schedule 14A Proxy, at 31.  The Company

further noted how on July 13, 18, and 19, 2017, Orbital ATK provided written responses to Northrop

Grumman's diligence requests that were made during and subsequent to the July 11, 2017, meeting.

*Id.*  On a September 18, 2017, conference call, Northrop Corporate VP & CFO Kenneth Bedingfield

referenced Northrop's "due diligence" of Orbital ATK's cash flow assumptions in response to

question about Orbital ATK's "receivables balance" being an "opportunity for cash."  *See* Ex. E.

Bedingfield stated, "we certainly spent a lot of time in trying to get comfortable with the cash flow

assumptions and certainly looking at the working capital.  And as we did that, we were able to get

14

very comfortable, I would say, with the assumptions and the plans that Orbital ATK has in place."
*See Id*.

    **E.**    **Defendants' Refusal to Produce Documents or Information Regarding the Investigation to Plaintiffs**

On March 6, 2018, Plaintiffs served RFPs on Defendants seeking documents relating to the Internal Investigation, including, but not limited to documents relating to the Internal Investigation's commencement and scope and documents forming the basis for any findings and conclusions resulting from the Investigation.  *See e.g*, RFPs No. 16. That same day, Plaintiffs served Interrogatories, seeking, among other things, the identity of persons involved in the Internal Investigation, witnesses interviewed, and other matters.  *See e.g*., Interrogatories No. 12(c).  On March 22, 2018, Defendants served their objections to the RFPs.[8] *See* Ex. A.  On April 6, 2018, and April 12, 2018, respectively, Defendants served Orbital ATK's First and Second Responses to the Interrogatories.  *See* Exs. B and C.

The parties have engaged in several meet and confers regarding the privilege assertion but have reached an impasse.  Defendants have refused to provide any specifics regarding their sweeping claim of "work product or other applicable privilege," have refused to provide sufficient details regarding their sharing of any Internal Investigation documents or information to third parties, but have also made clear through their Interrogatory Responses and "Affirmative" defenses that they will use information concerning and arising from the Internal Investigation to establish "good faith" and other defenses to the negligence claims against the Individual Defendants and with regard to the fraud claims against the Company.  Defendants have not provided any affidavits, or declarations in

---

[8]    On April 24, 2018, Defendants served Further Responses/Objections to Plaintiffs' First RFPs, which merely consisted of "a summary description of the limits and methodology that have controlled Defendants' search for and production of responsive and relevant materials".  Defendants have yet to provide responses to the RFPs consistent with the requirements of Fed. R. Civ. P. 34.

support of their purported privilege objections and have yet to agree to provide a detailed line-by-line privilege log.  ECF No. 133.  The date for "substantial completion" of Defendants' document production is May 1, 2018, and fact discovery closes July 9, 2018, and Plaintiffs can no longer wait for documents and information regarding the Internal Investigation.  Moreover, given that it took some time to schedule the May 8, 2018, 30(b)(6) deposition, any further delay by Defendants in producing a witness as to Topic 1 would further prejudice Plaintiffs.

## IV.    ARGUMENT

### A.    Legal Standard

As the Fourth Circuit has recognized, "discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003).  Cases are to be decided on their merits, and therefore "[c]ourts disfavor assertions of evidentiary privilege because they shield evidence from the truth-seeking process." *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 748 (E.D. Va. 2007).  To that end, assertions of evidentiary privilege are narrowly and strictly construed so that the privilege is "strictly confined within the narrowest possible limits consistent with the logic of its principle." *Id.* (citing *In re Grand Jury Proceedings*, 727 F.2d 1352 (4th Cir. 1984)).

### B.    Information and Documents Regarding the Internal Investigation Are Not Privileged in this Case

The documents and information relating to the Internal Investigation in this case are not privileged because Defendants failed to meet their burden of establishing privilege and the Internal Investigation was conducted for business reasons.

