# EXHIBIT D

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | | |
|---|---|---|
| STEVEN KNURR, Individually and on Behalf of All Others Similarly Situated, | ) ) | Civil Action No. 1:16-cv-01031-TSE-MSN |
| | ) | |
| Plaintiff, | ) | <u>CLASS ACTION</u> |
| | ) | |
| vs. | ) | **PLAINTIFFS' NOTICE OF FEDERAL** |
| | ) | **RULE OF CIVIL PROCEDURE 30(b)(6)** |
| ORBITAL ATK, INC., *et al.*, | ) | **DEPOSITION OF ORBITAL ATK, INC.** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

TO:     All Counsel

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure and Local Civil Rule 30(H), Plaintiffs will take the deposition upon oral examination of Orbital ATK, Inc. ("Orbital ATK").  The deposition will take place on Tuesday, April 17, 2018 at 9:30 a.m. at The Office of Craig C. Reilly, 111 Oronoco Street, Alexandria, VA  22314.

The deposition will be taken before a qualified, certified shorthand reporter or other officer authorized by law to administer oaths and will continue on the day noticed and for additional days, if necessary, from day to day, excluding Saturdays, Sundays and holidays, until completed.  The deposition, upon oral examination, shall be recorded by videotape, sound and stenographic means, pursuant to Rule 30(b)(2) of the Federal Rules of Civil Procedure, and will concern topics identified in the attached Schedule A.

As required by Rule 30(b)(6) of the Federal Rules of Civil Procedure, Orbital ATK shall designate one or more officers, directors, managing agents, employees, or other persons who

consent to testify on its behalf to the extent of information known or reasonably known to Orbital ATK or any of its agents concerning the following deposition topics on which examination is requested. At least one of the persons designated to testify as to each topic should have knowledge of the documents referring or relating to the topic and the identity of the persons with knowledge of the topic.

PLEASE TAKE FURTHER NOTICE THAT Orbital ATK shall provide the name and titles of the designees to Plaintiffs at least 10 days prior to the deposition and set forth the subject matter for which each person will testify. Each such designee produced to testify has an affirmative duty to have first reviewed all documents, reports, and other matters reasonably known to Orbital ATK, along with familiarizing themselves with all potential witnesses known or reasonably available to provide informed, binding answers at the deposition.

DATED: April 4, 2018

ROBBINS GELLER RUDMAN
 & DOWD LLP
JAMES E. BARZ
FRANK A. RICHTER

_____
                JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)

ROBBINS GELLER RUDMAN
 & DOWD LLP
MAUREEN E. MUELLER
KATHLEEN B. DOUGLAS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
JOHN C. HERMAN
PETER M. JONES
3424 Peachtree Road, N.E., Suite 1650
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)

***Lead Counsel for Plaintiff***

THE OFFICE OF CRAIG C. REILLY
CRAIG C. REILLY, VSB #20942
111 Oronoco Street
Alexandria, VA  22314
Telephone:  703/549-5354
703/549-2604 (fax)
craig.reilly@ccreillylaw.com

***Liaison Counsel***

VANOVERBEKE MICHAUD &
   TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

***Additional Counsel for Plaintiff Wayne County
Employees' Retirement System***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 4, 2018, a true and correct copy of the foregoing was

served via e-mail on all counsel of record.

JAMES E. BARZ

<u>**SCHEDULE A**</u>

**I.    DEFINITIONS**

Unless stated otherwise, the terms set forth below are defined as follows:

1.      "Orbital ATK," "You," and "Your" means Orbital ATK, Inc., any of its subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, and all present and former officers, directors, employees, agents, members of the Board of Directors, attorneys, accountants, advisors, and all other persons acting or purporting to act on its behalf.

2.      "2015 Form 10-KT/A" refers to the report on Form 10-KT/A for the nine-month transition period ending December 31, 2015, filed by Orbital ATK on February 24, 2017.

3.      "Alliant" refers to Alliant Techsystems, Inc., any of its subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, and all present and former officers, directors, employees, agents, members of the Board of Directors, attorneys, accountants, advisors, and all other persons acting or purporting to act on its behalf.

4.      "Defendants" refers to Orbital ATK, Inc. and the Individual Defendants.

