IN THE UNITED STATES DISTRICT CIRCUIT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| STEVEN KNURR, *et al*., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 1:16-cv-01031-TSE-MSN |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| ORBITAL ATK, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR CLARIFICATION OF THE COURT'S MAY 4, 2018 ORDER OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER, OF DEFENDANTS ORBITAL ATK, INC., DAVID W. THOMPSON, GARRETT E. PIERCE, BLAKE E. LARSON, AND HOLLIS THOMPSON**

Defendants Orbital ATK, Inc. ("Orbital ATK" or "Company"), David W. Thompson, Garrett E. Pierce, Blake E. Larson, and Hollis Thompson (collectively, the "Defendants") hereby submit the instant memorandum of law in support of their Motion for Clarification of the Court's May 4, 2018 Order, or, in the Alternative, for a Protective Order.

**INTRODUCTION**

On May 4, 2018, the Court issued an order directing Defendant Orbital ATK to produce "witness interview reports" that the Company's outside counsel used in orally debriefing the SEC on the Company's internal investigation (the "May 4 Order" or "Order"). In compliance with the Order, the Company produced those reports.

Despite being given all the written information that the Company shared orally with the SEC (and its auditors) on the substance of the employee interviews, Plaintiffs still are not content. In conferring with Defendants, Plaintiffs have demanded that the Company also produce interview-related materials that were ***not*** shared with the SEC and are ***not*** otherwise reasonably construed as "interview reports" that the Court ordered be produced.[1] These materials include rough notes prepared by attorneys regarding the interviews, drafts of interview memoranda, and notes prepared by the Company's auditors that relate to the employee interviews. The auditors themselves did not attend any of the interviews. Plaintiffs assert that the May 4 Order required Defendants and/or the Company's auditors to produce all these materials. But it did not.

In reality, Plaintiffs are dissatisfied with the Court's Order, and in the guise of seeking its enforcement, are apparently trying to re-litigate their original motion to compel. The Court's

[1] Shortly before the instant motion was filed, Plaintiffs filed a motion to compel and some accompanying material relating to privilege and work product issues. Defendants will review Plaintiffs' submission and timely file an Opposition in accordance with the Local Rules.

Order – and its underlying rationale – do **not** require production of all of the material Plaintiffs have demanded. Attorneys' rough notes and drafts are not "interview reports," and, moreover, the notes and drafts at issue here were not shared with the SEC. Indeed, the Company's outside counsel did not share the notes and drafts even with the Company itself (or any of the other Defendants). In addition, the documents prepared by the auditors were not even the subject of Plaintiffs' original motion, which only sought documents requested from the Company, not its auditors. Because the auditors' documents were not the subject of the original motion, they cannot have been within the scope of the Court's May 4 Order on that motion.

Not only is Plaintiffs' demand outside the scope of the May 4 Order, it is outside the bounds of the law (and thus, even if Plaintiffs were to ask this Court to modify its Order to allow discovery of the demanded material, that request should be denied). Under Federal Rule of Evidence 502(a), the selective disclosure of material to a government agency does not waive privilege or work product protection over any other **un**disclosed material unless the party "intentionally puts protected information into the litigation in a selective, misleading and unfair manner." Here, only the material in the interview reports already produced to Plaintiffs was shared with the SEC. The notes, drafts, and auditor material were not. Defendants have not put the protected communications and work product in those materials – or any interview-related materials – into this litigation, much less in a misleading and unfair manner. As such, FRE 502(a) bars discovery of these materials. There is abundant case law confirming that sharing material in an interview memo with a government agency does not automatically waive privilege and work product protection over an attorney's notes from the interview, or drafts of the interview memo.

