UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| STEVEN KNURR, Individually and on Behalf of All Others Similarly Situated, ) ) | Civil Action No. 1:16-cv-01031-TSE-MSN |
| Plaintiff, ) ) | CLASS ACTION |
| vs. ) ) | |
| ORBITAL ATK, INC., *et al.*, ) ) | |
| Defendants. ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL DEFENDANTS' COMPLIANCE WITH THE COURT'S
MAY 4, 2018 ORDER AND PRODUCTION OF ALL
PURPORTEDLY PRIVILEGED DOCUMENTS**

Pursuant to Rules 26, 34, and 37 of the Federal Rules of Civil Procedure and Local Civil Rule 37(A) and (D), Lead Plaintiff Construction Laborers Pension Trust of Greater St. Louis and Named Plaintiff Wayne County Employees' Retirement System ("Plaintiffs") bring this motion to compel Defendants[1] to comply with Judge Nachmanoff's May 4, 2018 order [ECF No. 165] (hereafter "May 4th Order")[2] and to produce all purportedly privileged documents, including those related to the Internal Investigation.

## I.    INTRODUCTION

Defendants have made clear that they will not surrender any damaging documents until and unless Plaintiffs endure lengthy meet and confers and prevail on motions to compel, and now, they

---

[1]    Defendants are Orbital ATK, Inc. ("Orbital ATK" or "Company"), David W. Thompson, Garrett E. Pierce, Blake E. Larson, and Hollis M. Thompson.

[2]    *See also* Transcript of Motion Hearing Before the Honorable Michael S. Nachmanoff United States Magistrate Judge, at 56:7-23, Ex. A ("Tr. at __").

are not even willing to fully comply with the Court's May 4th Order compelling production and still have not timely produced a privilege log despite telling the Court they would do so over one month ago.

The Court is familiar with the allegations in this case as this is now the *third* time Plaintiffs have been forced to bring a motion to compel discoverable information that Defendants have improperly withheld. *See* ECF Nos. 132, 146, 148. As a result of prevailing on the two prior motions to compel, Plaintiffs have received some of the most critical documents in the case, including documents that prove Defendants provided sworn interrogatory responses that are inaccurate. The information that is currently being withheld in violation of the May 4th Order is undoubtedly equally damaging to Defendants' case and being withheld solely for that reason.

This is a federal securities class action brought on behalf of investors who suffered hundreds of millions of dollars in losses when Orbital ATK announced that it was withdrawing and restating its prior financial statements because the Company had failed to disclose a nearly $400 million loss on its largest contract, the Lake City Contract. The Company initiated its Internal Investigation for business purposes, so that it could determine the cause of the Restatement and refile its financial statements with the SEC, as required to do. The Internal Investigation was conducted by the Company with the assistance of the law firm of Hogan Lovells US LLP ("Hogan") and the Company's independent auditors, PricewaterhouseCoopers LLP ("PwC") and Deloitte & Touche LLP ("Deloitte").

The first motion to compel was filed because Defendants refused to produce *any* documents after an arbitrary August 1, 2016 cutoff. That cutoff date was prior to the end of the Class Period and used as a basis to withhold Internal Investigation and Restatement related documents, yet Defendants indicated they would selectively use such documents in defending the case. *See* ECF

Nos. 132-133.  Fortunately, the Federal Rules of Civil Procedure do not permit parties to disclose only favorable information while withholding damaging information.  The Court granted the motion to compel.  *See* ECF No. 139.

