UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| STEVEN KNURR, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ORBITAL ATK, INC., *et al.*,<br><br>Defendants. | Civil Action No. 1:16-cv-01031-TSE-MSN<br><br>CLASS ACTION |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR CLARIFICATION OF THE COURT'S MAY 4, 2018 ORDER OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

Lead Plaintiff Construction Laborers Pension Trust of Greater St. Louis and Named Plaintiff Wayne County Employees' Retirement System ("Plaintiffs") file this opposition to Defendants'[1] Motion for Clarification of the Court's May 4, 2018 Order, or, in the Alternative, for a Protective Order [ECF No. 183] ("Motion for Protective Order"). For the reasons set forth below, and for those already before the Court in Plaintiffs' Motion to Compel Defendants' Compliance with the Court's May 4, 2018 Order and Production of All Purportedly Privileged Documents (the "Motion to Compel") [ECF No. 176] (and Judge Nachmanoff's May 4, 2018 order [ECF No. 165] (hereafter "May 4th Order")[2], Defendants' Motion for Protective Order should be denied.

---

[1] Defendants are Orbital ATK, Inc. ("Orbital ATK" or "Company"), David W. Thompson, Garrett E. Pierce, Blake E. Larson, and Hollis M. Thompson.

[2] *See also* Transcript of Motion Hearing Before the Honorable Michael S. Nachmanoff United States Magistrate Judge, at 56:7-23, Ex. A ("Tr. at __").

1

**I.     INTRODUCTION**

Defendants knew Plaintiffs were going to file their Motion to Compel and decided to file this duplicative and unnecessary Motion for a Protective Order simply to grant themselves two additional briefs on the matter. Defendants were informed three weeks ago that Plaintiffs would be filing their Motion to Compel at the first opportunity after the stay was lifted in the case. In lieu of waiting the five days to file an opposition to Plaintiffs' motion, Defendants filed their Motion for a Protective Order just five hours after Plaintiffs' motion was filed. Both motions deal with whether additional documents are required under the May 4th Order. *See* Motion for Protective Order at 1 (seeking a protective order as to "attorney notes, drafts, material prepared by the Company's outside auditors on the employee interviews, or any other material relating to the investigation"). Plaintiffs are now forced to brief the same matter twice, and this Court is forced to read six, instead of three, briefs.

Defendants' display a troubling pattern of resisting discovery, increasing costs of litigation, and attempting to run out the clock on the discovery schedule set by the Court. First, as Judge Ellis noted there has been plenty of time to prepare for discovery, *see* ECF No. 121 at 2 n.1, yet even though Judge Ellis denied the motion to dismiss the case in August 2017, Defendants apparently did not begin reviewing their documents until Judge Ellis denied their second motion to dismiss. The delays have only continued since then. For example, although the bulk of documents were to be produced on May 1, 2018, Defendants produced only approximately 365,000 documents by that date and, in contrast, last Friday, over six weeks after that deadline, produced an additional 116,000 documents (720,000 pages). As noted in Plaintiffs' prior motions to compel, Defendants are strategically delaying their document production in order to diminish the time Plaintiffs have to prepare for depositions and expert report disclosures. *See* ECF Nos. 133, 150.

Second, Defendants appear to be coordinating with their auditors to delay depositions. Plaintiffs have been asking Defendants to provide dates for certain depositions since April 2018, yet,

as of the date of this filing, Defendants have only provided dates for two witnesses and are insisting they take place in middle to late July near the end of discovery. Similarly, Plaintiffs sent a subpoena to Defendants' auditor for a June 25, 2018 deposition, and, on June 19th, the auditor's counsel responded that they would not appear until August 7th or 8th, literally the very last days of the close of discovery. *See* ECF No. 172. There is little doubt Defendants are coordinating with their auditors because, as set forth in Plaintiff's Motion to Compel, the auditors are refusing to produce certain interview memoranda within their auditor workpapers simply because the Defendants told them not to. *See* Motion to Compel at 10-11. These delay tactics are contrary to the Court's scheduling order and directed at gaining a strategic advantage in the litigation. By delaying all the depositions until the final weeks of the discovery period, Defendants are reducing Plaintiffs ability to use information gained in one deposition to make strategic decisions regarding additional depositions, expert reports, and whether to depose additional witnesses.

Third, Defendants are not only attempting to delay depositions and their production of documents until the very end of the discovery schedule, but they are producing volumes of useless information while forcing Plaintiffs to move to compel the best documents. Plaintiffs have been forced to file (and the Court has been required to rule upon) two prior motions to compel, both of which were substantially granted. *See* ECF Nos. 139, 165. As noted in the pending Motion to Compel, those documents, including the interview memoranda, contain some of the best evidence obtained to date and show that Defendants' sworn interrogatory responses were completely false. Motion to Compel at 8-10. Had it not been for the forced production of the interview memoranda, for example, Plaintiffs may not have obtained the evidence showing that ▮▮▮▮▮▮

3

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* at Ex. B, at OA_KNURR_01856636.

