UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| STEVEN KNURR, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Civil Action No. 1:16-cv-01031-TSE-MSN |
| Plaintiff, ) ) | CLASS ACTION |
| vs. ) ) | |
| ORBITAL ATK, INC., *et al.*, ) ) | |
| Defendants. ) ) ) | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANTS'
COMPLIANCE WITH THE COURT'S MAY 4, 2018 ORDER AND PRODUCTION OF
ALL PURPORTEDLY PRIVILEGED DOCUMENTS**

Defendants' opposition to Plaintiffs' motion to compel fails to provide any just reason for

their failure to produce a timely privilege log or for their failure to comply with the Court's May 4,

2018 Order. For the reasons set forth below, and for those set forth in Plaintiffs' Motion to Compel

[ECF No. 174] and Plaintiffs' Opposition to Defendants' Motion for Clarification of the Court's

May 4, 2018 Order, or, in the Alternative, for a Protective Order, ("Opp. to Motion for Protective

Order") [ECF No. 191], which is incorporated by reference, the Motion to Compel should be

granted.

I.      **INTRODUCTION**

As Judge Ellis has often told those standing before the Court, life is about making choices

and living with the consequence of those choices. In this case, Defendants: failed to produce all

interview related documents by the Court ordered deadline in the May 4th Order; redacted purely

factual information from the interview memoranda solely because it was damaging and contrary to

the Court's admonition to only redact mental impressions; instructed their auditors to withhold

1

interview-related documents in violation of the May 4th Order; submitted false interrogatory responses; wrongfully withheld documents that necessitated two prior motions to compel; dumped 25% of their total documents on Plaintiffs just days ago and nearly two months after the Court ordered May 1, 2018 deadline for substantial completion; refused to make their witnesses available for deposition until the final weeks of discovery; marked all of their documents as "Confidential" in violation of the "good faith" requirement in the Protective Order; produced an incomplete and vague privilege log weeks after it was due; and unnecessarily multiplied the proceedings related to the Motion to Compel by filing a duplicative motion for a protective order. *See* Opp. to Motion for Protective Order at 2-5.

Defendants' flippant response to these ongoing and serious violations of the Court's orders, local rules and the Federal Rules of Civil Procedure is to claim "no good deed goes unpunished."[1] None of the choices set forth above reflect "good deeds" and having made those choices, Defendants must now face the consequences as such obstructive behavior should not be tolerated.

## II.    ARGUMENT

### A.    The May 4th Order Required Defendants To Produce All Notes, Drafts, and Versions of the Interview Memoranda

Defendants' claim that only the "final witness interview reports" shared with the SEC were required to be produced by the May 4th Order (Opp. at 15) is directly contradicted by the plain language of the order, the hearing, and Defendants' own conduct. Plaintiffs' initial motion to compel made clear that all notes, drafts, and reports relating to factual interviews (that were conducted for business reasons) were being sought because they were not privileged, and the Court agreed. *See* Motion to Compel at 18-20; Opp. to Motion for Protective Order at 6-9. Defendants

---

[1]    *See* Memorandum of Defendants Orbital ATK, Inc., David W. Thompson, Garret Pierce, Blake E. Larson, and Hollis Thompson in Opposition to Plaintiffs' Motion to Compel Compliance with the Court's May 4, 2018 Order ("Opposition" or "Opp. __") at 2.

already conceded that the May 4th Order required more than a single version of the interview memoranda because they produced (albeit late) the Hogan Reports (which were shared with the SEC) *and* the Hogan/Auditor Version (which were used when communicating with their auditors[2]). Moreover, despite Defendants' current claim that the Hogan Reports were "final versions of the interview reports," several of them are labeled "drafts" and "notes." The fact that Defendants now object to the production of any additional notes, drafts, or versions only raises the question of – what are they hiding?

The Court allowed Defendants to redact any mental impressions so there is no good reason to object to producing the additional material. Defendants produced the Hogan/Auditor Version which document what the auditors were told about the witness interviews, so Defendants' objection to producing what the auditors wrote about the same conversation is non-sense. Presumably the auditors' interview memoranda, just like any other notes, drafts, or version of the interview memoranda should closely align with the Hogan/Auditor Version already produced. If they did not align, and it turns out that Defendants told their auditors something very different than they told the SEC, then that would be fertile ground for discovery given the allegations in this case. Defendants' objection to producing purely factual information created for the business purpose of restating their financial statements suggests something is amiss here and Plaintiffs are entitled to investigate.

