IN THE UNITED STATES DISTRICT CIRCUIT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| STEVEN KNURR, *et al.*, | ) |
| | ) |
| Plaintiff, | ) Civil Action No.: 1:16-cv-01031-TSE-MSN |
| | ) |
| v. | ) <u>CLASS ACTION</u> |
| | ) |
| ORBITAL ATK, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR
CLARIFICATION OF THE COURT'S MAY 4, 2018 ORDER OR,
IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER,
OF DEFENDANTS ORBITAL ATK, INC., DAVID W. THOMPSON,
<u>GARRETT E. PIERCE, BLAKE E. LARSON, AND HOLLIS THOMPSON</u>**

Defendants Orbital ATK, Inc. ("Orbital ATK" or "Company"), David W. Thompson, Garrett E. Pierce, Blake E. Larson, and Hollis Thompson (collectively, the "Defendants") hereby submit the instant Reply Memorandum of Law in Support of Motion for Clarification of the Court's May 4, 2018 Order, or, in the Alternative, for a Protective Order.

## INTRODUCTION

Defendants filed their motion for clarification, or in the alternative, for a protective order ("June 15 Motion for Clarification") to resolve the parties' dispute over the meaning and scope of this Court's May 4 Order ("the Order"). In prior meet and confer sessions, Plaintiffs had insisted that the Order required the production of all attorney notes, drafts, and auditor material. Defendants believe, for multiple reasons, that the Order was squarely directed at and only covers "witness interview reports," in the "form" specified in the Order (i.e., "handwritten, typed, or transcribed").

In their opposition to Defendants' June 15 Motion for Clarification, Plaintiffs effectively abandon their position that the auditor material was covered by the Order, as they do not (and cannot) provide any meaningful response to Defendants' showing that Plaintiffs' own motion to compel carved out such material and they did not even reference it at the May 4 hearing. (ECF 163.) Plaintiffs thus essentially concede that their original construction of the May 4 Order was overreaching, and that there was a legitimate basis for Defendants' motion. Remarkably, Plaintiffs nevertheless argue that the motion for clarification was improper and untimely. ECF 190 at 9. They also soldier on with their erroneous position that the May 4 Order covered all "notes" and "drafts." *Id.* at 5. Plaintiffs also make a newly-minted argument as to why they are entitled to the auditor material, which is wholly absent in their original motion to compel (ECF 150) ("April 27 Motion to Compel" or "Original Motion to Compel"), or in the further motion

1

they filed this past Friday (ECF 175) ("June 15 Motion to Compel"). Plaintiffs then go on to lard their opposition with a litany of complaints about the discovery process that are both inapplicable and unfounded. For all of the reasons set forth below, Plaintiffs' arguments – the old as well as the new – are without merit and should be rejected.

## Argument

### A. Plaintiffs Fail to Show the Notes and Drafts Were Covered Under the Court's May 4 Order

Plaintiffs maintain that the May 4 Order required Defendants to produce the Company's "notes" and "drafts." ECF 190 at 5. Virtually all the arguments that Plaintiffs make in service of that reading of the May 4 Order are already addressed in Defendants' prior submissions. *See* ECF 183 at 4–5, ECF 194, 16–18. As those submissions amply show, the Court's Order, its underlying rationale, and controlling legal authority do ***not*** require production of all the material that Plaintiffs are demanding be produced, for a variety of reasons. For instance, attorneys' rough notes and drafts are not "interview reports," and, moreover, the notes and drafts at issue here were not shared with the SEC or even with the Company (or any of the other Defendants). Defendants also have not put the protected communications and work product at issue ***into this litigation***, and, as such, FRE 502(a) bars discovery of the materials.[1]

Defendants do not repeat herein all of the arguments they made in their previous submissions, and respectfully refer the Court to those arguments, on which they continue to rely.

