# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF VIRGINIA

## (Alexandria Division)

| | |
|---|---|
| STEVEN KNURR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> ORBITAL ATK, INC., *et al.*, <br><br> Defendants. | Civil Action No. 1:16-cv-01031-TSE-MSN <br><br> <u>CLASS ACTION</u> |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF <u>MOTION FOR CLASS CERTIFICATION</u>

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   FACTS COMMON TO THE CLASS ..................................................................2

III.  ARGUMENT.......................................................................................................4

      A.    Securities actions are routinely certified for class treatment under Rule 23...........4

      B.    This securities action satisfies Rule 23(a)'s prerequisites for class certification. ...................................................................................................6

            1.    The proposed class is numerous. ...............................................................6

            2.    Questions of law and fact arising from Defendants' misrepresentations and omissions are common to the Class. ......................7

            3.    The proposed class representatives are part of the Class and their claims and injuries are typical of those of the Class...................................8

            4.    The proposed class representatives will continue to fairly and adequately protect the interests of the Class. .................................................9

      C.    This securities action satisfies the standards for class certification under Rule 23(b)(3)...........................................................................................11

            1.    Common issues of law and fact predominate. ...........................................11

                 a.    Common issues of falsity, materiality, causation, and culpability predominate. ...............................................................11

                 b.    Common issues of reliance predominate because the Class is entitled to a presumption of reliance under *Basic*'s fraud-on-the-market theory......................................................................12

                     (1)    The market for Orbital ATK stock was efficient because it was actively traded on the NYSE and had a large analyst following.................................................13

                     (2)    The efficiency of the market for Orbital ATK stock is further supported by the remaining *Cammer* and *Krogman* factors.............................................................14

                 c.    While not required for class certification under Rule 23, common questions of damages also predominate.........................17

**Page**

          2.      Pursuing the claims as a class action is superior to other methods
                  of adjudication. ........................................................................................18

IV.    CONCLUSION.................................................................................................................19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................................11

*Amgen, Inc. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013) ..................................................................................................12,

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) .............................................................................................12, 13

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989) .....................................................................14, 15, 16

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, HQ*,
   No. RWT 16-CV-2625, 2018 WL 2840420 (D. Md. June 8, 2018) ............................5, 11, 14

*Ganesh, LLC v. Computer Learning Ctrs., Inc.*,
   183 F.R.D. 487 (E.D. Va. 1998) ...................................................................................6

*Gariety v. Grant Thornton, LLP*,
   368 F.3d 356 (4th Cir. 2004) .......................................................................................15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   __U.S.__, 134 S. Ct. 2398 (2014) ...........................................................................12, 13

*In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
   281 F.R.D. 134 (S.D.N.Y. 2012) ...........................................................................7, 9, 12

*In re BearingPoint, Inc. Sec. Litig.*,
   232 F.R.D. 534 (E.D. Va. 2006) ........................................................................ *passim*

*In re Computer Scis. Corp. Sec. Litig.*,
   288 F.R.D. 112 (E.D. Va. 2012) ........................................................................ *passim*

*In re Heckmann Corp. Sec. Litig.*,
   No. 10-378-LPS-MPT, 2013 WL 2456104 (D. Del. June 6, 2013).................................7, 8

*In re MicroStrategy Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) ...........................................................................9

*In re Mills Corp. Sec. Litig.*,
   257 F.R.D. 101 (E.D. Va. 2009) .........................................................................6, 7, 11, 14

*In re NeuStar, Inc. Sec. Litig.*,
   No. 1:14C885, 2015 WL 5674798 (E.D. Va. Sept. 23, 2015)...............................................14

**Page**

*In re NII Holdings, Inc. Sec. Litig.*,
  311 F.R.D. 401 (E.D. Va. 2015) ..................................................................... *passim*

*In re NYSE Specialists Sec. Litig.*,
  260 F.R.D. 55 (S.D.N.Y. 2009) ...............................................................................6

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
  No. CV 0:15-2393-MGL, 2017 WL 4297450 (D.S.C. Sept. 28, 2017).......................5, 11, 17

*Krogman v. Sterritt*,
  202 F.R.D. 467 (N.D. Tex. 2001) .................................................................14, 16

*Osofsky v. Zipf*,
  645 F.2d 107 (2d Cir. 1981).................................................................................18

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)................................................................................17

*Sandberg v. Va. Bankshares, Inc.*,
  891 F.2d 1112 (4th Cir. 1989), *rev'd on other grounds by,*
  *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) .................................11, 18

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ...................................................................5, 11, 12, 18

*Schulein v. Petroleum Dev. Corp.*,
  No. SACV 11-1891, 2014 WL 114520 (C.D. Cal. 2014)........................................18

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civivl Procedure
  Rule 23(a)................................................................................................ *passim*
  Rule 23(b) ............................................................................................... *passim*
  Rule 23(g) ...........................................................................................................11

## I.      INTRODUCTION

This is a federal securities action against Orbital ATK, Inc. ("Orbital ATK") and Individual

Defendants Mark DeYoung, David W. Thompson, Garret E. Pierce, Blake E. Larson and Hollis M.

