# EXHIBIT 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Virginia

| | | |
|---|---|---|
| Steven Knurr, Individually and on Behalf of All Others Similarly Situated | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:16-cv-01031-TSE-MSN |
| Orbital ATK, Inc., et al., | ) | |
| | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                               Deloitte LLP c/o Corporation Services Company
                                   100 Shockoe Slip, 2nd Floor, Richmond, VA 23219

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

   See Attachment A

| Place: Robbins Geller Rudman & Dowd LLP 905 16th Street, Suite 303 Washington, D.C.  20006 | Date and Time: 05/02/2018 5:00 pm |
|---|---|

   ☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

   The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   04/25/2018

                *CLERK OF COURT*
                                                         OR
                                                              /s/ James Barz
_____              _____
   *Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Construction Laborers
Pension Trust of Greater St. Louis & Wayne Cnty. Employees' Retirement System , who issues or requests this subpoena, are:
James E. Barz, Robbins Geller Rudman & Dowd LLP, 200 South Wacker Drive, 31st Floor
Chicago, IL 60606; jbarz@rgrdlaw.com; 312-674-4674

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:16-cv-01031-TSE-MSN

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

    ❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____      _____

                                                        *Server's signature*

                                       _____

                                                          *Printed name and title*

                                       _____

                                                        *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

**(Deloitte LLP)**

## I.    DEFINITIONS

Unless stated otherwise, the terms set forth below are defined as follows:

1.    "Deloitte," "you" or "your" refers to Deloitte LLP and any of its members (as defined by 0.400.12 and 0.400.18, formerly ET §92.07 and ET §92.11, respectively, of the American Institute of Certified Public Accountants Code of Professional Conduct, adopted January 12, 1988 and renumbered effective December 15, 2014) and any of its predecessors, successors, parents, subsidiaries, divisions, partnerships and branches; its international, foreign, national, regional and local offices; all present or former officers, directors, partners, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

2.    "2015 Form 10-KT" refers to the report on Form 10-KT for the nine month transition period ending December 31, 2015, filed by Orbital ATK, Inc. on March 15, 2016.

3.    "2015 Form 10-KT/A" refers to the report on Form 10-KT/A for the nine month transition period ending December 31, 2015, filed by Orbital ATK on February 24, 2017.

4.    "Alliant" refers to Alliant Techsystems, Inc., any of its subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, and all present and former officers, directors, employees, agents, members of the Board of Directors, attorneys, accountants, advisors, and all other persons acting or purporting to act on its behalf.

5.    "Audit documentation" refers to and adopts the definition and requirements of the term audit documentation as established or otherwise described by the Public Company Accounting Oversight Board's Auditing Standard No. 3 ("AS 3, *Audit Documentation*"), formerly AU §339, *Audit Documentation* of the American Institute of Certified Public

1

Accountants.  As elaborated in these standards, audit documentation includes and consists of all records, workpapers or other documents  (including workpapers prepared using audit software) prepared or received relevant to the engagement, including records of the planning and performance of the work, the procedures applied, test performed, evidence obtained and conclusions reached.    Specific examples of audit documentation include audit programs, analyses, memoranda, letters of confirmation, representation letters, abstracts or photocopies of documents, client-prepared documents, schedules or commentaries, engagement administrative, review and completion documents, workpaper and documentation organizational schedules, indices or elements,  permanent files, and correspondence.

      6.     "Communicate" or "communication" refers to every manner or means of disclosure, transfer or exchange of information (in the form of facts, ideas, inquiries or otherwise), whether orally, electronically, by document, telecopier, mail, personal delivery or otherwise.

      7.     "Concerning" means relating to, referring to, describing, evidencing, regarding or constituting.

      8.     "Defendants" refers to Orbital ATK, Inc. and the Individual Defendants.

      9.     "Document(s)" is intended to be interpreted in the broadest possible sense under Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence and includes, without limitation, all electronic data, databases and all communications or information which are stored or retrievable or recorded in any manner, and also includes, without limitation, any writing (as "writings" is defined in Fed. R. Evid. 1001) or other record of information or images, including, without limitation, print, handwriting, photographs,

2

videotapes, films and recordings (as "recordings" is defined in Fed. R. Evid. 1001). The term "document(s)" also includes, without limitation, drafts or non-identical copies of any document.

