1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

STEVEN KNURR, Individually    .    Civil Action No. 1:16cv1031
and On Behalf of All Others   .
Similarly Situated; and       .
CONSTRUCTION LABORERS PENSION  .
TRUST OF GREATER ST. LOUIS,   .
                              .
            Plaintiffs,       .
                              .
       vs.                    .    Alexandria, Virginia
                              .    June 22, 2018
ORBITAL ATK, INC., et al.,    .    9:59 a.m.
                              .
            Defendants.       .
                              .
. . . . . . . . . . .

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE MICHAEL S. NACHMANOFF
UNITED STATES MAGISTRATE JUDGE

VOLUME I

APPEARANCES:

FOR THE PLAINTIFFS:          KATHLEEN B. DOUGLAS, ESQ.
                             Robbins Geller Rudman & Dowd LLP
                             120 East Palmetto Park Road
                             Suite 500
                             Boca Raton, FL 33432
                               and
                             CRAIG C. REILLY, ESQ.
                             Law Office of Craig C. Reilly
                             111 Oronoco Street
                             Alexandria, VA 22314

FOR DEFENDANTS ORBITAL       GEORGE ANHANG, ESQ.
    ATK, INC.; DAVID W.      LYLE ROBERTS, ESQ.
    THOMPSON; GARRETT E.      Shearman & Sterling
    PIERCE; BLAKE E. LARSON;  401 - 9th Street, N.W.
    AND HOLLIS M. THOMPSON:   Suite 800
                             Washington, D.C. 20004

(Pages 1 - 47)

(Proceedings recorded by electronic sound recording, transcript
 produced by computerized transcription.)

2

```
1   TRANSCRIBER:                    ANNELIESE J. THOMSON, RDR, CRR
                                    U.S. District Court, Fifth Floor
2                                   401 Courthouse Square
                                    Alexandria, VA 22314
3                                   (703)299-8595
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

1                    P R O C E E D I N G S

2              THE CLERK:  Steven Knurr, et al. v. Orbital ATK,

3    Inc., et al., Civil Case 16cv1031.  Counsel, please note your

4    appearances for the record.

5              MR. REILLY:  Good morning, Your Honor.  For the

6    plaintiff class, Craig Reilly and Kathleen Douglas.

7              THE COURT:  Good morning.

8              MR. REILLY:  And Ms. Douglas will address the Court

9    on the substantive motions.  I have a couple housekeeping

10   issues to raise at the conclusion of the substantive motions.

11             THE COURT:  Thank you.  That's fine.

12             MR. ANHANG:  Good morning, Your Honor.  I'm George

13   Anhang.  I'm with, I'm with Shearman & Sterling, and we

14   represent all the defendants apart from defendant Mark DeYoung.

15   With me today is my colleague, Lyle Roberts.

16             THE COURT:  Good morning.

17             MR. ANHANG:  Good morning.

18             MR. ROBERTS:  Good morning, Your Honor.

19             THE COURT:  This matter is back before the Court

20   after a hiatus that I'm sure you-all hoped and the Court

21   certainly hoped would perhaps lead to the resolution of this

22   case.  I understand that the efforts to resolve it were not

23   successful.

24             I've reviewed the pleadings.  We have the plaintiffs'

25   motion to compel and the defendants' motion for clarification.

4

1    They are in many ways two sides of the same coin, and I will

2    address them together.

3            Let me start by asking on the defense side, because I

4    am a little bit confused, it appears that the reply brief was

5    filed and then there was a request to place it under seal.  Is

6    that correct?

7            MR. ANHANG:  Your Honor, may I be heard on it?

8            THE COURT:  Yes.

9            MR. ANHANG:  Again, George Anhang.  Your Honor, what

10   occurred was as follows:  In the reply brief, on the last page,

11   there were a very few words that were redacted.  It was not

12   even a full sentence.  It was less than a full sentence.

13           When that brief was first ECF filed, what occurred

14   was that the unredacted version of that brief appeared on the

15   docket.  Within minutes, we contacted the clerk, who

16   immediately blocked access to that version.  Within minutes

17   thereafter, we filed the redacted version and very shortly

18   thereafter filed the unredacted version with all of the

19   corresponding materials with respect to that unredacted

20   version, so that, in fact, the briefs are identical except in

21   that on the very last page is a small collection of words that

22   are redacted.

23           THE COURT:  Let me ask you about that small

24   collection of words.  I'm looking at it, and I'm trying to

25   understand why it was important to seek to have that redacted

5

1    and why you believe that it would be appropriate for the Court

2    to place it under seal.

3            I understand procedurally exactly what you've

4    explained, and I'm glad the Clerk's Office was cooperative.

5    It, however, I think, highlights an issue that is perhaps going

6    to be relevant as we look at the rest of these enormous

7    pleadings and the motions to seal here.

8            MR. ANHANG:  Yes, Your Honor.

9            THE COURT:  I'm having a hard time understanding why

10   it would meet the requirements for sealing.

11           MR. ANHANG:  When the plaintiffs in this case

12   themselves filed their own motion to compel, they filed

13   materials which they wished to designate as sealed materials.

14   There was, as I think is explained also in the papers, a, a

15   problem, and the problem was that a number of interview memos

16   that were intended to be filed under seal by the plaintiffs

17   were not filed in a way that prevented the public from

18   addressing them.  The plaintiffs took action to block those

19   versions and filed submissions with respect to the sealed

20   versions of those interview memos.

21           I'm bringing that up, Your Honor, only because the

22   snippet of text that was redacted on the last page of our reply

23   brief is a part of one of those interview memos that the

24   plaintiffs themselves had filed under seal, so what --

25           THE COURT:  Yes, I, I understand the source of the

1    information, and you're tiptoeing around the words.  I'm

2    perfectly happy to discuss them in open court.  Out of respect

3    for your request to keep it under seal, I'm not uttering them.

4    I'm asking, however --

5              MR. ANHANG:  Yes, Your Honor.

6              THE COURT:  -- you to articulate to me why that

7    information should be blocked from public access.

8              How, how -- what is the concern?

9              MR. ANHANG:  I will explain it.  By way of

10   background, Your Honor, under the rules, our understanding is

11   that there is a submission to be made in writing which we are

12   preparing and which will be submitted on a timely basis that

13   fully explains the basis for what we did.  As we --

14             THE COURT:  Well, what I'm trying to do now for the

15   third time as we begin this hearing --

16             MR. ANHANG:  Yes, Your Honor.

17             THE COURT:  -- is just have you answer that question

18   now.

19             MR. ANHANG:  Absolutely, Your Honor.  Your Honor, the

20   substance of the interview memos at issue are quintessential

21   *Upjohn* communications between a lawyer and a client.  They are

22   very confidential, we think privileged, we think work product,

23   but given the acutely sensitive confidential nature of these

24   communications that are reflected in the interview memos

25   conducted in connection with an investigation, we believe that

7

1    these interview memos warrant treatment as confidential

2    materials.

3            However, we fully appreciate that Your Honor had

4    directed us nevertheless to produce them to the plaintiffs in

5    redacted form, which we did.  Indeed, we produced them in

6    unredacted form.

