UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| STEVEN KNURR, Individually and on Behalf of All Others Similarly Situated, <br><br>  Plaintiff, <br><br> vs. <br><br> ORBITAL ATK, INC., *et al.*, <br><br>  Defendants. | Civil Action No. 1:16-cv-01031-TSE-MSN <br><br> <u>CLASS ACTION</u> |

### REPLY IN SUPPORT OF PLAINTIFFS' <br> <u>MOTION TO COMPEL DELOITTE LLP WORKPAPERS</u>

Deloitte takes no substantive position with regard to this motion as it states it is withholding documents at the Company's direction. ECF No. 248, at 3-4. The Company has opposed this motion to compel Deloitte's workpapers, primarily arguing that, with regard to a subpoena issued on March 9, 2018, Plaintiffs failed to spend enough time meeting and conferring before filing the motion on June 25, 2018. The Company's Opposition wrongly claims that the parties did not sufficiently meet and confer in an attempt to distract from the Company's inability to provide any meaningful basis for ordering an independent auditor to withhold documents or to provide any just reason for the failure to produce a privilege log timely. The Company's 11th hour production of a wholly insufficient log neither mooted this motion nor provided support for the Company's claims of privilege over Deloitte's workpapers. For the reasons set forth below, and for those set forth in Plaintiffs' Motion to Compel [ECF No. 224], the Motion to Compel should be granted.

I.      ARGUMENT

   A.      **Plaintiffs Met and Conferred with Both Deloitte and the Company**

The Company has no colorable argument to withhold the Deloitte workpapers so they seek to defer this motion based on their claim that Plaintiffs failed to fully meet and confer in compliance with Local Rule 37(E).  However, █████████████████████████████████████████████████████████████████████████████████████████████████████ ████████, *see* Sealed Excerpt of Transcript of Motions Hearing dated June 25, 2018, at 80, it also falsely accuse Plaintiffs of failing to meet and confer in opposing this motion to compel.

Deloitte and the Company concede that Plaintiffs sufficiently conferred with Deloitte, which is withholding the documents, but the Company claims that Plaintiffs "never" met and conferred with the Company.  Setting aside whether it is proper for the Company to force Plaintiffs to meet and confer separately with both Deloitte and the Company over a single set of documents, Plaintiffs sufficiently met and conferred with the Company who delayed production of a privilege log and wrongfully withheld the documents.

The transcript of the June 22, 2018 hearing refutes the Company's false claim.  Prior to the start of the hearing, Plaintiffs' counsel informed Defendants' counsel that it would be filing the instant motion.  During the hearing, Plaintiffs reiterated this assertion and the Company never claimed surprise nor suggested the parties had not conferred.  Instead, they reached an agreed briefing schedule on the motion.  Specifically, counsel for Plaintiff stated:

> We have also encountered problems with the professionals, Deloitte and PwC, who are withholding documents on claims of privileges made by the company for which we've gotten no privilege log, and we're in the dark as to what those are and when we'll get them, if we'll get them at all, and what the nature and extent -- so we were going to be filing a motion to compel …

2

*See* Transcript of Motions Hearing dated June 22, 2018, at 32. Plaintiffs' counsel explained the urgency of filing the motion relating to the March 9th subpoena due to the upcoming expert deadlines, adding:

> So that's a logjam that's been created with respect to the professionals' document productions. We were going to be making motions to compel on that today for a hearing next Friday, because again, some of these documents we need for our expert disclosures the following Friday, July 6.

*Id.* at 33.

Never did defense counsel protest the filing of a motion—planned for that same day—or otherwise claim that the parties had failed to meet and confer. Nor did defense counsel state that the Company would be producing a privilege log soon to "moot" any such motion. Rather, due to the Court's unavailability for a hearing on June 29th and counsel's unavailability for a hearing on June 28th, Plaintiffs agreed to forego filing their motion on June 22nd as originally intended. Instead, the parties agreed to an alternative briefing schedule that would have the motion filed on Monday, June 25th, with a hearing for the motions on July 6th.