#### 1.    Defendants Ignored and Failed to Meet Their Burden of Establishing the Information and Documents Are Privileged

A party seeking to withhold information that may skew the truth finding process bears a heavy burden of establishing privilege.  To that end, Fed. R. Civ. P. 26(b)(5)(A)(ii) requires a party

withholding documents to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

With regard to the work product doctrine, the proponent must demonstrate the documents were prepared "because of" the prospect of litigation and show the absence of another "driving force" behind their creation. *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992) (reversing and remanding denial of motion to compel and holding "materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3).") Thus, "the party asserting work-product protection bears the burden to show that the 'work product' was prepared in anticipation of litigation." *Conseco*, 477 F. Supp. 2d at 748. "In order to meet this burden, the proponent of the privilege must 'come forward with a specific demonstration of facts supporting the requested protection,' preferably through affidavits from knowledgeable persons." *Id.* (finding proponent did not to meet the "but for" standard required by *National Union* to protect a memorandum, where the privilege log failed to provide detailed information such as the date the memorandum was created and neither the proponent or the drafter of the memorandum provided an affidavit with supporting details).

Likewise, a party asserting the attorney-client privilege also must meet its burden to demonstrate its applicability. *Id.* The proponent must establish "not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived." *In re Grand Jury Subpoena*, 341 F.3d 333, 335; *Williams v. Big Picture Loans, LLC*, No. 3:18-mc-1, 2018 U.S. Dist. LEXIS 43775, at *23 (E.D. Va. mar. 16, 2018). The attorney-client privilege applies only if "the communication relates to a fact of which the attorney

17

was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily [legal services]." *Conseco*, 477 F. Supp. 2d at 750. "'[T]he privilege is not absolute,' but instead must be "strictly confined within the narrowest possible limits consistent with the logic of its principle."' *See Williams*, 2018 U.S. Dist. LEXIS 43775, at *19. As a result, "[i]t is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by affidavit . . . an improperly asserted privilege is the equivalent of no privilege at all." *Conseco*, 477 F. Supp. 2d at 750-51 (granting motion to compel deposition answers, finding proponent failed to allege non-waiver where it submitted only a conclusory statement that the "communications" at issue were protected by the attorney client privilege.) A conclusory allegation that a communication is protected by attorney-client privilege is inadequate to meet this burden. *Id.*; *Williams*, 2018 U.S. Dist. LEXIS 43775, at *26 (finding proponent failed to allege sufficient facts against waiver of attorney-client privilege in its privilege log, where the privilege log represented that proponent was relaying confidential information to a third party accountant and the "language does not imply extensive, or, indeed, any, involvement by [proponent's] attorneys.").

Here, the objections asserted in response to the discovery requests were conclusory and vague, and Defendants have refused to agree to produce a line-by-line privilege log or any detailed factual support to demonstrate the information is privileged and any privilege has not been waived. Failing to do what is necessary to protect privilege will result in relinquishment of any right to claim privilege. *Conseco*, 477 F. Supp. 2d at 750-51.

The court's order in *Twigg*, 2007 U.S. Dist. LEXIS 14669, at *26-27 is instructive. Like this case, defendants in *Twigg* provided only a mere general objection in their discovery responses that the requested information was "attorney-client privilege, attorney work product protection and materials prepared in anticipation of litigation." *Id.* at 26. The court held that defendants waived

18

both the work product and attorney-client privileges because they did not "provide any privilege log or otherwise specify in any manner why the material sought was protected from discovery." *Id*. Specifically, the Court found that defendants' response was "plainly insufficient under both the Federal and Local Rules." *Id*. Like *Twigg*, the Defendants conclusory assertion of privilege in this case amounts to an unenforceable general objection, and thus any potential claim of privilege has been waived.