5.      "Deloitte" refers to Deloitte & Touche LLP and any of its members (as defined by 0.400.12 and 0.400.18, formerly ET §92.07 and ET §92.11, respectively, of the American Institute of Certified Public Accountants Code of Professional Conduct, adopted January 12, 1988 and renumbered effective December 15, 2014) and any of its predecessors, successors, parents, subsidiaries, divisions, partnerships and branches; its international, foreign, national, regional and local offices; all present or former officers, directors, partners, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

6.      "Document(s)" is intended to be interpreted in the broadest possible sense under Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence

and includes, without limitation, all electronic data, databases and all communications or information which are stored or retrievable or recorded in any manner, and also includes, without limitation, any writing (as "writings" is defined in Fed. R. Evid. 1001) or other record of information or images, including, without limitation, print, handwriting, photographs, videotapes, films and recordings (as "recordings" is defined in Fed. R. Evid. 1001).  The term "document(s)" also includes, without limitation, drafts or non-identical copies of any document.

7.      "Exchange Ratio" refers the ratio determined by Alliant and Orbital Sciences for converting Orbital Sciences common stock to Orbital ATK common stock in connection with the Merger.

8.      "Individual Defendants" refers to David W. Thompson, Garret E. Pierce, Blake E. Larson, Hollis M. Thompson, and Mark W. DeYoung, and their agents, attorneys, advisors, accountants, and all other persons acting or purporting to act on their behalf.

9.      "Internal Investigation" refers to the Company's internal investigation of the circumstances, surrounding the misstatements in the accounting for the Lake City Contract and related matters, referred to in the Company's 2015 Form 10-KT/A.

10.     "Joint Proxy Statement" refers to the Joint Proxy Statement/Prospectus filed with the SEC on December 17, 2014.

11.     "Lake City" refers to the Lake City Army Ammunition Plant in Independence, Missouri.

12.     "Lake City Contract" refers to the long-term contract awarded to Alliant in September 2012, and later retained by Orbital ATK, to manufacture small caliber ammunition for the U.S. Army at Lake City.

13.     "Merger" refers to the merger of Alliant Techsystems, Inc. and Orbital Sciences Corporation on or around February 9, 2015.

14.     "Northrup Grumman" means Northrup Grumman Corporation, any of its subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, and all present and former officers, directors, employees, agents, members of the Board of Directors, attorneys, accountants, advisors, and all other persons acting or purporting to act on its behalf.

15.     "Orbital Sciences" means Orbital Sciences Corporation, any of its subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, and all present and former officers, directors, employees, agents, members of the Board of Directors, attorneys, accountants, advisors, and all other persons acting or purporting to act on its behalf.

16.     "Person" or "persons" refers to natural persons, proprietorships, governmental agencies, corporations, partnerships, trusts, joint ventures, groups, associations, organizations and all other entities.

17.     "PwC" refers to PricewaterhouseCoopers LLP and any of its members (as defined by 0.400.12 and 0.400.18, formerly ET §92.07 and ET §92.11, respectively, of the American Institute of Certified Public Accountants Code of Professional Conduct, adopted January 12, 1988 and renumbered effective December 15, 2014) and any of its predecessors, successors, parents, subsidiaries, divisions, partnerships and branches; its international, foreign, national, regional and local offices; all present or former officers, directors, partners, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

18.     "Restatement" refers to Orbital ATK's restatement of its financial statements for the nine-month 2015 transition period, fiscal year 2015, fiscal year 2014, the quarters in the 2015

- 3 -

transition period and fiscal year 2015, and unaudited selected financial data for fiscal year 2013, which is described in Orbital ATK's 2015 Form 10-KT/A.

19.     "SEC" refers to the United States Securities and Exchange Commission, its national, regional and branch officers, and its commissioners, directors, administrators, branch chiefs, attorneys, accountants, investigators, paralegals, and staff.

20.     "Specified Defense Systems Employees" refers to the "members of the Defense Systems Group leadership" referenced on page 142 of the 2015 Form 10-KT/A.

21.     "Specified Small Caliber Systems Employees" refers to the "[c]ertain Small Caliber Systems Division personnel" referenced on page 142 of the 2015 Form 10-KT/A.

22.     The singular shall include the plural, and the disjunctive shall include the conjunctive, and vice versa.

23.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

24.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

25.     The term "including" means "including without limitation" or "including, but not limited to."

26.     The terms "refer," "relate," "regarding," "referring," or "relating" are to be given their ordinary meaning and refer to all documents, communications or things which explicitly or implicitly, in whole or in part, were received in conjunction with, or were generated as a result of, the subject matter of the request, including, documents, communications or things that reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate,

- 4 -

analyze, review, report on, comment on, impinge upon or impact the subject matter of the request.