Given that Plaintiffs' demand for the production of material that plainly falls outside the scope of the Court's May 4 Order, Defendants respectfully request that the Court clarify to Plaintiffs that the scope of its Order was limited to the "witness interview reports" referenced in the Order, which do not include all the additional material that Plaintiffs are demanding. Should the Court consider it appropriate, Defendants request that the Court issue, in addition or in the alternative, a protective order, pursuant to Fed. R. Civ. P. 26(c)(1), preventing Plaintiffs from discovering the protected materials at issue (or any other investigation material over which the Company is claiming privileged and/or work product protection, apart from the "witness interview reports" referenced in the May 4 Order).

## ARGUMENT[2]

### I. The Court's Order Does Not Require Production of the Materials that Plaintiffs Are Demanding

Following the issuance of the Court's May 4, 2018 Order, the Company produced all of the witness reports that its outside counsel used to orally debrief the SEC.[3] There were a total of twenty-seven such reports. By producing the actual reports that were shared with the SEC, the Company fully complied with the May 4 Order.[4]

[2] As the Court already is familiar with much of the factual and procedural background to this motion, and in the interest of brevity, Defendants will simply incorporate the key factual and procedural information into the arguments set forth below.

[3] In making this compelled production, the Company did not waive, and reserved all of its rights, with respect to its claims of privilege and work product with respect to the documents at issue. *See, e.g.*, *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 275 (E.D. Va. 2004) (a "judicially compelled" disclosure is not a voluntary one, and does not effect a waiver of rights with regard to the disclosed document).

[4] Each of the reports contained a small amount of material that was not shared with the SEC.

### A. The Court's Order Does Not Cover Attorney Notes or Drafts

The Court's Order directed Defendants to produce "all witness interview reports, as specified in Court [at the May 4 motion hearing], created during the course of the internal investigation …." (Order, ECF 165 at 1.) At the motion hearing, the Court aptly characterized the issue before it as follows: what "we're really talking about [are] oral communications at least with regard to the SEC …." (Tr. at 42.) The Court then asked Plaintiffs' counsel what relief Plaintiffs wanted on that issue "if I were to rule in your favor." (*Id*.) Plaintiffs' counsel answered emphatically, "Give us the ***interview memorandum***." (*Id*. (emphasis supplied).)

The Court later referred back to Plaintiffs' counsel's narrow request in issuing its ruling: "I find – and plaintiff has conceded that . . . this matter is really about a limited request for witness interviews if such documents exist, and this motion is being granted based on that narrowed request." (Tr. at 56.) The Court went on: "I find that to the extent witness interview reports were created during the course of the internal investigation in any form, whether handwritten, typed, or transcribed, that they must be turned over …." Returning to the connection between the interview memoranda at issue and the oral disclosures to the SEC, the Court concluded, "I am finding … that these witness interviews that were conveyed in oral form [to the SEC] … should be turned over." (Tr. at 57.)

The Court's findings and its Order do not compel the conclusion that Defendants must produce – in addition to the actual interview reports "that were conveyed in oral form" to the SEC – the various items that Plaintiffs seek, *i.e.*, rough attorney notes prepared by counsel on the interviews, drafts of the reports, and memos prepared by the outside auditors. As a matter of common usage, the word "notes" does not mean a "report" or "memorandum." Nor do the words "reports" or "memoranda," in and of themselves, refer to all "drafts" of such material.

Indeed, in the context of the Court's ruling, there is a crucial practical distinction between the "notes" and "drafts" being withheld and the "reports" or "memoranda" that the Company has produced to Plaintiffs: only the "reports" or "memoranda" were shared with the SEC.

When the Court asked Plaintiffs' counsel at the hearing to specify the relief being sought, counsel could have asked for, "all interview notes, memoranda, and draft memoranda," but counsel did not. In fact, despite the considerable length of the hearing, and the extensive argument made by Plaintiffs' counsel, an examination of the hearing transcript (which spans 61 pages) reveals that the word "draft" was not used by anyone – not even once – at any time during the hearing. And, although Plaintiffs' counsel might have been seeking "raw information" (Tr. at 58), the fact remains that Plaintiffs' counsel asked for such information as it was set forth in "the interview memorandum." (Tr. at 8.) Simply put, Plaintiffs' position that the Court's May 4 Order covers all the materials that Plaintiffs are now demanding is an attempt to re-write that Order, and backtrack from what Plaintiffs' counsel said at the hearing.