In an attempt to evade compliance with the first Order compelling production, Defendants then argued that most of the documents created after August 1, 2016, were  privileged because they related to the Company's Internal Investigation.  This forced Plaintiffs to file a second motion to compel to overrule the blanket privilege assertion over all documents relating to the Internal Investigation (most of which were created after August 1, 2016), particularly since Defendants failed to produce a privilege log and still indicated an intention to use favorable information from the Internal Investigation in defending the case.  *See* ECF Nos. 148, 150, 155-157.  Plaintiffs argued, and the Court found, that documents relating to witness interviews were factual information created for business purposes and not privileged.  *See* May 4th Order (granting motion to compel in part). The Court also found that, to the extent they could be considered privileged, Defendants had waived any privilege as to the subject matter of the witness interviews by disclosing them to the SEC.  Tr. at 57:9-12.  Thus, Defendants were ordered to produce by May 11, 2018, all "witness interview reports . . . created during the course of the internal investigation *in any form, whether handwritten, typed, or transcribed, whether verbatim or summarized*."  *See* May 4th Order; Tr. at 56:9-12 (emphasis added).  The Court added that "the raw information of the interviews of the witnesses, [is] the most relevant to this litigation."  Tr. at 58:7-9.  Moreover, the Court observed that Defendants failure to produce a privilege log was in violation of "the local rules and the federal rules and this Court's scheduling order" and hindered both Plaintiffs' ability to challenge Defendants' privilege assertions and the Court's ability to assess the privilege claims.  Tr. at 48:18-19.

On May 11, 2018, in an attempt to evade full compliance with the May 4th Order (the second Order compelling production), Defendants produced only 27 documents comprised of what they consider formal "reports" of interviews and follow-up interviews created by their lawyers at Hogan that were shared with the SEC (the "Hogan Reports"). In addition, despite the Court's warning "to be very careful" in redacting and to only redact "what is appropriate," (Tr. at 57:5-6), nearly half of the productions' total pages included redactions that were improper. Plaintiffs were again forced to object and meet and confer regarding the redactions and extremely limited production. In response, on May 23, 2018, almost two full weeks after the Court-ordered deadline for production, Defendants produced unredacted copies of the 27 Hogan Reports and also produced a second version of all 27 Hogan Reports that were created by Hogan for use in its communications with auditors PwC and Deloitte (the "Hogan/Auditor Version").

The unredacted Hogan Reports made clear that Defendants' initial redactions were unjustifiable attempts to withhold damaging information as Defendants redacted purely factual information (not mental impressions) in violation of the Court's directive and the May 4th Order. In addition, the Hogan/Auditor Versions of the memos were produced two weeks after the Court ordered deadline and contrary to the directive to produce all witness interview materials "in any form." Tr. at 56:10-11. Defendants, however, have still not fully complied with the May 4th Order.

Although there were between five and nine persons present for each interview, Defendants refused to produce any other versions, drafts, notes or "raw information" of the interviews. For example, Defendants have currently instructed their auditors to withhold all documents in the auditor's possession relating to the same witness interviews despite that Defendants' privilege assertions have been overruled as to interview-related documents in "any form." *See id.* at 55:25-56:1-3 ("I have looked carefully at the defendants' arguments and cases [and Fed. R. Evid. 502(a)],

4

and I do not find that it precludes turning over information sought."). Plaintiffs currently have no way of knowing how many documents subject to the May 4th Order are being withheld despite Defendants' representation to the Court that they would produce a privilege log "in a week or less" from the May 4, 2018 hearing.[3]  On the eve of filing this motion, Defendants attempted to defer these issues yet another week, by agreeing to produce within a week a privilege log vaguely described as partially categorical and partially line-by-line privilege log.  The parties disagreed on the sufficiency and scope of such a log.  Defendants' refusal to comply with the May 4th Order and refusal to produce a timely privilege log is grounds for an Order compelling production of all purportedly privileged documents.

Defendants' aggressive tactics to withhold damaging information must no longer be tolerated as it has seriously prejudiced Plaintiffs' ability to comply with the Court ordered schedule for completion of expert reports and discovery.  Defendants have successfully stalled the production of some of the most relevant documents by forcing Plaintiffs to file the first two motions to compel, which has shortened the amount of time Plaintiffs and their experts have had to review the documents, and hindered Plaintiffs' preparation for depositions.  Court Orders are not mere suggestions, and Defendants' continued failure to timely produce a privilege log and fully comply with the May 4th Order must be remedied.

As a result of Defendants' improper redactions and untimely production under the May 4th Order, as well as their failure to timely produce a privilege log, the Court should find that

---

[3]   Defendants have represented that they have potentially thousands of documents they are withholding from production. ECF No. 135, at 11. PwC produced an incomplete privilege log that appears to have been created by Defendants to cover some of the documents in PwC's possession that Defendants have instructed PwC to withhold as privileged.  However, PwC has said it is withholding at least 50 documents relating to witness statements that should have been produced under the May 4th Order (*infra*), yet those documents  are not listed on the privilege log PwC provided.