Fourth, Defendants disregarded their "good faith" obligation under the Protective Order to designate as "Confidential" only those documents whose disclosure would result in "substantial injury." ECF No. 124-1, at ¶3. Instead, Defendants labeled all of their documents as "Confidential" including, for example, their *publicly available* SEC filings. As a result, as reflected by the senseless redaction of the information above, all filings will be unnecessarily complicated as everything must be filed under seal. *See Minter v. Wells Fargo Bank, N.A.*, Nos. WMN-07-3442, WMN-08-1642, 2010 U.S. Dist. LEXIS 136006, at *6-8, *25 (D. Md. Dec. 23, 2010) (holding that "no interpretation" of a good faith standard "could be seen to give the parties carte blanche to freely stamp documents as 'confidential' without purposeful and thorough inquiry" and that "over-designation makes litigation more expensive and more complicated without a worthwhile purpose").

Fifth, Defendants improperly redacted certain interview reports and waited until May 23, 2018, to produce other interview reports in a brazen disregard for the Court ordered May 11, 2018 deadline. *See* Motion to Compel at 15-16. But even the delayed May 23, 2018 production was insufficient to comply with the May 4th Order, and that failure was compounded by Defendants' refusal to provide a privilege log, which forced Plaintiffs to file a third motion to compel. *See* Motion to Compel at 12-14. To add to the delays and waste they are imposing on the system, Defendants now multiply Plaintiffs' (and the Court's) burden to resolve this matter by filing a wasteful and duplicative Motion for a Protective Order that simply gives them three briefs, instead of one, to address their non-compliance. If Defendants had any good faith doubt concerning their obligations under the May 4th Order, they would have filed their motion for a protective order (which is really a motion for clarification) before the May 11th deadline.

In short, Defendants disregarded the deadline in the May 4th Order just as they are disregarding the Court ordered schedule in this case because they consider it more strategically advantageous to dump all their documents and deponents on Plaintiffs in the very last weeks of discovery than to comply with the Court's orders. The questions presented by Plaintiffs' Motion to Compel and Defendants' Motion for Protective Order are whether the rules apply to Defendants, and, if they do, what relief should Plaintiffs be awarded to remedy the incomplete and untimely production and discourage similar behavior in the future.

## II.   ARGUMENT

### A.   The May 4th Order Required the Production of All Witness Interviews in Any *Form,* including the Auditor Memos

The facts concerning this Action have been set forth in both Plaintiffs' Memorandum of Law in Support of Motion to Compel Production of Certain Internal Investigation-Related Documents from Defendants [ECF No. 150] ("2nd Motion to Compel" ) and the most recent Motion to Compel. In order to minimize repetition, Plaintiffs incorporate by reference, rather than restate herein, the facts and arguments set forth in their Motion to Compel. *Id.* The cases cited by Plaintiffs, and relied upon by the Court, supported the May 4th Order which properly found the factual information was "raw data" that was not privileged, and to the extent it was, any privilege was waived based upon disclosure to the SEC. *See* Motion to Compel at 6-7.

Beyond being inappropriately filed, the Motion for Protective Order has no basis in law or fact. Notably the May 4th Order already required the production of witness interview notes, drafts, and prior versions, including those created by the auditors when it ordered Defendants to produce all witness interview memoranda "created during the course of the internal investigation in *any form*," (Tr. at 56:9-12) and notes "taken" (*Id.* at 57:11-12) and rejected Defendants' privilege arguments. *See* Motion to Compel at 6-7, 18-20. Defendants' attempts to re-litigate already ruled upon issues,

5

such as Defendants' waiver under Fed. R. Evid. 502(a), should be rejected. Defendants' improper redactions of the interview memoranda and their false interrogatory responses to hide bad facts, further support Plaintiffs' need to review the "raw" data of the underlying produced interview memoranda, to ensure additional damaging information was not removed when the raw notes were reduced to more formal memoranda.

### 1. Defendants' Arguments for a Protective Order Are Without Merit

Plaintiffs specifically requested the production of, and the May 4th Order required Defendants to produce, all versions, drafts, or notes of the witness interviews. As discussed in previous briefing, Plaintiffs' initial motion requested all "Internal Investigation-related documents responsive to RFP No. 16 . . . including witness interview memoranda." 2nd Motion to Compel at 7. To that end, RFP No. 16 sought Internal Investigation "interviews or statements (*including . . . notes thereof*"). *See id.* at Ex. A at 15. Moreover, during the hearing, Plaintiffs' counsel reaffirmed their request for all "written witness statements" (Tr. at 43:3-6) and "underlying data for the internal investigation's public findings." *Id.* at 7:23-24.