In any event, the Court already considered and ruled upon these issues and ordered Defendants to produce all witness interview memoranda "created during the course of the internal

---

[2]    To be clear, the Audit Committee hired Alvarez & Marsal to be the forensic accountants for the Internal Investigation, while PwC and Deloitte served as the Company's outside auditors.

investigation in *any form*," (Tr.[3] at 56:9-12) and notes "taken" (*Id.* at 57:11-12) and rejected Defendants' privilege arguments. *See* Motion to Compel at 6-7, 18-20.

### B.    Defendants Cannot Re-litigate the Merits of the May 4th Order

Defendants could have sought review or reconsideration of the May 4th Order. But they did not. Instead, they refused to comply with it, forcing Plaintiffs to, yet again, seek relief from the Court. Defendants' flimsy justifications for doing so, are unavailing. *See* Opp. to Motion for Protective Order at 9-10.

First, Defendants claim that they had "negotiated an agreement" regarding their supplemental production of the interview memoranda, but that is misleading and irrelevant. Opp. at 2. After Plaintiffs were forced to file, and won in part the initial motion to compel Internal Investigation documents, Defendants redacted purely factual information from the interview memoranda, in violation of the May 4th Order, and withheld all but one version of the interview memoranda. Plaintiffs objected to this non-compliance, and as a result, two weeks after the production was due Defendants agreed to remove the baseless redactions and produce another version of the interview memoranda. There was no "negotiated agreement" to permit Defendants to violate the May 4th Order by making improper redactions or producing documents two weeks after the Court ordered May 11th deadline. Rather, the only agreement Defendants sought as part of their eventual agreement to comply with the May 4th Order was that if they did so Plaintiffs would not argue Defendants' production of the unredacted versions or additional Hogan/Auditor Version was itself a waiver of any privilege. Plaintiffs have not done so. Instead, Plaintiffs have argued that there was no basis for the redactions and no basis to produce only a single document relating to the interviews.

---

[3]    *See* Transcript of Motion Hearing Before the Honorable Michael S. Nachmanoff United States Magistrate Judge, Ex. A ("Tr. at __").

Parties cannot "negotiate" an agreement to violate a Court Order and Defendants' suggestion that they could do so is legally unsupported and their claim that they did do so is factually inaccurate.

Second, as they argued in their briefing on the initial motion to compel and during the May 4, 2018 hearing, Defendants again argue exhaustively that the "law of privilege" and Rule 502(a) prohibited subject matter waiver of Plaintiffs' interview memoranda.  Opp. at 17-24; *see* ECF No. 155, at 6-12, 20-22, 24-25; *see also*, Tr. at 34:6-35:7; 44:8-21; 50:14-25.  Yet the Court already analyzed and rejected this argument because it is without merit.  *See* Tr. at 55:24-56:3 ("I have looked carefully at the defendants' arguments and cases [and Fed. R. Evid. 502(a)], and I do not find that it precludes turning over information sought.").[4]

Frustrated with the May 4th Order, Defendants refused to comply, forced Plaintiffs to engage in meet and confers to test their resolve to enforce the Order, belatedly produced additional information, and then withheld the rest and instructed their auditors to do the same.  Having unilaterally refused to timely or fully comply with the May 4th Order, Defendants have essentially resorted to arguing that the Court got it wrong, so Defendants need not comply.  Defendants are wrong on the law and wrong to believe that their previously rejected  arguments provide cover for their non-compliance.

---

[4]   Defendants' argument that any case before 2008 supporting subject matter waiver is somehow unreliable given the 2008 amendment to Fed. R. Evid. 502(a) (Opp. at 22 n.12) was previously rejected because it is  wrong.  Fed. R. Evid. 502(a) expressly permits subject matter waiver, in "circumstances in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."  As made clear in Plaintiffs' briefing, Fed. R. Evid. 502(a)'s subject matter waiver directives directly apply here because Defendants improperly used their privilege over the Internal Investigation as both a sword and a shield.  *See* ECF No. 150, at 21-25 (citing argument and authority).