---

[1] Far from injecting the reports into the litigation, the Company did the opposite: it withheld them and vigorously opposed Plaintiffs' motion to produce them and make them part of the discovery record in this case. ***Plaintiffs*** sought to inject the reports into the litigation, not Defendants, and Plaintiffs now effectively complain they will suffer prejudice unless they are permitted to inject yet further protected material into the litigation. Plaintiffs' position stands FRE 502(a) on its head.

2

Defendants herein focus primarily on the following argument they have not previously addressed. *Id.*

In Plaintiffs' opposition to the June 15 Motion for Clarification (ECF 190) ("June 20 Opposition"), Plaintiffs suggest that the Court should apply its May 4 Order expansively because the Company "brazen[ly]" violated the Order by making substantial improper redactions to the witness interview reports that were produced on May 11.[2] ECF 190 at 4. According to Plaintiffs, these redactions were made to conceal information that harms Defendants' position in this case. ECF 190 at 6. Absent in Plaintiffs' June 20 Opposition, however, is any shred of support for their accusation (which is plainly designed to inflame the Court). Because it is undisputed that Defendants have produced wholly unredacted version of all the reports, Plaintiffs obviously know everything that was initially redacted. If so much as a single "bad fact" had been redacted, they would be quick to identify it for the Court. But they do no such thing, because there were no "bad facts" that were redacted, and Plaintiffs know it. Defendants provided unredacted versions to avoid yet more motion practice in front of this Court, after Plaintiffs insisted that they would go to the Court to pursue an *in camera* review of the witness interview reports on their mere assumption, proven to be erroneous, that there were improper redactions.

Plaintiffs also neglect to mention a crucial agreement the parties entered into regarding the witness interview reports. *See* ECF 194 at 3. After Defendants made the required production of reports on May 11, 2018 (the deadline established by the Court's Order), Plaintiffs requested that Defendants also produce a related set of interview reports that had been used to debrief the Company's auditors. *See* ECF 187 at 19. Plaintiffs (who refer to these reports in

---

[2] The Order on its face permitted certain work product redactions to be made (thereby expressly protecting work product claims of Defendants). *Id*

their June 20 Opposition as "the Hogan/Auditor Version" of the interview reports) insisted on the production of this material despite the fact that Plaintiffs had explicitly carved out auditor materials from their original Motion (which had focused instead on material provided to the SEC and Northrop Grumman). ECF 150 at 6.

Although Defendants wanted to be accommodating, especially given the upcoming mediation and the need to ensure that both sides adequately understood the case, they were concerned that if they produced these auditor reports plainly outside the scope of the Order, Plaintiffs later would seize upon that production to argue that Defendants had thereby conceded that all auditor materials fell within the Order's scope. Defendants were similarly concerned that Plaintiffs might argue (in addition or in the alternative) that by producing auditor reports outside the Order's scope – thereby making a *voluntary* production – Defendants thereby had effected a waiver as to other auditor materials.

After meeting and conferring on these issues, the parties agreed on a compromise: Defendants would produce the set of interview reports used to debrief the auditors, and Plaintiffs would not ever leverage that production to seek other material. Yet, as described below, Plaintiffs attempt to do exactly that. ECF 190 at 5.

### B. Plaintiffs' Arguments About the Auditor Materials Are Not Properly Raised and, in Any Event, are Meritless

In their June 15 Motion for Clarification, Defendants showed that Plaintiffs' assertion that the Court's Order covers the material prepared by the auditors is baseless. The material prepared by the auditors was not even the subject of Plaintiffs' original motion – and thus it could not be covered by the Court's ruling, which gave no indication that the Court was granting relief beyond that which the underlying motion had sought. Indeed, the motion was only granted "in part." *See* ECF at 163.

4

Moreover, as shown in Defendants' June 15 Motion for Clarification, Plaintiffs admitted that the underlying disclosures to the auditors were outside the scope of their motion. ECF 183 at 5–6. In their reply in support of the motion to compel ("Reply") that the Order addressed, Plaintiffs wrote: "The disclosures to the auditors are not the subject of the present motion because Plaintiffs are currently awaiting the auditors' document productions to determine whether privilege will be asserted over any or all of that information." (Reply, ECF 161 at 2 (emphasis added).) Finally, and tellingly, at no point during the lengthy May 4 hearing did Plaintiffs' counsel make any mention at all about any auditor material. Given that Plaintiffs had expressly excluded the material from the scope of their motion, and did not make any argument on the issue at the hearing, it defies credulity to suggest the Court nevertheless intended his May 4 Order to cover that material.