Thompson (collectively, "Defendants").  Orbital ATK was formed in 2015 through the merger of

Alliant Techsystems Inc. ("Alliant") and Orbital Sciences Corporation ("Orbital Sciences").  This

case arises from Defendants' material misstatements and omissions concerning Orbital ATK's Lake

City Contract, financial results, and internal controls.  Defendants' misstatements and omissions

caused Orbital Sciences shareholders to receive inadequate consideration in the merger, and caused

Orbital ATK shareholders to pay artificially inflated prices for the Company's stock after the merger,

resulting in substantial losses.  Plaintiffs now respectfully request certification on behalf of a class

consisting of:

> (i) all persons who held stock in Orbital Sciences Corporation as of December 16,
> 2014 and exchanged shares of Orbital Sciences Corporation stock for shares of
> Orbital ATK, Inc. common stock in connection with the merger between Alliant
> Techsystems Inc. and Orbital Sciences Corporation; and/or (ii) all persons who
> purchased Orbital ATK, Inc. common stock between May 28, 2015 and August 9,
> 2016, inclusive ("Class Period"), and were injured thereby.  Excluded from the Class
> are Defendants and members of their immediate families, any entity in which a
> defendant has a controlling interest, and the legal representatives, heirs, successors,
> or assigns of any such excluded party.

Courts routinely certify securities actions for class treatment where, as here, a large number

of shareholders were harmed by similar misrepresentations and omissions.  Millions of shares of

Orbital Sciences stock were exchanged in the merger, millions of shares of Orbital ATK stock were

purchased on the open market during the Class Period, and all of the Class's claims are related to the

same misconduct – Defendants' failure to disclose a $375 million loss on the Lake City contract.

Indeed, this action squarely satisfies each of Rule 23(a)'s and Rule 23(b)(3)'s requirements for class

certification: (1) there are hundreds, if not thousands, of proposed Class member shareholders,

making the proposed class so numerous that joinder would be impracticable; (2) Plaintiffs' and the

Class's claims are brought pursuant to the same federal securities laws and arise out of Defendants' common course of misconduct; (3) Plaintiffs' claims and injuries are typical of those of the Class; (4) Plaintiffs' interests in maximizing the Class's recovery and selection of highly qualified counsel make them adequate representatives of the Class; (5) numerous common issues in this securities action predominate over any possible individual ones; and (6) the benefits of pursuing this case as a class action far outweigh the prospect of litigating hundreds or thousands of individual actions.  Fed. R. Civ. P. 23(a) and 23(b)(3).

Since the requirements of Rule 23 are satisfied, Plaintiffs respectfully request that the Court certify this case as a class action, appoint Construction Laborers Pension Trust of Greater St. Louis (the "Pension Trust") and Wayne County Employees' Retirement System ("Wayne County") (collectively, "Plaintiffs") as Class Representatives, and appoint Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

## II.     FACTS COMMON TO THE CLASS

Before the merger of Alliant and Orbital Sciences, Alliant had manufactured bullets for the U.S. Army at its Lake City plant for over a decade under a contract between Alliant and the Army originally entered into in 2000 and renewed in 2010.  *See* ECF No. 78 at ¶¶35-36.  In August 2012, as the contract was winding down, Alliant submitted a bid to the Army to secure a new multi-year contract to extend its production at Lake City.  *See id.* at ¶¶39-40.  Facing pressure from competitor BAE Systems PLC, which had recently beat out Alliant on another government contract, the new contract was a must-win for Alliant and DeYoung and aggressively bid at hundreds of millions of dollars below prior costs.  *Id.* at ¶¶37-40, 168, 177 & n.9.  In September 2012, Alliant won the bid, securing a ten-year $2.3 billion contract (the "Lake City Contract").  *Id.* at ¶¶2, 41.  The Lake City Contract was Alliant's single largest contract, accounting for up to 13% of total revenue.  *Id.* at ¶169.  Although it was quickly "evident" that the Lake City Contract would result in a massive $375

million loss (*see id.* at ¶¶129, 134, 146-147), Alliant – and then Orbital ATK – failed to disclose the loss from the Lake City Contract in its publicly issued financial statements, instead reporting the contract as profitable, *see generally id.* at ¶¶64-122, 270-278.

On April 28, 2014, Alliant and Orbital Sciences agreed to a merger, under which Orbital Sciences shareholders would receive 0.449 shares of Alliant stock for each share of Orbital Sciences stock held (the "Exchange Ratio").   ¶259.   The merger required shareholder approval, and on December 17, 2014, defendants DeYoung, D. Thompson and Pierce issued a Joint Proxy Statement to Alliant and Orbital Sciences shareholders soliciting approval of the merger.   ¶260.   The Joint Proxy contained materially false and misleading statements and omissions regarding (a) Alliant's financial results; (b) the Lake City Contract; and (c) Alliant's internal controls.   *See id.* at ¶¶270-278. As a result of these misrepresentations and omissions, Alliant was overvalued and Orbital Sciences shareholders were solicited to vote in favor of a merger that provided them with inadequate consideration.   *See id.* at ¶¶260, 292.