10.     "Financial statements" includes, without limitation, the following, whether audited or unaudited; whether draft, final, interim or pro forma; whether complete or partial; and whether consolidated, consolidating or unconsolidated: balance sheets; statements of financial position; income statements; statements of earnings, revenues, expenses, profits and losses; statements of equity, additional paid-in capital and retained earnings; cash flow statements and source of application of funds; notes to each of such statements; and any and all other statements and notes that relate to Orbital ATK's, Alliant's, or Orbital Sciences' past or present financial condition.

11.     "Internal Investigation" refers to the Company's internal investigation of the circumstances, surrounding the misstatements in the accounting for the Lake City Contract and related matters, referred to in the Company's 2015 Form 10-KT/A.

12.     "Individual Defendants" refers to David W. Thompson, Garret E. Pierce, Blake E. Larson, Hollis M. Thompson, and Mark W. DeYoung, and their agents, attorneys, advisors, accountants, and all other persons acting or purporting to act on their behalf.

13.     "Joint Proxy Statement" refers to the Joint Proxy Statement/Prospectus filed with the SEC on December 17, 2014.

14.     "Lake City" refers to the Lake City Army Ammunition Plant in Independence, Missouri.

15.     "Lake City Contract" refers to the long-term contract awarded to Alliant in September 2012, and later retained by Orbital ATK, to manufacture small caliber ammunition for the U.S. Army at Lake City.

3

16.     "Merger" refers to the merger of Alliant Techsystems, Inc. and Orbital Sciences Corporation on or around February 9, 2015.

17.     "Orbital ATK" means Orbital ATK, Inc., any of its subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, and all present and former officers, directors, employees, agents, members of the Board of Directors, attorneys, accountants, advisors, and all other persons acting or purporting to act on its behalf.

18.     "Orbital Sciences" means Orbital Sciences Corporation, any of its subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, and all present and former officers, directors, employees, agents, members of the Board of Directors, attorneys, accountants, advisors, and all other persons acting or purporting to act on its behalf.

19.     "Person" or "persons" refers to natural persons, proprietorships, governmental agencies, corporations, partnerships, trusts, joint ventures, groups, associations, organizations and all other entities.

20.     "Predecessor Contracts" means contracts awarded to Orbital ATK and/or Alliant to manufacture small caliber ammunition for the U.S. Army at Lake City prior to the Lake City Contract.

21.     "Prior Restatement" refers to Orbital ATK's restatement of its consolidated financial statements for second quarter of fiscal year 2015 and third quarter of fiscal year 2015, which is described in Orbital ATK's 2015 Form 10-KT.

22.     "Professional services" means any work or services performed by you for any Defendant, Alliant, or Orbital Sciences.

23.     "PwC" refers to PricewaterhouseCoopers LLP and any of its members (as defined by 0.400.12 and 0.400.18, formerly ET §92.07 and ET §92.11, respectively, of the American

4

Institute of Certified Public Accountants Code of Professional Conduct, adopted January 12, 1988 and renumbered effective December 15, 2014) and any of its predecessors, successors, parents, subsidiaries, divisions, partnerships and branches; its international, foreign, national, regional and local offices; all present or former officers, directors, partners, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

24.     "Restatement" refers to Orbital ATK's restatement of its financial statements for the nine-month 2015 transition period, fiscal year 2015, fiscal year 2014, the quarters in the 2015 transition period and fiscal year 2015, and unaudited selected financial data for fiscal year 2013, which is described in Orbital ATK's 2015 Form 10-KT/A.

25.     "SEC" refers to the United States Securities and Exchange Commission, its national, regional and branch officers, and its commissioners, directors, administrators, branch chiefs, attorneys, accountants, investigators, paralegals and staff.

26.     "Workpapers" or "working papers" means all documents concerning the procedures applied, work performed, evidence obtained and conclusions reached in the engagement by any auditor, practitioner, consultant or any other person working on your behalf. Workpapers for any audit or attestation include, but are not limited to:

> **Working papers are** records kept by the auditor [or practitioner] of the procedures applied, the tests performed, the information obtained, and the pertinent conclusions reached in the engagement.  Examples of working papers are audit programs, analyses, memoranda, letters of confirmation and representation, abstracts of company documents, and schedules or commentaries prepared or obtained by the auditor.  *Working papers also may be in the form of data stored on tapes, films, or other media.*

PCAOB AU §339A.03, *Working Papers*.