7            But that is the basis for our position given the

8    nature, the extraordinarily and acutely sensitive and

9    confidential nature of *Upjohn*, quintessential *Upjohn* interview

10   memos of this sort, that it is appropriate and in no way

11   prejudicial to the plaintiffs for us to have sought pursuant to

12   the protective order entered in this case appropriate

13   confidential treatment of these materials, subject to, of

14   course, your Court's ruling on the appropriateness of that

15   designation pursuant to the protective order.

16           What we did, we believe, was in perfect accord with

17   the terms of the protective order and the underlying nature of

18   the sensitive, confidential communications between a client and

19   a lawyer in connection with an investigation that falls

20   squarely under the *Upjohn* case.

21           THE COURT:  Well, thank you for your explanation.

22           MR. ANHANG:  Thank you, Your Honor.

23           THE COURT:  I'll hear from the plaintiff first on the

24   motion to compel.

25           I'm not addressing that.  I, I will allow you to

1  submit your motion to seal and put it in writing.  I will say

2  that the explanation you've provided is unsatisfactory to me,

3  but I'm, I'm certainly going to keep it under seal until I've

4  had a full opportunity to have it briefed.

5              MR. ANHANG:  Thank you, Your Honor.

6              MS. DOUGLAS:  Good morning, Your Honor.

7              THE COURT:  Good morning.

8              MS. DOUGLAS:  Your Honor has now received six briefs

9  on these issues, so we primarily rest our arguments on the

10 briefing, but if I may, I would just like to highlight three

11 things for you.

12             THE COURT:  You may.

13             MS. DOUGLAS:  Okay.  The first being a defendant

14 should produce any notes, drafts, or additional versions of the

15 witness statements created as part of the internal

16 investigation.  These documents contain factual information.

17 They are not privileged, as the Court already ruled that the

18 internal investigation was done for business purposes, and we

19 believe their production was ordered in the Court's May 4

20 order.

21             To the extent defendants feel that any of these

22 documents contain mental impressions, the Court already stated

23 that defendants could make redactions to that information, that

24 any underlying factual information is not privileged and must

25 be produced.

1      My second point is that defendants have no basis for

2   withholding any notes or memoranda created or in the possession

3   of its auditors related to the factual statements made by these

4   witnesses.  Defendants already produced the witness interview

5   memorandum that were used in the company's communications with

6   these auditors as responsive to the Court's May 4 order, so

7   they should also produce the auditors' notes of those factual

8   statements.  These notes contain factual information, and they

9   are not privileged, and we believe this was also made clear in

10   the Court's May 4 order.

11      The last point I would like to make, Your Honor, is

12   we believe that the record in our briefing makes clear that

13   defendants have failed to meet their burden of establishing a

14   privilege for some or if not all of their privileged documents.

15      Defendants redacted purely factual information from

16   the original memos that were produced to us on May 11 in

17   accordance with the Court's order, and they failed to produce a

18   timely privilege log.  Defendants received clear notice from

19   this Court at the May 4 hearing of their obligation to produce

20   a privilege log.  Defendants are withholding thousands of

21   documents as privileged, and we believe that if a full log is

22   ever produced, it will make clear that the internal

23   investigation documents and everything that they're withholding

24   is not privileged.

25      Since defendants have yet to produce a complete log

1   and, in fact, they just produced their first log after we filed

2   this motion to compel, they have not met their burden.

3          So in addition to the notes or drafts of additional

4   versions of the witness statements and any notes in the

5   auditors' hands, we ask that all internal investigation

6   documents related to the internal investigation be produced.

7          Again, Your Honor, I rest on a lot of the arguments

8   we made in our briefing, but I'm happy to answer any questions

9   that you have.

10         THE COURT:  Can you tell me what it is that you think

11  you don't have that you are entitled to that they are

12  withholding?

13         MS. DOUGLAS:  Yes, Your Honor.  The finance counsel

14  has represented to us that there are certain notes of these

15  interview witness statements, there are also previous drafts,

16  and we're unclear whether there's additional versions.  As we

17  stated in our briefing, I believe there are between five and

18  nine persons present during each of these interviews, and so

19  far we've received two versions of interview memos.

20         So in regard to the interview memos that we refer to

21  in our briefing as the Hogan reports, we would like any

22  previous notes as well as drafts or prior versions of those

23  memos.

24         In regard to the auditors, in going through the

25  auditors' production, it's clear that there are certain

11

1    interview documents that they are withholding based on

2    defendants' assertion of privilege, whether those are copies of

3    the memos they received from defendants, and it also appears

4    that there are additional notes that the auditors are

5    withholding.

6            Deloitte has told us specifically that there were

7    notes taken when they received information about these

8    interview witness statements, and we would like a copy of

9    those, and we believe PwC is in possession of similar notes and

10   interview witness memorandum.

11           THE COURT:  When you say there were five to nine

12   people present, are you referring to what you've attached as

13   Exhibits B, C, D, E, F?

14           MS. DOUGLAS:  Yes.  Yes, Your Honor.  Those are the

15   interview witness statements that were produced to us, and if

16   you look at the top, you know, you can see that --

17           THE COURT:  As to who's present.

18           MS. DOUGLAS:  Yes, Your Honor.

19           THE COURT:  Yes.  And are you simply assuming that

20   all of the people in the room were taking notes and, therefore,

21   you want any notes that they were taking, as opposed to

22   somebody was assigned the job of taking notes and other people

23   were simply listening or whatever it may be?  In other words,

24   why do you believe that simply because there were five to nine

25   people present, that they all took notes and that you would

1    have a right to those notes?

2          MS. DOUGLAS:  Oh, we're not assuming that all of them

3    took notes.  Defendants' counsel has represented to us in the

4    meet and confer process that there were notes that were taken

5    that have not been produced to us that they are withholding as

6    privileged, so we believe we are entitled to see those notes.

7          THE COURT:  And just so that I'm clear on what's

8    happened here, because despite all of the paper that's been

9    submitted, there are things that are unclear to me, do you

10   believe that if we simply pick an exhibit here, we look at

11   Exhibit F, for example, that that document which reflects there

12   are one, two, three, four, five, six people present at, at the

13   meeting, that whoever drafted what ended up being Exhibit F was

14   given these notes that you're now seeking that are being

15   withheld that were then used to write this final product?

16         MS. DOUGLAS:  Yes, Your Honor.

17         THE COURT:  And that you want those notes --

18         MS. DOUGLAS:  Yes, Your Honor.

19         THE COURT:  -- is that correct?

20         MS. DOUGLAS:  Yes, Your Honor, you are correct.

21         THE COURT:  And is the reason that you want those

22   notes primarily because you believe that perhaps you would find

23   inconsistencies between what was written down in the raw notes

24   and what was put into the final report because there may be

25   some discrepancies in the way it was, it was ultimately

13

1    summarized?

2              MS. DOUGLAS:  Yes, Your Honor, exactly.

3              THE COURT:  Okay.  Thank you.

4         Mr. Anhang?

5         MR. ANHANG:  Thank you, Your Honor.  Your Honor, I'm

6    going to be brief.  I think what I'd like to do is begin with

7    one point of the many points that we've already briefed for

8    your benefit, Your Honor, and then I'd like to return very

9    briefly to address some of the discrete points that plaintiffs'

10   counsel has just made.