With an agreement to delay filing the motion until after the weekend, the Company apparently scrambled to cobble together a belated privilege log. The Company served it (through counsel for Deloitte) on June 25th—the very next business day, with only hours remaining for Plaintiffs to file their motion and be heard on July 6th under the agreed schedule. Notably, at no point between the hearing and the production of the privilege log did the Company contact Plaintiffs to state they had failed to meet their meet and confer obligations.

Not only does the Company's negotiation of a briefing schedule for this motion and failure to object at the June 22nd hearing provide verifiable and undisputable evidence that their claims are false, but the record is clear that Plaintiffs met and conferred with the Company countless times over its tardy privilege log. Emails show that Plaintiffs met and conferred with

3

the Company, not just regarding the Company's past due privilege log, but specifically regarding the production of a log relating to the documents withheld by its auditors. A week before this motion to compel was filed, defense counsel wrote to Plaintiffs' counsel stating "to the extent that Plaintiffs insist that the privilege log of a third party like Deloitte take a certain form, Defendants' counsel do not exercise control over them in that regard and cannot impose Plaintiffs' will on them." Ex. 1.[1] That email was part of the Company giving Plaintiffs the run-around for weeks, requiring Plaintiffs to confer with Deloitte over the documents withheld, only to be told by Deloitte it was the Company's privilege for which the Company would provide a log, and then only to be told by the Company that they could not control the log that Deloitte would have to provide. *Id.*[2] After running Plaintiffs in circles for weeks over the issue, the Company's claim that the June 25th motion was prematurely filed over the March 9th subpoena is disingenuous.

    Plaintiffs have engaged in an exhausting and belabored meet and confer process with both the Company and Deloitte, including on the issues raised in this motion. Both the Company's silence at and after the hearing, and the emails referring to multiple meet and confers refute its false claims to the contrary. The Court should decide this motion on their merits and allow Plaintiffs to move forward with its pursuit of discovery in this matter.

---

[1] Email from G. Anhang to J. Herman dated June 18, 2018 (evidencing Plaintiffs demand for privilege log for the Company's assertions of privilege over Deloitte's documents)

[2] Every meet and confer regarding Defendants' failure to timely produce a privilege log necessarily encompassed the auditor documents, and it is disingenuous for the Defendants to attempt to divorce the two. *See*, *e.g.*, Ex. 2 (June 4, 2018 email from defense counsel stating they were preparing privilege log and referencing logs for documents withheld by third parties at company direction); Ex. 3 (June 11, 2018 email chain requesting log of documents withheld by Deloitte for which Deloitte's counsel stated were withheld at direction of the Company); Ex. 4 (June 15, 2018 email from G. Anhang to Counsel for Plaintiffs referring to Plaintiffs' demand for privilege logs for the Company's assertions of privilege log over third party documents on May 10th meet and confer call).

## B. The Company's 11th Hour Production of a Privilege Log Did Not "Moot" this Motion And The Documents Must Be Produced

The Company's next attempt to avoid the merits and delay resolution of this dispute is to claim that their last minute production of a privilege log "moots" this motion. It does not. The Company provided a log that includes entries for 41 workpapers and a note referencing 12 additional documents, which appear to be notes relating to the interview memoranda over which the Court has already determined no privilege applies. In any event, the untimely production of a log referring to 53 withheld documents only continues a pattern of conduct by the Company of delaying and withholding information in the discovery process, detailed at length in Plaintiffs' recent motion for an extension of the upcoming deadlines in this action. *See* [ECF No. 234, at 2-9]. That the Company waited weeks to produce a log for 53 documents, producing it just moments before Plaintiffs' motion was due under the agreed schedule, is difficult to dismiss as coincidence.[3] In any event, the belated log did not "moot" the need for this motion.

Plaintiffs moved forward with filing the motion because, contrary to the Company's assertions, the extremely late June 25 Log[4] does not impact Plaintiffs' arguments that (1) the Company failed to meet its burden of establishing privilege by failing to produce a timely privilege log in response to the March 9th subpoena, and (2) the Company cannot assert privilege over its auditors' workpapers because the audits and internal investigation were done for business reasons. Each of those arguments is further addressed below.