In an effort to prolong the filing of this motion to compel, Defendants have just recently provided a vague description of certain categories of documents related to the Internal Investigation over which Defendants are asserting privilege to (*i.e.*, memoranda created in connection with the Internal Investigation that they contend qualify as protected work product).  But, Defendants have failed to provide specifics as to what categories of documents (other than vaguely claiming that not "all" preexisting documents gathered in connection with the Internal Investigation are privileged) related to the Internal Investigation are *not* privileged.  Moreover, Defendants still refuse to agree to provide a line-by-line privilege log, which would ultimately remedy the situation.  Hiding the ball falls far short of the specificity required by the Fourth Circuit, its district courts, and Fed. R. Civ. P. 26(b)(5)(A)(ii), for a proponent to meet its burden of establishing privilege.  Based on this failure alone, Defendants' privilege claims should be rejected and the motion to compel should be granted.

### 2.   The Internal Investigation Documents Were Created for Business Purposes, Not In Anticipation of Litigation

The Internal Investigation in this case was done primarily for business reasons and would have been done even absent any threatened or actual litigation.  Courts find that documents are created in anticipation of litigation if "(1) the [party] faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation, and (2) the

work product 'would not have been prepared in substantially similar form but for the prospect of that litigation.'" *Williams*, 2018 U.S. Dist. LEXIS 43775, at *29; *Conseco*, 477 F. Supp. 2d at 748.

Here, information and documents regarding the Internal Investigation clearly would have been prepared in substantially the same form even absent any threatened litigation. As the Company admitted in the Amended Form 10-KA, the Internal Investigation was launched prior to any lawsuits in July 2016 and for the business purpose of determining "the circumstances surrounding the misstatements in the accounting for the Lake City Contract and related matters." It was not initiated because of the threat of litigation. Moreover, the Internal Investigation's breadth spanned beyond the Lake City Contract, and included "a comprehensive and intensive review of ***all*** relevant material contracts throughout the Company." *Id.* Finally, the Internal Investigation was initiated five weeks ***before*** the August 10, 2016 Restatement announcement and the filing of the first class action complaint in this matter. *See* Ex. B. It is therefore temporally impossible for the information and documents regarding the Internal Investigation to have been created "because" of pending litigation.

Defendants' launching of an investigation post-Restatement is not unique, and as a result Courts routinely find documents regarding the investigation as non-protected work-product. *See Royal Ahold*, 230 F.R.D. at 435 (investigative memorandum prepared by outside counsel was not protected work product despite the fact that the company was "[u]ndoubtedly . . . also preparing for [class action] litigation," regarding its restatement because "the investigation would have been undertaken even without the prospect of preparing a defense to a civil suit."); *In re Willkie Farr & Gallagher*, No. M8-85(JSM), 1997 U.S. Dist. LEXIS, at *5-6 (S.D.N.Y. Mar. 14, 1997) ("The investigation was necessary to maintain the integrity of the financial reports of a publicly-held corporation and the documents were prepared primarily for business purposes."); *In re Kidder, Peabody Sec. Litig.*, 168 F.R.D. 459, 465 (S.D.N.Y. 1996) (finding that work product privilege did

not apply to factual summaries of statements made by interviewees as part of an internal investigation by outside counsel because the company "would have hired outside counsel to perform such an inquiry even if no litigation had been threatened at the time" given the magnitude and critical nature of the business crisis).

In other words, regardless of the prospect of litigation, it is clear that the Internal Investigation materials would have been prepared anyway, in the ordinary course of business and they are not entitled to work product protection.

### C.     Even Assuming Any of the Documents and Information Regarding the Internal Investigation Were Privileged, Any Privilege Has Been Waived

Privilege claims are not absolute.  In this case, Defendants have opened the door to full discovery of the Internal Investigation by attempting to use the information as a sword and shield in this case and by disclosing information to the SEC and Northrop.