## II.    TOPICS

TOPIC NO. 1:

The Internal Investigation, including:

(a)    the commencement and scope of the Internal Investigation, including the identity of all Orbital ATK personnel, or any third parties, involved;

(b)    the individuals interviewed during the Internal Investigation;

(c)    discussions with any third parties, including Deloitte, PwC, Northrup Grumman, the SEC, the U.S. Government, or any federal, state, or regulatory agency regarding the Internal Investigation;

(d)    all documents regarding the Internal Investigation that were provided to or whose contents were otherwise shared with any third parties, including Deloitte, PwC, Northrup Grumman, the SEC, the U.S. Government, or any federal, state, or regulatory agency, including when they were provided or shared; and

(e)    any remedial actions taken by Orbital ATK as a result of the Internal Investigation.

TOPIC NO. 2:

The "voluntary self-report[ing] to the SEC" referred to in the 2015 Form 10-KT/A, including the identity of the Orbital ATK personnel involved in gathering or providing such information and the information provided.

TOPIC NO. 3:

The determination of the Exchange Ratio, including, the analysis, assumptions, and valuations that were considered or that formed the basis of the Exchange Ratio, including:

    (a)  the identity of Alliant and Orbital Sciences personnel, or any third parties, involved in the determination of the equity split of the combined company or the Exchange Ratio;

    (b)  the bases for Merrill Lynch, Pierce & Smith Incorporated's ("BofA Merrill Lynch") opinion that the "Exchange Ratio provided for in the merger was fair, from a financial point of view, to ATK," as discussed in the Joint Proxy Statement, including documents, financial information, data or other information provided by You to BofA Merrill Lynch; and

    (c)  the bases for Citigroup Global Markets Inc.'s ("Citi") opinion that the "Exchange Ratio was fair, from a financial point of view, to the holders of Orbital common stock," as discussed in the Joint Proxy Statement including, documents, financial information, data or other information provided by You to Citi.

TOPIC NO. 4:

  The resignation, departure, termination, or cessation of employment or board duties at Orbital ATK, Alliant, or Orbital Sciences of the following:

    (a)  Hollis M. Thompson and Mark W. DeYoung;

    (b)  Scott D. Chaplin, Neal S. Cohen, Dr. Antonio L. Elias, Kent Holiday, Gregory A. Jones, Mike Kahn, Stephen M. Nolan, and Christopher Voci;

    (c)  any member of "senior management," as that term is used in the 2015 10-KT/A;

    (d)  each of the Specified Defense Systems Employees;

    (e)  each of the Specified Small Caliber Systems Employees; and

       (f)     each current or former Orbital ATK, Alliant, or Orbital Sciences employee identified in Your Fed. R. Civ. P. 26(a)(1) disclosures.

TOPIC NO. 5:

The identity of the (a) "personnel at the Small Caliber Systems Division" and "Defense Systems Group" who "acted inappropriately and failed to adhere to the high standards established in the Company's policies and expected by senior management and the Board of Directors," including the identity of the "Small Caliber Systems Division personnel responsible for the inappropriate behaviors . . . [who] are no longer employed by the Company"; (b) "members of the Small Caliber Systems Division finance staff" that failed to follow up and inquire further into indicators that cost overruns were occurring; and (c) "members of the Defense Systems Group leadership" who received appropriate training, adverse compensation action and additional supervision, as reported in the 2015 Form 10-KT/A.

TOPIC NO. 6:

The determination of the Audit Committee and senior management that: "(a) there likely was a bias toward maintaining a targeted profit rate; (b) in some cases, there appears to have been inappropriate use of management reserves to maintain the targeted profit rate; (c) some members of the Small Caliber Systems Division finance staff failed to follow up and inquire further into indicators that cost overruns were occurring . . .; and (d) negative information was suppressed, and concerns at the Small Caliber Systems Division about cost overruns were not escalated appropriately to higher-level Company management or finance staff, nor were they communicated to the Audit Committee, the Board of Directors or the independent registered public accounting firms," as reported in the 2015 Form 10-KT/A.

TOPIC NO. 7:

The "negative information [that] was suppressed" and the "concerns at the Small Caliber Systems Division about cost overruns [that] were not escalated appropriately to higher-level Company management or finance staff," as reported in the 2015 Form 10-KT/A, including the identity of (a) all individuals who suppressed or failed to escalate information; and (b) the "higher-level Company management or finance staff."