**B. The Court's Order Does Not Cover Material Created by the Auditors**

The Company's outside auditors did not attend any of the employee interviews conducted in the investigation. Nevertheless, in conferring with Defendants, Plaintiffs have indicated that they believe that under the Court's May 4, 2018 Order, they are entitled to discover written material that the Company's outside auditors prepared in connection with meetings they held with the Company's outside counsel. In these meetings, the Company's outside counsel disclosed substance from employee interview memoranda to the auditors.

Plaintiffs' assertion that the Court's May 4 Order covers the material prepared by the auditors is baseless. The material prepared by the auditors was not even the subject of the original motion. Indeed, Plaintiffs have admitted that the underlying disclosures ***to*** the auditors

were outside the scope of their motion. In their reply in support of the motion to compel ("Reply") that the May 4 Order addressed, Plaintiffs wrote: "***The disclosures to the auditors are not the subject of the present motion*** because Plaintiffs are currently awaiting the auditors' document productions to determine whether privilege will be asserted over any or all of that information." (Reply, ECF 161 at 2 (emphasis added).)

Moreover, Plaintiffs' memorandum in support of their motion to compel ("Mem.") only sought production of documents "responsive to Plaintiffs' First Request for Production of Documents ("RFP") ***to Defendants*** …." (Mem., ECF 150 at 2.) (emphasis added)). Thus, Plaintiffs' motion only asked the Court to order the production of certain material in Defendants' possession; it did not ask the Court to order the ***auditors*** to produce anything in ***their*** possession. Because the auditors' documents were not the subject of the original motion, they cannot have been within the scope of the Court's May 4 Order on that motion.[5]

**C. The Apparent Rationale of the Court's Order, the Law of Privilege, and FRE 502(a) Do Not Support Plaintiffs' Demand**

Plaintiffs' demand for the production of materials other than the reports orally shared with the SEC is not only inconsistent with the Court's May 4 Order, it also conflicts with that Order's underlying rationale and the law of privilege and work product generally.

The rationale of the Court's Order apparently was that, in the Court's view, the Company had failed to meet its burden of establishing that the memoranda that Company counsel orally shared with the SEC retained their privileged and protected work product status despite having

[5] Were Plaintiffs to file a move to compel the auditors to produce the material that they created reflecting privileged information that the Company provided to them, Defendants would have strong grounds on which to oppose the motion. *See, e.g., United States v. Deloitte LLP*, 610 F.3d 129, 142 (D.C. Cir. 2010) (finding no waiver based on disclosure to independent auditor "because Deloitte, as an independent auditor, has an obligation to refrain from disclosing confidential client information").

been disclosed to the SEC. At the hearing, the Court noted that documents created in connection with the investigation – such as the interview reports – were not created solely in anticipation of litigation, because the Company "had other independent reasons" for conducting the investigation.[6] (Tr. at 55.) But, the issue of whether the interview reports were – or were not – attorney work product prepared in anticipation of litigation was not dispositive of whether they were discoverable by Plaintiffs. In addition to being attorney work product, an employee interview memorandum prepared by counsel in connection with an investigation constitutes an amalgam of privileged communications between counsel and the employee. *See, e.g., Upjohn Co. v. U.S.*, 449 U.S. 383, 101 S. Ct. 677 (1981).[7] Waiver of the protected status of the memorandum thus occurs, regardless of its work product status, only if there is a waiver of a company's claim of attorney-client privilege as to the communications in the memorandum.[8]