Defendants have waived or otherwise failed to meet their burden of establishing privilege and order Defendants to immediately produce all purportedly privileged documents,[4] *or* all documents withheld as privileged that relate to or were created as part of the Internal Investigation. *At a minimum*, Defendants should be ordered to comply with the May 4th Order and produce all documents "in any form" related to the witness interviews conducted as part of the Internal Investigation, including those created by or in the possession of its auditors *and* grant any further such relief that is appropriate in light of the repeated delays and expense of seeking to compel highly relevant information.

## II.   RELEVANT FACTUAL BACKGROUND

The facts concerning this Action have been set forth by Plaintiffs in the Complaint [ECF No. 78], the Court's orders concerning Defendants' motions to dismiss [ECF Nos. 75, 76, and 99] and Plaintiffs' Memorandum of Law in Support of Their Motion to Compel [ECF No. 150] ("Motion to Compel" or "Mot.").

### A.   Plaintiffs' Motion to Compel the Internal Investigation Documents

On April 27, 2018, Plaintiffs filed their second Motion to Compel seeking production of documents and information related to the highly relevant Internal Investigation including those relating to factual information obtained during employee interviews. *See* Mot. at 2. Plaintiffs argued the Internal Investigation documents were not privileged for two reasons: Defendants' vague and conclusory privilege assertions in the absence of a log failed to meet Defendants' burden of establishing privilege, and that the documents were created for a business purpose. *Id*. at 16-19. Plaintiffs argued in the alternative that any purported privilege was waived for two reasons: Defendants opened the door to such documents by affirmatively putting the Internal Investigation

---

[4]   The Court previously ruled that documents through June 30, 2017 must be produced by Defendants. ECF No. 139.

and its findings at issue in the current litigation and the Company's public filings and waived any privilege by voluntarily disclosing the information to third parties, including the SEC. *Id*. at 21-26.

On May 4, 2018, Judge Nachmanoff held oral argument on the Motion to Compel. At the conclusion, Judge Nachmanoff granted in part the Motion to Compel and ordered Defendants to produce all "witness interview reports … created during the course of the internal investigation in any form, whether handwritten, typed, or transcribed, whether verbatim or summarized, that they must be turned over" by Friday, May 11, 2018. *See* ECF No. 165 at 1; Tr. at 56:9-12. The Court stated, "what you're really looking for are the raw information of the interviews of the witnesses, which I think are the most relevant to this litigation." Tr. at 58:7-9.

The May 4th Order held that Defendants "have not met their burden" of establishing privilege with respect to witness interview documents. ECF No. 165 at 1. Defendants were not entitled to work-product protections because the Internal Investigation documents were not "created in anticipation of litigation." Tr. at 55:18-19. The Court further found that Defendants waived any privilege over the subject matter of the Internal Investigation witness statements by disclosing their contents to the SEC, stating, "I am finding, consistent with *Royal Ahold*, that these witness interviews that were conveyed in oral form and relied upon through the documents and *notes taken* are the subject matter that should be turned over." *Id*. at 57:9-12.

The Court permitted Defendants to make redactions to remove "any opinion of counsel in the form of mental impressions or thoughts, legal analysis, [and] marginal notes" but cautioned that Defendants "be very careful in redacting what is appropriate." Tr. at 56:13-15; 57:5. The Court stated that if it learned of inappropriate redactions, it might order Defendants to turn over all the documents in unredacted form. *Id*. at 57:3.

7

**B.    The Documents Produced in Response to the May 4th Order Directly Refute Defendants' Sworn Interrogatory Responses**

Plaintiffs were stunned to learn that the unredacted Hogan Reports directly refuted Defendants' sworn interrogatories confirming both that the information withheld is critical to proving Plaintiffs' claims and also that it had been withheld solely because it was contrary to Defendants' asserted defense of, ironically, "good faith."  By way of background, Plaintiffs served their First Set of Interrogatories on March 6, 2018, and Orbital ATK provided partial responses on April 6, 2018, and amended responses on April 26, 2018.