Defendants' attempt to take certain statements out of context from the hearing is unavailing. Motion for Protective Order at 4-5. For instance, Defendants argue that Plaintiffs "narrowed" their request to only witness reports shared with the SEC, but are unable to cite any support for their proposition.

Next, Defendants infer that because the word "draft" was not used by "anyone" during the hearing (Motion for Protective Order at 5), the parties somehow agreed that only the final version of any interview memoranda was required to be produced. Defendants, however, ignore that the Court ordered production of all witness interview reports, "in any form," (Tr. at 56:9-12) and specifically acknowledged that the underlying "raw information" was the most "relevant" (*Id.* at 58:7-9) and that

6

Defendants waived the "subject matter" of "notes taken." *Id*. at 57:11-12. Indeed, in questioning Defendants during the hearing, the Court referred to Plaintiffs' requested relief as "*notes*. . . prepared during [the] internal investigation" *Id*. at 50:5-13.

In addition, not only is Defendants' position that the Court excluded any notes, drafts, or other versions of the interview statements from the required production unsupported by the record, but it is inconsistent with their conduct. Defendants conceded that not only a single version was required under the May 4th Order by belatedly producing not just the Hogan Reports but also the Hogan/Auditor Version. Moreover, while Defendants claim drafts are not required under the May 4th Order, certain Hogan Reports state that they are both "notes" and "drafts."

### 2. Defendants Cannot Assert Privilege Over Auditor Workpapers

The Court has already ruled that Defendants were not entitled to any work-product protection or attorney-client protections over interview memoranda created by the *Hogan law firm* and thus, there is no credible basis to assert privilege for any similar documents created by their *auditors*. *See* Tr. at 55-56; ECF No. 165 at 1. Auditors are required to be independent of the Company and to maintain workpapers for review by the Public Company Accounting Oversight Board ("PCAOB") pursuant to professional standards. Anything the Company gave to them, they did so knowing the PCAOB could access. *See* Auditing Standard 1215: Audit Documentation (requiring an auditor to prepare and maintain documentation in connection with engagements conducted pursuant to the PCAOB). Thus, there is no credible claim that Defendants expected to maintain privilege.

Courts routinely find that documents created for the business purpose of obtaining an audit report to be publicly filed along with their publicly filed financial statements are not protected work product. *See Royal Ahold N.V. Sec. & ERISA Litig*., 230 F.R.D. 433, 435 (D. Md. 2005) (finding investigative memoranda prepared by outside counsel related to restatement was not protected work product because "the investigation would have been undertaken even without the prospect of

7

preparing a defense to a civil suit."). As a publicly-held corporation, Orbital ATK was obligated to furnish to its independent auditors all information that would enable them "to render truthful and accurate earnings and financial statements." *In re King Pharms., Inc. Sec. Litig.*, No. 2:03-CV-77, 2005 U.S. Dist. LEXIS 49983, at *14 (E.D. Tenn. Sept. 21, 2005) (finding materials at issue were not work product because they "would have been furnished to PWC *in any event*") (emphasis in original).

Here, Deloitte notified Plaintiffs that it was in possession of and withholding "typed notes" related to the witness interviews, and subsequently explained that these documents were being withheld based solely on Defendants' privilege assertions. On June 19, 2018, PwC confirmed it was withholding over 200 documents relating to the Internal Investigation and witness interviews based on Orbital ATK's continued assertions of confidentiality. Given that the Court found that Defendants were not entitled to any purported protections over any interview memorandum "created during the course of the internal investigation in any form" the documents must be produced. *See* Tr. at 56:9-12; ECF No. 165 at 1.

Defendants' claim that Plaintiffs should be forced to file a motion to compel against the auditors is nothing more than another attempt to increase the costs of litigation and delay production of critical documents until the very end of the discovery period. The auditors have already said, and Defendants do not dispute, that they are willing to produce the documents and are only withholding them at Defendants' direction. This both demonstrates Defendants' control over the documents and that filing a motion to compel against the auditors would be a pointless exercise as Defendants

8

would intervene to oppose compliance as the real party in interest. In fact, it was Defendants that created a privilege log as to PwC's purportedly privileged interview memoranda documents.[3]

Lastly, any argument that the Company's disclosures to auditors were outside the scope of the Motion to Compel is contradicted by the fact that Defendants already produced the Hogan/Auditor Version to Plaintiffs as "responsive" to the May 4th Order.