**C.      Defendants' Production of a Late, Inadequate, and a Still Incomplete Privilege Log Does Not Satisfy Their Burden**

By the time of the May 4, 2018 hearing the case had been pending for 22 months and Defendants had not prepared a privilege log.  At the hearing, the Court noted that Defendants' privilege log was late, and its absence hindered Plaintiffs' ability to challenge and the Courts' ability to assess Defendants' privilege assertions.  Motion to Compel at 12-14.  Ten days passed after the hearing and Defendants still did not produce a privilege log.  The Court then entered a stay, which gave Defendants another 30 days to finish their privilege log.  However, proving once again that Defendants will comply with no rule, directive, or Court Order without being forced to, Defendants failed to serve a privilege log when the stay was lifted.  Instead Defendants indicated they would produce a partial itemized privilege log within a week without giving any firm deadline for producing a full privilege log.  *Id*. at 5.  Defendants' claim that Plaintiffs should not have filed this motion given their promise to provide a privilege log at some uncertain date in the future.  Opp. at 4-8.  But deadlines matter and rules matter.  Defendants have kicked the can down the road far beyond their deadline to produce a log and in doing so have failed to meet their burden of establishing privilege.

After this motion to compel was filed, Defendants produced a partial log, with grossly inadequate descriptions and now pat themselves on the back for doing so.  Yet in their Opposition they admit that the partial log is not complete (Opp. at 4), and still do not provide a final date for production.  Defendants are incorrect to suggest Plaintiffs should  be forced to wait until the final log is produced (at some indeterminate time) and then use whatever limited time remains in the schedule to analyze the lengthy log, while finishing all depositions, and reviewing Defendants' late production of documents.  That is demonstrably unfair to Plaintiffs and demonstrates Defendants' failure to

appreciate that it is Defendants' burden to establish privilege (ECF No. 165 at 1), not Plaintiffs' burden to defeat it.

While Plaintiffs have not completed their analysis of Defendants' privilege logs, a few examples demonstrate that it was whipped together before this motion with inadequate descriptions. For example, many of the entries on Orbital ATK's privilege log being withheld for "Attorney-Client Privilege" do not even list an attorney in the to, from, or cc: line, and, rather than provide a description to support the privilege assertion contain only a conclusory description that there is an "attachment referencing and/or attaching privileged communication." *See* Ex. B at entry 1326 and 1327. Stating a communication between non-lawyers as privileged is insufficient to assess whether it is privileged, and Defendants have failed to meet their burden in providing such conclusory descriptions. Plaintiffs have been forced to expend substantial time reviewing and analyzing the logs yet still are unable to fully "access" Defendants' privilege claims. Fed. R. Civ. P. 26. The haphazard logs are devoid of the specificity required under Fed. R. Civ. P. 26, and Plaintiffs should be not required to spend anymore efforts trying to parse through their deficiencies.

In summary, Defendants' privilege log is long past due, and whipping together a partial log with vague and inadequate descriptions hardly satisfies their burden, and to the contrary, only shows Defendants did not start their log until the day of or shortly before this motion was filed as they continue their pattern of having a complete disregard for the May 4th Order and applicable local and federal rules.[5]

_____

[5]   Defendants arguments regarding Plaintiffs' privilege log are a red herring. Opp. at 6-7. Plaintiffs produced their privilege log before Defendants produced a partial log even though Plaintiffs served their discovery requests on Defendants much earlier in discovery. Defendants have never claimed Plaintiffs' privilege log was late and Plaintiffs have withheld only a handful of documents not thousands like Defendants. Moreover, Defendants' complaint that Plaintiffs did not log their communications with the lawyers in this case is disingenuous because Defendants requested that the parties not do so, Defendants have not done so, and it is fairly standard to agree not to log

### D.   Defendants' Tortured Justifications of Their False Interrogatory Responses Is Unpersuasive

Defendants only dig the hole deeper in attempting to argue their interrogatory responses are

accurate. *See* Opp. at 8-14. ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████   *See* Motion to Compel at 8-10.  The cost savings underlying the bid were unrealistic which

is what Defendants conceded in restating their financial statements and admitting the losses were

evident at the time the bid was won. ██████████████████████████████

████████████████████████████████████████████████████

████████████   is not only a disingenuous reading of the memoranda, but an irrelevant distinction

because the bid price and the profit reported on that price are one and the same issue. ██████████