In their June 20 Opposition, Plaintiffs do not even *attempt* to provide any meaningful answer to *any* of these arguments. They effectively abandon their stated position in the meet-and-confer process with Defendants that the auditor material was covered by the Order. All Plaintiffs muster is that "any argument that the Company's disclosures to auditors were outside the scope of the Motion to Compel is contradicted by the fact that Defendants already produced the Hogan/Auditor Version to Plaintiffs as "responsive" to the May 4th Order." ECF 190 at 9. As discussed *supra*, Plaintiffs' assertion blithely ignores the circumstances surrounding the production of those versions of the witness interview reports, and in particular, the parties' agreement at the time that Plaintiffs would not exploit the production to argue for further documents (*e.g.*, other auditor materials) in the very manner they do now.

Recognizing the May 4 Order cannot reasonably be construed to cover the auditor materials, Plaintiffs make an eleventh-hour case-law-based argument in an effort to salvage their

5

demand for the auditor material. That particular argument, absent in their original motion to compel or in the further motion they filed this past Friday, should be rejected.

**Plaintiffs' Arguments Are Not Properly Made.** As a threshold matter, it is improper for a variety of reasons for Plaintiffs to raise these new arguments in this fashion. An opposition to a motion for clarification is not the proper vehicle for advancing brand new arguments in support of a request for material that has never previously been the subject of motion practice. The Federal Rules of Civil Procedure and this Court's Local Rules makes clear that such requests must be made by motion, and that Defendants be given the opportunity to fully respond (giving Defendants one day or less to respond to their arguments in Defendants' reply brief is clearly unreasonable). *See* Fed. R. Civ. P. 7 ("A request for a court order must be made by motion"); *See* Local Civil Rule 7.

Moreover, it is beyond dispute that the auditor materials in question were created by the auditors, are in their possession, and are discoverable, if at all, pursuant to Fed.R.Civ.P., 45. Any motion made in this case to obtain any auditor materials should be made pursuant to Rule 45, and be directed at the auditors in the first instance, so that they can participate in the motion practice if they so choose. *See* Fed. R. Civ. P. 45.

**Plaintiffs' Arguments Are Without Merit, In Any Event.** Even putting aside their procedural infirmities, Plaintiffs' arguments also fail on the merits. Plaintiffs' suggestion that an attorney's work-product-protected material necessarily loses its protection simply because the attorney's client shares the material with the company's auditors is simply not the law.

*First*, "the work product privilege is not automatically waived by any disclosure to a third party." *In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982); *id.* at 818 (noting that "the purposes of the work product privilege are . . . complex, and they are not inconsistent with

6

selective disclosure—even in some instances to an adversary"). To the contrary, as courts in this district have long recognized, disclosure of work-product-protected material to a party cannot create a waiver of work-product protection "so long as [the receiving party] is not in a position adversarial to the disclosing party, and so long as the disclosing party maintains a reasonable expectation that [the receiving party] will not further disclose this information." *See, e.g., E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*, 269 F.R.D. 600, 605 (E.D. Va. 2010) (citations omitted).

As a number of courts have expressly held in applying this standard in a similar factual context, disclosure of protected material by an audit client to its auditor cannot effect a waiver of work-product protection. The auditor's power to issue an adverse opinion concerning its client's financial statements is simply not the same as being a litigation adversary, especially given that the auditors' duty of confidentiality precludes the significant risk of disclosure to an actual adversary. *See* U.*S. v. Deloitte, LLP*, 610 F.3d 129, 139-43 (D.C. Cir. 2010); *see also SEC v. Berry*, No. C07–04431 RMW, 2011 WL 825742, *6-8 (N.D. Cal. Mar. 7, 2011); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 183 (N.D. Ill. 2006); *Merrill Lynch Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 448 (S.D.N.Y. 2004) ("any tension between an auditor and a corporation that arises from an auditor's need to scrutinize and investigate a corporation's records and book-keeping practices simply is not the equivalent of an adversarial relationship contemplated by the work product doctrine ").