On February 9, 2015, the merger between Alliant and Orbital Sciences was consummated and Alliant changed its name to Orbital ATK.   Beginning on May 28, 2015, when Orbital ATK reported its first financial results after the merger, Defendants made materially false and misleading statements and omissions in Orbital ATK's public filings, releases, and investor conference calls regarding (a) merger synergies; (b) the Lake City Contract performance; (c) the Company's financial results; and (d) Orbital ATK's internal controls.   *See id.* at ¶¶64-122.   Defendants touted the profitability and benefits of the Lake City Contract, inflated the Company's financial results, and misrepresented that the Company's internal controls over financial reporting were operating effectively, while failing to disclose that the Lake City Contract would result in a $375 million loss, the financial results were materially misstated and in violation of GAAP, and the Company was

suffering from material weaknesses in its internal controls. *See id.* As a result, Orbital ATK's stock price was artificially inflated during the Class Period, trading as high as $94.55 in January 2016. ¶232.

On August 10, 2016, before the market opened, Defendants disclosed that Orbital ATK was withdrawing and would need to restate every financial statement issued during the Class Period because it had suffered a massive and previously undisclosed loss on the Lake City Contract. *See id.* at ¶129. Investors were shocked by the Company's disclosures and Orbital ATK's stock plummeted by 20% (from $89 per share to $71 per share), wiping out more than a billion dollars in market capitalization. *See id.* at ¶137.

On November 10, 2016, the Court appointed the Pension Trust as Lead Plaintiff and Robbins Geller as Lead Counsel. *See* ECF No. 41. On April 24, 2017, the Pension Trust filed its complaint, adding Wayne County as a named plaintiff. ECF No. 53. After successive motions to dismiss, this Court upheld Plaintiffs' claims pursuant to §§10(b), 14(a), and 20(a) of the Exchange Act, finding Plaintiffs adequately alleged that Defendants D. Thompson, Pierce, and DeYoung negligently made material misrepresentations and omissions in the Joint Proxy in violation of §14(a), and that Defendant Orbital ATK knowingly or recklessly made material Class Period misrepresentations and omissions in violation of §10(b). ECF Nos. 76, 99. Plaintiffs now seek to certify this case as a class action.

## III.   ARGUMENT

### A.   Securities actions are routinely certified for class treatment under Rule 23.

Federal Rule of Civil Procedure 23 governs the certification of class actions. Under Rule 23(a), a class member seeking to serve as a class representative must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) the claims of the representative parties are typical of the claims of the class; and (4) the representative parties fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).   Once these threshold requirements are established, the putative class must satisfy the requirements of one of the subsections of Rule 23(b).   Here, Plaintiffs are seeking class certification under Rule 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b).

The requirements of Rule 23 "are to be construed liberally" and "any doubts about the propriety of certification should be resolved in favor of certification."   *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006) (Ellis, J.).[1]   Securities actions, such as this one, are "particularly appropriate candidates" for class certification under Rule 23 because "the elements of the cause of action generally relate to the acts or omissions of the defendants and because individual damages might be too paltry to justify bringing individual cases."   *Id.* at 542.   Since elements of a securities action – including falsity, culpability, and materiality – are plainly issues common to the class, "[w]hen a large, public company makes statements that are said to be false, securities-fraud litigation regularly proceeds as a class action."   *Schleicher v. Wendt*, 618 F.3d 679, 681-82 (7th Cir. 2010) (observing that in securities actions, "class certification is routine").   Indeed, courts in the Fourth Circuit routinely certify securities actions as class actions.   *See, e.g.*, *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, HQ*, No. RWT 16-CV-2625, 2018 WL 2840420 (D. Md. June 8, 2018); *KBC Asset Mgmt. NV v. 3D Sys. Corp.*, No. CV 0:15-2393-MGL, 2017 WL 4297450 (D.S.C. Sept. 28, 2017); *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401 (E.D. Va.

---

[1]   Citations and internal quotations omitted and emphasis added, unless otherwise noted.

2015) (Brinkema, J.); *In re Computer Scis. Corp. Sec. Litig.*, 288 F.R.D. 112 (E.D. Va. 2012) (Ellis, J.); *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101 (E.D. Va. 2009) (O'Grady, J.); *BearingPoint*, 232 F.R.D. 534.

> ### B.   This securities action satisfies Rule 23(a)'s prerequisites for class certification.

> #### 1.   The proposed class is numerous.