27.     The singular shall include the plural, and the disjunctive shall include the conjunctive, and vice versa.

5

28.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

29.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

30.     The term "including" means "including without limitation" or "including, but not limited to."

31.     The terms "refer," "reflect," "relate," "regarding," "referring," or "relating" are to be given their ordinary meaning and refer to all documents, communications or things which explicitly or implicitly, in whole or in part, were received in conjunction with, or were generated as a result of, the subject matter of the request, including, documents, communications or things that reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon or impact the subject matter of the request.

## II.     INSTRUCTIONS

1.     All documents shall be produced as they are maintained in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof, *i.e.*, documents maintained electronically shall be produced in the manner in which such documents are stored and retrieved, including but not limited to, documents prepared or maintained using any audit software tools.

2.     In responding to these requests, you shall produce all responsive documents (including those stored electronically), which are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or affiliates, or any of your respective directors, officers, managing agents, agents, employees,

attorneys, accountants or other representatives. A document shall be deemed to be within your control if you have the right to secure the document or a copy of the document from another person having possession or custody of the document.

3.    The plaintiffs reserve their right to request inspection of the *original* documents, including those stored electronically, as they are kept in the usual course of business. If the original is not in your custody, then a copy thereof, and all non-identical copies which differ from the original or from the other copies produced for any reason, including, without limitation, the making of notes thereon.

4.    Documents shall be produced in the formats described below. To the extent that there are documents containing information relevant to these requests that are currently in electronic format, certain types of these documents are to be produced in their native format as indicated below under section III, Form of Production.

5.    If production of documents is withheld on the ground of privilege, as to each such withheld document state the following information:

    (a)    which privilege is claimed;

    (b)    who is asserting the privilege;

    (c)    a precise statement of the facts upon which said claim of privilege is based;

    (d)    the following information describing each purportedly privileged document:

        (i)    a brief description sufficient to identify its nature, *i.e.*, agreement, letter, memorandum, type, etc.;

7

(ii)     a brief description sufficient to identify its subject matter and purpose of the document;

(iii)    the date it was prepared;

(iv)    the date it bears;

(v)     the date it was sent;

(vi)    the date it was received;

(vii)   the identity of the person preparing it;

(viii)  the identity of the person sending it;

(ix)    the identity of each person to whom it was sent or was to have been sent, including all addresses and all recipients of copies;

(x)     a statement as to whom each identified person represented or purported to represent at all relevant times;

(xi)    all persons to whom its contents have been disclosed;

(e)     a precise description of the place where each copy of that document is kept, including the title or description of the file in which said document may be found and the location of such file.

6.     If a portion of any document responsive to these requests is withheld under a claim of privilege, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

7.     You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions Nos. 5 and 6 above), regardless of whether you consider the entire document to be relevant or responsive to the requests.

8

8.      Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document which are not being produced.

9.      If a document responsive to these requests was at any time in your possession, custody or control but is no longer available for production, as to each such document state the following information:

(a)      whether the document is missing or lost;

(b)      whether it has been destroyed;

(c)      whether the document has been transferred or delivered to another person and, if so, at whose request;

(d)      whether the document has been otherwise disposed of; and

(e)      a precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

10.     With respect to any category of documents, the production of which you contend is in some way "burdensome" or "oppressive," please state the specific reasons for that objection.

## III.     FORM OF PRODUCTION

Hard copy documents and ESI should be produced in accordance with the Format of Production Protocol attached hereto. Documents prepared or maintained using any global audit software tools should be produced in a manner so that the parties can access and review the documents as they were ordinarily maintained.