11             Plaintiffs' position here conflicts with federal

12   law -- not federal common law, not federal case law --

13   controlling federal law of a statutory nature.  And we're

14   talking about 502(a), that is, the Federal Rule of Evidence

15   502(a).  502(a) is a Federal Rule of Evidence, not a Federal

16   Rule of Civil Procedure.

17             The federal courts have the power constitutionally to

18   modify rules of civil procedure but not rules with respect to

19   evidentiary matters, and thus, it was Congress that enacted the

20   2008 amendments to Federal Rule of Evidence 502(a).

21             That rule, reading now from explanatory notes that

22   became part of the legislative history record of the rule, says

23   as follows:  "This new rule has two major purposes:  It

24   resolves some longstanding disputes in the courts about the

25   effect of certain disclosures," and one of those areas involves

14

1    subject matter waiver.

2              It goes on to say, "The rule seeks to provide a

3    predictable, uniform set of standards under which parties can"

4    rely.  So this was in effect years before the interviews that

5    took place here.

6              And then the explanatory notes go on to be very

7    explicit about when subject matter waiver occurs.  Subject

8    matter waiver is limited.  It's limited to situations in which

9    a party intentionally puts protected information into the

10   litigation in a selective, misleading, and unfair manner.

11             We think our papers amply demonstrate that the

12   defendants in this case have absolutely not at any time, in any

13   way, shape, or form --

14             THE COURT:  Mr. Anhang, I don't mean to interrupt

15   you, but --

16             MR. ANHANG:  Please.

17             THE COURT:  -- I want to focus on what we're going to

18   do today, and one of the things we're going to do today is not

19   relitigate the issues that were litigated on May 4, and so I

20   understand your arguments --

21             MR. ANHANG:  Yes, Your Honor.

22             THE COURT:  -- but, but I would actually like to

23   focus on, on something else.

24             MR. ANHANG:  Yes, Your Honor.

25             THE COURT:  So I'm going to cut you off.

15

```
1              If we look at Exhibit 7, if you have that available
2       to you -- Exhibit 7 -- Exhibit F to the plaintiffs' motion to
3       compel, it is simply one of several of the interview reports
4       that you turned over.
5              Do you not have it available to you?
6              MR. ANHANG:  I have it.  Thank you.  Thank you, Your
7       Honor.
8              THE COURT:  If you turn to page 11 --
9              MR. ANHANG:  Yes, Your Honor.
10             THE COURT:  -- and you look at the bottom of that
11      page, you'll see some paragraphs at the bottom that are, that
12      are stricken through.
13             MR. ANHANG:  Yes, Your Honor.
14             THE COURT:  I understand those to be the information,
15      if you're looking at Exhibit F --
16             MR. ANHANG:  Yes, Your Honor.
17             MS. DOUGLAS:  If you can just hold one second, Your
18      Honor?
19             THE COURT:  Are we on the same place?
20             MR. ANHANG:  Yes, Your Honor.
21             THE COURT:  Okay.  I understand that to be the
22      language that was originally redacted when you first produced
23      those memos; is that correct?
24             MR. ANHANG:  Not -- no, Your Honor.
25             THE COURT:  And I don't mean to put you on -- I'm
```

16

1    sorry?

2          MR. ANHANG:  No -- well, let me take a step back and

3    just make clear that these notes, drafts, memos that are at

4    issue today were prepared by the Hogan Lovells firm, but my

5    understanding is that the only items that were redacted,

6    although very shortly thereafter, of course, everything was

7    produced in wholly unredacted form, as we can see, Your Honor,

8    but my understanding is that none of the actual communications

9    between the interviewees and the lawyers were redacted.

10         So to the extent that these are the communications or

11   reflect communications, they were not redacted.  Redactions

12   that were made initially were made in conformance with Your

13   Honor's directive that only annotations, notes, opinion work

14   product matter not used to brief the SEC were redacted.

15         THE COURT:  So let me make sure I'm understanding

16   what these markings are on, on here.  So there are three

17   paragraphs at the bottom that are stricken, right?

18         MR. ANHANG:  Yes, Your Honor.

19         THE COURT:  That does not reflect information that

20   was initially redacted by the defense and then provided in this

21   form?  I'm trying to understand what the -- maybe Mr. Roberts

22   can explain it.

23         MR. ROBERTS:  I think I can, Your Honor.  I believe

24   that the memos as in their final form had those sorts of lines

25   through it.  Those are not designed to show redactions.  Those

1    were lines that were, I think, in essence, I believe they were

2    in essence notes kind of as to what would be communicated to

3    the SEC or what wouldn't be communicated, this sort of thing.

4    I don't think it's reflective of some kind of -- it's not a

5    proxy for what was redacted.

6          And, of course, we'd be happy to provide the Court

7    with the full set of redacted memos (inaudible).

8          MR. ANHANG: I would just add that when the Hogan

9    attorneys were debriefing the SEC and had memos with them that

10    they used, memos that were never subsequently altered, so they

11    were the final versions of the memos, this material was in the

12    memos before those attorneys, and these memos were therefore

13    produced without that material redacted even when initially

14    produced to the plaintiffs.

15          And I think because the plaintiffs are, are in

16    somewhat a unique position here, Your Honor, we produced to

17    them redacted and unredacted versions of these, and I think

18    they've known all along what it was that we had redacted in the

19    first instance.

20          I don't believe it's, it's plaintiffs' claim today

21    that this material or material of this nature was redacted.

22    When the plaintiffs complain that certain material was redacted

23    in the first instance that shouldn't have been, I believe

24    plaintiffs are well aware this is not the material.

25          And I can tell you again, Your Honor, material with

18

1  respect to the communications that occurred between the

2  interviewees and the lawyers asking the questions were

3  produced.  The plaintiffs have that stuff.  They have what was

4  used as the basis to debrief the SEC on these matters.  They

5  have it all.  What they're seeking through the motion is stuff

6  that's other than these memos, other than the struck-through

7  language.

8          Now, I would only add, Your Honor, that these memos

9  were produced in conformance with your order.  There was a stay

10  imposed, as Your Honor is aware.  There was a great deal of

11  communication among the parties, as you can imagine, during

12  that entire period.

13          I'm confident the plaintiffs, if they thought that

14  these communications had been improperly redacted, they would

15  have come and questioned our redaction.  In fact, I'm confident

16  that if plaintiffs were so much as confused about why material

17  was struck through in this matter, they would have asked us.

18          Until today, I've had no inkling that there's been

19  any confusion as to why certain material is struck through, and

20  again, I think the reason is the plaintiffs are not confused.

21  They're not confused because they have the redacted and

22  unredacted versions.  They know what it was that we had

23  originally redacted, and I believe they know and understand

24  this material was not redacted even in the first instance.

25          But that being said, I appreciate Your Honor's

19

1   confusion on this matter, and I hope I clarified the situation.