---

[3] It is worth noting that until receipt of the privileged log, Plaintiffs had no idea how many documents were being withheld for privilege.

[4] [ECF No. 249-1].

### 1.   The Company Failed to Meet Its Burden of Establishing Privilege By Failing to Produce a Timely Privilege Log

A privilege log must be produced to the requesting party "within a reasonable time." *See*, *e.g.*, *Horace Mann Ins. Co. v. Mationwide Mut. Ins. Co.*, 240 F.R.D. 44, 47-8 (D. Conn. 2007) (holding party and third party objecting to subpoena waived privilege by failing to produce privilege log approximately four months from issuance of subpoena).

Here, the subpoena to Deloitte was issued on March 9th and the Company did not prepare a privilege log until June 25th, when it knew this motion was imminent. The belated log included entries for 41 workpapers and a note referencing 12 additional documents. The Company makes no effort to explain why it required three and a half months from the issuance of the subpoena and seven weeks from Deloitte's document production to produce a privilege log for 53 documents.[5]  In the context of a schedule that provided four months to complete all discovery, it is not reasonable to produce a privilege log for a mere 53 documents roughly one month before the discovery deadline.[6] The Company's decision to wait to produce the log until just days before expert disclosures are due and after depositions were noticed prejudices Plaintiffs' ability to challenge the privilege assertions, obtain a ruling, and use any subsequently produced documents in depositions or with its experts. The Company's unexplained delay falls short of meeting its burden of protecting its privilege.

---

[5] Deloitte informed Plaintiffs that it was instructed by the Company not to produce documents in response to the subpoena until the Company had an opportunity to review them. Deloitte began producing documents on May 4, 2018. Presumably, the Company's review of Deloitte's workpapers was concluded prior to that date. The Company did not produce its privilege log for the 53 Deloitte workpapers over which it is asserting privilege until June 25, 2018.

[6] The delayed production is particularly inexcusable because the case was stayed 30 days which gave the Company more time to complete the privilege log.

Instead of addressing the timeliness of its privilege log, the Company presents a classic straw man argument. The issue here is not whether *Deloitte* waived the Company's privilege by failing to provide a privilege log. The issue is whether *the Company* waived the Company's privilege by failing to provide a privilege log timely. The following facts are not disputed: (1) the Company was aware of the subpoena when it was served on March 9, 2018; (2) the Company instructed Deloitte not to produce any workpapers in response to the subpoena until it had an opportunity to review them; (3) the Company was given the opportunity to review Deloitte's workpapers prior to production; (4) Deloitte began producing its workpapers on May 4, 2018; and (5) the Company did not provide a privilege log for its assertions of privilege over Deloitte's workpapers until June 25, 2018.

Similarly, the Company's reliance on *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264 (E.D. Va. 2004), is misplaced. In *Rambus*, it was undisputed that the party challenging the log "did not seek to meet and confer with counsel for Rambus respecting the perceived inadequacy of the privilege log before Infineon filed its motion to compel." *Id.* at 274. Here, as shown above, any assertion that Plaintiffs have not met and conferred with the Company is false. The only similarity between *Rambus* and this action is the Company's provision of a privilege log that "on its face, simply does not comport with Fed.R.Civ.P. 26(b)(5)." *Id*.

Because the Company did not provide a privilege log for its assertions of privilege over Deloitte's workpapers within a reasonable time, Deloitte should be compelled to immediately produce the 53 workpapers withheld based on the Company's privilege assertions.

### 2. Deloitte's Workpapers Are Not Privileged Because They Were Created for a Business Purpose

The Company devotes its brief to arguing that it did not waive any purported privilege, ignoring the fact that Deloitte's workpapers were not privileged as an initial matter. In order for

7

the attorney-client privilege to apply to an accountant's workpapers, the accounting services must be performed primarily to facilitate a lawyer's provision of legal advice.[7] *See United States v. Borenstein*, 977 F.2d 112, 116-17 (4th Cir. 1992) (reversing and remanding determination that documents were privileged and stating "accounting services are ordinarily not privileged" unless retained to assist lawyer in providing legal advice). And, in order for work product protection to apply, "the district court must decide initially whether the accountant's workpapers were prepared in anticipation of litigation and not in the ordinary course of business." *Id.* (describing standard for work product determination as "easily defined").