### 1.     Defendants Have Waived Any Purported Privileges Over the Internal Investigation By Using It As Both A Sword and Shield

Subject-matter waiver stems from "situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. E. Evid. 502(a).  Defendants have waived any purported privilege with regard to the subject matter of the Internal Investigation by affirmatively putting the Internal Investigation and its findings at issue in its SEC filings and in this Action. *See In re Martin Marietta Corp.*, 856 F.2d 619, 624 (4th Cir. 1988) (finding "materials at issue in the present case are either information revealed to others or details underlying the data that was published . . . do not enjoy an attorney-client privilege from disclosure").  Where a party intends to use otherwise protected privileged information "as a sword or shield to affect the fact-finding process" the work produce doctrine and attorney-client privilege are waived. *Twigg*, 2007 U.S. Dist.

21

LEXIS 14669, at *23.  Further, where, as in this case, a party relies on otherwise privileged documents as part of its defense it waives privilege as to the subject matter of the disclosure.  *See Wadler v. Bio-Rad Labs., Inc.*, 212 F. Supp. 3d 829, 851-54 (N.D. Cal. 2016) (finding waiver of attorney-client privilege where defendant put information in the public record in support of its litigation defense); *Twigg*, 2007 U.S. Dist. LEXIS 14669, at *24 ("By asserting the good faith defense provided by the FMLA, Defendant waived any work product protection and attorney-client privilege it had regarding its good faith compliance with the FMLA since the material goes to the heart of the defense.").

Here, Defendants have put the findings, scope, and their role in the Internal Investigation at issue in this case.  Notably, the Company admitted that the Internal Investigation was conducted by the Audit Committee "in consultation" with senior management, who are the very Individual Defendants in this case.  *See* Amended 2015 Form 10-KT.  In other words, Defendants essentially conducted the Internal Investigation that concluded they did nothing wrong.  *See In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1246 (N.D. Cal. 2008) ("[O]fficers and directors are not exonerated when their own audit committee finds nothing wrong in the company's accounting practices. To rule otherwise would create a huge fox-guards-the-chicken-house loophole in our private securities law enforcement.").  Here, discovery regarding the scope of the Investigation, the role of the Defendants in supervising and conducting the Investigation, and information considered, or not considered, are all fair game for cross examination and fair response to the purported significance of the Internal Investigation's findings.  Moreover, as discussed *supra*, given that the Court denied the motion to dismiss in part based on the explicit findings of intentional wrongdoing by the fired employees, Defendants' current attempt to walk-back those statements makes discovery of the underlying basis for those findings even more critical.

22

The Company publicly disclosed its Internal Investigation findings to assure investors that the underlying issues that caused the Restatement were isolated to the Lake City Contract and had been sufficiently remediated. *See supra* at §II.B. Moreover, Defendants offensively relied on those findings, prepared in consultation with the Defendants, throughout the briefing on the motion to dismiss and have stated they will continue to rely on them to support "affirmative" defenses and to disprove the scienter of any person whose conduct can be attributed to the Company acted with scienter. *See Id.*; *see, e.g.*, Answer of Defendants Orbital ATK, Inc., David W. Thompson, Garrett E. Pierce, Blake E. Larson, and Hollis M. Thompson to Plaintiffs' Amended Complaint for Violations of the Federal Securities Laws [ECF No. 115] at 77, Affirmative Defense No. 21 ("any misstatements or omissions by Defendants were due to the conduct of employees and/or others whose knowledge and/or conduct cannot be imputed to Responding Defendants and for whose knowledge and/or activities the Responding Defendants are not liable."). Because Defendants have put the Internal Investigation at issue, any purported privilege to the Internal Investigation's subject matter has been waived.

This case is also like *Royal Ahold*, 230 F.R.D. at 437 where plaintiffs sought production of a memo prepared by outside counsel as part of an internal investigation into the Company's restatement. *Id.* Like here, defendants disclosed the information obtained from the investigation in its SEC filings to assure the market and regulators that it had remediated its accounting irregularities. *Id.* In compelling defendants to produce the memo of underlying interviews that Court held:

> to the extent that Royal Ahold offensively has disclosed information pertaining to its internal investigation in order to improve its position with investors, financial institutions, and the regulatory agencies, it also implicitly has waived its right to assert work product privilege as to the underlying memoranda supporting its disclosures.