TOPIC NO. 8:

The Restatement, including:

(a)      the identity, role, and responsibilities of the "Orbital ATK senior management" that initially identified "[c]ertain of the misstatements arising out of the Lake City Contract," as described in the 2015 Form 10-KT/A, including how such determination was made;

(b)      the specific "misstatements" contained in the prior period estimates of underlying contract costs estimated at completion for the Lake City Contract which, when corrected, "resulted in the Lake City Contract's estimated costs at completion exceeding the contracted revenues for the seven-year term," as described in the 2015 Form 10-KT/A;

(c)      the bases for the statement in the 2015 Form 10-KT/A that "$31.5 [million] of the loss was evident at [the Lake City] contract signing (second quarter of fiscal 2013);

(d)      the bases for the statement in the 2015 Form 10-KT/A that "$342 [million of the loss] became evident at the time of initial production (second quarter of fiscal 2014)"; and

(e)      the bases for the statements in the August 10, 2016 8-K, November 3, 2016 10-K, and 2015 Form 10-KT/A, that the Restatement reduced pre-tax operating income by

- 8 -

$400-450 million, $350 million and $373.5 million, respectively, and the reasons for the changes thereto.

TOPIC NO. 9:

The "Material Weaknesses Identified in the Original Filing" and "Additional Material Weaknesses Identified in this Form 10-K/A," including the material weaknesses at the Small Caliber Systems Division and any remediation efforts to address material weaknesses, as described in the 2015 Form 10-KT/A.

TOPIC NO. 10:

The Company's "accounting policy for measurement of forward loss provision" referred to on page 31 of the 2015 Form 10-KT/A, including:

(a)     the bases for the statement in the 2015 Form 10-KT/A that the accounting policy "resulted in the incorrect measurement of forward losses as a result of excluding general and administrative costs from the forward loss when general and administrative costs should be included in the measurement of a forward loss";

(b)     the creation and approval of the accounting policy, including the bases and supporting accounting standard for the exclusion of general and administrative costs from forward losses;

(c)     the financial impact that the exclusion of general and administrative costs had on forward losses;

(d)     the bases and supporting accounting standard for Orbital ATK's subsequent determination that its exclusion of general and administrative costs from forward losses was incorrect, as reported in the 2015 Form 10-KT/A; and

(e)     the identity, role, and responsibilities of all Alliant or Orbital ATK personnel involved in (a)-(d) above.

TOPIC NO. 11:

The bases for the statement, at the time it was made, in Orbital ATK's August 10, 2016 Form 8-K that "a forward loss provision should have been recorded for the [Lake City] Contract in fiscal 2015."

TOPIC NO. 12:

The bases for the statement in Orbital ATK's November 3, 2016 Form 8-K that "the majority of the [Lake City] Contract loss provision should [have been] recorded at the inception of the [Lake City] Contract which occurred in fiscal 2013."

TOPIC NO. 13:

The identity, role, and responsibilities of the Alliant and Orbital ATK personnel responsible for Orbital ATK's disclosure controls and procedures, including internal control over financial reporting, which Orbital ATK admitted were not operating effectively, as reported in the 2015 Form 10-KT/A.

TOPIC NO. 14:

Alliant's bid and performance under the Lake City Contract, including:

(a)     all draft or prior versions of the bid;

(b)     the amount of cost savings that were needed to record a profit on the contract; and

(c)     the identity, role, and responsibilities of all Alliant and Orbital ATK personnel involved in any of the above.

TOPIC NO. 15:

Alliant's and Orbital ATK's accounting for and recognition of revenue or costs under the Lake City Contract, including:

(a)    periodic reporting of profitability to management, periodic forecasts or projection of profitability or costs; and

(b)    the identity, role, and responsibilities of all Alliant or Orbital ATK personnel involved in any of the above.

TOPIC NO. 16:

Alliant's or Orbital ATK's efforts to track and reduce costs at Lake City or achieve the "objective cost reduction" contemplated by the Lake City Contract, including:

(a)    the identity, role, and responsibilities of all Alliant or Orbital ATK personnel involved in such efforts;

(b)    all periodic monitoring and reporting of how cost reduction initiatives were tracking from contract inception to the time of the Restatement; and

(c)    the bases for the statement by Blake E. Larson on August 10, 2016 that Lake City had achieved "one-half to two-thirds of the objective cost reduction that the bid anticipated," including any analyses, reviews, or audits, of the specific categories of expected costs and "objective cost reduction" contemplated by the bid including the specific areas where cost savings were achieved and where they came up short.