---

[6] *Cf. U.S. v. Adlman*, 134 F.3d 1194, 1198-99 (2d Cir. 1998) ("[n]othing in . . . [Fed.R.C.P. 26(b)(3)] . . . states or suggests that documents prepared 'in anticipation of litigation' with the purpose of assisting in the making of a business decision do not fall within its scope . . . a requirement that documents be produced primarily or exclusively to assist in litigation in order to be protected is at odds with the text and the policies of the Rule . . . Nowhere does Rule 26(b)(3) state that a document must have been prepared to aid in the conduct of litigation in order to constitute work product, much less primarily or exclusively to aid in litigation. Preparing a document 'in anticipation of litigation' is sufficient")(emphasis in original); *see also In re G.M. LLC Ignition Switch Litigation*, 80 F.Supp.3d 521, 530 (2015) ("Rare is the case that a troubled corporation will initiate an internal investigation solely for legal, rather than business, purposes; indeed, the very prospect of legal action against a company necessarily implicates larger concerns about the company's internal procedures and controls, not to mention its bottom line. Accordingly, an attorney-client privilege that fails to account for the multiple and often-overlapping purposes of internal investigations would 'threaten[] to limit the valuable efforts of corporate counsel to ensure their client's compliance with the law,'" citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 101 S. Ct. 677 (1981)).

[7] Such communications with *former* employees are also privileged. *See, e.g., In re Allen*, 106 F.3d 582, 606 (4th Cir. 1997).

[8] The attorney-client privilege and work product doctrine operate as separate barriers to discovery; thus, both must be analyzed separately. *See, e.g.*, 2 Edna Selan Epstein, The Attorney-Client Privilege and The Work Product Doctrine 1027 (5th Ed. 2007) (noting that "waiver of the [attorney-client] privilege should always be analyzed distinctly from waiver of

Thus, by ordering the Company at the May 4 hearing to produce the interview memoranda orally shared with the SEC, the Court apparently concluded that sharing the memoranda with the SEC resulted in a waiver of the attorney-client privilege as to those memoranda.

It hardly follows from such an implicit waiver finding (if any), however, that the Court also did conclude (or should have concluded) that the Company likewise waived the attorney-client privilege and work product protection afforded to the additional materials that Plaintiffs are now demanding, *i.e.*, the attorney notes, draft memoranda, and material prepared by the auditors relating to the interviews. Certainly, as a matter of law, waiver with regard to the memoranda shared with the SEC would ***not*** result in waiver of all the materials demanded by Plaintiffs.

The attorneys' rough notes and draft memoranda were not shared with the SEC; only the interview reports already produced to Plaintiffs were shared (orally).[9] FRE 502(a) does not

---

work product"); 2 Thomas E. Spain, The Attorney-Client Privilege and the Work Product Doctrine: A Practitioner's Guide 434 (2007) (same).

[9] Plaintiffs presumably are bent on piercing the attorney-client privilege and work product status of the materials they are now demanding precisely because they believe those materials contain material that is ***not*** also contained in the memos that the Company already has produced to Plaintiffs (and that was orally shared with the SEC, *see supra*). Inasmuch as the attorney notes and draft memos contain information that is duplicative of what is contained in the interview reports shared with the SEC and already produced to Plaintiffs, Plaintiffs would have no practical need for such duplicative material. In fact, Plaintiffs may not pursue production of such duplicative materials. *See, e.g.*, FRCP 26(b)(2)(C)(i) (courts "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative . . . .").

On the other hand, to the extent that the attorney notes and draft memos demanded by Plaintiffs contain other material not shared with the SEC, it is not discoverable pursuant to FRE 502(a) (*see infra*). In addition, to the extent the material contains opinion work product, Plaintiffs of course may not discover such material as a matter of hornbook law. *See, e.g.*, Opp., 155 at 13, 19-20, 21-22, 24-25. Thus, even assuming, *arguendo*, that Defendants were otherwise required to produce the attorney notes and draft memos at issue, Defendants still would have the right to redact any opinion work product. *Id*.