Consistent with the Defendants' litigation strategy of stonewalling all discovery responses, the interrogatory responses were heavy on adjectives, argument, and conclusions but very light on factual admissions.  Plaintiffs requested that Orbital ATK provide proper responses, Orbital ATK refused, and Plaintiffs were forced to file a motion to compel.  *See* ECF Nos. 146, 147.  On the eve of the hearing on the motion, however, Orbital ATK agreed to provide supplemental responses.  As a result, Plaintiffs withdrew their motion to compel (but Orbital ATK has yet to provide supplemental responses, which may be the subject of Plaintiffs' next motion to compel).  *See* ECF No. 164.

In any event, the subsequently produced 27 Hogan Reports and 27 Hogan/Auditor Versions revealed that the verified[5] interrogatory responses were at best grossly incomplete and at worse clearly inaccurate.  For example, in response to Interrogatory No. 1, Defendants stated that while "some Lake City team members felt pressure to present only positive information and results related to the Contract," those "employees *did not feel that their jobs were at stake*" and "[t]he Company is not aware *of any evidence* that any of this pressure came from the *corporate level*."  *See* Response No. 1.

---

[5]    Defendants' Interrogatory Responses were verified by Defendants' counsel, Lyle Roberts.

However, the interrogatory response was inaccurate as the Hogan Reports alone provide substantial evidence ███████████████████████████████████████████████████

████████████████████████████████████████████. Defendants' blanket denial that the Company had "any evidence" that pressure came from the corporate level was inexcusable given that they were in possession of the (withheld) Hogan Reports showing employees reported, for example:[6]



- ████████████████████████████████████████ Ex. B, at
  OA_KNURR_01856636.

- ████████████████████████████████████████ Ex. C, at
  OA_KUNRR_01856337.

- ███████████████████ Ex. D, at OA_KNURR_01856359.

- ████████████████████████ Ex. C, at OA_KNURR_01856331.

As a further example, Orbital ATK's sworn response to Interrogatory No. 1 states it "is not aware of *any evidence* that any Lake City personnel . . . intentionally mislead any . . . auditors." Ex. E at 3-6. Yet, again, the Hogan Reports, as well as other documents created after August 1, 2016, and produced in response to the first motion to compel, ██████████████████████████

████████████████████████████████████████ For example:

---

[6] Contrary to the requirement to designate in good faith, Defendants have marked all documents they produced, including publicly filed 10-Ks, 8-Ks and conference calls, as Confidential under the Protective Order. These overbroad designations are improper and have forced Plaintiffs to file this motion under seal, even though none of the information herein would justify sealing the courtroom doors if presented at trial or in a hearing.



- Ex. F, at OA_KNURR_01856532.

- Ex. G, at OA_KNURR_01856513.

- Ex. H, at OA_KNURR_01672287.

- Ex. I, at PWC-000011015.

- Ex. J, at PWC-00001385.

Thus, it is clear that Defendants were obstructing the pursuit of justice in this case by providing incomplete and inaccurate interrogatory responses while simultaneously asserting meritless objections to the production of the very documents that established the inaccuracy of their sworn interrogatory responses.

### C.   Defendants' Refusal to Comply with the May 4th Order

On May 11, 2018, Defendants produced the 27 Hogan Reports, which totaled approximately 380 pages, 160 of which contained redactions.  On May 21, 2018, PwC notified Plaintiffs that approximately 25 "interview-related memoranda" in PwC's restatement and investigative workpapers, were being withheld based on Orbital ATK's privilege assertion.  PwC explained that but for Defendants' privilege assertion it would produce the documents.  On May 23, 2018,

10

Defendants produced unredacted versions of the 27 Hogan Reports and the 27 Hogan/Auditor Versions, but still refused to allow PwC to produce the 25 interview related memoranda. On May 31, 2018, Deloitte notified Plaintiffs that it was in possession of, and withholding "typed notes" related to the witness interviews, and subsequently explained that these documents were being withheld based on Defendants' privilege assertions. On June 11, 2018, PwC confirmed it was withholding at least 50 interview memoranda "due to [Orbital ATK's continued assertions of] confidentiality." *See* Ex. K (non-exhaustive list of documents being withheld). These documents, with varying titles such as, ██████████████████████████████████████████ ████████████████████████████████████████ appear to clearly be covered by the May 4th Order.