### B. The May 4th Order Already Considered and Rejected Defendants' Interpretation of Privilege Under Fed. R. Evid. 502(a)

Defendants' Motion for Protective Order is not only unnecessary in light of Plaintiffs' Motion to Compel but Defendants are using it as an attempt to rehash the same arguments the Court rejected in the May 4th Order. *See* Motion for Protective Order at 6-9. Defendants never filed a motion to reconsider the May 4th Order. Defendants instead chose to refuse to timely or fully comply and are now seeking to re-litigate the issues in response to the Motion to Compel or framed as a Motion for Protective Order. The fact that Defendants have not sought reconsideration in over one month since the May 4th Order was issued only confirms the issues were correctly decided for the reasons set forth therein and in Plaintiffs' prior briefing. *See* ECF Nos. 150, 161, 165.

Finally, Defendants' submission of sworn interrogatory responses that are demonstrably false is sufficient grounds to order production of all remaining purportedly privileged information as courts recognize far more extreme remedies are available in such situations. *See, e.g.*, *Aastra Techs. Ltd. v. Jones*, No. 03-487-SM, 2005 U.S. Dist. LEXIS 1854, at *3 (D.N.H. Feb. 9, 2005) (finding interrogatory responses were false and stating "[d]ishonesty is never an acceptable litigation strategy and often will justify the sanction of dismissal or entry of judgment"); *Flame S.A. v. Indus. Carriers*, No. 2:13-cv-658, 2014 U.S. Dist. LEXIS 109954, at *41 (E.D. Va. Aug. 8, 2014) (prohibiting

---

[3] As will be addressed in the reply brief in support of Plaintiffs' Motion to Compel, Defendants provided partial privilege logs---after the Motion to Compel was filed -- and without prior notice of the date they would be produced.

9

defendant from offering certain evidence as sanction for failure to comply with court's discovery orders); Fed. R. Civ. P. 37(b)(2)(A) (noting that Rule 37 provides a Court with numerous remedies for failure to comply with a discovery order including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" "dismissing the action" or treating the non-compliance as "contempt of court").

### C. Defendants Have Not Articulated Any "Good Cause" for Their Motion for Protective Order

Defendants' Motion for Protective Order should further be denied because Defendants have not even attempted to meet the heavy burden of "good cause" required to grant a protective order.

A party seeking a protective order faces the heavy burden "of establishing 'good cause' by demonstrating that 'specific prejudice or harm will result if no protective order is granted.'" *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) (Ellis, J.) (vacating protective order that failed to require a finding of good cause). As this Court held in *Prince*:

> To show good cause, a party must demonstrate more than that an opposing party intends to disseminate discovery materials; rather, it must show that the disclosure of those materials will cause specific prejudice or harm, such as annoyance, embarrassment, oppression, or undue burden or expense. And, importantly, the fact that public disclosure of discovery materials will cause some annoyance or embarrassment is not sufficient to warrant a protective order; the annoyance or embarrassment must be particularly serious.

*Id.* at 567-68.

Defendants have not offered any good cause for granting the Motion for Protective Order, let alone any "specific prejudice or harm will result if no protective order is granted." *Id*. at 565. Defendants have not sought relief from the May 4th Order in over one month and they have been on notice of the filing of the Motion to Compel for over three weeks. Concealing unfavorable evidence is not "good cause" and, at a minimum, Defendants must be ordered to fully comply with the May 4th Order.

10

**III.     CONCLUSION**

For the reasons set forth above, and in Plaintiffs' Motion to Compel, Plaintiffs respectfully request that the Court deny Defendants' Motion for Clarification of the Court's May 4, 2018 Order, or, in the Alternative, for a Protective Order and issue any such further relief as the Court deems just and proper.

DATED:  June 20, 2018                    THE OFFICE OF CRAIG C. REILLY
                                         CRAIG C. REILLY, VSB #20942


                                          */s/ Craig C. Reilly*
                                         CRAIG C. REILLY

                                         111 Oronoco Street
                                         Alexandria, VA  22314
                                         Telephone:  703/549-5354
                                         703/549-2604 (fax)
                                         craig.reilly@ccreillylaw.com

                                         *Liaison Counsel*

                                         ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                         SAMUEL H. RUDMAN
                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)

                                         ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                         JAMES E. BARZ
                                         FRANK RICHTER
                                         200 South Wacker Drive, 31st Floor
                                         Chicago, IL  60606
                                         Telephone:  312/674-4674
                                         312/674-4676 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN C. HERMAN
PETER M. JONES
Monarch Tower, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
MAUREEN E. MUELLER
KATHLEEN B. DOUGLAS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

*Lead Counsel for Plaintiff*

VANOVERBEKE MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

*Additional Counsel for Plaintiff Wayne County Employees' Retirement System*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2018, I filed the foregoing pleading or paper through the Court's CM/ECF system, which sent a notice of electronic filing to all registered users:

*/s/ Craig C. Reilly*
Craig C. Reilly, Esq.
VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-5355
EMAIL craig.reilly@ccreillylaw.com
*Liaison Counsel for Lead Plaintiff*