████████████████████████████████████████████████████

█████████████████████████   Motion to Compel at Ex. B, at OA_KNURR_01856636. ██

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Defendants withheld the memoranda and tried to hide these damaging witness statements by serving

a false interrogatory response that claimed pressure came only from lower level managers and that

they were not aware of "any evidence" that any pressure came from ████████.  This was a

calculated risk to withhold information and mislead in their responses.  They made a choice to bury

rather than disclose damaging facts.  It did not work and now they should face the consequence of

their choice.

---

communications with retained counsel since such communications occur constantly throughout litigation.

Similarly, Defendants' claim that the evidence that employees misled their auditors was solely in the possession of their auditors and unavailable to them is without merit. *See* Opp. at 10-13. ██████████████████████████████████████████████████████████████ ████████████████████████. *See* Motion to Compel, at Ex. F, at OA_KNURR_01856532. This information should have been disclosed in the interrogatory and its omission is outrageous particularly given that ████████ undoubtedly assisted in the interrogatory responses as the Company ████████████████████████████████████████████. Moreover, Defendants cannot claim to lack access to the auditors' documents when they have proven their control over such documents by ordering the auditors to withhold interview memos. *See* Motion to Compel at 19-20. For example, PwC is presently withholding 200 documents relating to the Internal Investigation and witness interviews based on Orbital ATK's continued assertions of confidentiality and 7,000 documents from Plaintiffs because they have said that Orbital ATK has not finished reviewing and approving them for production. Defendants are allowed to try to spin these bad facts at trial, but they cannot hide bad facts in discovery, and their interrogatory responses failed to disclose factual information in their possession in violation of their duties of candor and their duties to comply with the federal rules whose purpose is "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed R. Civ. P. 1. By improperly withholding damaging information, violating Court orders, and forcing Plaintiffs to file repeated motions to compel, Defendants are desperately attempting to avoid having this case resolved on its merits and are determined to increase the costs of litigation.

### E.    Defendants Are Wrong Regarding the Relief that May be Awarded

While this Court may be familiar with parties that object too often, violating Court orders, submitting false interrogatory responses, delaying all document and deposition discovery, instructing third party and "independent" auditors to withhold documents, and the other conduct set forth herein

is far beyond the norm and outrageous. Plaintiffs cited ample authority for the Court's broad discretion to fashion a remedy for similar conduct, up to and including entering judgment against the party. *See* Fed. R. Civ. P. 37(b)(2)(A)(vi); *Flame S.A. v. Indus. Carriers*, No. 2:13-cv-658, 2014 U.S. Dist. LEXIS 109954, at *41 (E.D. Va. Aug. 8, 2014) (prohibiting defendant from offering certain evidence as sanction for failure to comply with court's discovery orders); Motion to Compel at 12, 14, 17. Plaintiffs have not sought such a harsh remedy but have set forth several forms of relief. First, Plaintiffs' request for full compliance with the May 4th Order is not extreme -- it is simply asking for relief that was already granted. Defendants must produce other drafts, versions, or notes relating to the witness interviews, including those created or in the possession of the auditors.

Second, as to Defendants' delinquent and still incomplete privilege log, the Court noted on May 4th that the log was past due and that Defendants could not meet their burden to establish privilege without one. *See* Motion to Compel at 12-14. Given Judge Ellis's previous comment that the parties had 19 months to prepare for discovery (*see* ECF No. 121 at 2 n.1), Defendants were well aware that this Court would not permit the case to proceed at a snail's pace. Their failure to begin preparing their log during those 19 months was inexcusable. Despite the Court's directives, Defendants' – partial – privilege log was not produced until June 15, 2018. With no completion date for their log even offered, the Court is well within its discretion to find that, without a privilege log, Defendants have failed to meet their burden and to compel production of the withheld documents. *See AVX Corp. v. Horry Land Co., Inc.*, No. 4:07-cv-3299-TLW-TER, 2010 U.S. Dist. LEXIS 125169, at *10-13 (D.S.C. Nov. 24, 2010) (granting motion to compel production of withheld documents where privilege log was not produced until after the filing of motion, and once produced, was insufficiently detailed); Motion to Compel at 12-14. In other words, if Defendants tendered a blank log, the Court would have no difficulty finding it failed to establish privilege, and that is

essentially where we are in this case.  Defendants' late production of a privilege log after the Motion to Compel was filed is insufficient, but, at a minimum, Defendants should be ordered to produce all documents not on the two logs submitted after this motion and they should not be granted any further extensions of time to produce supplemental logs.