*Second*, Plaintiffs' suggestion that the PCAOB's regulation of independent auditors somehow requires waiver of any work-product-protected material shared with an auditor is specious. The Sarbanes Oxley Act – the law that created the PCAOB – anticipated this exact issue and expressly created a statutory privilege to ensure that documents can be freely disclosed

in connection with a PCAOB investigation without waiving privilege. *See* 15 U.S.C. § 7215 (b)(5)(A) (providing that "all documents and information prepared or received by or specifically for the [PCAOB] . . . shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court or administrative agency"). Courts addressing this issue in the aftermath of Sarbanes Oxley's 2002 enactment routinely rely on this provision in holding that disclosure to the PCAOB does not effect a waiver. *See Bennett v. Sprint Nextel Corp.*, No. 11-9014-MC-W-ODS, 2012 WL 4829312, at *3 (W.D. Mo. Oct. 10, 2012) (noting that 15 U.S.C. § 7215(b)(5)(A) extends to both materials "prepared ... for" and "received by" the PCAOB and finding no waiver of audit client's materials disclosed to auditor and in turn to PCAOB); *S.E.C. v. Goldstone*, 301 F.R.D. 593, 675-76 (D.N.M. 2014) (citing 15 U.S.C. § 7215(b)(5)(A) in finding no waiver as to documents the SEC received from the PCAOB).

*Third*, the thin legal citation Plaintiffs offer in purported support of this argument fall well short of requiring a different result. Nowhere in the *Royal Ahold* decision does the court find that work-product protection was waived by disclosure to the company's auditors. To the contrary, *Royal Ahold* held that the material at issue was *never protected in the first place*. *In re Royal Ahold N.V. Sec. and ERISA Litig.*, 230 F.R.D. 433, 435-36 (D. Md. 2005). *Royal Ahold* thus stands for the unremarkable proposition that material that lacked work-product protection at the time it was prepared does not acquire protected status simply by virtue of its being shared with an independent auditor. That has nothing to do with the material at issue here. The material does not lose its work product protection simply because the Company shared material within a confidential, non-adverse relationship with its auditors.[3]

---

[3] Apropos to this case, the Southern District of New York directly differentiated the auditor-company relationship. "[A]ny tension between an auditor and a corporation that arises from an

8

Plaintiffs' other case, an unpublished decision from the Eastern District of Tennessee, represents a small minority view that waiver does not exist in such circumstances. Pls. Br. at 8 (citing *In re King Pharms., Inc. Sec. Litig.*, No. 2:03-CV-77, 2005 WL 8142328, at *3 (E.D. Tenn. Sept. 21, 2005) (noting the absence of controlling Circuit court authority and the existence of contrary authority before finding the work produce did not apply)). While Defendants of course acknowledge that not every federal court to have decided this issue has reached the same result, the fact of the matter is that "the majority of courts to consider the issue have held that disclosure of work product protected materials to outside auditors does not constitute waiver of the privilege." *Westernbank Puerto Rico v. Kachkar*, Civ. No. 07-1606, 2009 WL 530131, *7-8 (D. Puerto Rico Feb. 9, 2009). Defendants respectfully submit that the conclusion reached by the majority of the courts to have considered this issue – including the D.C. Circuit in *Deloitte*, the only circuit court to have decided it – is the correct one. Although, again, the Court does not need to reach this issue in deciding the instant motion (and should not, given that Plaintiffs have not properly brought the issue before the Court and the auditors have had no opportunity to participate).

    **C.**    **Defendants' Motion was Timely and Otherwise Proper**

In a last-ditch effort to prop up their arguments regarding the scope of the May 4 Order, Plaintiffs make several ill-founded arguments that Plaintiffs' motion for clarification was untimely and otherwise improper.