Rule 23(a)(1) requires that the proposed Class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In securities class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009); *see also BearingPoint*, 232 F.R.D. at 538 (noting that numerosity is "seldom disputed in securities fraud cases"). Here, more than 52 million shares of Orbital Sciences stock were eligible to vote on the merger, and, after the merger, more than 58 million shares of Orbital ATK stock were outstanding on the NYSE. *See* Ex. A (Declaration of Steven P. Feinstein, PH.D., CFA), at ¶¶29, 87; Ex. B (Orbital Sciences Corp., Current Report (Form 8-K) (Jan. 27, 2015)). Orbital ATK stock was actively traded during the Class Period, with an average daily volume of over 450,000 shares and an average weekly volume of over two million shares. *See* Ex. A at ¶¶52-53; Ex. C (Orbital ATK's Responses to Plaintiffs' First Set of Requests for Admission), at 3. Thus, numerosity is easily satisfied in this case. *See, e.g.*, *Mills*, 257 F.R.D. at 105 (holding numerosity established where company "had millions of shares outstanding during the Class Period"); *Ganesh, LLC v. Computer Learning Ctrs., Inc.*, 183 F.R.D. 487, 489 (E.D. Va. 1998) (Cacheris, J.) (same, where 5.1 million shares were actively traded on the NASDAQ).

### 2.   Questions of law and fact arising from Defendants' misrepresentations and omissions are common to the Class.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality "does not mean that members of the class must have identical factual and legal claims in all respects."  *Mills*, 257 F.R.D. at 105.  Commonality is routinely established in securities cases like this one because "[m]embers of a proposed class in a securities case are especially likely to share common claims and defenses."  *Bearing Point*, 232 F.R.D. at 539 (citing cases).  In general, "where putative class members [in a securities case] have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied."  *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012) (certifying class with §10(b) and §14(a) claims).

Here, Plaintiffs' and the Class's claims all arise out of the same alleged course of conduct – Defendants' material misstatements and omissions concerning the Lake City Contract loss, the Company's inflated financial performance, and the material weaknesses in internal controls. Defendants' material misrepresentations and omissions were made to the investing public in press releases, SEC filings (including the Joint Proxy), and conference calls, and injured each Class member who exchanged Orbital Sciences shares for Orbital ATK stock in the merger, or acquired Orbital ATK stock during the Class Period (or both).  Thus, virtually all of the questions of law or fact at issue are common to the Pension Trust, Wayne County, and Class members, including: (a) whether Defendants violated the Exchange Act; (b) whether Defendants' public statements misrepresented or omitted material facts; (c) whether Defendants acted with the requisite culpability when making material misstatements or omissions; (d) whether Defendants' misstatements or omissions caused the alleged damages; and (e) whether certain Defendants were control persons. These common issues of law and fact satisfy Rule 23(a)(2).  *See, e.g.*, *In re Heckmann Corp. Sec.*

*Litig.*, No. 10-378-LPS-MPT, 2013 WL 2456104, at *11 (D. Del. June 6, 2013) (holding commonality satisfied where the common issues were "(1) whether defendants violated sections 10(b), 14(a), and 20(a) of the Securities Exchange Act; (2) whether material facts were misrepresented in the proxy, SEC filings, press releases, or other statements to the public; and (3) whether defendants' misrepresentations or omissions caused the alleged losses"); *NII Holdings*, 311 F.R.D. at 406 (certifying class where common questions included whether the defendants made false statements or omissions, whether those statements or omissions were material, and whether the statements were made with the requisite culpability).

### 3. The proposed class representatives are part of the Class and their claims and injuries are typical of those of the Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied where "the class representative is part of the class and possesses the same interest and suffers the same injury as the class members." *Computer Scis.*, 288 F.R.D. at 122. Here, both Wayne County and the Pension Trust are part of the Class, possess the same interest as the Class, and suffer the same injury as the Class.

Wayne County, like other Class members with §14(a) claims, exchanged shares of Orbital Sciences stock for shares of Orbital ATK stock in connection with the merger and suffered harm from the misrepresentations and omissions in the Joint Proxy. *See* ECF No. 53-2 at ¶4; ECF No. 78 at ¶¶15, 260, 292. The Pension Trust, like other Class members with §10(b) claims, purchased shares of Orbital ATK stock after the merger and suffered harm from the Class Period misrepresentations and omissions. *See* ECF No. 53-1 at Schedule A; ECF No. 78 at ¶¶14, 250. Plaintiffs and all other Class members seek to recover damages for injuries caused by the misrepresentations and omissions contained in the SEC filings, press releases, and conference calls

disseminated by Defendants.  *See* Ex. D (Declaration of Don Willey on Behalf of the Pension Trust) & E (Declaration of Gerard Grysko on Behalf of Wayne County).  Plaintiffs' claims are typical of those of the Class because "as goes the claim[s] of the named plaintiff[s], so go the claims of the class." *NII Holdings*, 311 F.R.D. at 407; *see also BearingPoint*, 232 F.RD. at 539 (holding typicality satisfied where the plaintiff's claims "represent the essential claims of the proposed plaintiff class"); *Bank of Am.*, 281 F.R.D. at 139 (holding typicality satisfied where §10(b) and §14(a) claims were asserted by five class representatives).