9

## IV.    RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from February 1, 2012 to the present (the "Relevant Period"), and shall include documents and information that relate to such period, even though prepared or published outside of the Relevant Period. If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## V.    DOCUMENTS REQUESTED

### REQUEST NO. 1:

All documents, including all audit documentation and engagement workpapers, concerning all professional services performed by you for Orbital ATK or Alliant relating to:

- (a)    Lake City;
- (b)    The Small Caliber Systems Division;
- (c)    The Lake City Contract;
- (d)    The Restatement and the Restatement process;
- (e)    The Prior Restatement and the Prior Restatement process;
- (f)    The Merger, or any other proposed or actual merger or acquisition involving Orbital Sciences, Alliant, or Orbital ATK, and all related due diligence;
- (g)    The Joint Proxy Statement;
- (h)    Revenue recognition on long-term contracts;
- (i)    Estimation of contract costs at completion on long-term contracts;
- (j)    Forward losses on long-term contracts;

10

          (k)     Implementation of, or changes to, accounting policies for long-term contracts;

          (l)     Inclusion or exclusion of general and administrative costs in the measurement of forward losses;

          (m)     Internal controls for contract accounting; and

          (n)     Significant deficiencies or material weaknesses in Alliant's or Orbital ATK's internal controls, and any related remedial measures.

REQUEST NO. 2:

All documents constituting or concerning communications to, from, or involving Alliant, Orbital ATK, or any of the Individual Defendants, relating to:

          (a)     Lake City;

          (b)     The Small Caliber Systems Division;

          (c)     The Lake City Contract;

          (d)     The Restatement and the Restatement process;

          (e)     The Prior Restatement and the Prior Restatement process;

          (f)     The Merger, or any other proposed or actual merger or acquisition involving Orbital Sciences, Alliant, or Orbital ATK, and all related due diligence;

          (g)     The Joint Proxy Statement;

          (h)     Revenue recognition on long-term contracts;

          (i)     Estimation of contract costs at completion on long-term contracts;

          (j)     Forward losses on long-term contracts;

          (k)     Implementation of, or changes to, accounting policies for long-term contracts;

(l)     Inclusion or exclusion of general and administrative costs in the measurement of forward losses;

(m)     Internal controls for contract accounting; and

(n)     Significant deficiencies or material weaknesses in Alliant's or Orbital ATK's internal controls, and any related remedial measures.

REQUEST NO. 3:

All documents, workpapers, and communications concerning Orbital ATK's Internal Investigation, including:

(a)     Documents generated or received as part of the investigation;

(b)     Interviews or statements (including transcripts, summaries, or notes thereof) taken or provided in connection with the investigation;

(c)     Findings and conclusions resulting from the investigation, including all documents relating to Orbital ATK's finding that "[c]ertain personnel at the Small Caliber Systems Division and, in some cases, Defense Systems Group, acted inappropriately and failed to adhere to the high standards established in the Company's policies and expected by senior management and the Board of Directors"; and

(d)     Documents relating to any action taken by Orbital ATK as a result of the investigation.

REQUEST NO. 4:

All documents and communications relating to the "SEC Investigation," the "U.S. Government Investigations," and the "voluntarily self-report[ing] to the SEC" referred to in the 2015 Form 10-KT/A, including all documents produced by or received by you in connection therewith.

REQUEST NO. 5:

All documents and communications with or regarding any government agency, regulatory body or law enforcement agency (including the SEC, U.S. Department of Justice, or U.S. Army) concerning Orbital ATK, Alliant, Orbital Sciences, or the Individual Defendants, including all documents produced and transcripts of testimony provided in connection therewith.

REQUEST NO. 6:

All documents and communications with or concerning regulatory agencies (including the Public Company Accounting Oversight Board, the American Institute of Certified Public Accountants, the New York Stock Exchange, and the Financial Industry Regulatory Authority, and banking or insurance regulators) regarding Orbital ATK, Alliant, Orbital Sciences, or the Individual Defendants, or Deloitte's services for Orbital ATK, Alliant, or the Individual Defendants.

REQUEST NO. 7:

All documents, workpapers, and communications concerning PwC's selection as Orbital ATK's registered public accounting firm, as disclosed in the Form 8-K filed by Orbital ATK on March 2, 2015, including the "competitive process" described therein.

REQUEST NO. 8:

All documents, workpapers, and communications concerning PwC's dismissal, and Deloitte's selection and engagement, as Orbital ATK's registered public accounting firm on or around May 1, 2017, including all documents, workpapers, and communications concerning Deloitte' client acceptance procedures and review of the professional services performed by PwC related to PwC's role as the previous independent registered public accounting firm for Orbital ATK.

13

REQUEST NO. 9:

All documents and communications concerning the Restatement or the Prior Restatement.