2           THE COURT:  Well, thank you.

3           Let me address Ms. Douglas on this issue because I do

4   want to make sure that I am looking at the documents in the, in

5   the correct manner.  So let me have --

6           MR. ANHANG:  Your Honor?

7           THE COURT:  Yes.

8           MR. ANHANG:  May I then return to some of the points

9   I wanted to make?

10          THE COURT:  I'll give everyone an opportunity to be

11  heard.  Yes, absolutely.

12          MR. ANHANG:  Thank you, Your Honor.

13          THE COURT:  Thank you.

14          MS. DOUGLAS:  Your Honor, if I may?

15          THE COURT:  Yes, please.  Help me understand what was

16  initially redacted and what was then produced in an unredacted

17  form.

18          MS. DOUGLAS:  Your Honor, when these were produced to

19  us, that sentence with the strikethrough was indeed redacted.

20  That's why we cited it in our brief on page 16 as one of the

21  examples.

22          We actually have a section of our original motion to

23  compel where we're explaining to the Court how certain

24  documents were produced with redactions, and then we had to

25  have a meet and confer with defendants where we laid out that,

20

1   I believe, there are approximately 160 redactions in the

2   witness interviews that were produced to us, meaning on

3   average, there was a redaction for half the pages, and so we

4   met and conferred with defendants, and after meeting and

5   conferring with defendants, defendants then agreed to produce

6   them in an unredacted form --

7           THE COURT:  Well --

8           MS. DOUGLAS:  -- but by the time we received them,

9   that was still two weeks after they were actually due.

10          THE COURT:  I understand the timing issue --

11          MS. DOUGLAS:  Yes.

12          THE COURT:  -- but help me understand with regard to

13  Exhibit F, just as an example, where the redacted material was

14  and what was then unredacted.

15          MS. DOUGLAS:  Your Honor, my understanding was that

16  the strikethrough does represent the materials that were

17  originally redacted.

18          THE COURT:  So when I'm looking at page 11 --

19          MS. DOUGLAS:  Yes.

20          THE COURT:  -- and I'm looking at the bottom three

21  paragraphs --

22          MS. DOUGLAS:  Yes.

23          THE COURT:  -- that start with a Bates number and

24  then go, go down --

25          MS. DOUGLAS:  Yes.

21

1          THE COURT:  -- your understanding was that was

2   information that was withheld initially?

3          MS. DOUGLAS:  Yes, Your Honor.

4          THE COURT:  Okay.  Well, that is a factual dispute

5   that makes no sense, and one is correct and one is incorrect.

6          MR. ANHANG:  May I be heard on that particular

7   matter, Your Honor?

8          THE COURT:  Well --

9          MR. ANHANG:  I believe that first of all, we can make

10  available to Your Honor immediately a set of what was initially

11  produced to the plaintiffs pursuant to Your Honor's order, and

12  the set that was then produced, which, I would add, was wholly

13  unredacted despite the fact that there were proper redactions

14  made, there was an agreement among the parties that we detailed

15  in our papers that made clear that we were not waiving our

16  ability to stand up and argue that there's been no waiver and

17  there are no grounds to be compelled here to produce anything

18  beyond the scope of your original order, which we believe was

19  governed by Federal Rule of Evidence 502(a), among other

20  things, but we can provide the information to Your Honor in a

21  way that will be organized and, and crystal clear so Your Honor

22  with minimal difficulty can discern what was and wasn't

23  initially redacted.

24          THE COURT:  Do you have that information with you

25  right now?

22

1           MR. ANHANG:  I do not have with me today an entire

2    set of the unredacted versus redacted, in part, Your Honor,

3    because on the day that this material was due, the parties, of

4    course, had by then already determined that they would pursue

5    private mediation in an effort to settle this case, put in a

6    joint stipulation that referenced clearly devoting efforts to

7    the settlement initiative, and the case was then immediately

8    stayed --

9           THE COURT:  Yes, I understand, and I --

10           MR. ANHANG:  But my only -- I'm sorry.  Your Honor,

11    my only point is this:  that despite that fact, we proceeded to

12    produce promptly pursuant to an understanding of the parties

13    that had terms to it, we produced those materials.  The case

14    was stayed, however, Your Honor.  It was stayed.

15           So it is difficult to imagine under the particular

16    timeline here the parties agreeing to enter into private

17    mediation and then the imposition of the stay pursuant to a

18    joint issue stipulation.  As you had not anticipated, Your

19    Honor, perhaps the parties had not when we were before you on

20    May 4, but within one week, Your Honor, the parties had decided

21    they would do this and enter into a stipulation and have the

22    Court so order it and then spend the next 30 days devoted to an

23    effort to resolve this case, which we understand Your Honor and

24    Judge Ellis would like to have happen if possible on reasonable

25    terms.

23

1          So upon the expiration of that stay, Your Honor, we

2   immediately seek a meet and confer to resolve issues, but

3   understand, Your Honor, that by the minute that the stay is

4   lifted, the plaintiffs here have had wholly unredacted versions

5   of these memos now for weeks.

6          Our point about Rule of Evidence 502(a) is simple.

7   Whatever the --

8          THE COURT:  We're, we're getting far afield from

9   where I am --

10          MR. ANHANG:  But I don't think --

11          THE COURT:  -- which is this.

12          MR. ANHANG:  Yes, Your Honor.

13          THE COURT:  It is important for me to understand --

14          MR. ANHANG:  Yes, Your Honor.

15          THE COURT:  -- what was initially produced on May 11

16   in conformity with the May 4 order.

17          It is important for the Court to understand what was

18   redacted, and then ultimately, whether it was the product of

19   negotiation, whether it was the product of some other decision

20   to provide the unredacted versions, I understand that that was

21   done.

22          For the Court to see, however, what the thought

23   process was in redacting information initially is

24   significant --

25          MR. ANHANG:  Yes, Your Honor.

24

1          THE COURT:  -- in terms of how I resolve the present

2    motions before me.

3          MR. ANHANG:  Yes, Your Honor.

4          THE COURT:  So in order to determine whether we're

5    going to continue this hearing for a very brief period of time

6    or whether we're going to try and resolve it now under these

7    circumstances, let me ask you some very specific questions --

8          MR. ANHANG:  Yes, Your Honor.

9          THE COURT:  -- and then I'll decide what we're going

10   to do.

11         When you look at the paragraphs that I've now

12   identified several times in Exhibit F, and I can point to other

13   ones here that have --

14         MS. DOUGLAS:  Your Honor, I have notes on these now,

15   so --

16         MR. ANHANG:  May I just fold it over?  Yeah, this is

17   all they're doing, Your Honor.

18         MS. DOUGLAS:  Yes, that's exactly where my notes are.

19         MR. ANHANG:  I don't --

20         MS. DOUGLAS:  Is it your representation you do not

21   have copies of these?

22         MR. ANHANG:  I don't see any notes here, Your Honor,

23   but let me say this again:  Looking at the material on that

24   page --

25         MS. DOUGLAS:  This is fine, Your Honor.

25

```
 1              THE COURT:  Please, please stop, Mr. Anhang.
 2              MR. ANHANG:  This material was not redacted --
 3              THE COURT:  No, no, please, just give me a moment to
 4    think.