Here, Deloitte's workpapers were prepared for a normal business purpose, not in anticipation of litigation or to assist a lawyer in providing legal advice. Deloitte was hired by the Company to be its independent registered accountant. And Deloitte's work in this regard, including the creation of workpapers to support its independent audit opinions relating to the Company's financial statements and restatements, falls squarely within the provision of normal audit services. Indeed, Deloitte had performed several annual audits before any lawyers were hired to do the internal investigation. Moreover, the lawyers performing the internal investigation did not hire Deloitte to assist in providing legal advice with regard to the investigation. They hired a different forensic accounting firm to do so, Alvarez and Marsal. Under these circumstances, there can be no credible claim that Deloitte's workpapers were prepared primarily in anticipation of litigation or to facilitate a lawyer's provision of legal advice. And the Company has failed to make any showing that supports such a claim.

---

[7] Courts in the Fourth Circuit "have repeatedly held that a party must meet an exceedingly high burden for a privilege to attach to communications with non-lawyers." *See Sher v. SAF Fin. Inc.*, No. RDB 10-1895, 2011 U.S. Dist. LEXIS, at *8 (D. Md. Apr. 19, 2011) (holding that attorney client privilege does not attach to communications between financial advisor and defendant where financial advisor's communications were not necessary or highly useful to the consultation between defendant and its counsel).

Addressing a very similar question in this litigation, this Court looked to *Royal Ahold*[8] in finding that witness interviews relating to the internal investigation conducted by outside counsel ███████████████████████████████████████████████████████ *See* Sealed Excerpt of Transcript of Motions Hearing dated June 25, 2018, at 78. ████ ███████████████████████████████████████████████████████ ████████████████████████████████ *Id.* at 77.

In *Royal Ahold*, the court makes clear that the threshold question is whether the documents "were created 'because' of the prospect of litigation or whether there was another 'driving force' behind the preparation of the requested documents." *In re Royal Ahold*, 230 F.R.D. at 435. Because the principal reason for the interviews was "to satisfy the requirement of Royal Ahold's outside accountants," the company on that case did "not [meet] its burden of demonstrating that the work product protection applies." *Id.* at 435-36. Like the documents in *Royal Ahold*, Deloitte's workpapers were not created "because of" the prospect of litigation. They were created for the normal business purpose of preparing and supporting Deloitte's independent audit opinions. Even the investigation was done to satisfy the Company's auditors and therefore not done "because of" litigation, as the Court has previously found. Thus, Deloitte's workpapers are not privileged.

In support of its arguments, the Company cites to cases that are distinguishable. *In re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982), "[does] not confront the applicability of the work product privilege" or the attorney-client privilege. *Id.* at 812. *Westernbank Puerto Rico v. Kachkar*, No. CIV 07-1606 ADC/BJM, 2009 U.S. Dist. LEXIS 16356 (D.P.R. Feb. 9, 2009), involved an accounting firm that was specifically hired to assist outside lawyers "in analyzing

---

[8] *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 230 F.R.D. 433 (D. Md. 2005).

9

facts relevant to Westernbank's claims and defenses in its litigation against Inyx." *Id.* at *18. And E.*I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 269 F.R.D. 600 (E.D. Va. 2010), addressed whether the affirmative use of once protected information by publication and dissemination in a press release waives the protection.

Because Deloitte's workpapers were prepared for a normal business purpose, not in anticipation of litigation or to assist a lawyer in providing legal advice, they are not privileged and must be produced.