*Id.* Similarly, Defendants are attempting to "improve their position" in this litigation by selectively disclosing and relying on information from the Internal Investigation while withholding full

23

discovery into any facts that might undermine Defendants' position.  The facts of this case are even stronger than *Royal Ahold* in establishing subject matter waiver because, in addition to publicly disclosing the findings to improve its position with investors, financial institutions, its acquirer Northrop, and the SEC which is investigating it, Defendants are seeking to use the investigation findings to escape liability through "affirmative" defenses.

It is clear both under Fed. R. Evid. 502 and the cases cited herein,[9] that, having offensively used the Internal Investigation and its findings (and stated an intention to continue doing so), Defendants cannot hide from Plaintiffs information that might undermine those defenses by showing, for example, that the Defendants skewed the results of the Investigation, or failed to consider information which contradicted the publicly stated findings.  *See also*, *Granite Partners, L.P. v. Bear, Stearns & Co.*, 184 F.R.D. 49, 54-55 (S.D.N.Y. 1999) (holding the work product privilege may be waived if the party seeking to assert the privilege has already used the contested documents "offensively" or in a way that implicitly waives the privilege); *United States v. Berkeley Heartlab, Inc.*, No. 9:14-cv-00230-RMG, 2017 U.S. Dist. LEXIS 51691, at *12-13 (D.S.C. Apr. 5, 2017) (finding affirmative defense of advice of counsel waived both work product and attorney-client privilege as to all documents regarding Office of Inspector General Investigation about the

---

[9]   The Federal Rules of Evidence are replete with protections to prevent parties from attempting one-sided presentations that create the possibility for misleading the fact-finder.  *See, e.g.*, Fed. R. Evid. 102 ("These rules should be construed so as to administer every proceeding fairly . . . to the end of ascertaining the truth and securing a just determination"); Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction . . . of any other part . . . that in fairness ought to be considered."); Fed. R. Evid. 404(a)(2) (excluding character evidence in certain situations except when defendant opens the door to rebuttal evidence of the same); Fed. R. Evid. 502(a) (providing that disclosure of certain information operates as waiver of privilege for other when the information "ought in fairness to be considered together"); Fed. R. Evid. 806 (allowing non-testifying declarant's credibility to be attacked "by any evidence that would be admissible . . . if the declarant had testified."); Fed. R. Evid. 902(11) (permitting use of business record certification so long as adverse party given reasonable notice "so that the party has a fair opportunity to challenge them")

24

conduct at issue in the case).  Because Defendants have repeatedly made clear their intent to rely on information regarding the Internal Investigation to rebut Plaintiffs' allegations, Plaintiffs have a substantial need for this information.

Thus, to the extent the materials were privileged, Defendants' public disclosure of the Internal Investigation's findings and affirmative use of those findings in defending this litigation operate as a subject matter waiver and Plaintiffs' motion to compel should be granted.

### 2. Any Purported Privilege Has Been Waived By Providing Information Orally to the SEC and Northrop

Defendants have failed to meet their burden to demonstrate that any privilege has not been waived by providing information to the SEC and Northrup.  *See e.g.*, *Twigg*, 2007 U.S. Dist. LEXIS 14669, at \*26-27.  It is well established that corporations cannot invoke attorney-client privilege or work product protection for information and material voluntarily provided to the government or other third parties.  *In re Royal Ahold.*, 230 F.R.D. at 437; *see also Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1418 (3d Cir. 1991) ("by disclosing documents to the SEC and to the DOJ, [the privilege holder] waive[s] both the attorney-client privilege and the work-product doctrine with respect to those documents" as against all other adversaries.); *see also Luna*, 2017 U.S. Dist. LEXIS 155343, at \*2 (ordering production of interview memoranda and auditor workpapers created in connection with defendant's audit committee's investigation because defendant had waived any work-product or attorney-client privilege by presenting its findings to the SEC and publishing the conclusions of its audit committee's investigation in a press release); *In re Synco ERISA Litig.*, 229 F.R.D. 636, 644-45 (C.D. Cal. 2005) (granting motion to compel documents that company provided to government agencies, including due diligence reports, internal investigation documents, in house counsel memorandum and legal analysis).