TOPIC NO. 17:

Alliant's, Orbital ATK's, and Orbital Science's accounting policies, including the implementation of the accounting policies and any changes thereto, relating to:

(a)    revenue recognition on long-term contracts;

- 11 -

(b)     estimation of contract costs at completion on long-term contracts;

(c)     forward losses on long-term contracts;

(d)     inclusion or exclusion of general and administrative costs in the measurement of forward losses;

(e)     internal controls for contract accounting; and

(f)     the identity of all Alliant, Orbital ATK, and Orbital Science's personnel involved in (a)-(e) above.

TOPIC NO. 18:

All cost cutting measures initiated by Alliant in the year leading up to the Merger including any layoffs or "adjust[ing] of workforce and … workflow" as referenced in the Alliant February 5, 2013 earnings call and their financial impact on the Lake City Contract.

TOPIC NO. 19:

The bases for David W. Thompson's statement on April 29, 2014 that You expected the Merger to result in "up to $200 million in annual revenue synergies, and up to $100 million in costs synergies which we estimate can be realized by the end of … 2016."

TOPIC NO. 20:

Orbital ATK's decision to engage PwC as the Company's independent registered public accounting firm, as described in the March 2, 2015 Form 8-K, and the decision to replace PwC with Deloitte as its independent registered accounting firm in or around May 2017, including:

(a)     all disagreements between Orbital ATK and Deloitte and/or PwC; and

(b)     the identity, role, and responsibilities of Orbital ATK, PwC, and Deloitte personnel involved in any of the above.

## <u>SCHEDULE A</u>

**I.     DEFINITIONS**

Unless stated otherwise, the terms set forth below are defined as follows:

1.      "Orbital ATK," "You," and "Your" means Orbital ATK, Inc., any of its subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, and all present and former officers, directors, employees, agents, members of the Board of Directors, attorneys, accountants, advisors, and all other persons acting or purporting to act on its behalf.

2.      "2015 Form 10-KT/A" refers to the report on Form 10-KT/A for the nine-month transition period ending December 31, 2015, filed by Orbital ATK on February 24, 2017.

3.      "Alliant" refers to Alliant Techsystems, Inc., any of its subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, and all present and former officers, directors, employees, agents, members of the Board of Directors, attorneys, accountants, advisors, and all other persons acting or purporting to act on its behalf.

4.      "Defendants" refers to Orbital ATK, Inc. and the Individual Defendants.

5.      "Deloitte" refers to Deloitte & Touche LLP and any of its members (as defined by 0.400.12 and 0.400.18, formerly ET §92.07 and ET §92.11, respectively, of the American Institute of Certified Public Accountants Code of Professional Conduct, adopted January 12, 1988 and renumbered effective December 15, 2014) and any of its predecessors, successors, parents, subsidiaries, divisions, partnerships and branches; its international, foreign, national, regional and local offices; all present or former officers, directors, partners, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

6.      "Document(s)" is intended to be interpreted in the broadest possible sense under Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence

- 1 -

and includes, without limitation, all electronic data, databases and all communications or information which are stored or retrievable or recorded in any manner, and also includes, without limitation, any writing (as "writings" is defined in Fed. R. Evid. 1001) or other record of information or images, including, without limitation, print, handwriting, photographs, videotapes, films and recordings (as "recordings" is defined in Fed. R. Evid. 1001).  The term "document(s)" also includes, without limitation, drafts or non-identical copies of any document.

7.      "Exchange Ratio" refers the ratio determined by Alliant and Orbital Sciences for converting Orbital Sciences common stock to Orbital ATK common stock in connection with the Merger.

8.      "Individual Defendants" refers to David W. Thompson, Garret E. Pierce, Blake E. Larson, Hollis M. Thompson, and Mark W. DeYoung, and their agents, attorneys, advisors, accountants, and all other persons acting or purporting to act on their behalf.

9.      "Internal Investigation" refers to the Company's internal investigation of the circumstances, surrounding the misstatements in the accounting for the Lake City Contract and related matters, referred to in the Company's 2015 Form 10-KT/A.

10.      "Joint Proxy Statement" refers to the Joint Proxy Statement/Prospectus filed with the SEC on December 17, 2014.

11.      "Lake City" refers to the Lake City Army Ammunition Plant in Independence, Missouri.