permit Plaintiffs to obtain **un**disclosed communications and work product information just because Company counsel disclosed the produced reports. Instead, FRE 502(a) provides that when a party makes a disclosure of privileged or work product information to a government agency, subject matter waiver with regard to undisclosed related material "generally" does not occur, with such waiver being "reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary . . [thus] subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." FRE 502(a), Explanatory Note (2007).[10]

On this basis, under FRE 502(a), no subject matter waiver can be deemed to have occurred here, because the Company has not put any protected information from the interview reports – or the attorneys' rough notes, draft memoranda, or the auditors' memoranda – "into the litigation," let alone "in a selective, misleading and unfair manner." *Id*. *See also* Defendants' Opposition to Plaintiffs' Motion to Compel ("Opp.") ECF 155 at 6-12, 20-22, 24-25 (discussing applicable case law and other authority).

Likewise, there is abundant case law – all consistent with FRE 502(a) – that makes clear that sharing material in a memorandum with a government agency or other third party does not waive protection over underlying drafts or notes. *See Jones*, *United States v.* Jones, 696 F.2d

[10] It bears emphasis that under FRE 502(a), although the fact that the Company's outside counsel orally disclosed material in the interview reports ***to the SEC*** naturally brings the disclosures within the scope of the Rule, that disclosure does not lead to a subject matter waiver unless otherwise protected material was injected ***into this "litigation."*** *Id*. Here, far from injecting the reports into the litigation, the Company did the opposite: it withheld them and vigorously opposed Plaintiffs' motion to produce them. Plaintiffs sought to inject the reports into the litigation, not Defendants, and now effectively complain they will suffer prejudice unless they are permitted to inject yet further material into the litigation. Plaintiffs thereby are standing FRE 502(a) on its head.

1069, 1071 (4th Cir. 1982). "Most courts have held . . . that simply because a final product is disclosed to the public (or a third person), an underlying privilege attaching to drafts of the final product is not destroyed." *In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 515, 518 (N.D.Ill.1990) (concluding that draft reports prepared in connection with an accident investigation did not lose work product immunity by virtue of the fact that the final report was made public); *see also, e.g., SEC v. Schroeder*, 2009 WL 1125579 (N.D. Cal. April 7, 2009).

**CONCLUSION**

For all of the reasons set forth above, Defendants respectfully request that the Court grant Defendants' Motion for Clarification of the Court's May 4, 2018 Order, or, in the Alternative, For a Protective Order. Specifically, Defendants request that the Court clarify to Plaintiffs that the scope of its Order was limited to the "witness interview reports" referenced in the Order, and did not include any of the other materials that Plaintiffs are demanding. Should the Court consider it appropriate, Defendants request that the Court issue, in addition or in the alternative, a protective order pursuant to Fed. R. Civ. P. 26(c)(1) preventing Plaintiffs from discovering the protected materials at issue (or any other investigation material over which Defendants are claiming attorney-client privilege and/or work product protection, apart from the "witness interview reports" referenced in the May 4 Order).

Dated: June 15, 2018
Washington, DC

Respectfully submitted,

**SHEARMAN & STERLING**

*/s/ Lyle Roberts*

Lyle Roberts (Va. Bar No. 45808)
George Anhang (*pro hac vice*)
401 9th Street, N.W.
Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100
lyle.roberts@shearman.com
george.anhang @shearman.com

Daniel C. Lewis (*pro hac vice*)
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
daniel.lewis@shearman.com

*Counsel for Defendants Orbital ATK, Inc., David W. Thompson, Garrett E. Pierce, Blake E. Larson, and Hollis Thompson*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of June 2018, a true and correct copy of the foregoing was served via CM/ECF filing on all counsel of record.

*/s/ Lyle Roberts*

Lyle Roberts (Va. Bar No. 45808)
401 9th Street, N.W.
Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100
lyle.roberts@shearman.com

*Counsel for Defendants Orbital ATK, Inc., David W. Thompson, Garrett E. Pierce, Blake E. Larson and Hollis Thompson*