Defendants are also refusing to produce any other versions, notes or drafts created during the course of witness interviews conducted during the Internal Investigation, while also failing to timely identify exactly what is being withheld on a privilege log. Instead, Defendants have argued the Court's use of the word "reports" limited their production obligation to the formal "reports" used throughout the Company's communications with the SEC, despite the Court's direction to produce "reports" in "any form whether handwritten, typed, or transcribed, whether verbatim or summarized." Tr. at 56:9, 11-12. Defendants further argued that documents in any auditor's possession were not subject to the May 4th Order despite Defendants' control over the documents as reflected by their ability to order the auditors to withhold them.

The parties sought a stay of the litigation to pursue mediation, which the Court granted. *See* ECF Nos. 169, 170. Defendants requested, and Plaintiffs agreed, to file this motion to compel after the mediation when the stay was lifted. The parties' June 6, 2018 mediation was unsuccessful and on June 13, 2018, the stay was lifted.

### III.    ARGUMENT

#### A.    Legal Standard

Pursuant to Fed. R. Civ. P. 37(b)(2)(A), if a party fails to obey a discovery order, "the court

where the action is pending may issue further just orders" including:

> (i) directing that the matters embraced in the order or other designated facts be taken
> as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims
> or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to
> submit to a physical or mental examination.

In addition, "when incomplete, evasive, or untruthful responses are produced, Rule 37 allows

a court to compel a party to properly respond to discovery requests." *See Victor Stanley, Inc. v.*

*Creative Pipe, Inc.*, No. MJG-06-2662, 2016 U.S. Dist. LEXIS 53252, at *6 (D. Md. Apr. 20, 2016).

#### B.    Defendants Have Failed to Meet Their Burden of Establishing
       Privilege By Failing to Timely Produce a Privilege Log

Because Defendants failed to timely produce a privilege log, any purported privilege has

been waived, and Defendants should be required to produce all withheld documents.  A party

withholding documents on the basis of privilege must "describe the nature of the documents,

communications, or tangible things not produced or disclosed – and do so in a manner that . . . will

enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).  "To withhold materials

without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and

may be viewed as a waiver of the privilege or protection."  Fed. R. Civ. P. 26(b)(5) advisory

1443708_1

committee's notes; *see, also*, *Susko v. City of Weirton*, No. 5:09-CV-1, 2010 U.S. Dist. LEXIS 45086, at *28, *31, *42 (N.D. W. Va. May 7, 2010) (holding failure to provide a privilege log waived privilege assertion); *Twigg v. Pilgrim's Pride Corp.*, No. 3:05-CV-40, 2007 U.S. Dist. LEXIS 14669, at *26 (N.D.W. Va. Feb. 28, 2007) (same); *Fid. & Deposit Co. v. Travelers Cas. & Sur. Co. of Am.*, No. 2:13-cv-00380-JAD-GWF, 2017 U.S. Dist. LEXIS 84070, at *14-16 (D. Nev. May 31, 2017) (holding privilege was waived as a result of defendants delay in producing a privilege log); *AVX Corp. v. Horry Land Co., Inc.*, No. 4:07-cv-3299-TLW-TER, 2010 U.S. Dist. LEXIS 125169, at *10-13 (D.S.C. Nov. 24, 2010) (granting motion to compel production of withheld documents where privilege log was not produced until after the filing of motion, and once produced, was insufficiently detailed).

Here, Defendants made their first production in response to Plaintiffs' request for production on April 4, 2018, but did not provide a privilege log.  Plaintiffs have repeatedly requested that Defendants provide a privilege log, meeting and conferring both via telephone and email on multiple occasions.  Up until yesterday, however, Defendants refused to provide a log and offered, at most, to provide what they described as a short form "categorical log."  Only on the eve of this motion did Defendants offer to produce a partially categorical and partially line-by-line privilege log, which Plaintiffs contend is still insufficient to meet their privilege burden.

At the May 4th hearing, the Court noted that the lack of a privilege log had hindered its ability to rule upon the Motion to Compel and Plaintiffs' ability to challenge Defendants' privilege assertions stating:

> To the extent that they have sought information about the internal investigation and you have not produced those documents, is it not required by the local rules and the federal rules and this Court's scheduling order that you would produce a privilege log so that the plaintiffs could know and be able to challenge what is being withheld?