Third, beyond ordering Defendants to comply with the May 4th Order or finding that the Defendants failed to meet their burden of establishing privilege by failing to produce a log, the Court has several options of relief available at its discretion to deter Defendants' refusal to comply with Court orders and to deter their abusive tactics in discovery.  Motion to Compel at 12-17.  For example, the Court informed Defendants at the May 4th hearing that if Defendants improperly redacted their production, it could order the immediate un-redaction of any mental impressions from the materials.  *See* Motion to Compel at 15-16.  Because Defendants engaged in frivolous redactions of purely factual information solely because it was damaging, after having been fully informed of the penalty for doing so, it is not extreme that the penalty now be enforced.  Thus, the Court should order all auditor memoranda, notes, drafts, and other versions of the witness interviews that were required under the May 4th Order be produced without redactions.

Fourth, the final option offered by Plaintiffs to deter the collection of inappropriate conduct set forth herein is to compel Defendants to produce all purportedly privileged documents, or, at least all such documents relating to the Internal Investigation.  Motion to Compel at 14-18.  The Court has already ruled that the Internal Investigation was conducted for business reasons and, therefore, such materials are not privileged.  Moreover, such a remedy would serve to deter Defendants from improperly withholding damaging information and refusing to comply with Court orders on a complete and timely basis.  Whatever remedy the Court imposes, it should be sufficient to deter such

11

behavior because if the only consequence for failing to follow the rules is simply to be ordered to follow the rules at a later date, there will be no disincentive to noncompliance.

## III.    CONCLUSION

For the reasons set forth above and in Plaintiffs' Motion to Compel and Opposition to Motion for Protective Order, Plaintiffs respectfully request that the Court grant the Motion to Compel and issue an order (1) compelling Defendants to either immediately (a) produce all documents being withheld as privileged; or (b) to produce all documents withheld as privileged that relate to or were created as part of the Internal Investigation; or (c) at a minimum, to fully comply with the May 4th Order and produce all other documents created related to the witness interviews conducted as part of the Internal Investigation, including but not limited to those created or in the possession of Deloitte and PwC, and (2) issue any further orders providing Plaintiffs just relief under Fed. R. Civ. P. 37(b)(2)(A) and 37(c)(1).

DATED:  June 21, 2018                                 THE OFFICE OF CRAIG C. REILLY
                                                      CRAIG C. REILLY, VSB #20942


                                                      */s/ Craig C. Reilly*
                                                      CRAIG C. REILLY

                                                      111 Oronoco Street
                                                      Alexandria, VA  22314
                                                      Telephone:  703/549-5354
                                                      703/549-2604 (fax)
                                                      craig.reilly@ccreillylaw.com

                                                      *Liaison Counsel*

                                                      ROBBINS GELLER RUDMAN
                                                        & DOWD LLP
                                                      SAMUEL H. RUDMAN
                                                      58 South Service Road, Suite 200
                                                      Melville, NY  11747
                                                      Telephone:  631/367-7100
                                                      631/367-1173 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ
FRANK RICHTER
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN C. HERMAN
PETER M. JONES
Monarch Tower, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
MAUREEN E. MUELLER
KATHLEEN B. DOUGLAS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

*Lead Counsel for Plaintiff*

VANOVERBEKE MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

*Additional Counsel for Plaintiff Wayne County*
*Employees' Retirement System*

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 21, 2018, I filed the foregoing pleading or paper through the

Court's CM/ECF system, which sent a notice of electronic filing to all registered users:

*/s/ Craig C. Reilly*
_____

Craig C. Reilly, Esq.
VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-5355
EMAIL craig.reilly@ccreillylaw.com
*Liaison Counsel for Lead Plaintiff*

14