---

auditor's need to scrutinize and investigate a corporation's records and book-keeping practices simply is not the equivalent of an adversarial relationship contemplated by the work product doctrine . . . A business and its auditor can and should be aligned insofar as they both seek to prevent, detect, and root out corporate fraud. Indeed, this is precisely the type of limited alliance that courts should encourage." *Merrill Lynch Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 448 (S.D.N.Y. 2004).

*First*, Plaintiffs argue that if Defendants believed that the Court's May 4 Order required clarification, they should have filed their motion shortly after that Order was issued. *See* ECF 190 at 9. But the need for clarification arose only when Plaintiffs insisted that Defendants' May 11 production of the "witness interview reports" was inadequate. On May 11, however, the parties filed their joint motion to stay the litigation for 30 days pending private mediation. ECF at 169. The parties agreed that "the parties and their counsel [would] devote their full attention to the mediation and settlement efforts . . . ," and "avoid incurring the imminent expenses of continued fact and expert discovery." Joint Motion at 3. The Court granted the motion and stayed the litigation until June 13. ECF at 170. It is absurd for Plaintiffs now to suggest that Defendants should have filed their motion for clarification at that time, when the litigation was stayed, and the parties were "devoting their full attention to the mediation and settlement efforts." Joint Motion at 3.

*Second*, Plaintiffs make the related argument that whereas Defendants have known "for a long time" that Plaintiffs were filing their motion, Plaintiffs were blindsided by Defendants' motion. *See* ECF 190 at 2. That is simply false. The parties had a meet-and-confer session on Thursday, June 14, the day before the parties filed their respective motions. Toward the end of that session, Defendants' counsel advised Plaintiffs' counsel that Defendants were considering seeking relief from the Court with regard to the Court's May 4 Order and related privilege and work product issues. Plaintiffs indicated they "probably" would file a motion of their own, and Defendants' counsel likewise indicated it was probable Defendants would file one. In response, Plaintiffs raised no objection to – and did not even ask any questions about – Defendants' intended motion.

*Third*, Plaintiffs suggest that Defendants' motion must be improper because it forces the Court to review multiple closely-related briefs. But this is specious. Courts routinely address pairs of related motions involving overlapping briefs. *See* ECF 190 at 2. Indeed, it is hardly uncommon, when one party files a motion to compel, for the other side to file a related motion for protective order. *See, e.g.*, *Kirkpatrick v. Raleigh Cty. Bd. of Educ.*, 1996 WL 85122 at *2 (4th Cir. 1996) (affirming the magistrate judge's order denying plaintiff's motion to compel discovery of teacher personnel files and simultaneously granting defendants a protective order preventing discovery of those same documents under FRCP 26(c)); *Stanley v. Metro. Life Ins. Co.*, 312 F. Supp. 2d 786, 792 (E.D. Va. 2004) (denying plaintiff's motion to compel and simultaneously granting defendant's motion for a protective order barring discovery beyond administrative record in ERISA litigation).[4]

*Finally*, Plaintiffs argue that Defendants motion is improper because there can be no "good cause" for the relief sought in the circumstances present here. *See* ECF 190 at 10. Plaintiffs' argument misses the mark. Defendants moved, in the first instance, only for clarification. The basis for that motion was that the parties vigorously disputed the meaning and scope of the Order. Such a motion was perfectly proper – it is difficult to imagine stronger grounds for a motion for clarification than a disagreement of this kind. Moreover, in their June 20 Opposition, Plaintiffs effectively abandon their position that the auditor material was covered by the Order, *see supra*. By thus conceding that their original construction of the Order was

---

[4] *See also Rhodenizer v. City of Richmond Police Dep't*, 2009 WL 3334744, at *4 (E.D. Va. Oct. 14, 2009) (granting and denying in part plaintiff's motion to compel production of citizen complaint investigation reports while simultaneously granting and denying in part defendant's motion for a protective order, allowing defendants to redact certain sensitive information within those reports); *JTH Tax, Inc. v. Aime*, 2016 WL 9223926, at *7 (E.D. Va. Dec. 13, 2016) (granting defendants' motion to compel deposition of witness under FRCP 37 and simultaneously denying plaintiff's motion for a protective order prohibiting deposition of that witness under FRCP 26(c)).