### 4. The proposed class representatives will continue to fairly and adequately protect the interests of the Class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The primary purpose of the adequacy requirement "is to detect and avoid potential conflicts between lead plaintiffs and other class members." *Computer Scis.*, 288 F.R.D. at 118.  It is generally satisfied where the representative "(i) does not have interests that are adverse to the interests of the class, (ii) has retained competent counsel, and (iii) is otherwise competent to serve as class representative." *In re MicroStrategy Sec. Litig.*, 110 F. Supp. 2d 427, 435-36 (E.D. Va. 2000) (Ellis, J.).

Here, Plaintiffs' interests are aligned with – and not antagonistic to – those of the Class. Plaintiffs are large pension funds that, like Class members, exchanged thousands of shares of Orbital Sciences stock for Orbital ATK stock in the merger or purchased thousands of shares of Orbital ATK stock at artificially inflated prices after the merger.  *See* ECF Nos. 53-1, 53-2.  Thus, Plaintiffs and the proposed Class have precisely the same interest in achieving the maximum recovery possible.  *See* Ex. D at ¶¶5, 7; Ex. E at ¶¶5, 7.

Plaintiffs also understand the role and obligations of class representatives and have protected, and will continue to protect, the Class's interest.  *See* Ex. D at ¶¶5-8; Ex. E at ¶¶5-8.  For example,

Plaintiffs have demonstrated their competency and ability to serve as class representatives by, *inter alia,* filing certifications attesting that they would competently fill their role as class representatives (ECF Nos. 53-1, 53-2), overseeing the litigation through the pleadings, motions to dismiss, and now discovery phases (Ex. D at ¶¶6-7; Ex. E at ¶¶6-7), and participating in discussions with Lead Counsel concerning case developments, strategies, and significant filings (Ex. D at ¶6; Ex. E at ¶6). Further, Plaintiffs have searched for and produced documents in discovery, they are scheduled to provide deposition testimony, and they stand ready to testify at trial, participate in further settlement discussions, and continue to adequately supervise the litigation and Lead Counsel.  Ex. D at ¶¶6-7; Ex. E at ¶¶6-7.  Clearly, the Pension Trust and Wayne County are competent and aligned with the Class.  *See NII Holdings*, 311 F.R.D. at 407 (holding adequacy established where plaintiffs were "sizeable pension funds that have a strong incentive to seek the largest possible recovery on behalf of their beneficiaries" and plaintiffs "filed certifications attesting that they would competently fulfill their role as Class Representatives").

Plaintiffs have also engaged Robbins Geller as Lead Counsel.  The firm has extensive experience litigating securities class actions both before courts in this Circuit and throughout the country.  *See* Ex. F (firm resume).  This Court has already found that "[t]here is no question that Robbins Geller is qualified to litigate this class action lawsuit – it has a long record of success in these types of cases."  ECF No. 41 at 13-14.  Since appointment as Lead Counsel, Robbins Geller has drafted two detailed complaints, successfully opposed Defendants' motions to dismiss, issued and negotiated extensive written discovery, prevailed on two motions to compel, reviewed thousands of documents, and litigated vigorously against experienced defense counsel.  Counsel are qualified, experienced, and able to prosecute this action.  *See NII Holdings*, 311 F.R.D. at 408 (holding adequacy established where counsel were "highly-experienced," had "a proven track record" in

litigating securities actions, and had "already undertaken substantial work" in the action).  For the same reasons, Plaintiffs respectfully request that Robbins Geller be appointed Class Counsel pursuant to Rule 23(g).  *See also*, *e.g.*, *Emergent Biosolutions, HQ*, 2018 WL 2840420, at *12 (appointing Robbins Geller as Class Counsel pursuant to Rule 23(g)); *3D Systems*, 2017 WL 4297450, at *7 (same).

### C. This securities action satisfies the standards for class certification under Rule 23(b)(3).

#### 1. Common issues of law and fact predominate.

Rule 23(b)(3) requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3). Predominance "focuses on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones." *BearingPoint*, 232 F.R.D. at 542. As with the other Rule 23 requirements, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud[.]" *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *see also Schleicher*, 618 F.3d at 682 (noting that because the elements of a typical securities action are subject to class-wide proof, "common questions predominate and class certification is routine"); *Mills*, 257 F.R.D. at 109 (observing that securities actions "typically meet the Rule 23(b)(3) requirement because the claims relate to acts or omissions of the same defendants").

##### a. Common issues of falsity, materiality, causation, and culpability predominate.

To prevail on their §14(a) claims, Plaintiffs must prove: (1) the Joint Proxy contained a material misrepresentation or omission; (2) the Joint Proxy was an essential link in the accomplishment of the transaction and the misrepresentations or omissions caused Plaintiffs' injury; and (3) negligence.  ECF No. 76 at 8, 17. "[R]eliance is not an element of a §14(a) claim." *Sandberg v. Va. Bankshares, Inc.*, 891 F.2d 1112, 1119 (4th Cir. 1989), *rev'd on other grounds by, Va.*

*Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991).  To prevail on their §10(b) claims, Plaintiffs must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase of a sale or security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  ECF No. 75 at 16.