REQUEST NO. 10:

All documents and communications with or concerning PwC regarding Orbital ATK, Alliant, Orbital Sciences, or the Individual Defendants.

REQUEST NO. 11:

A listing of all Deloitte personnel who performed professional services for Orbital ATK, Alliant, or the Individual Defendants, broken down by engagement code, personnel title, office location, and amount of time billed by period.

REQUEST NO. 12:

All documents concerning the preservation, search for, collection, maintenance, destruction or alteration of any and all documents (including e-mail and other electronic data) concerning Orbital ATK, Alliant, Orbital Sciences, or the Individual Defendants that were undertaken with respect to this action, including, without limitation, all such action taken after this action was filed but prior to this request.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| STEVEN KNURR, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| ORBITAL ATK, INC., et al., | ) ) |
| Defendants. | ) ) ) |

Civil Action No. 1:16-cv-01031-TSE-MSN

<u>CLASS ACTION</u>

FORMAT OF PRODUCTION PROTOCOL

This Agreement will govern the format of production for hard copy documents and electronically stored information ("ESI") in the above-captioned case.

## I.     PRODUCTION OF HARD COPY DOCUMENTS – FORMAT

Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## II.    PRODUCTION OF ELECTRONICALLY STORED INFORMATION

### A.     Format

The parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet type files, source code, audio, and video files, which shall be produced in native format. If an original document contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs will show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages should include the BCC line. PowerPoint documents shall be

processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF/JPG image.

If a document is produced in native, a single-page Bates stamped image slip sheet stating the document has been produced in native format will also be provided. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties agree to meet and confer in good faith.

**B.    De-Duplication**

Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. Parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents and email thread suppression is not acceptable. De-duplication will be done across the entire collection (global de-duplication) and the CUSTODIAN field will list each custodian, separated by a semi-colon, who was a source of that document and the FILEPATH field will list each file path, separated by a semi-colon, that was a source of that document. Should the CUSTODIAN or FILEPATH metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production.

**C.     Metadata**

All ESI will be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto.  The metadata produced should have the correct encoding to enable preservation of the documents' original language.

**D.     Embedded Objects**

The parties agree to meet and confer over the inclusion or exclusion of embedded files from the production.

**E.     Compressed Files Types**

Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

**F.     Structured Data**

To the extent a response to discovery requires production of electronic information stored in a database, including the production of text messages or similar communications, the parties will meet and confer regarding methods of production.  Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

**G.     Exception Report**

The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type and the file location.

**H.     Encryption**

To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

## I.      Redactions

If documents that the parties have agreed to produce in native format need to be redacted, the parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

## TABLE 1: METADATA FIELDS[1]

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001  (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003  (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001  (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008  (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the e-mail or calendar entry was sent. |
| SENTTIME | HH:MM | The time the e-mail or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry |
| MEETING START TIME | HH:MM | Start time of calendar entry |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry |
| MEETING END TIME | HH:MM | End time of calendar entry |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business.  This field should be populated for both e-mail and e-files. |
| FILEPATH-DUP | i.e.  /JSmith.pst/Inbox<br>/Network Share/Accounting/...<br>/TJohnsonPC/Users/TJohnson/My Documents/... | The file paths from the locations in which the duplicate documents were stored in the usual course of business.  This field should be populated for both e-mail and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail address of the author of an e-mail/calendar item.  An e-mail address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail address of the recipient(s) of an e-mail/calendar item.  An e-mail address should be provided for every e-mail if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail/calendar item.  An e-mail address should always be provided for every e-mail if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail or calendar item. An e-mail address should always be provided for every e-mail if a blind copyee existed. |
| SUBJECT | | The subject line of the e-mail/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type. |
| IMPORTANCE | Normal, Low, High | E-mail Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| SOURCE | Computer, Mobile Phone, Email, Network Share, Database Name, etc. | The source from which the document was collected. |
| ATTACH COUNT | Numeric | The number of attachments of a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| HASH | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. |
| LANGUAGE | Korean; Japanese; English | Specifies all languages found in the document to the best of the processing software's ability. |
| CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| REDACTED | YES or Blank | If a document contains a redaction, this field will display 'YES'. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. **NOTE:** This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. **Note:** E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

[1] For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.