 5              MR. ANHANG:  Thank you, Your Honor.
 6              THE COURT:  I will tell you that it's very
 7    frustrating for me to be sitting here on the bench with all of
 8    the material that was submitted to me and to have lawyers in
 9    front of me who did not bring the pleadings with them.  Did you
10    really not bring a copy of the plaintiffs' pleading?
11              MR. ANHANG:  Your Honor, I have a collection of the
12    pleadings here.  I don't have this particular exhibit in front
13    of me, Your Honor, but I can tell you having seen it now
14    that --
15              THE COURT:  No.  You don't have Exhibit F.  You
16    didn't bring the exhibits to the plaintiffs' motion to compel
17    with you?
18              MR. ANHANG:  Your Honor, I don't --
19              THE COURT:  It's a yes-or-no question.
20              MR. ANHANG:  No, I don't have that particular item
21    before me, Your Honor, but having seen it, I can tell you that
22    communications --
23              THE COURT:  I'm sorry, let me interrupt you.
24              Mr. Roberts, do you have a copy of Exhibit F or any
25    of your colleagues?  It's a yes-or-no question.  It doesn't
```

26

1    require thinking.

2              MR. ANHANG:  Your Honor --

3              THE COURT:  Either you have it or you don't have it,

4    and if you don't have it, I would like you to tell the Court

5    that you did not bring it with you.

6              MR. ANHANG:  Your Honor, I do not have Exhibit F with

7    me.  I apologize to Your Honor, but I'm aware -- I'm well aware

8    of what's in there, and I'm well aware that anything that is

9    struck through, just because it's struck through was not

10   redacted in the first instance.  The strikethroughs appear in

11   the final version, Your Honor.  Every strikethrough is in the

12   final version.

13             THE COURT:  I understand your position, and that's

14   exactly what Mr. Roberts told me, that this, that this does not

15   reflect what was initially redacted.

16             MR. ANHANG:  Absolutely not.

17             THE COURT:  That is your position, correct?

18             MR. ANHANG:  Yes.  Yes, Your Honor.

19             THE COURT:  Okay.  So either the plaintiffs are

20   mistaken, and if so, there will be a consequence for them

21   because it will dramatically change the way I view what's

22   happened here, because the Court has to rely when I receive

23   this much information, unless I am misreading it and my clerk

24   is misreading it and I don't understand and I've heard from

25   Ms. Douglas that she is confident that these strikethroughs

27

1    represent the information that was originally taken out of

2    what -- it is an important part of their argument.

3              Am I incorrect, Ms. Douglas?

4              MS. DOUGLAS:  Yes, Your Honor.  And we actually cited

5    those paragraphs in our motion to compel.

6              THE COURT:  Okay.

7              MS. DOUGLAS:  It was in our opening brief, and

8    defendants never in their reply brief made any contention that,

9    you know, what we represented was originally redacted was not.

10             THE COURT:  Thank you.  So the issue is crystalized.

11   Somebody here is correct; somebody here is wrong; and I'm not

12   going to make a decision on what I do with this motion to

13   compel until I know the answer to that question.

14             I don't see why I cannot get those documents by the

15   end of today.  If you insist on providing them to me by Monday,

16   I will do so.  I'm going to reschedule this hearing after I

17   know the answer to that question.

18             Is there anything else that we need to address today?

19             MR. ANHANG:  Might I add one item to the record, Your

20   Honor?

21             THE COURT:  Yes.

22             MR. ANHANG:  At the end of the last hearing, Your

23   Honor advised the parties as follows:  "I'm encouraging counsel

24   to work collaboratively even in less-than-ideal circumstances

25   to move this litigation forward."

1          Now, that comment was made with regard to interview

2    memos and redactions.  The plaintiffs had concerns about

3    redactions.  We met and conferred with them collaboratively,

4    despite the fact the case was at that point stayed.  We

5    nevertheless continued to work collaboratively with them, and

6    we reached an agreement in short order that provided that we

7    turn these items over even during a stay of the litigation in

8    wholly unredacted form.

9          If I have been mistaken today about the nature of the

10   initial redactions, I certainly apologize to Your Honor, but I

11   want to emphasize that the parties did immediately what we

12   believe you directed us to do.  Having made certain redactions

13   we think we had a reasonable basis for making, we met and

14   collaboratively reached an agreement.

15         THE COURT:  Do I understand you to be backpedaling on

16   your colleague's statement that these items were, in fact, not

17   redacted initially?  Is this an argument you're making if it

18   turns out that you are, in fact, mistaken?

19         MR. ANHANG:  Your Honor, I'm, I'm not backpedaling at

20   all, but I will say this:  These materials to the extent that

21   there are strikethroughs and redactions and so forth were

22   prepared by the Hogan Lovells law firm, and the Hogan Lovells

23   law firm is represented here today, and I will readily admit,

24   Your Honor, that the Hogan Lovells firm, since this is work

25   product of theirs and of Orbital ATK's, have a better, more

1    detailed grasp of each individual line of these memos, and they

2    are here today, Your Honor, with respect to these matters.

3            And with respect to the precise nature of

4    strikethroughs and redactions, the significance of the

5    strikethroughs which were made by the Hogan Lovells firm, I

6    would submit, Your Honor, that it is Hogan Lovells who will

7    immediately working with us produce these materials to you, but

8    in any event are -- they are in a better position than me, Your

9    Honor, to address these matters at this precise moment.

10           THE COURT:  Well, I don't believe that I have any

11   choice but to continue this matter to try and resolve this

12   issue, and I'm inclined to have a very brief continuance until

13   Monday at 3:00, and between now and then, I need to know the

14   answer to what these documents mean given the lack of clarity

15   that I have here, and both sides are invited to provide the

16   redacted and unredacted versions to me, and plaintiffs may do

17   so so that they can show me exactly what they first received,

18   and then -- I don't think there's a dispute about the

19   unredacted versions.  That's what the, the attachments are.

20           So the question is what was originally redacted.

21           MR. ANHANG:  I would -- I'm sorry if I'm

22   interrupting, Your Honor.

23           THE COURT:  No, you're not.

24           MR. ANHANG:  In toto, Your Honor, the memos, the

25   collection of reports that were produced in unredacted form had

1    strikethroughs, a lot of strikethroughs, and struck-through

2    information included communications between the interviewees

3    and counsel, and we understood and understand that it was Your

4    Honor's intention that that material be produced.

5          So I can assure Your Honor that we were in no way

6    trying to deliberately flout Your Honor's order in what

7    occurred here.  At the end of the hearing on May 4, you

8    permitted me to speak at the end, and I said to you that it was

9    crystal clear to me what Your Honor intended, and I meant that,

10   and it was our understanding that we complied with Your Honor's

11   order and that the strikethroughs were material that was not

12   redacted in a wholesale fashion, as we think plaintiffs are

13   suggesting here today.