### C. The Belated Log Provided By The Company Is Facially Deficient.[9]

Resolution of this motion should not be delayed for review of the June 25 Log because it is clearly deficient. Rule 26(b)(5) of the Federal Rules of Civil Procedure provides that when a party withholds discoverable information by claiming it is privileged it must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." And courts in this district have noted that "[p]arties seeking to challenge a claim of privilege have sparse information at their disposal. Because they do not actually have access to the privileged documents, they must rely on the opposing party's description of them in the privilege log. 'Accordingly, the descriptions in the log must satisfy the claiming party's burden.'" *ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 252 (E.D. Va. 2012) (holding privilege waived where log did not contain author or recipient information) (quoting *Rambus*, 220 F.R.D. at 272). Because the privilege log for the 53 Deloitte workpapers is inadequate to meet the Company's burden of establishing privilege, the workpapers must be produced.

---

[9] While not raised in Plaintiffs' motion, Plaintiffs address the sufficiency of the June 25 Log prepared by the Company in this Reply in an effort to streamline the consideration of this issue by the Court.

### 1. The June 25 Log fails to establish the applicability of the work product doctrine for any document

The privilege log fails to show that the auditor workpapers were prepared primarily in anticipation of litigation. "The party claiming the work-product privilege bears the burden of showing that the documents were created in anticipation of litigation. . . ." *Williams v. Big Picture Loans LLC*, No. 3:18-mc-1, 2018 U.S. Dist. LEXIS 43775, at *29 (E.D. Va. Mar. 16, 2018). Specifically, the party claiming the work product privilege must demonstrate, among other things, that the work product "'would not have been prepared in substantially similar form but for the prospect of [] litigation.'" *Id.* (quoting *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)). To satisfy its burden, the party claiming the work product privilege "'must come forward with a specific demonstration of facts' in that regard, either through affidavits or a privilege log." *Williams*, 2018 U.S. Dist. LEXIS 43775, at *29 (quoting *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 748 (E.D. Va. 2007)).

Here, the Company asserts that 51 of the 53 workpapers on the June 25 Log are protected from production by the work product doctrine. But none of those 51 entries even claim, much less demonstrate, that the document was created in anticipation of litigation.[10] The log fails to identify the author for 34 of the entries, indicating that the workpapers were most likely prepared by Deloitte, not a Company lawyer or even Company employee.[11] And none of the 10 entries that identify a Company employee/non-lawyer as the author include an assertion that the

---

[10] *See* June 25 Log, Entry Nos. 1-2, 4-32, 34-41 and note on pg. 4. As mentioned above, the Company did not provide entries on the log for the 12 documents consisting of notes related to the investigation interviews.

[11] *See* June 25 Log, Entry Nos. Nos. 1-2, 4-6, 9-14, 16-18, 22, 25, 31-32, 37-39, 41 and note on pg. 4.

document was created at the direction of an attorney for the purposes of providing legal advice.[12] Further, all of the remaining eight entries that appear to identify an attorney as the author bear a generic and conclusory description, providing no basis upon which to prove, or challenge, the privilege.[13] For these reasons, none of the 53 entries on the June 25 Log provide facts sufficient to demonstrate that the document at issue was created in anticipation of litigation. In short, these documents are auditor workpapers, not privileged work product.

### 2. The June 25 Log fails to establish the applicability of the attorney-client privilege for any document

Similarly, the Company has failed to demonstrate that any of the 53 workpapers on the June 25 Log are protected by the attorney-client privilege. A party asserting protection under the attorney-client privilege bears the burden of demonstrating, among other things, the following:

> (2) the person to whom the communication was made ... act[ed] as a lawyer [in connection with the communication]; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding ...; (4) the privilege has been (a) claimed and (b) not waived by the client.

*NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 501-02 (4th Cir. 2011).

Here, the Company asserts that 28 workpapers on the June 25 Log are protected from production by the attorney-client privilege.[14] But the privilege log prepared by the Company and provided to Plaintiffs by Deloitte is wholly insufficient to allow Plaintiffs to assess the Company's claims.

---

[12] *See* June 25 Log, Entry Nos. 7-8, 15, 21, 23, 29-30, 34-35, 40.

[13] *See* June 25 Log, Entry Nos. 19-20, 24, 26-28, 33, 36.

[14] *See* June 25 Log, Entry Nos. 1-7, 9-11, 14-16, 33, 36-37 and note on pg. 4.