Moreover, Defendants cannot avoid waiver by disclosing orally to third parties information relating to the Internal Investigation while seeking to withhold the same information contained in documents simply because copies of those documents were not provided. *See e.g.*, *SEC v. Vitesse Semiconductor Corp.*, No. 10 Civ, 9239 (JSR), 2011 U.S. Dist. LEXIS 77538, at *10 (S.D.N.Y. July 14, 2011) (granting motion to compel production of third party's handwritten notes taken during its internal investigation that were orally summarized to the SEC, despite the existence of a non-waiver argument).

Here, Defendants orally disclosed information regarding the Investigation with third parties. Defendants initially stated that they orally shared information regarding the Internal Investigation with the SEC, but refused to confirm whether that information was of the same type they are withholding here.   However, just hours before the deadline to file this motion, Defendants confirmed that they shared "protected" information with the SEC under a confidentiality agreement. However, it is irrelevant that the information was subject to confidentiality because disclosure to the SEC operates as a waiver and the same information must be disclosed to Plaintiffs. Orbital ATK has publicly stated that it orally discussed the Restatement with Northrop, and that it responded to requests for production leading up the acquisition.  Moreover, Northrop generally discussed its due diligence efforts regarding Orbital's receivables and cash position on a conference call.  Likeiwse, any information disclosed to Northrop is waived.

Defendants cannot escape this result (which unduly complicates this motion) by refusing to state what information was orally disclosed, and refusing to state whether documents were provided to Northrop or whether documents will be provided to the SEC in the future.  Due to their vague objections to the discovery requests and their refusal to provide this information upon request, Defendants fail to meet their burden of establishing non-waiver to sustain the claim of privilege. *See*

26

*Conseco*, 477 F. Supp. 2d at 748 ("proponent of a privilege must 'come forward with a specific demonstration of facts supporting the requested protection'"). Thus, all information disclosed, orally or in writing, to the SEC and Nothrop has must be disclosed to Plaintiffs also.

## V.   CONCLUSION

For the reasons set forth above, the Court should grant this motion to compel, overrule Defendants' objection to producing information and documents regarding the Internal Investigation on work product and attorney client privilege grounds, and require Defendants to produce documents and responses to Plaintiffs' RFP No. 16, Interrogatories Nos. 8 and 12(c) (and any additional discovery relevant to the Internal Investigation) and to provide a 30(b)(6) witness prepared to discuss Topic 1 at the upcoming May 8, 2018, deposition.

DATED:  April 27, 2018                    THE OFFICE OF CRAIG C. REILLY
                                          CRAIG C. REILLY, VSB #20942


_____
                                          CRAIG C. REILLY

                                          111 Oronoco Street
                                          Alexandria, VA  22314
                                          Telephone:  703/549-5354
                                          703/549-2604 (fax)
                                          craig.reilly@ccreillylaw.com

                                          *Liaison Counsel*

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)

27

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ
FRANK RICHTER
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN C. HERMAN
PETER M. JONES
Monarch Tower, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
MAUREEN E. MUELLER
KATHLEEN B. DOUGLAS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

*Lead Counsel for Plaintiff*

VANOVERBEKE MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

*Additional Counsel for Plaintiff Wayne County
Employees' Retirement System*

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 27, 2018, I filed the foregoing pleading or paper through the

Court's CM/ECF system, which sent a notice of electronic filing to all registered users:

*/s/ Craig C. Reilly*

Craig C. Reilly, Esq.
VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-5355
EMAIL craig.reilly@ccreillylaw.com
*Liaison Counsel for Lead Plaintiff*

29

1422528_1