12.      "Lake City Contract" refers to the long-term contract awarded to Alliant in September 2012, and later retained by Orbital ATK, to manufacture small caliber ammunition for the U.S. Army at Lake City.

13.     "Merger" refers to the merger of Alliant Techsystems, Inc. and Orbital Sciences Corporation on or around February 9, 2015.

14.     "Northrup Grumman" means Northrup Grumman Corporation, any of its subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, and all present and former officers, directors, employees, agents, members of the Board of Directors, attorneys, accountants, advisors, and all other persons acting or purporting to act on its behalf.

15.     "Orbital Sciences" means Orbital Sciences Corporation, any of its subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, and all present and former officers, directors, employees, agents, members of the Board of Directors, attorneys, accountants, advisors, and all other persons acting or purporting to act on its behalf.

16.     "Person" or "persons" refers to natural persons, proprietorships, governmental agencies, corporations, partnerships, trusts, joint ventures, groups, associations, organizations and all other entities.

17.     "PwC" refers to PricewaterhouseCoopers LLP and any of its members (as defined by 0.400.12 and 0.400.18, formerly ET §92.07 and ET §92.11, respectively, of the American Institute of Certified Public Accountants Code of Professional Conduct, adopted January 12, 1988 and renumbered effective December 15, 2014) and any of its predecessors, successors, parents, subsidiaries, divisions, partnerships and branches; its international, foreign, national, regional and local offices; all present or former officers, directors, partners, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

18.     "Restatement" refers to Orbital ATK's restatement of its financial statements for the nine-month 2015 transition period, fiscal year 2015, fiscal year 2014, the quarters in the 2015

- 3 -

transition period and fiscal year 2015, and unaudited selected financial data for fiscal year 2013, which is described in Orbital ATK's 2015 Form 10-KT/A.

19.     "SEC" refers to the United States Securities and Exchange Commission, its national, regional and branch officers, and its commissioners, directors, administrators, branch chiefs, attorneys, accountants, investigators, paralegals, and staff.

20.     "Specified Defense Systems Employees" refers to the "members of the Defense Systems Group leadership" referenced on page 142 of the 2015 Form 10-KT/A.

21.     "Specified Small Caliber Systems Employees" refers to the "[c]ertain Small Caliber Systems Division personnel" referenced on page 142 of the 2015 Form 10-KT/A.

22.     The singular shall include the plural, and the disjunctive shall include the conjunctive, and vice versa.

23.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

24.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

25.     The term "including" means "including without limitation" or "including, but not limited to."

26.     The terms "refer," "relate," "regarding," "referring," or "relating" are to be given their ordinary meaning and refer to all documents, communications or things which explicitly or implicitly, in whole or in part, were received in conjunction with, or were generated as a result of, the subject matter of the request, including, documents, communications or things that reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate,

analyze, review, report on, comment on, impinge upon or impact the subject matter of the request.

## II.     TOPICS

TOPIC NO. 1:

The Internal Investigation, including:

(a)     the commencement and scope of the Internal Investigation, including the identity of all Orbital ATK personnel, or any third parties, involved;

(b)     the individuals interviewed during the Internal Investigation;

(c)     discussions with any third parties, including Deloitte, PwC, Northrup Grumman, the SEC, the U.S. Government, or any federal, state, or regulatory agency regarding the Internal Investigation;

(d)     all documents regarding the Internal Investigation that were provided to or whose contents were otherwise shared with any third parties, including Deloitte, PwC, Northrup Grumman, the SEC, the U.S. Government, or any federal, state, or regulatory agency, including when they were provided or shared; and

(e)     any remedial actions taken by Orbital ATK as a result of the Internal Investigation.

TOPIC NO. 2:

The "voluntary self-report[ing] to the SEC" referred to in the 2015 Form 10-KT/A, including the identity of the Orbital ATK personnel involved in gathering or providing such information and the information provided.

TOPIC NO. 3:

The determination of the Exchange Ratio, including, the analysis, assumptions, and valuations that were considered or that formed the basis of the Exchange Ratio, including:

        (a)     the identity of Alliant and Orbital Sciences personnel, or any third parties, involved in the determination of the equity split of the combined company or the Exchange Ratio;

        (b)     the bases for Merrill Lynch, Pierce & Smith Incorporated's ("BofA Merrill Lynch") opinion that the "Exchange Ratio provided for in the merger was fair, from a financial point of view, to ATK," as discussed in the Joint Proxy Statement, including documents, financial information, data or other information provided by You to BofA Merrill Lynch; and

        (c)     the bases for Citigroup Global Markets Inc.'s ("Citi") opinion that the "Exchange Ratio was fair, from a financial point of view, to the holders of Orbital common stock," as discussed in the Joint Proxy Statement including, documents, financial information, data or other information provided by You to Citi.