Tr. at 45:16-21.  The Court found that the "burden" to produce such a log fell on Defendants, and Counsel for Defendants assured the Court that it was prepared to produce a privilege log and could do so "in a week or less."  *Id.* at 47:21.  The Court emphasized that another week was still untimely stating "[a]nd you think that's sufficient given the dates in this case and the history of the litigation up to this point, to be telling the Court now that you're prepared to provide a privilege log a week from now?"  *Id.* at 47:23-48:1.  Yet, with less than two months left before discovery closes and three weeks before expert reports are due, Defendants just yesterday offered to produce a privilege log in a week.  Defendants' privilege log is critical given that the Hogan Reports, which were clearly not privileged (but were being withheld as such), have proven to be some of the best evidence in the case and directly contrary to Defendants' sworn interrogatory responses.

Given Defendants' flagrant disregard of their burden to timely produce a privilege log even after the Court's warning that it was their burden to do so, the Court should compel Defendants to produce *all* documents responsive to Plaintiffs' discovery requests being withheld on privilege grounds.

### C.  Defendants' Violation of the May 4th Order Warrants Production of All Internal Investigation Materials

If the Court does not order production of *all* responsive documents for which Defendants are asserting privilege, the Court should at least order production of all Internal Investigation related documents for which Defendants have asserted privilege as a sanction for their failure to timely produce a privilege log and noncompliance with the May 4th Order.  A court has broad authority to "impose sanctions for civil contempt 'to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy.'"  *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004) (quoting *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995)); *see also*, *Flame S.A. v. Indus. Carriers*, No. 2:13-cv-658, 2014 U.S. Dist. LEXIS 109954, at

*41 (E.D. Va. Aug. 8, 2014) (prohibiting defendant from offering certain evidence as sanction for failure to comply with court's discovery orders). Defendants' willfulness "is not an element of civil contempt." *In re General Motors Corp.*, 61 F.3d at 258.

Here, Defendants have engaged in improper tactics in violation of the Rules of Civil Procedure and this Court's May 4th Order to avoid producing damaging information. Defendants withheld all documents created after August 1, 2016, without any reasonable basis. Once that objection was overruled, Defendants evaded compliance by raising a privilege objection forcing Plaintiffs to go to Court again. The May 4th Order noted Defendants' failure to produce a privilege log and overruled, in part, their privilege objections and compelled Defendants to produce documents by May 11, 2018. In an attempt to evade compliance with the May 4th Order, Defendants produced only one substantially-redacted version of the 27 Hogan Reports. Plaintiffs were forced to meet and confer and, two weeks after the Court's ordered deadline, Defendants produced unredacted versions of the 27 Hogan Reports and the 27 Hogan/Auditor Reports. Plaintiffs, however, were still forced to move to compel full compliance with the May 4th Order as Defendants are withholding PwC and Deloitte interview related documents and potentially thousands of other related documents because Defendants have strategically refused to timely produce a privilege log to impede Plaintiffs' ability to challenge their privilege assertions.

Defendants not only violated the May 4th Order by producing the documents late, but contrary to the Order's mandate "to be very careful in redacting," Defendants went well beyond redacting counsel's "mental impressions or thoughts, legal analysis, [and] marginal notes" (Tr. at 56:14-15) and redacted purely factual information that supported Plaintiffs' allegations. For example, Defendants have argued that the cost savings required to make the Lake City Contract profitable were completely reasonable and therefore the losses were unknowable prior to the

Restatement, ████████████████████████████████████████████████

such as:



- ██████████████████████████████████████████████████ Ex. L, at OA_KNURR_01856368.

- ████████████████████ Ex. C, at OA _KNURR _01856334.

- ███████████████ Ex. F, at OA_KNURR_01856530.

As an additional example of the tactical redaction of factual information in violation of the May 4th Order, Defendants have claimed that the Lake City Contract losses could not have been discovered until the growth in unbilled receivables was discovered during the Restatement process in 2016, ████████████████████████████████████████████████ ██████ such as:

- ██████████████████████████████████ Ex. L, at OA_KNURR_01856366.