11

overreaching, Plaintiffs have essentially admitted that there was a legitimate basis for Defendants' motion. To argue at the same time that the motion for clarification was improper makes no sense. Defendants request, in the alternative, for a protective order "should the Court consider it appropriate," was certainly justified under Fed.R.Civ.P. 26(c). It is beyond dispute that there is "good cause" to protect one party from the "oppression" and "undue burden" of another party's constant efforts to intrude upon the first party's privileged communications and work product.[5]

### D. Plaintiffs Continue to Advance Meritless and Diversionary Privilege Log Arguments While Defendants Continue to Produce Log Entries

Defendants have set forth their position regarding the privilege log issues in this case (ECF 194 1–7) and will not repeat it here in the interest of brevity. Suffice it to say that Plaintiffs continue to advance privilege log arguments that (at best) tell only half the story – and in any event, those arguments have nothing to do with, and appear designed to cloud, the core issues concerning the Court's Order. Defendants herein merely update certain information for the Court's benefit.

Since submitting its opposition brief, Defendants have provided still more itemized log entries, consistent with the representation they made the day before Plaintiffs filed their motion that Defendants, beginning the next business day, would produce such further log entries as expeditiously as possible.[6] *Id.* at 2, 6. In combination, the voluminous logs reference all emails that have been withheld (in full or in part) from Defendants' productions of documents to

---

[5] Plaintiffs can hardly deny that a protective order issued pursuant Fed.R.Civ.P. 26(c) can properly address privilege and work product issues. Plaintiffs stipulated to the entry of a Protective Order in this case that provides protection to certain privilege and work product material (when inadvertently produced). ECF at 125.

[6] Specifically, earlier today, Defendants produced a further 213-page log that supplemented Defendants' two previous logs containing another 754 pages of descriptive material.

12

date. There remains a small amount of hard copy and other miscellaneous categories of material for which Defendants will produce log entries by this weekend.

In the meantime, Defendants sent Plaintiffs a note requesting further information on their two-page privilege log, which did not cover privileged and work product information Plaintiffs are withholding that is responsive to more than ten separate document requests propounded by Defendants. Plaintiffs have since responded as follows: "We do not intend to log these communications or documents on a privilege log, just as we assume defendants do not intend to log their communications with their attorneys in this case." (Emphasis added.) In other words, Plaintiffs have unilaterally decided that, despite their logging obligations under the federal and local rules, they are not going to log the vast majority of their privileged and work product documents just because those materials involve the law firm representing Plaintiffs in this action.

Even if Defendants agreed that *post*-complaint communications between a party and counsel need not be produced, the vast majority of the documents sought by Defendants' outstanding document requests concern *pre*-complaint communications and information, which, in connection with issues relating to class certification and class representatives, is clearly relevant, and Defendants have a substantial need for it. Fed.R.Civ.P. 26. Defendants have sought a meet-and-confer with Plaintiffs on this issue, with the hope of having Plaintiffs provide a full and complete privilege log in the near future.

### E. Plaintiffs' Litany of Complaints Concerning the Discovery Process are Inapplicable and Unfounded

The litany of complaints concerning the discovery process that fill the first four pages of Plaintiffs' Opposition have virtually nothing to do with the Court's May 4 Order, how it should be interpreted, or what Defendants' production obligations are under the Order. Instead, they amount to a bald invitation to the Court to ignore controlling law and its own prior rulings on

privilege and work product issues because Plaintiffs feel they are being disadvantaged by the short discovery period set by the Court.