For both claims, the elements of falsity, materiality, causation, and culpability present common questions of law and fact that predominate over any individual ones.  *See Amgen, Inc. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 467-68 (2013) (holding falsity, materiality, and loss causation are all common questions); *Schleicher*, 618 F.3d at 685, 687 (holding that defendants' material omissions and misrepresentations "affect[ed] [all] investors alike" and proof of the violations, including evidence of falsity, materiality, scienter, and loss causation, would "be made on a class-wide basis").  Because nothing more is required to establish liability under §14(a), the predominance requirement is satisfied for the §14(a) claims.  *See Bank of Am.*, 281 F.R.D. at 141 ("No individualized inquiry is required to determine whether the proxy materials ran afoul of Section 14(a).").  In addition, the only remaining liability element for the §10(b) claims is reliance, and, as detailed below, Plaintiffs and the Class are entitled to a presumption of class-wide reliance under the fraud-on-the-market theory set forth in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).

> **b.**   **Common issues of reliance predominate because the Class is entitled to a presumption of reliance under *Basic*'s fraud-on-the-market theory.**

Classwide reliance is established in this action through the "fraud-on-the-market" presumption of reliance.  *See Basic Inc.*, 485 U.S. at 241; *Halliburton Co. v. Erica P. John Fund, Inc.*, __U.S.__, 134 S. Ct. 2398, 2405, 2408 (2014) ("*Halliburton II*").  The fraud-on-the-market theory "holds that 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations,'" and that whenever an "investor

buys or sells stock at the market price, his 'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'" *Halliburton II*, 134 S. Ct. at 2408 (quoting *Basic*, 485 U.S. at 246-47). To invoke the presumption of reliance under this theory, a plaintiff must demonstrate: (1) that the alleged false and misleading statements were material and publicly known, (2) that the plaintiff traded the stock between the time the statements were made and when the truth was revealed; and (3) that the stock traded in an efficient market. *Id.*

Plaintiffs satisfy the prerequisites to invoke the fraud-on-the-market presumption of reliance. First, each alleged false and misleading statement in this case was made as part of a public statement to investors and the marketplace, and at this stage in the litigation, the materiality of the misrepresentations is not at issue. *See* ECF No. 78 at ¶¶64-67, 69-71, 73-75, 77-79, 81-85, 87-90, 92-94, 96, 98-102, 104-105, 107-108, 110-111, 113-114, 116-121; *see also Halliburton II*, 134 S. Ct. at 2416 (materiality "should be left to the merits stage" because it "is an objective issue susceptible to common, classwide proof"); *Amgen*, 568 U.S. at 455 (finding "[p]roof of materiality is not a prerequisite to certification of a securities-fraud class action").[2]  Second, Plaintiffs purchased Orbital ATK common stock during the Class Period. *See* ECF No. 53-1; ECF No. 53-2. Third, as set forth below and in the accompanying Report on Market Efficiency by Professor Steven P. Feinstein, PH.D., CFA (Ex. A), the market for Orbital ATK common stock was efficient at all relevant times.

**(1)     The market for Orbital ATK stock was efficient because it was actively traded on the NYSE and had a large analyst following.**

Efficient markets are those that "are so active and followed that material information disclosed by a company is expected to be reflected in the stock price." Ex. A at ¶32. In the Fourth Circuit, market efficiency may be established through a showing that the security in question was

---

[2]  Notably, Defendants did not challenge the materiality of the alleged misrepresentations and omissions in either of their motions to dismiss.

traded in substantial volume on a major securities exchange, such as the NYSE or NASDAQ, and was covered by a large number of securities analysts. *See, e.g.*, *Computer Scis.*, 288 F.R.D. at 119 (finding market efficiency established based on NYSE listing, trading volume, and analyst following, and noting the court had found no case "holding that the NYSE is not an efficient market for shares of common stock traded . . . in substantial volumes"); *In re NeuStar, Inc. Sec. Litig.*, No. 1:14C885 (JCC/TRJ), 2015 WL 5674798, at *7 (E.D. Va. Sept. 23, 2015) (Cacheris, J.) (assessing market efficiency by considering "whether the security is actively traded, the volume of trades, and the extent to which it is followed by market professionals"); *Emergent Biosolutions, HQ*, 2018 WL 2840420, at *8 (holding that trading on the NYSE "creates a presumption of market efficiency").

The market for Orbital ATK satisfies each of these criteria. Orbital ATK stock was actively traded on the NYSE, the average weekly trading volume of Orbital ATK stock during the Class Period was more than 3.8% of the outstanding shares, and Orbital ATK stock was followed by at least 16 analysts – including major banks like Credit Suisse, J.P. Morgan, Wells Fargo, UBS, and Deutsche Bank. Ex. A at ¶¶29, 53, 56-57; Ex. B, at 4. These facts alone establish that Orbital ATK stock traded on an efficient market. *See Mills Corp.*, 257 F.R.D. at 107 (holding trading volume of 2%-3% supported efficiency and exceed "the 1% threshold" adopted by other courts); *NII Holdings*, 311 F.R.D. at 410 (holding bonds traded on an efficient market where weekly trading volume "hovered around 2.94%" and the company was followed by analysts from "18 firms, including major banks like Credit Suisse, J.P. Morgan, and Morgan Stanley").