14         THE COURT:  Thank you.  You may sit down.

15         MR. ANHANG:  Thank you, Your Honor.

16         THE COURT:  Mr. Reilly, do you wish to be heard?

17         MR. REILLY:  Yes, Your Honor, thank you.  Just

18   briefly on that last point and then to raise a couple of the

19   other issues, because this may lend itself to finding a manner

20   in which to resolve some of the other disputes that are brewing

21   up in the case, we cited the paragraphs that you identified in

22   Exhibit F on page 11.  At least one of the sentences, because

23   it was critical, is one of the ones that was redacted and then

24   unredacted after we protested.

25         Whether it is all of the strikethroughs, I don't

1   know, but I do know that you zeroed in on a paragraph that had

2   been redacted, and that's cited in our brief, page 16, at the

3   top.  We identify Ken Sharp explained that it is clear that

4   we've got the wrong bid and need to explain to the auditors

5   why.  That statement is in the strikethrough section.  Whether

6   all the strikethrough was, was, was blocked out, I can't

7   represent that to the Court, and we will clarify that, but at

8   least that one sentence was.

9         Some of the other things that the parties have been

10  discussing -- and I realize that the Court's time both this

11  morning and throughout the rest of the period of litigation in

12  this case is limited, and I understand the Court may not be

13  sitting next Friday, maybe none of judges are here.  I think

14  there's a judicial conference; is that correct?

15        THE COURT:  There, there is a judicial conference.  I

16  will not be available on Friday.

17        MR. REILLY:  All right.  Because the defendants and

18  the plaintiffs have been discussing things, and we believe

19  there may be some additional motions that need to be filed

20  driven in part by the schedule we just agreed to, and if I may,

21  we have the class certification motion which will be filed

22  today.  We set up a schedule for that which will stay in place.

23  This is in document 172, which is the order you entered on our

24  behalf, and I appreciate your Court's quick attention to that.

25        We'll continue -- the parties can continue and we'll

1   complete the class certification briefing.  We neglected to

2   state in that schedule a hearing date, and we'll confer to make

3   sure all counsel are available and suggest dates to the Court,

4   but that's, that's the end of the agreements that we have, I am

5   sorry to say.

6          What we're running into is our first short-term

7   deadline is the plaintiffs' expert disclosures on July 6, and

8   on that -- by that date, we expect that we would be prepared to

9   file our expert reports based on what we had received thus far

10  in the case.

11         One of the problems we've encountered, though, was

12  after we agreed to that schedule, we had another substantial

13  production of documents from the defendants that we were

14  unaware of at the time we were negotiating the schedule that

15  you just entered, and we received about 700,000 pages of

16  documents, and I won't get into the Who struck John about,

17  well, you asked for it, well, yes, but you didn't tell us it

18  was going to be this many that may yet come to pass, but we

19  were surprised by that production.

20         We have also encountered problems with the

21  professionals, Deloitte and PwC, who are withholding documents

22  on claims of privileges made by the company for which we've

23  gotten no privilege log, and we're in the dark as to what those

24  are and when we'll get them, if we'll get them at all, and what

25  the nature and extent -- so we were going to be filing a motion

1    to compel and come back this afternoon if we could, and it may

2    not be advantageous to do that, about that withholding of the

3    documents with no explanation that's sufficient for the Court

4    to adjudicate and certainly for us to understand.

5          There was also, and I discussed this briefly with

6    Mr. Roberts, there was some merger due diligence documents in

7    PwC's possession.  We understand it may have been we've had our

8    communications primarily with PwC's lawyers about this.  The

9    company, while taking the position that PwC and Deloitte are

10   third parties to this case, are nonetheless directing the

11   assertions of privileges and withholding the documents because,

12   of course, they're the client.

13         So that's a logjam that's been created with respect

14   to the professionals' document productions.  We were going to

15   be making motions to compel on that today for a hearing next

16   Friday, because again, some of these documents we need for our

17   expert disclosures the following Friday, July 6.

18         There was a dispute back and forth, I think, based on

19   Mr. Roberts and Mr. Herman -- you remember my cocounsel,

20   Mr. Herman's discussions -- we may be working out yet another

21   production of documents that is long stalled about, that they

22   would search based on search terms and custodian names that we,

23   we had given them.  We may be getting that production as well

24   shortly, but there may also be a dispute about the final set of

25   search terms that may need the Court's adjudication.

1        This then is driving the, the problem, we're feeling

2   squeezed right up to the expert disclosure date, which is again

3   just two weeks from today.  That would be the surprise

4   production, the 700,000 pages of documents, and then the, the

5   trouble we're having scheduling these fact depositions.

6        We have, obviously, to complete the Rule 30(b)(6) of

7   the company.  We completed part of it in advance of the stay,

8   and we're going to complete the rest of it.

9        We have the former employees who were interviewed,

10  whose interview notes we need to have them authenticate,

11  explain.  They have, in a word, lawyered up, and we're now

12  having to schedule based on their lawyers' availability, their

13  availability, defense counsel's availability, and our own

14  scheduling issues.  That has created a problem particularly

15  since this is also the summertime.

16        It also appears to us that we may be seeking the

17  Court's leave to exceed the 15 depositions that were originally

18  set as our limit because of the number of now former employees

19  whose information would not be captured in a 30(b)(6) who we

20  would have to, you know, depose separately.

21        So we have the professionals, the former employees,

22  and, and then finishing up, company depositions.

23        The privilege logs, it continues to be a problem, but

24  we, we trust we will reach the end of that at some point, but

25  perhaps a due date for the completion of that by the company's

35

1    production would be helpful, also a key of who is who in the

2    logs, which I think we will be able to work out with counsel.

3    I spoke with Mr. Anhang about that today, and that doesn't seem

4    to be an issue that we will come to blows on, but we, we may

5    need to get those privilege logs, allow us sufficient time to

6    review those because there may be additional materials we would

7    need there.

8          We raised in the papers also the interrogatory

9    answers, which seem to be in conflict with the interview notes,

10   and it could have been at the time those interrogatory answers

11   were written, the lawyers either had not yet reviewed those

12   interview notes or had reviewed those interview notes and

13   assumed that information would not be relevant or produced

14   because it was privileged, but there's definitely a disconnect

15   between the answers and the facts on the ground as we now know

16   them.

17         THE COURT:  I understand your argument which you've

18   made in that regard, but I'm not quite sure what you think the

19   solution is.

20         MR. REILLY:  I, I don't have one yet, but I do think

21   it's something that we're going to have to crystalize because

22   the interrogatories were obviously prepared by, you know, with

23   outside counsel but then verified by outside counsel.  I'm not

24   sure somebody who did know the full story was the one who

25   verified those interrogatories, and I think supplemental

1    answers may be appropriate here, probably verified by a company

2    official rather than outside counsel.

3            But that's something we will, we will get to.  We'll

4    talk with them about it, but as you saw in their opposition,

5    they resisted the idea that there was any inconsistency, but

6    I'll leave that there.

7            The last one was the confidentiality designations

8    which you touched on, Your Honor, at the beginning of the

9    hearing.  We have been filing under seal, not because we think

10   it's privileged but because they designated it as privileged

11   and it's our responsibility under the confidentiality order to

12   do that.