Of the 28 entries for which the Company asserts the attorney-client privilege, 24 do not include any author or recipient information at all; again, indicative of workpapers prepared by a Deloitte auditor in the normal course of business.[15]  An additional entry does not appear to include a lawyer in either the author or the recipient field.[16]  A privilege log entry that fails to identify an attorney in either the author or the recipient field cannot support a claim that the document is a communication protected by the attorney-client privilege.  *See ePlus*, 280 F.R.D. at 252 (finding proponent did not properly assert attorney-client privilege where no attorney was identified in recipient or author field); *Smithkline Beechman Corp. v. Apotex Corp.*, 193 F.R.D. 530, 539 (N.D. Ill. 2000) (documents on privilege log which fail to identify an author or recipient, or both, must be produced); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 143 F.R.D. 611, 619 (E.D.N.C. 1992) (holding entries containing no date, no author, and no recipient fails to establish privilege).

The remaining three entries that list an attorney in either the author or recipient field are described as follows:

- Document conveying work product and advice of outside counsel regarding internal investigation conducted by Hogan Lovells US LLP and Alvarez & Marsal LLC;[17]

- Internal memorandum from in-house counsel providing legal analysis regarding the Lake City contract;[18] and

- Correspondence containing work product and advice from outside counsel to in-house counsel regarding the Lake City Contract.[19]

---

[15] *See* June 25 Log, Entry Nos. 1-6, 9-11, 14, 16, 37 and note on pg. 4.

[16] *See* June 25 Log, Entry Nos. 15.

[17] *See* June 25 Log, Entry No. 7.

[18] *See* June 25 Log, Entry No. 33.

The Company's boilerplate and conclusory assertions of privilege are not sufficient to satisfy its burden of demonstrating that the documents are properly protected by the attorney-client privilege. For example, the Company's descriptions do not demonstrate that the communications were made "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *Interbak Foods*, 637 F.3d at 501-02.

Because the Company has failed to carry its burden of presenting information sufficient to demonstrate that any document is properly protected from production by the work product doctrine or the attorney-client privilege, the Court should order the production of all workpapers identified on the June 25 Log in unredacted form.

## II.     CONCLUSION

For the reasons set forth above and in Plaintiffs' Motion to Compel, Plaintiffs respectfully request that the Court issue an order compelling the Company and Deloitte to produce in unredacted form the 53 Deloitte workpapers responsive to Plaintiffs' document requests to Deloitte that have been withheld from production or produced in a redacted form based on an assertion of privilege by the Company.


DATED:  July 3, 2018                                    THE OFFICE OF CRAIG C. REILLY
                                                        CRAIG C. REILLY, VSB #20942


                                                        */s/ Craig C. Reilly*
                                                        CRAIG C. REILLY

---

[19] *See* June 25 Log, Entry No. 36.

14

111 Oronoco Street
Alexandria, VA 22314
Telephone: 703/549-5354
703/549-2604 (fax)
craig.reilly@ccreillylaw.com

*Liaison Counsel*

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ
FRANK RICHTER
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 312/674-4674
312/674-4676 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN C. HERMAN
PETER M. JONES
Monarch Tower, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA 30326
Telephone: 404/504-6500
404/504-6501 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
MAUREEN E. MUELLER
KATHLEEN B. DOUGLAS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

*Lead Counsel for Plaintiff*

                                            VANOVERBEKE MICHAUD &
                                               TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)

*Additional Counsel for Plaintiff Wayne County Employees' Retirement System*


## **CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2018, I filed the foregoing pleading or paper through the Court's CM/ECF system, which sent a notice of electronic filing to all registered users and the following counsel for Deloitte, LLP:

>Michael D. Warden, Esq.
>Sidley Austin LLP
>1501 K Street, N.W.
>Suite 600
>Washington, D.C. 20005
>mwarden@sidely.com

>*/s/ Craig C. Reilly*
>Craig C. Reilly, Esq.
>VSB # 20942
>111 Oronoco Street
>Alexandria, Virginia 22314
>TEL (703) 549-5354
>FAX (703) 549-5355
>EMAIL craig.reilly@ccreillylaw.com
>
>*Liaison Counsel for Lead Plaintiff*