<u>TOPIC NO. 4:</u>

     The resignation, departure, termination, or cessation of employment or board duties at Orbital ATK, Alliant, or Orbital Sciences of the following:

        (a)     Hollis M. Thompson and Mark W. DeYoung;

        (b)     Scott D. Chaplin, Neal S. Cohen, Dr. Antonio L. Elias, Kent Holiday, Gregory A. Jones, Mike Kahn, Stephen M. Nolan, and Christopher Voci;

        (c)     any member of "senior management," as that term is used in the 2015 10-KT/A;

        (d)     each of the Specified Defense Systems Employees;

        (e)     each of the Specified Small Caliber Systems Employees; and

        (f)     each current or former Orbital ATK, Alliant, or Orbital Sciences employee identified in Your Fed. R. Civ. P. 26(a)(1) disclosures.

<u>TOPIC NO. 5:</u>

The identity of the (a) "personnel at the Small Caliber Systems Division" and "Defense Systems Group" who "acted inappropriately and failed to adhere to the high standards established in the Company's policies and expected by senior management and the Board of Directors," including the identity of the "Small Caliber Systems Division personnel responsible for the inappropriate behaviors . . . [who] are no longer employed by the Company"; (b) "members of the Small Caliber Systems Division finance staff" that failed to follow up and inquire further into indicators that cost overruns were occurring; and (c) "members of the Defense Systems Group leadership" who received appropriate training, adverse compensation action and additional supervision, as reported in the 2015 Form 10-KT/A.

<u>TOPIC NO. 6:</u>

The determination of the Audit Committee and senior management that: "(a) there likely was a bias toward maintaining a targeted profit rate; (b) in some cases, there appears to have been inappropriate use of management reserves to maintain the targeted profit rate; (c) some members of the Small Caliber Systems Division finance staff failed to follow up and inquire further into indicators that cost overruns were occurring . . .; and (d) negative information was suppressed, and concerns at the Small Caliber Systems Division about cost overruns were not escalated appropriately to higher-level Company management or finance staff, nor were they communicated to the Audit Committee, the Board of Directors or the independent registered public accounting firms," as reported in the 2015 Form 10-KT/A.

<u>TOPIC NO. 7:</u>

The "negative information [that] was suppressed" and the "concerns at the Small Caliber Systems Division about cost overruns [that] were not escalated appropriately to higher-level Company management or finance staff," as reported in the 2015 Form 10-KT/A, including the identity of (a) all individuals who suppressed or failed to escalate information; and (b) the "higher-level Company management or finance staff."

<u>TOPIC NO. 8:</u>

The Restatement, including:

(a)     the identity, role, and responsibilities of the "Orbital ATK senior management" that initially identified "[c]ertain of the misstatements arising out of the Lake City Contract," as described in the 2015 Form 10-KT/A, including how such determination was made;

(b)     the specific "misstatements" contained in the prior period estimates of underlying contract costs estimated at completion for the Lake City Contract which, when corrected, "resulted in the Lake City Contract's estimated costs at completion exceeding the contracted revenues for the seven-year term," as described in the 2015 Form 10-KT/A;

(c)     the bases for the statement in the 2015 Form 10-KT/A that "$31.5 [million] of the loss was evident at [the Lake City] contract signing (second quarter of fiscal 2013);

(d)     the bases for the statement in the 2015 Form 10-KT/A that "$342 [million of the loss] became evident at the time of initial production (second quarter of fiscal 2014)"; and

(e)     the bases for the statements in the August 10, 2016 8-K, November 3, 2016 10-K, and 2015 Form 10-KT/A, that the Restatement reduced pre-tax operating income by

- 8 -

$400-450 million, $350 million and $373.5 million, respectively, and the reasons for the changes thereto.

TOPIC NO. 9:

The "Material Weaknesses Identified in the Original Filing" and "Additional Material Weaknesses Identified in this Form 10-K/A," including the material weaknesses at the Small Caliber Systems Division and any remediation efforts to address material weaknesses, as described in the 2015 Form 10-KT/A.