- ██████████████████████████████████████████████████
████████████████ Ex. M, at OA_KNURR_01856374.

Defendants' failure to timely produce a privilege log, their tardy production and purposeful redactions of purely factual information is in violation of the May 4th Order, and justifies ordering Defendants to produce all purportedly privileged information relating to the Internal Investigation.

### D.   Defendants' Inaccurate and Incomplete Discovery Responses Further Support Ordering Production of All Internal Investigation Materials

That the limited Internal Investigation materials produced to date directly contradict several sworn interrogatory responses is yet another reason to order production of all Internal Investigation

materials.  Rule 33 requires that a response to an interrogatory be made "fully in writing under oath." Fed. R. Civ. P. 33(b)(3); *see also Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 467 (M.D. Fla. 2008) ("The purpose of verifying interrogatory responses is to have the party attest to the truth of the responses."), *aff'd*, 254 F.R.D. 470 (M.D. Fla. 2008).  As such, a responding party is required to provide complete and truthful answers to interrogatories.  *RDLG, LLC v. RPM Grp., LLC*, No. 1:10-CV-204, 2015 U.S. Dist. LEXIS 102608, at *8-9 (W.D.N.C. Aug. 5, 2015) (ordering defendant to provide full, complete, and truthful answers to each and every interrogatory in granting motion to compel); *Selby v. Sip & Bite Rest., Inc.*, No. MJG-13-1531, 2014 U.S. Dist. LEXIS 5, at *9 (D. Md. Feb. 12, 2014) (granting motion to compel and ordering defendant to supplement its interrogatory responses where its current responses were incomplete and untrue).

In its verified response to Interrogatory No. 1, Orbital ATK stated that "employees did not feel that their jobs were at stake"; that "[t]he Company is not aware of any evidence that any of this pressure came from the corporate level"; and that it "is not aware of *any evidence* that any Lake City personnel . . . intentionally mislead any . . . auditors."  Ex. E at 3-6.  The Internal Investigation memoranda, however, paint a very different picture.  *See supra*, §II.B.  But for the May 4th Order compelling production of the interview memoranda, Defendants might have gotten away with their incomplete and inaccurate interrogatory responses.  Such gamesmanship should not be tolerated lest it be encouraged.  As a consequence of their efforts to obstruct Plaintiffs' pursuit of its claims through inexcusable delay and the provision of inaccurate discovery responses, Defendants should be ordered to produce all the Internal Investigation materials so they can no longer hide damaging information behind erroneous interrogatory responses.  *See, e.g.*, *Aastra Techs. Ltd. v. Jones*, No. 03-487-SM, 2005 U.S. Dist. LEXIS 1854, at *3 (D.N.H. Feb. 9, 2005) (granting motion for sanctions in part against individual who made false misrepresentations in interrogatory responses, finding

"[d]ishonesty is never an acceptable litigation strategy and often will justify the sanction of dismissal or entry of judgment.").

**E.**   ***At a minimum*, the Court Should Compel Full Compliance with the May 4th Order**

Even if Defendants' abusive discovery tactics and failure to comply with the May 4th Order are permitted to go unchecked, at a minimum, Defendants should be ordered to fully comply with the May 4th Order and produce the Deloitte and PwC interview notes and memos and any other versions, drafts, or notes created regarding the witness interviews.

To be clear, the production of interview drafts and notes was within the requested relief of Plaintiffs' Motion to Compel and supported by Plaintiffs' relied upon authority.   Plaintiffs specifically relied on *SEC v. Vitesse Semiconductor Corp.*, No. 10 Civ. 9239 (JSR), 2011 U.S. Dist. LEXIS 77538, at *10 (S.D.N.Y. July 14, 2011) for the appropriateness of granting a "motion to compel production of third party's handwritten notes taken during its internal investigation" (Mot. at 26) and further pointed the Court to *In re Martin Marietta Corp.*, 856 F.2d 619, 624 (4th Cir. 1988), *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 230 F.R.D. 433, 435 (D. Md. 2005), and *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 465 (S.D.N.Y. 1996) all supporting the production of interview notes and memoranda in like circumstances.   *See* Mot. at 20-21, 23, 25.   Indeed, the Court specifically affirmed its reading of, and agreement with, *Royal Ahold* "in many respects" in the May 4th Order.   *See* Tr. at 55:24-25.