Putting aside Plaintiffs' purposes in advancing their complaints, they have no merit. Although long on buzzword adjectives – "delay tactics" (ECF 190 at 3), "run out the clock" (*Id.* at 2), "completely false," (*Id.* at 3) – Plaintiffs' accusations are notably short on factual support. Indeed, the facts regarding the discovery process in this case tell an entirely different story.

As of the hearing on this motion, the Defendants will have provided Plaintiffs with nearly 500,000 documents (consisting of more than 2.5 million pages of material) covering a six-year time period from 2011 to 2017. Defendants produced ESI based upon their own exhaustive set of more than 100 search terms designed to cover every relevant issue in this case. Defendants shared these terms and their 23 proposed custodians with Plaintiffs early in discovery and immediately began producing the relevant documents. Indeed, by April 6, well before the May 1 cutoff for the substantial completion of document production, Defendants had provided Plaintiffs with more than 150,000 documents (and the only reason it took until April 6 to make this production was because Plaintiffs insisted upon lengthy negotiations and haggling over the Protective Order and ESI Protocol in the case, which were finally filed on that date). By May 1, Defendants had produced 350,000 documents and were substantially complete with their document production (even Plaintiffs do not claim otherwise).

On April 23, just a week before the May 1 cutoff, however, Plaintiffs suddenly insisted that Defendants should add numerous additional custodians to their searches. Defendants would have been more than justified in seeking a protective order from the Court given the lateness of this request and the well-established authority that a responding party is in best position to choose an appropriate method for searching and culling data, but instead worked diligently with

14

Plaintiffs to reduce the number of additional custodians to a more reasonable number and then rapidly produce the resulting documents. When Plaintiffs complain in their June 20 Opposition about the supposed "late" production of 116,000 documents after May 1, it is largely documents from these additional custodians. ECF 190 at 2. The part where Plaintiffs *caused this late production by waiting until the last minute to propose the custodians* is conveniently left out of the story.[7]

In addition to all of this document discovery, Orbital ATK has provided detailed responses, totaling over 30 pages of exposition, in response to Plaintiffs' comprehensive interrogatories and has provided responses to 73 requests for admission.[8] Plaintiffs also have propounded on Defendants a further 19 interrogatories and 69 requests for admission that will be responded to next Monday. Finally, Plaintiffs have indicated an intention to use their full complement of depositions, having already noticed 14 depositions.

The discovery to date has been disproportional to the needs of this case, but it nevertheless has been completed in a timely manner, consistent with the Court's scheduling order. Plaintiffs' June 20 Opposition does not actually suggest otherwise. As discussed above, Plaintiffs' assertions about the late production of documents have no merit because the timing of the production is largely the result of Plaintiffs' own actions. Plaintiffs go on to suggest that Defendants are being dilatory in scheduling depositions, noting that Defendants "have only

---

[7] Plaintiffs assertion that this production came "six weeks after the deadline" is baffling. ECF 190 at 2. As Plaintiffs and this Court know, there was an intervening 30-day stay of the case for mediation in which the parties agreed to engage in no discovery activities so as to preserve resources. So what actually happened is that within two weeks of agreeing to these additional custodians, Defendants collected, pulled and produced documents, a remarkably fast turnaround.

[8] For their part, in stark contrast, Plaintiffs have provided a mere *304* documents and, in response to Moving Defendants' interrogatories, Plaintiffs provided responses that were generally uninformative and largely referred to their limited document production.

provided dates for two witnesses and are insisting they take place in middle to late July near the end of discovery." ECF 190 at 3. But Plaintiffs fail to note that as of the filing of their brief, they had only asked Defendants for deposition dates for a total of *four* witnesses. So Defendants have supplied deposition dates for two witnesses and by the time of this hearing expect to have proposed deposition dates for the other two witnesses. Moreover, Plaintiffs themselves noticed those remaining witness depositions for mid-July (so much for the accusation that Defendants are somehow holding up the process by only agreeing to later dates).[9]