> **(2)  The efficiency of the market for Orbital ATK stock is further supported by the remaining *Cammer* and *Krogman* factors.**

In addition to exchange listing, trading volume, and analyst coverage, courts may also look to additional market efficiency factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) and *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001). These factors include: the number

of market makers for the security at issue; whether the company was entitled to file an S-3 registration statement; evidence of a cause and effect relationship between unexpected news and stock-price changes; the magnitude of the company's market capitalization; the size of the bid-ask spread for the security; and the company's "float." *See, e.g.*, *NII Holdings*, 311 F.R.D. at 410-411 (assessing *Cammer* and *Krogman* factors).  The *Cammer* and *Krogman* factors are analytical tools, not checklists, and the absence of any one or more factor is not dispositive.  *See Computer Scis.*, 288 F.R.D. at 120 (noting that the Fourth Circuit has not required satisfaction of the *Cammer* factors and has instead cited them as "an example of factors to consider" (citing *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 368 (4th Cir. 2004)).  In any event, each factor is clearly established here.  *See* Ex. A at ¶¶163-166.

   ***Market Makers (Cammer* factor 3**).  A market-maker is a dealer who helps establish a market for securities by reporting bid-and-ask quotations and is ready and able to buy or sell at these publicly quoted prices. *NII Holdings*, 311 F.R.D. at 410 (citing SEC regulations).  Under economic literature relied on in *Cammer*, "[t]en market makers for a security would justify a substantial presumption that the market for the security is an efficient one."  711 F. Supp. at 1293.  During the Class Period, there were more than 100 market makers for Orbital ATK stock on the NYSE.  Ex. A at ¶¶72-73.

   ***Form S-3 Eligibility (Cammer* factor 4**).  Eligibility to file an SEC Form S-3 registration statement is compelling evidence of market efficiency because "Form S-3 is reserved for companies whose stock is actively traded and widely followed." *NII Holdings*, 311 F.R.D. at 411; *see also* Ex. A at ¶¶74-82.  Orbital ATK was eligible to file an SEC Form S-3 throughout the Class Period.  Ex. B at 3; *see also* Ex. A at ¶¶81-82.

***Cause and Effect*** (***Cammer* factor 5**).  The *Cammer* court noted that "a cause and effect relationship between company disclosures and resulting movements in stock price" can demonstrate market efficiency.  711 F. Supp. at 1291.  Plaintiffs' expert, Professor Steven P. Feinstein, examined the causal relationship between the announcement of Company-specific news about Orbital ATK and a response in the price of Orbital ATK common stock.  *See* Ex. A at ¶¶95-162.  Based on his empirical analysis, Dr. Feinstein determined that there was a cause-and-effect relationship demonstrating market efficiency.  *Id*. at ¶¶146-147, 161-162.

***Market Capitalization*** (***Krogman* factor 1**).  Market capitalization is the total value of all outstanding shares and equals the number of shares outstanding times the price per share.  Ex. A at ¶48.  A company's market capitalization "may be an indicator of market efficiency because there is a greater incentive for stock purchasers to invest in more highly capitalized corporations."  *Krogman*, 202 F.R.D. at 478.  Orbital ATK's market capitalization was over $4 billion, placing it in the top 20% of publicly-traded companies in the United States.  Ex. A at ¶¶84-85; Ex. B at 3; *see also NII Holdings*, 311 F.R.D. at 412 (holding market capitalization of $3.73 billion supported market efficiency).

***Bid-Ask Spread*** (***Krogman* factor 2**).  The bid-ask spread is the difference between the price at which market makers are offering to buy a security and the price at which they are offering the security for sale.  Ex. A at ¶50.  A low bid-ask spread indicates a more efficient market.  *See id.*; *Krogman*, 202 F.R.D. at 478.  The average month-end bid-ask spread for all stocks during the Class Period in the Center for Research in Security Prices database was 0.65%.  Ex. A at ¶91.  The average bid-ask spread for Orbital ATK common stock was just 0.04%.  *Id.*; *see also NII Holdings*, 311 F.R.D. at 412-413 (holding weighted average spread of 0.106% supported market efficiency).

*Float* (*Krogman* **factor 3**).  A stock's float is the number of shares outstanding excluding shares held by insiders and affiliated corporate entities.  Ex. A at ¶49.  A higher float generally indicates greater market efficiency.  *Id*.  The average float of Orbital ATK's stock was 98.9% of shares outstanding, which is significant and supports market efficiency.  Ex. A ¶¶86-88.