13           There was a snafu, a technical snafu with one of our

14   filings, which we filed at 11:00 in the morning.  They

15   contacted us at 8:30 at night on a Friday and said it had to be

16   taken down immediately.  We were able to reach the clerk over

17   the weekend, and Saturday morning, that document was taken

18   down.

19           That they continue to complain about it, their relief

20   seems to be that either we're at fault or not, we deserve to be

21   punished or not.  As we've argued, lookit, you know, one of the

22   other solutions could be that those confidentiality

23   designations were improper, which appeared to us to be the

24   case, but in any event, we did solve that problem that

25   Mr. Anhang was sort of blaming us for this morning when trying

37

1    to explain to you what happened with their own filing.

2            So with these problems, I was going to suggest to the

3    Court rather than having us queue up Friday after Friday after

4    Friday at 5:00 to file motions and then Friday after Friday

5    after Friday to appear before you and give you incomplete

6    information, as it appears we have done this morning, that

7    perhaps some way to resolve this would be to set up a larger

8    discovery conference and try and work out some of these

9    remaining issues.

10           We would file papers in advance, of course, but then

11   schedule it at a time that the Court could hear us at a little

12   more length than just a regular Friday morning, where you've

13   got other demands on your time.  And it may be in that setting,

14   we would work through some issues, because I think once you

15   rule on issue A, it may affect the timing of a filing that's

16   with respect to another issue in the case.

17           But I think right now, one of the last things I'm

18   going to say, these extensions, the, the expert disclosure

19   dates are now getting all jammed up with the inability of, of

20   the fact discovery to get completed, and then we've got the

21   fact deposition and the date being August 8, which is

22   apparently the only date the, for certain witnesses that

23   they're even available.  So --

24           THE COURT:  Are you suggesting that rather than

25   resume this hearing on Monday, that we should consolidate

38

1    everything and hear them together later in the week?

2            MR. REILLY:  Well, later in the week is, is a hard

3    one for me, unfortunately, and I know the Court has its own

4    schedule.  I'm literally going to be out of touch for a week

5    starting on Wednesday.  Not that my -- I'm indispensable.  If

6    the Court was in the "kill the messenger" mood, I was the one

7    deemed expendable this morning, but I'm out from Wednesday

8    through Wednesday, through the July 4 holiday.

9            So -- but that's, that's a limitation on my time, but

10   it, it may be advantageous to the parties and the Court to get

11   this resolved even in my absence.

12           I would hope my participation may help because I've

13   faced a lot of these same problems before in other complicated

14   cases and may be able to suggest solutions that would be

15   acceptable to the parties and the Court, but again, I -- I'm

16   not the important one here.  So -- but I was aware that the

17   Court's own schedule may be a little tight next week.

18           THE COURT:  Well, I'm not available next Friday, so

19   if motions are being filed today, we should set a schedule now

20   that everybody can live with.

21           MR. REILLY:  Um-hum.

22           THE COURT:  It strikes me that we need some

23   resolution on these issues, all of the issues that you've

24   listed are now before the Court.  I'm not going to rule on them

25   now.  It's simply a matter of creating a fair process that

39

1   gives everyone a chance to be heard.

2            I could hear matters next Thursday in the afternoon

3   if we want to make sure that there's an opportunity for matters

4   that are filed today to be heard next week.  That would put

5   everyone in a difficult position.  The defendants, of course,

6   need an opportunity to respond, and 5 p.m. on Wednesday is the

7   usual time, but would either foreclose a reply brief, and it

8   would certainly put the Court in a more difficult position,

9   only being able to review the other side of the story on

10  Wednesday evening.

11           So I'm, I'm willing to hear from both sides in terms

12  of balancing, wanting everything to be heard on an expeditious

13  basis, and, you know, I'm not going to require an opposition to

14  be filed on Monday at noon if they're not getting the motions

15  until today at 5 p.m.

16           MR. REILLY:  I think if we resolve this -- today's

17  motion at the Monday hearing you suggested would probably be a

18  big step forward.  With respect to the other motions, if we

19  file them and -- I think even if we were to set the hearing for

20  the 6th, it would jam up everybody, including the Court,

21  because of the July 4 holiday, but the sensitivity --

22           THE COURT:  Well, next Friday is the 29th -- is the

23  28th.

24           MR. REILLY:  Understood.  Understood.

25           THE COURT:  Yeah.

40

1          MR. REILLY:  But if we, if we set it for the

2    following Friday, it would also be a foreshortened schedule, I

3    would think, because of the July 4 holidays.  If we did the

4    briefing -- motions, briefing, got everything ready and had a

5    conference with the Court the following week, it may -- that

6    may be sufficient time for everybody to get things together.

7          And the only relief we would immediately need would

8    be the expert disclosure date, which is otherwise July 6.

9          THE COURT:  Of course, the expert -- defendants'

10   expert designations are currently due on July 20.

11         MR. REILLY:  I think, again, this is like a puzzle,

12   where you move one piece and you have to move another piece.  I

13   think dates would, would necessarily slip throughout that whole

14   process.  Some dates that I usually don't have to wrestle with

15   in a -- at this stage of the case include the dates that we

16   have for the pretrial motions.  Those get jammed up a little

17   bit more.

18         And I don't know whether it would be, whether it

19   would be appropriate to reset those once we have gone through

20   some of the other dates, but I do see the expert dates changing

21   a little --

22         THE COURT:  Well, as you know, those are set by Judge

23   Ellis, and Judge Ellis has already signaled his desire to see

24   this resolved on a prompt basis.  The parties sought a delay in

25   this matter, and rightly so, to try and make a good faith

1    effort to resolve it, but I'm not sure how that will affect

2    Judge Ellis's thinking on whether he wants to hold to these

3    pretrial dates, because everything flows back from that.

4              MR. ANHANG:  I understand.

5              THE COURT:  The experts' reports need to be done,

6    discovery needs to be closed so that the discovery can tee this

7    up for summary judgment dispositive motions.

8              Okay.  Well, then let's keep things on for Monday at

9    three.  If there are motions to be filed, go ahead and file

10   them and notice them for whatever date you feel is appropriate.

11   The Court's not available on the 29th.  I will give the parties

12   the option of being heard late next week.  We can address that

13   on Monday if need be, I'll certainly hear from the defendants

14   if they want to weigh in, but this is really -- nothing's

15   before the Court.  This is just a matter of trying to think

16   through what the problems are going to be down the road.

17             I think you're going to have to file a motion for

18   relief from the expert disclosure date, and we'll, we'll

19   address it in due course, but I certainly understand the

20   complication of not having the issue before the Court resolved

21   and the related issues that are not yet briefed.

22             MR. REILLY:  Thank you, Your Honor.

23             THE COURT:  Thank you.

24             MR. ROBERTS:  Thank you, Your Honor.  I'll just

25   briefly address this scheduling issue and the concept of having

1   a, a summit, I guess, on these various issues that the

2   plaintiffs have, have raised.  Unfortunately, I myself am also

3   not available next Thursday, like Mr. Reilly, so I hope that we

4   will be able to find a mutually agreeable date that doesn't,

5   doesn't involve next Thursday, if that's all right with the

6   Court.

7           THE COURT:  Well, it's all right with the Court, and

8   I would suggest that you discuss the best way to deal with the

9   July 6 disclosure date.  I mean, I think I can foresee that

10  perhaps the defendants will be more flexible.  The problem, of

11  course, is the flexibility that the parties have may not be

12  shared by the district judge, and so, you know, even if you can

13  come up with an alternate set of dates for expert disclosures

14  that give them some relief and give you some relief, it still

15  has to be seen within the context of ultimately when Judge

16  Ellis wants to have the parties brief the matter when discovery

17  is closed.