TOPIC NO. 10:

The Company's "accounting policy for measurement of forward loss provision" referred to on page 31 of the 2015 Form 10-KT/A, including:

(a)     the bases for the statement in the 2015 Form 10-KT/A that the accounting policy "resulted in the incorrect measurement of forward losses as a result of excluding general and administrative costs from the forward loss when general and administrative costs should be included in the measurement of a forward loss";

(b)     the creation and approval of the accounting policy, including the bases and supporting accounting standard for the exclusion of general and administrative costs from forward losses;

(c)     the financial impact that the exclusion of general and administrative costs had on forward losses;

(d)     the bases and supporting accounting standard for Orbital ATK's subsequent determination that its exclusion of general and administrative costs from forward losses was incorrect, as reported in the 2015 Form 10-KT/A; and

> (e)     the identity, role, and responsibilities of all Alliant or Orbital ATK personnel involved in (a)-(d) above.

TOPIC NO. 11:

The bases for the statement, at the time it was made, in Orbital ATK's August 10, 2016 Form 8-K that "a forward loss provision should have been recorded for the [Lake City] Contract in fiscal 2015."

TOPIC NO. 12:

The bases for the statement in Orbital ATK's November 3, 2016 Form 8-K that "the majority of the [Lake City] Contract loss provision should [have been] recorded at the inception of the [Lake City] Contract which occurred in fiscal 2013."

TOPIC NO. 13:

The identity, role, and responsibilities of the Alliant and Orbital ATK personnel responsible for Orbital ATK's disclosure controls and procedures, including internal control over financial reporting, which Orbital ATK admitted were not operating effectively, as reported in the 2015 Form 10-KT/A.

TOPIC NO. 14:

Alliant's bid and performance under the Lake City Contract, including:

> (a)     all draft or prior versions of the bid;

> (b)     the amount of cost savings that were needed to record a profit on the contract; and

> (c)     the identity, role, and responsibilities of all Alliant and Orbital ATK personnel involved in any of the above.

TOPIC NO. 15:

Alliant's and Orbital ATK's accounting for and recognition of revenue or costs under the Lake City Contract, including:

(a)     periodic reporting of profitability to management, periodic forecasts or projection of profitability or costs; and

(b)     the identity, role, and responsibilities of all Alliant or Orbital ATK personnel involved in any of the above.

TOPIC NO. 16:

Alliant's or Orbital ATK's efforts to track and reduce costs at Lake City or achieve the "objective cost reduction" contemplated by the Lake City Contract, including:

(a)     the identity, role, and responsibilities of all Alliant or Orbital ATK personnel involved in such efforts;

(b)     all periodic monitoring and reporting of how cost reduction initiatives were tracking from contract inception to the time of the Restatement; and

(c)     the bases for the statement by Blake E. Larson on August 10, 2016 that Lake City had achieved "one-half to two-thirds of the objective cost reduction that the bid anticipated," including any analyses, reviews, or audits, of the specific categories of expected costs and "objective cost reduction" contemplated by the bid including the specific areas where cost savings were achieved and where they came up short.

TOPIC NO. 17:

Alliant's, Orbital ATK's, and Orbital Science's accounting policies, including the implementation of the accounting policies and any changes thereto, relating to:

(a)     revenue recognition on long-term contracts;

- 11 -

      (b)     estimation of contract costs at completion on long-term contracts;

      (c)     forward losses on long-term contracts;

      (d)     inclusion or exclusion of general and administrative costs in the measurement of forward losses;

      (e)     internal controls for contract accounting; and

      (f)     the identity of all Alliant, Orbital ATK, and Orbital Science's personnel involved in (a)-(e) above.

TOPIC NO. 18:

All cost cutting measures initiated by Alliant in the year leading up to the Merger including any layoffs or "adjust[ing] of workforce and … workflow" as referenced in the Alliant February 5, 2013 earnings call and their financial impact on the Lake City Contract.

TOPIC NO. 19:

The bases for David W. Thompson's statement on April 29, 2014 that You expected the Merger to result in "up to $200 million in annual revenue synergies, and up to $100 million in costs synergies which we estimate can be realized by the end of … 2016."

TOPIC NO. 20:

Orbital ATK's decision to engage PwC as the Company's independent registered public accounting firm, as described in the March 2, 2015 Form 8-K, and the decision to replace PwC with Deloitte as its independent registered accounting firm in or around May 2017, including:

      (a)     all disagreements between Orbital ATK and Deloitte and/or PwC; and

      (b)     the identity, role, and responsibilities of Orbital ATK, PwC, and Deloitte personnel involved in any of the above.