Moreover, the Court ordered "to the extent witness interview reports were created during the course of the internal investigation in any form, whether handwritten, typed, or transcribed, whether verbatim or summarized, that they must be turned over."   *See* Tr. at 56:9-12.   In addition, discussing Defendants' waiver of the "subject matter" of the witness interview memos, the Court specifically mentioned Defendants' waiver as to "*notes taken*" as within "the subject matter that should be turned

18

over." *Id*. at 57:11-12.  The May 4th Order was clear and Defendants' tortured interpretation of the Court's ruling which disregards all language after the word "reports" is improper.

In *Martin Marietta*, the court found privilege waived as to the production of attorneys' notes of witness interviews that were incorporated into a position paper provided to a government agency. 856 F.2d at 623.  In that case, the Fourth Circuit held that "work product protection has been waived as to most of the *internal notes* and memoranda on these interviews which, by way of summarizing in substance and format the interview results, Martin Marietta used as the basis of its disclosure to the government on its audit results." *Id*. at 623 n.2.  The Fourth Circuit highlighted the distinction between producing "marginal notes written by an attorney to convey his own mental impressions or thoughts," as potentially privileged and "notes and memoranda summarizing interviews with employees concerning the audit" as non-privileged. *Id*. at 623 n.1.  Here, just as in *Martin Marietta*, the Court ordered production of any notes and drafts that comprised the "raw" data of the interview memos created as part of the Internal Investigation, and only permitted limited redactions for any mental impressions (of which there were none).

Defendants' assertion of privilege over the interview drafts, notes, memos, and related documents created by or in the possession of their independent auditors is also wholly inappropriate. The Court has already ruled that Defendants were not entitled to any work-product protection, or attorney client protections over reports created by the *Hogan law firm* and thus, there is no credible basis to assert privilege for any similar documents created by or provided to their *auditors*. *See* Tr. at 55-56; ECF No. 165 at 1.  To the extent Defendants contend they have no control over the auditors' documents, Defendants have proven their control over the documents by instructing Deloitte and PwC to withhold them.  Therefore, Defendants should be ordered to produce any other

19

versions, drafts, or notes of the interview memos, including those being withheld by Deloitte and PwC, all of which the Court ordered to be produced by May 11, 2018.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order (1) compelling Defendants to either immediately (a) produce all documents being withheld as privileged; or (b) to produce all documents withheld as privileged that relate to or were created as part of the Internal Investigation; or (c) at a minimum, to fully comply with the May 4th Order and produce all other documents created related to the witness interviews conducted as part of the Internal Investigation, including but not limited to those created or in the possession of Deloitte and PwC, and (2) issue any further orders providing Plaintiffs just relief under Fed. R. Civ. P. 37(b)(2)(A) and 37(c)(1).

DATED:  June 15, 2018                           THE OFFICE OF CRAIG C. REILLY
                                                CRAIG C. REILLY, VSB #20942


                                                        */s/ Craig C. Reilly*
                                                    CRAIG C. REILLY

                                                111 Oronoco Street
                                                Alexandria, VA  22314
                                                Telephone:  703/549-5354
                                                703/549-2604 (fax)
                                                craig.reilly@ccreillylaw.com

                                                ***Liaison Counsel***

                                                ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
                                                SAMUEL H. RUDMAN
                                                58 South Service Road, Suite 200
                                                Melville, NY  11747
                                                Telephone:  631/367-7100
                                                631/367-1173 (fax)

20

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ
FRANK RICHTER
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN C. HERMAN
PETER M. JONES
Monarch Tower, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
MAUREEN E. MUELLER
KATHLEEN B. DOUGLAS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

*Lead Counsel for Plaintiff*

VANOVERBEKE MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

*Additional Counsel for Plaintiff Wayne County*
*Employees' Retirement System*

21

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 15, 2018, I filed the foregoing pleading or paper through the

Court's CM/ECF system, which sent a notice of electronic filing to all registered users:


*/s/ Craig C. Reilly*
Craig C. Reilly, Esq.
VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-5355
EMAIL craig.reilly@ccreillylaw.com
*Liaison Counsel for Lead Plaintiff*