Finally, Plaintiffs assert that Defendants have over-designated produced documents as confidential. *See* ECF 190 at 4. This case involves sensitive financial accounting issues, so it is no surprise that the vast majority of the produced documents would be marked "confidential" pursuant to the Protective Order. *See* ECF at 125. The Protective Order provides for a mechanism by which Plaintiffs can seek to remove that designation if it has been misapplied, but that mechanism does not include raising it as an issue in an opposition to a motion for clarification about a totally unrelated privilege issue. *Id. Cf. Norris v. Excel Industries, Inc.*, 2015 WL 4431022 at *4 (W.D. Va. July 20, 2015) (affirming denial of motion seeking removal of confidentiality designations in part because designating party "removed the confidential designations…following a [valid] request.").[10]

---

[9] As for Plaintiffs suggestion that Defendants are coordinating with its auditor to delay the auditor's deposition date, that is certainly news to the undersigned counsel. Until reading Plaintiffs' brief, Defendants did not even know that the auditor had proposed *any* date for this deposition, much less August 7 or 8. It would be helpful if Plaintiffs would inform Defendants of proposed dates for third party depositions, as common courtesy would dictate.

[10] Plaintiffs' raising of this issue here is especially curious because there can be no serious question that the documents cited in this set of motion papers – the witness interview reports – were properly marked "confidential." Plaintiffs appear to be trying to cover up for the fact that when they filed their Motion to Compel under seal last Friday, they improperly redacted the "confidential" material in a way that allowed anyone who downloaded the filing from Pacer to see what had been redacted. After being notified about this issue by a third party, Defendants

16

In the end, Plaintiffs are understandably frustrated that discovery has not revealed any factual support for the claims. If the "best evidence" in the case, as Plaintiffs' state in their Opposition, is that █████████████████████████████████████████████████████████████████████████████████████████████████████████████████, it should be obvious that Plaintiffs have no real hope of proving that Defendants engaged in the financial fraud alleged in their Complaint.[11] But neither that frustration, nor any other complaints about the discovery process to date, provides a basis for allowing Plaintiffs to go on a fishing expedition through privileged material.

## CONCLUSION

For all of the reasons set forth above, Defendants respectfully request that the Court grant Defendants' Motion for Clarification of the Court's May 4, 2018 Order, or, in the Alternative, For a Protective Order.

Dated: June 21, 2018
       Washington, DC

                                  Respectfully submitted,

                                  **SHEARMAN & STERLING**

                                  */s/ Lyle Roberts*
                                  Lyle Roberts (Va. Bar No. 45808)
                                  George Anhang (*pro hac vice*)
                                  401 9th Street, N.W.
                                  Suite 800
                                  Washington, DC 20004
                                  Telephone: (202) 508-8000

---

brought it to Plaintiffs attention and Plaintiffs were forced to ask the court to stop further Pacer downloads until they could refile their papers. Defendants may yet seek remedies for this obvious breach of the Protective Order.

[11] Defendants have separately and fully addressed Plaintiffs' outrageous assertion that Defendants' have provide "completely false" interrogatory responses in their Opposition to Plaintiffs' Motion to Compel and will not repeat those arguments here.

17

                                          Facsimile: (202) 508-8100
                                          lyle.roberts@shearman.com
                                          george.anhang@shearman.com

                                          Daniel C. Lewis (*pro hac vice*)
                                          599 Lexington Avenue
                                          New York, NY 10022
                                          Telephone: (212) 848-4000
                                          Facsimile: (212) 848-7179
                                          daniel.lewis@shearman.com

                                          *Counsel for Defendants Orbital ATK, Inc.,*
                                          *David W. Thompson, Garrett E. Pierce,*
                                          *Blake E. Larson, and Hollis Thompson*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of June 2018, a true and correct copy of the foregoing was served via CM/ECF filing on all counsel of record.

    /s/ Lyle Roberts
Lyle Roberts (Va. Bar No. 45808)
401 9th Street, N.W.
Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100
lyle.roberts@shearman.com

*Counsel for Defendants Orbital ATK, Inc., David W. Thompson, Garrett E. Pierce, Blake E. Larson and Hollis Thompson*