In sum, Orbital ATK's stock traded in an efficient market during the Class Period, thereby establishing the fraud-on-the-market presumption of reliance and confirming that common issues of reliance predominate.

### c.     While not required for class certification under Rule 23, common questions of damages also predominate.

The predominance inquiry "focuses on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones." *BearingPoint*, 232 F.R.D. at 542.  Damages are less relevant, and any "differences in damages among the potential class members do not generally defeat predominance if liability is common to the class."  *Id.*; *see also Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 402 (2d Cir. 2015) (holding Rule 23(b)(3) "does not mandate . . . a finding that damages are capable of measurement on a classwide basis.").  As explained above, common issues of liability predominate, making class certification appropriate.  Any consideration of damages at this stage only bolsters this conclusion.

For the §10(b) claims, "damages per share are calculated as the artificial inflation when the shares were purchased minus the artificial inflation when the shares were sold."  *BearingPoint*, 232 F.R.D. at 544.  The amount of inflation can be measured for each day of the Class Period through an event study, making each individual Class member's damages dependent only on the dates it purchased and sold its respective shares.  *See* Ex. A at ¶¶167-172; *see also 3D Systems*, 2017 WL 4297450, at *7 (finding predominance where plaintiffs advanced same damages methodology).  For the §14(a) claims, out-of-pocket damages will be measured by the difference between the fair value

consideration absent the misrepresentations and omissions and the consideration received in the merger, making each individual Class member's damages dependent only on the number of shares exchanged.[3] *See* Ex. A at ¶¶174-177; *Va. Bankshares*, 891 F.2d at 1119 (holding that because "damages were determinable on the basis of the value of a share of stock . . . the only individual questions were how many shares of stock shareholder owned" and "defendants' contention that individual questions predominated is without any basis whatsoever"); *see also Schulein v. Petroleum Dev. Corp.*, No. SACV 11-1891, 2014 WL 114520, at *7 (C.D. Cal. 2014) (holding that "individual damage calculations" for the class's §14(a) claims "will not predominate over common questions"). In other words, each individual Class member's damages will be determined "mechanically" based on common evidence, such that common issues of damages will predominate over any individual ones. *Schleicher*, 618 F.3d at 682.

### 2. Pursuing the claims as a class action is superior to other methods of adjudication.

In addition to predominance, Rule 23(b)(3) requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides four factors relevant to this inquiry: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." *BearingPoint*, 232 F.R.D. at 544.

---

[3]   Plaintiffs may seek to obtain "benefit-of-the-bargain" damages for the difference between what Orbital Sciences shareholders expected to receive in the merger and what they actually received. *See Osofsky v. Zipf*, 645 F.2d 107, 111 (2d Cir. 1981). Such damages would likewise make each individual Class member's damages dependent only on the number of shares exchanged. *See* Ex. A at ¶¶178-179.

Here, as in *BearingPoint*, each factor weighs strongly in favor of class certification.  First, "[a]ny interest individual members of the class may have in controlling the litigation is far outweighed by the benefit of distributing the financial burden of the litigation among the class." *Id*. Second, Plaintiffs are not aware of any other litigation "commenced by members of the class against these defendants alleging these claims." *Id.*  Third, this forum "is particularly appropriate as it is closest to defendant [Orbital ATK's] corporate headquarters and therefore many of the witnesses." *Id.*  And fourth, "management of the class litigation should not prove especially difficult as securities cases allow for the easy identification of the class members." *Id.* at 544-45.  Thus, "because class actions are a particularly appropriate and desirable means to resolve claims based on alleged violations of the securities laws, the plaintiff's proposed class is the superior method for adjudicating this dispute." *Id*. at 545  Superiority is satisfied.

## IV.    CONCLUSION

For all of these reasons, Plaintiffs respectfully request that this Court grant its motion for class certification and appoint Pension Trust and Wayne County as Class Representatives, and Robbins Geller as Class Counsel.

DATED:  June 22, 2018

THE OFFICE OF CRAIG C. REILLY
CRAIG C. REILLY, VSB #20942


_/s/ Craig C. Reilly_
CRAIG C. REILLY

111 Oronoco Street
Alexandria, VA  22314
Telephone:  703/549-5354
703/549-2604 (fax)
craig.reilly@ccreillylaw.com

**_Liaison Counsel_**

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
JAMES E. BARZ
FRANK RICHTER
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
JOHN C. HERMAN
PETER M. JONES
Monarch Tower, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
MAUREEN E. MUELLER
KATHLEEN B. DOUGLAS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

*Lead Counsel for Plaintiff*

VANOVERBEKE MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

*Additional Counsel for Plaintiff Wayne County*
*Employees' Retirement System*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 22, 2018, I filed the foregoing pleading or paper through the

Court's CM/ECF system, which sent a notice of electronic filing to all registered users:


*/s/ Craig C. Reilly*
Craig C. Reilly, Esq.
VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-5355
EMAIL craig.reilly@ccreillylaw.com
*Liaison Counsel for Lead Plaintiff*