18          MR. ROBERTS:  I'd certainly appreciate that.  I guess

19  one thing I would add here, Your Honor, though, that hadn't

20  been raised before concerning expert reports, etc., we do have

21  a rebuttal date, if you look at our schedule, that's quite late

22  actually.  It goes -- if I'm looking here correctly, I believe

23  it goes --

24          THE COURT:  The rebuttal date is August 3 --

25          MR. ROBERTS:  August 3, correct.

43

1            THE COURT:  -- with discovery, fact discovery

2      completion August 8, and then pretrial motions due on the 24th

3      at this point.

4            MR. ROBERTS:  So I don't know -- right.  So

5      obviously, I will discuss it with the other side, but I don't

6      know that there's really a significant prejudice as to keeping

7      the July 20 -- or, you know, these earlier dates, July 20 and

8      the earlier date for plaintiffs' expert disclosure in light of

9      the fact that there is an opportunity to still get in whatever

10     experts want to say on these topics and any new information

11     they might come up with in their rebuttal reports towards the

12     end, so in that sense, I'm not sure this is quite as pressing

13     an issue as perhaps might have been suggested.

14            I think the other thing I would say, Your Honor, just

15     briefly in terms of some of these issues, I, I take it you're

16     not interested in hearing the back-and-forth on who's done what

17     here, and we'll save that for the summit, but there hasn't been

18     any surprise here whatsoever.

19            The only surprise has been that on April 23, one week

20     before the end of document discovery, the plaintiffs came to us

21     and said:  We'd like 25 new custodians and 192 search terms.

22     That's two months almost after the start of discovery, weeks

23     and weeks after they had already received the key documents in

24     the case, and one week before the end of, of the period, so

25     that was the surprise.

44

1          Everything that's flowed from that has been us trying

2     to compromise and produce documents out of this last-minute

3     request.  That's, that's the bottom line of what happened here.

4     I think it's undisputed.

5          So I'm not sure that kind of there's a real prejudice

6     here that's going on with the plaintiffs in terms of their

7     expert reports due to these documents.  In any event, I will

8     certainly attempt to work that out with the other side, and, of

9     course, we will see you on Monday and be prepared to discuss

10     the exact nature of the redactions that were done.

11          THE COURT:  Thank you.

12          MR. ROBERTS:  Thank you, Your Honor.

13          THE COURT:  I appreciate that.

14          And I think I understand the source of the confusion

15     here, and I'm going to let this go until Thursday, but I think

16     based on looking at this and listening to what's been said,

17     that the strikethroughs are, as Mr. Roberts has articulated,

18     were already there and were produced in the original redacted

19     forms but that there were redactions within those

20     strikethroughs of a narrower subset, and I think that is, is

21     what's happened here.  If we're all confident of that, we can

22     go forward now.  If you think that there's further reflection

23     that we need to have, I'll wait until Monday, and we can

24     regroup.  That would also give the defendants the opportunity

25     to find all of the pleadings.

45

```
 1            MR. ANHANG:  Yes, Your Honor, thank you.  We'll do
 2    that.
 3            Do you wish -- do you wish us to speak on this
 4    matter, Your Honor?
 5            THE COURT:  Yes.
 6            MS. DOUGLAS:  Your Honor, I just have a question as
 7    to what, you know, the confusion is.  It was our understanding
 8    that whether or not it was the entire strikethrough or a
 9    portion of it, that the portion we cited in our brief was
10    indeed redacted and that when those documents were produced to
11    us, that should not have been redacted.
12            I do not have the unredacted version in front of me
13    to confirm whether it was those three paragraphs or not, so I
14    guess I'm just still a little confused --
15            THE COURT:  I understand.
16            MS. DOUGLAS:  -- as to what defendants are saying was
17    and wasn't redacted.
18            THE COURT:  Yes.
19            MS. DOUGLAS:  I just want to make sure we're all
20    clear before we agree to go forward.
21            THE COURT:  Very good.  Thank you.
22            MR. ANHANG:  Very quickly, Your Honor, there were
23    redactions made.  They were made in conformance with Your
24    Honor's order, absolutely.  The parties then collaboratively
25    during the stay of the litigation agreed on certain terms that
```

46

1   wholly unredacted versions of the memos would be produced and

2   were produced.  So I think there may be confusion as between

3   what was and wasn't redacted in the first instance.

4           THE COURT:  Then I think we all benefit, everyone

5   benefits from waiting until Monday at three to have that

6   confusion resolved so that when I take the bench, we can all be

7   on the same page with regard to what was originally redacted

8   and what was then presented in unredacted form.

9           MR. ANHANG:  Thank you, Your Honor.

10          THE COURT:  Thank you.

11          MS. DOUGLAS:  Would, would there be any benefit, Your

12  Honor, to discussing some of the other matters in the motion to

13  compel, you know, in regard to what the May 4 order produced or

14  what the May 4 order required was produced, whether it was

15  drafts, notes, other versions, etc., or would you prefer to

16  wait and do all of that together on Monday?

17          THE COURT:  We'll address everything on Monday.

18          MS. DOUGLAS:  Okay.

19          THE COURT:  Okay.  This matter will -- yes,

20  Mr. Anhang?

21          MR. ANHANG:  Logistically, should the parties provide

22  to you in camera in paper form the set of documents that had

23  the redactions so you can compare them to the ones that --

24          THE COURT:  Yes.

25          MR. ANHANG:  -- were filed under seal --

47

1          THE COURT:  Yes.

2          MR. ANHANG:  -- that you have in complete form?

3          THE COURT:  You can do that jointly, or you can each

4   submit your own version.  If there's still some dispute, I

5   would prefer that it be done jointly and in camera.  It can

6   simply be delivered to chambers.  If it's delivered to

7   chambers, the earlier Monday the better.  It doesn't have to be

8   9 a.m., but it would certainly be helpful if it was before

9   noon.

10          MR. ANHANG:  Thank you, Your Honor.

11          THE COURT:  Actually, I think I have -- I said three,

12   didn't I?  I have a very brief conference call at three.  Let's

13   plan on starting court at 3:30 --

14          MR. ANHANG:  Yes, Your Honor.

15          THE COURT:  -- to resume this matter.

16          Okay.  Thank you.  Court will be in recess.

17          MR. ANHANG:  Thank you.

18      (Recess from 11:01 a.m., until 3:30 p.m., June 25, 2018.)

19

20                   CERTIFICATE OF THE TRANSCRIBER

21      I certify that the foregoing is a correct transcript from

22   the official electronic sound recording of the proceedings in

23   the above-entitled matter.

24

25                                   /s/
                              _____
                                   Anneliese J. Thomson