1

```
                    UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                        ALEXANDRIA DIVISION

STEVEN KNURR, Individually    .    Civil Action No. 1:16cv1031
and On Behalf of All Others   .
Similarly Situated; and       .
CONSTRUCTION LABORERS PENSION  .
TRUST OF GREATER ST. LOUIS,   .
                              .
              Plaintiffs,     .
                              .
    vs.                       .    Alexandria, Virginia
                              .    July 6, 2018
ORBITAL ATK, INC., et al.,    .    10:54 a.m.
                              .
              Defendants.     .
                              .
.  .  .  .  .  .  .  .  .  .  .
```

```
                  TRANSCRIPT OF MOTIONS HEARING
            BEFORE THE HONORABLE MICHAEL S. NACHMANOFF
                 UNITED STATES MAGISTRATE JUDGE
```

APPEARANCES:

FOR THE PLAINTIFFS:             JOHN C. HERMAN, ESQ.
                                PETER M. JONES, ESQ.
                                Robbins Geller Rudman & Dowd LLP
                                3424 Peachtree Road, N.E.
                                Suite 1650
                                Atlanta, GA 30326
                                  and
                                CRAIG C. REILLY, ESQ.
                                Law Office of Craig C. Reilly
                                111 Oronoco Street
                                Alexandria, VA 22314

(APPEARANCES CONT'D. ON PAGE 2)

                         (Pages 1 - 59)

(Proceedings recorded by electronic sound recording, transcript
 produced by computerized transcription.)

```

```
 1   APPEARANCES:  (Cont'd.)

 2   FOR DEFENDANTS ORBITAL        LYLE ROBERTS, ESQ.
        ATK, INC.; DAVID W.        Shearman & Sterling
 3      THOMPSON; GARRETT E.       401 Ninth Street, N.W., Suite 800
        PIERCE; BLAKE E. LARSON;   Washington, D.C. 20004
 4      AND HOLLIS M. THOMPSON:       and
                                   PAULA HOWELL ANDERSON, ESQ.
 5                                 Shearman & Sterling
                                   599 Lexington Avenue
 6                                 New York, NY 10022

 7

 8   FOR DELOITTE & TOUCHE, LLP:   MICHAEL D. WARDEN, ESQ.
                                   Sidley Austin Brown & Wood LLP
 9                                 1501 K Street, N.W.
                                   Washington, D.C. 20005
10

11   FOR PRICEWATERHOUSECOOPERS:   JONATHAN C. SU, ESQ.
                                   STEPHEN P. BARRY, ESQ.
12                                 Latham & Watkins LLP
                                   555 Eleventh Street, N.W.
13                                 Suite 1000
                                   Washington, D.C. 20004-1304

14

15   TRANSCRIBER:                  ANNELIESE J. THOMSON, RDR, CRR
                                   U.S. District Court, Fifth Floor
16                                 401 Courthouse Square
                                   Alexandria, VA 22314
17                                 (703)299-8595

18

19

20

21

22

23

24

25
```

3

1              P R O C E E D I N G S

2           THE CLERK:  Steven Knurr, et al. v. Orbital ATK,

3    Inc., et al., Case No. 16cv1031.  Counsel, please note your

4    appearances for the record.

5           MR. REILLY:  Good morning, Your Honor.  For the

6    plaintiff, Craig Reilly, John Herman, and Peter Jones, and

7    Mr. Jones and Mr. Herman will argue particular aspects of the

8    motions this morning to you.

9           THE COURT:  Good morning.

10           MR. JONES:  Thank you, Your Honor.

11           MR. WARDEN:  Good morning.  Mike Warden from Sidley

12    Austin LLP on behalf of nonparty Deloitte & Touche.  Good to

13    see you, Your Honor.

14           THE COURT:  Good morning, Mr. Warden.  Good to see

15    you.

16           MR. SU:  Good morning, Your Honor.  Jonathan Su and

17    Stephen Barry from Latham & Watkins on behalf of nonparty

18    PricewaterhouseCoopers LLP.

19           THE COURT:  Thank you.  Good morning.

20           MR. ROBERTS:  Good morning, Your Honor.  Lyle Roberts

21    and Paula Anderson on behalf of the defendants other than

22    defendant Mark DeYoung.

23           THE COURT:  Good morning, Mr. Roberts.  Good morning.

24           This matter comes before the Court on at least three

25    motions, perhaps more.  We'll go through them each.  Have the

1    parties had an opportunity to work everything out before we got

2    to this point on the docket?

3              MR. HERMAN:  Unfortunately not, Your Honor.

4              THE COURT:  I'm shocked.  Well, why don't we address

5    them one at a time.  I think the issue regarding timing we'll

6    leave to the last, when we resolve the substantive motions.

7              The first motion is plaintiffs' motion to compel the

8    Deloitte workpapers.  I've read the materials.  I think I

9    understand everyone's position.  I'll hear briefly from the

10   plaintiff first if there's anything you feel needs to be added.

11             MR. JONES:  Good morning, Your Honor.  I had planned

12   to discuss the Deloitte and PwC workpapers together, but I'm

13   happy to address them individually.  They raise very similar

14   issues but --

15             THE COURT:  You can.  That's fine.

16             MR. JONES:  I would like to clarify before I dive in

17   that what these motions are seeking are the audit, restatement,

18   and investigative workpapers of the independent auditors here,

19   PwC and Deloitte.  These are auditor documents for which the

20   auditors raise no objection to their production.  They agree

21   they're responsive, they agree they're relevant, and they make

22   no claims as to privilege at least as to the documents at issue

23   here.  The only reason these documents have not been produced

24   to plaintiffs has been the company's instruction to the

25   auditors not to do so.

5

1          Your Honor has received a number of briefs on this

2     issue.  I believe they fairly lay out our points.  Plaintiffs

3     will rest on those arguments largely, but I would like to

4     highlight three things for the, for the Court's consideration.

5          One, the subpoenas here were served on March 9, days

6     after discovery in this case opened.  We are now at July 6, the

7     day that plaintiffs' expert disclosures are due, and with the

8     depositions of the independent auditors coming up on July 18

9     and July 19.

10          As of today, as of the moment I walked in this

11    courtroom, at the company's instruction, the auditors are still

12    withholding thousands of workpapers.

13          THE COURT:  Well, let me separate those out.

14          MR. JONES:  Sure.

15          THE COURT:  I said you could argue them together

16    but --

17          MR. JONES:  Fair enough.

18          THE COURT:  -- I want to make sure I understand.

19          With regard to Deloitte, I understand that Deloitte

20    initially provided a privilege log with one document on it, and

21    that's not in dispute.  You're not seeking it, and they've

22    withheld it, correct?

23          MR. JONES:  That's correct, Your Honor.

24          THE COURT:  And that subsequently on June 25, I

25    think, a second privilege log was provided with 53 documents on

6

1   it; is that correct?

2          MR. JONES:  Correct.  There were 41 entries and then

3   a footnote that referenced 12 documents that I believe Your

4   Honor actually addressed in the motion for compliance heard

5   last week.

6          THE COURT:  So with regard to the Deloitte motion,

7   are we talking solely about these 53 documents?

8          MR. JONES:  It's been narrowed slightly, Your Honor.

9   In response to the Court's order for compliance with its

10  March -- or May 4 order, Deloitte has produced, I believe, the

11  12 documents referenced in the footnote, and 2 additional

12  documents have been removed, and we've been provided with a

13  revised log that now has 39 entries on it.

14         THE COURT:  So with regard to Deloitte, the question

15  is whether or not some or all of those 39 documents should be

16  produced; is that correct?

17         MR. JONES:  That's correct, Your Honor, yes.

18         THE COURT:  Okay.  Now, with regard to PwC, there

19  was, I think, an initial privilege log provided by PwC of five

20  documents, and those are not at issue, correct?

21         MR. JONES:  That's correct, Your Honor.

22         THE COURT:  The plaintiffs are not seeking those

23  documents?

24         MR. JONES:  That's correct, Your Honor.

25         THE COURT:  And then there was a subsequent privilege

1    log provided on June 19 of 221 documents; isn't that correct?

2              MR. JONES:  Yes, Your Honor, that's correct.

3              THE COURT:  And have any of those 221 documents now

4    been provided pursuant to a reevaluation or further discussion?

5              MR. JONES:  We have not received a revised privilege

6    log nor any subsequent production that I'm aware of, so no.  I

7    believe as it stands, the company is maintaining its assertions

8    of privilege over all of those documents.

9              THE COURT:  Those 221 documents?

10             MR. JONES:  Correct.

11             THE COURT:  And then there were 7,700 documents that

12   were not on a privilege log that were under review by Orbital,

13   but I believe PwC indicated they planned to provide some or all

14   of those by today; is that correct?

15             MR. JONES:  That's correct, Your Honor.

16             THE COURT:  And have those been provided?

17             MR. JONES:  Not to my knowledge, no.

18             THE COURT:  Okay.  And we don't know what number of

19   those have been provided or whether or not there's going to be

20   a new privilege log.

21             MR. JONES:  Correct, Your Honor.  I -- based on the

22   representations of counsel, I anticipate there will be

23   additional privilege logs.  When we receive that, I, I do not

24   know.  There's been no representation.

25             THE COURT:  And then in your motion, in addition to

8

1    the 221 documents on the privilege log and the 7,700 documents

2    under review by Orbital, there was also a reference to some

3    unknown number of documents that were not on a privilege log

4    and not included on the first two categories; is that correct?

5         MR. JONES:  That's correct.  Based on my

6    understanding, representations from counsel for PwC, an initial

7    privilege log was provided for the, the early productions of

8    workpapers.  There have been six, I believe.  But in the

9    subsequent productions, a number of documents were withhold,

10   and those documents were not provided on the log that Your

11   Honor mentioned, the 221 documents on June 19.

12        THE COURT:  Okay.

13        MR. JONES:  As Your, Your Honor has very thoroughly

14   laid out here, we are at a point where our expert disclosures

15   are due, our depositions of the auditors are coming up within

16   ten or twelve days, and we still are missing not only thousands

17   of documents, but we don't have privilege logs for the

18   company's assertions of privilege over an unknown number of

19   documents.

20        And the point here, Your Honor, is not to get a

21   privilege log.  The point is to get the documents.  So the

22   company's delay here prejudices us in terms of our abilities to

23   challenge these assertions, bring a motion, get the actual

24   documents, and then use them in the, in the company made that

25   we need to to move this case forward, and I think those issues

1    and the prejudice caused by them are even more clear based on a

2    review of the privilege logs that have been provided and the

3    facially deficient nature of them.

4         With regard to the substantive objections, my

5    understanding is that the company is no longer asserting the

6    attorney-client privilege over any of these documents.  Now,

7    that may be incorrect.  I believe that's implied by the revised

8    privilege log that Deloitte has provided, which removed all

9    assertions of the attorney-client privilege, and the company

10   made no representations as to the attorney-client privilege in

11   their response papers.  If I'm mistaken about that, I'm happy

12   to address that further.

13        With regard to the work product protection, it's

14   important to keep in mind that these are auditor workpapers,

15   created for a business purpose, not in anticipation of

16   litigation.  These workpapers are required by the PCAOB to be

17   specific.  It sets forth what needs to be done, the work that

18   needs to be done to do it, what documentation needs to be

19   provided, and everything that needs to go into these

20   workpapers.

21        This is audit work.  This is not anticipation of

22   litigation or analyzing legal claims.  PwC and Deloitte would

23   have done exactly what they did regardless of any threat of

24   litigation.

25        The Court addressed a similar issue with regards to

1    the internal investigation, and it found that the internal

2    investigation conducted by outside counsel at the direction of

3    the company was for business purposes, but to be clear, there

4    is no issue with the internal investigation here.  PwC and

5    Deloitte were not hired by that outside counsel to participate

6    or help with the internal investigation.  They were hired by

7    the company to be their independent registered auditor, and

8    everything they did that's in their workpapers was done for

9    that purpose.

10           Now, I would like to make one final point here

11   regarding the importance of these documents.  The company has

12   made clear that they intend to rely on the work of the auditors

13   in defense to plaintiffs' claims.  They intend to rely -- to

14   assert that they relied in good faith.  The auditors told us

15   this is how we were supposed to do it; we did it; there's no

16   scienter because we relied in good faith on those -- on the

17   auditors' work.

18           Because they are relying on an auditor defense here,

19   it is critical that we understand the full scope of the work

20   and not just snippets or, or steps in the production.  If we do

21   not have the full workpapers, we cannot -- will not have a fair

22   opportunity to refute the claims that the company relied in

23   good faith on the auditors, and we will not be able to properly

24   cross-examine PwC and Deloitte at their depositions.

25           I'm happy to answer any questions Your Honor has, but

11

1   those are the points that I wanted to highlight for the Court.

2           THE COURT:  Thank you.

3           Mr. Warden?

4           MR. WARDEN:  Thank you, Your Honor.  If I may, I do

5   have a copy of the current privilege log, and I, I --

6           THE COURT:  Thank you.

7           MR. WARDEN:  I think that most of this has been

8   discussed, Your Honor.  There are 39 workpapers, all from the

9   restatement, that are at issue with respect to the motion

10  directed at Deloitte.

11          The interview notes, that is, notes that the Deloitte

12  auditors took during read-outs from the investigative counsel,

13  those have all been provided to the plaintiffs and to the

14  defendants as well, and as you'll note from the log, the only

15  assertion by the company is attorney work product.

16          So that brings us here today.  It's the company's

17  claim of work product.  It's based on company's counsel

18  judgment.  Deloitte doesn't take a position as to whether the

19  underlying material provided by the, by the company, by the

20  investigators and reflected in Deloitte's workpapers is, in

21  fact, work product.  We do have a few observations about the

22  motion, however.

23          First, in both the motion itself and in the

24  memorandum in support, there's this notion of it's an unknown

25  number and there's no log.  The number is known.  The log is

1   there.  They were there before the motion was filed.

2       Second, this, this issue didn't sneak up on the

3   plaintiffs.  There's a suggestion in their brief that somehow

4   they were not aware of this until a few weeks ago that -- and

5   when I say "this," I'm referring to the potential assertion by

6   the company of work product in, in Deloitte's workpapers.

7       We set forth from the very inception of our meet and

8   confer with Mr. Jones, and he and I have talked a lot over the

9   last several weeks, and, and we have resolved all the workpaper

10  issues except for this one issue over which Deloitte has no

11  control, but from the inception of our discussions and as

12  reflected in my April 4 letter to Mr. Jones, we flagged this

13  issue that the company would be asserting work product and

14  Deloitte would honor that assertion.

15      And then finally with respect to work product itself,

16  it's not that Deloitte's act of auditing or creating the

17  workpapers creates the underlying attorney work product.  That

18  was created by the company and its investigative counsel at

19  Hogan.  That's the issue of work product here.

20      It does -- it is reflected -- what the company says

21  is work product is reflected in workpapers in these 39

22  documents.  So the question is does that somehow waive the work

23  product protection, and this is an important issue for auditors

24  and, for that matter, public company clients and all clients

25  because -- and we, we highlighted this in our brief, Your

13

1   Honor -- any number of things.

2            The, the letters that lawyers do to the auditors that

3   say here's this litigation that we're handling, here's the

4   potential outcome, here's the potential damages, the auditors

5   need that information.  That's attorney work product.  At least

6   most clients take the position that's attorney work product.

7            Auditing the tax provision, where a company has to

8   say, well, we have to reserve this much or that much because of

9   the litigation risk that the IRS will be able to recover a

10  certain amount, that's attorney work product, those tax

11  opinions.

12           And, and the case -- and I know Your Honor is -- has

13  read it -- is that, the *United States v. Deloitte* case in the

14  D.C. Circuit.  I mean, that was my case.  Dow argued it in the

15  Court of Appeals because it was Dow's work product, but in that

16  case, the D.C. Circuit and Judge Sentelle, you know, went

17  through the professional standards and, and said because of

18  those professional standards and because our clients are

19  independent auditors, they cannot be adversaries of the client.

20  We can't be an adversary of Orbital.

21           So if Orbital had, for example, threatened

22  litigation, we may no longer be -- against us, we may no longer

23  be independent, we may be adverse, but you -- to be

24  independent, you can't be adverse, and the Court walks through

25  exactly why sharing this information with auditors does not

14

1    waive the work product.

2              So whether the underlying material reflected in the

3    workpapers is work product or not, it's the company's issue,

4    but the fact that it's in our client, in Deloitte's workpapers,

5    that does not constitute a waiver.

6              THE COURT:  Thank you.

7              MR. WARDEN:  Thank you, Your Honor.

8              THE COURT:  Let me just ask -- I want to take a

9    minute to look at this, and the print is small, but I take it

10   that this privilege log reflects information directly from

11   Orbital because these are not your privileges that you're

12   asserting.  So in other words, this is your privilege log in

13   the sense that it was Deloitte that received the subpoena, but

14   the content of this material comes directly from Orbital; is

15   that correct?

16             MR. WARDEN:  Correct.  So this, this is a log that

17   was prepared by the company.

18             THE COURT:  Thank you.

19             MR. WARDEN:  Thank you.

20             THE COURT:  If you can just give me a moment to look

21   at this --

22             MR. SU:  Yes, Your Honor.

23             THE COURT:  -- so that I can take a minute to absorb

24   it?

25             I'm sorry, you may proceed.

15

1          MR. SU:  Thank you, Your Honor.  I -- with respect to

2    the, the legal issues of attorney work product documents given

3    to auditors, I certainly adopt Mr. Warden's arguments, and I

4    won't repeat them here.  If I could just give the Court a, a

5    factual update as to PwC's productions scheduled for today,

6    they're on track to be produced today.  So there are two

7    buckets I'll refer the Court to.

8          The first is with respect to the 221 documents that

9    appeared on the older log, we've been coordinating with company

10   counsel, and they -- of those 221, only 61 remain -- will

11   remain to be either redacted or withheld, and we'll be

12   producing the balance of those.

13         Of the roughly 7,700 documents that, that counsel has

14   referred to, PwC will be either redacting or withholding 12.

15   The company has asked that we redact or withhold 39.  The

16   balance of those will also be produced today, so approximately

17   7,700.

18         We'll also be providing updated privilege logs,

19   produced in large part by the company, although certainly PwC

20   has a, a minuscule number of, of items for which we'll also

21   provide a log.

22         THE COURT:  To be clear for me --

23         MR. SU:  Yes.

24         THE COURT:  -- there are 12 documents that PwC will

25   be asserting --

1             MR. SU:  Yes.

2             THE COURT:  -- a privilege for.

3             MR. SU:  Of the 7,700.

4             THE COURT:  Of the 77.

5             MR. SU:  Yes.

6             THE COURT:  There are 39, as you understand it, that

7    Orbital will be asserting a privilege for.

8             MR. SU:  Yes, Your Honor.

9             THE COURT:  Thank you.

10            MR. SU:  Yes, Your Honor.  So, you know, to the

11   extent that company counsel -- excuse me, that plaintiffs'

12   counsel has focused on the documents, those documents will be

13   coming today.

14            Of course, this is not -- I would just note for Your

15   Honor that this is obviously not the first document production

16   that PwC has made to plaintiffs.  You know, we, we very quickly

17   produced the investigation and restatement workpapers.  That

18   was kind of the first bucket.  We also produced a substantial

19   number of audit engagement workpapers, and this is kind of the

20   last crunch of those.

21            And so, so we think that, you know, certainly by the

22   end of today, as we previewed for, you know, plaintiffs earlier

23   in the week, you know, we will have met the, you know, met our

24   obligations under the -- as agreed under the subpoena.

25            THE COURT:  Do you have any insight into the third

17

1   category of documents that I raised with plaintiffs' counsel,

2   which is not the 221 --

3           MR. SU:  Sure.

4           THE COURT:  -- on the privilege log, not the 7,700

5   that were being reviewed, but this category of unknown

6   documents?

7           Is there a difference of understanding in terms of

8   whether there are some other documents that exist that are not

9   on a log and not otherwise accounted for?

10          MR. SU:  So I think the answer is there is no

11  difference of understanding.  As I understand, what the

12  plaintiffs were referring to was within the 7,700, it was

13  heretofore unknown how many of those would be redacted or

14  withheld.

15          THE COURT:  I see.  Okay.

16          MR. SU:  If that makes sense.

17          THE COURT:  That's helpful for me, thank you, yes.

18          MR. SU:  Okay.  Other than that, I think, you know,

19  again, Your Honor, our experience with plaintiffs have been

20  similar to that of Mr. Warden's in the sense that, you know,

21  it's our position that they were aware that there were certain

22  documents that were to be withheld.  It's not uncommon in

23  the -- in these document production situations to provide a

24  privilege log at the end of the production.

25          We had certainly flagged the number of documents that

1   we -- that were -- the fact that documents were being withheld

2   and that -- and their number, and so we were also kind of

3   similarly surprised to, you know, learn of the view that

4   somehow there had been a waiver here, but, but again, as we

5   expect that by the end of the day, we'll have met our

6   obligations under, you know, pursuant to our agreement to

7   produce the engagement workpapers.

8           THE COURT:  Thank you.

9           MR. SU:  Thank you, Your Honor.

10          MS. ANDERSON:  Good morning, Your Honor.

11          THE COURT:  Good morning.

12          MS. ANDERSON:  Paula Anderson for defendant Orbital

13  ATK.  Our brief speaks for itself.  I just wanted to address a

14  few issues that have been raised by plaintiffs' counsel, and,

15  and I think it's important to sort of go back to where this all

16  started.

17          You know, in their representations a few moments ago,

18  plaintiffs' counsel, you know, mentioned that this is not about

19  a privilege log, but if you look at their moving papers, it was

20  all about a privilege log, and that was the basis, the main

21  predicate for plaintiffs' motion to compel these workpapers

22  that were being withheld by the company's outside auditors, you

23  know, on the basis of privilege being asserted by the company.

24          We now know that privilege logs have, in fact, been

25  produced and, in fact, the Deloitte privilege log had been

1   produced prior to the filing of this motion, and so, you know,

2   we, we think that plaintiffs' arguments are largely moot, and

3   to the extent that plaintiffs have, you know, take any issue

4   with the logs, the amended logs that have been provided, you

5   know, we're happy to meet and confer on that issue.

6           Plaintiffs argue that they were not required in the

7   first place to meet and confer with us.  To the extent that

8   they were meeting and conferring with the auditors, however,

9   it's our position that given that the company is the party

10  which plaintiffs admittedly acknowledge is asserting the

11  privilege, it was important that, for them to meet and confer

12  with us to understand the basis for the assertions of

13  privilege, and we remain ready and willing to do that to the

14  extent the plaintiffs have, you know, any issues with the

15  updated logs that, that have been produced.

16          And as you've heard this morning, Your Honor, the

17  number of entries on those logs is, you know, quite small,

18  particularly in relation to the number of documents that are,

19  that are being produced.  We were very diligent in making sure

20  that we construed the privilege very narrowly given that, the

21  direction that this Court has given us in the, in the prior

22  proceedings on unrelated issues and --

23          THE COURT:  Well, if I may interrupt you --

24          MS. ANDERSON:  Sure.

25          THE COURT:  -- I apologize, but I just want to stay

1    focused and --

2            MS. ANDERSON:  Absolutely.

3            THE COURT:  -- get to the, the heart of the matter.

4            Do you agree having heard from, from counsel for

5    Deloitte and PwC that what we're looking at right now in terms

6    of what's in dispute is a total of 39 documents with regard to

7    the Deloitte production where Orbital has interposed an

8    objection, and those are reflected in the updated log that

9    Mr. Warden handed up to me, that that is -- that that's where

10   we stand with regard to Deloitte, that there is no other

11   dispute or there are no other documents that plaintiff is

12   seeking that Orbital has instructed Deloitte to withhold other

13   than these 39?

14           MS. ANDERSON:  That is correct, Your Honor.

15           THE COURT:  Okay.

16           MS. ANDERSON:  The 39 entries on the Deloitte

17   privilege log, that's the universe of documents over which the

18   company is claiming privilege.

19           THE COURT:  And that's where the dispute lies here --

20           MS. ANDERSON:  Yes.

21           THE COURT:  -- for the Court to resolve.

22           And with regard to PwC, do you agree, as I think

23   counsel just stated, that, that the 221-entry privilege log has

24   now been reduced to 61 items at the request of Orbital, in

25   other words, objections being, being interposed by Orbital, and

1    then of the 7,700 that were under review, there are 39

2    documents that have been identified as being subject to

3    privilege?  Is that -- am I right on the numbers?

4            MS. ANDERSON:  I, I will make a couple of

5    corrections.  With respect to the, the log that previously

6    contained 221 documents, my understanding is that number has

7    now been reduced to 60.

8            THE COURT:  Okay.

9            MS. ANDERSON:  61, if we can reconcile that.  And

10   with respect to the 7,700 documents that were being withheld,

11   we are now only asserting privilege over 29 documents.

12           THE COURT:  Twenty-nine.

13           MS. ANDERSON:  Yes.

14           THE COURT:  Okay.  Okay.  And with regard to the

15   privilege log that was handed up to me, are, are you prepared

16   to answer questions if I ask you about them?  The best way for

17   me to proceed, often I find, is to actually look at an example

18   and talk about it to try to make sure I'm understanding what's

19   been done.  I don't want to put you on the spot.  I don't know

20   if you were the author of this or the supervisor of the author.

21           MS. ANDERSON:  I will do my best, Your Honor, to

22   answer your questions on the log.

23           THE COURT:  So is it my understanding that now all of

24   the documents redacted or withheld are based solely on attorney

25   work product, not attorney-client privilege?

1          MS. ANDERSON:  Yes, that is correct.

2          THE COURT:  Okay.  And so if we look, for example, at

3   No. 6, I want to make sure I'm understanding it correctly, it

4   appears that the document is identified as conveying work

5   product and advice of outside counsel regarding internal

6   investigation conducted by Hogan Lovells and Alvarez & Marsal,

7   that that's the internal investigation that's been the subject

8   of lots of discussion here, here in court, and that it was

9   the -- the author is Ken Sharp, and then there are, there are

10  certain recipients on it.

11         So help me understand, without disclosing the

12  information that you're seeking to, to keep withheld, how that

13  fits into the Court's prior rulings and how the Court can

14  evaluate whether or not that's properly withheld subject to the

15  work product doctrine.

16         MS. ANDERSON:  The company's position, Your Honor, is

17  that, you know, work product, attorney opinion work product

18  that was generated in the course of the internal investigation

19  or, you know, any other related matters that were then -- that

20  was then provided to the auditors for their use in, you know,

21  in carrying out their mandate as the outside independent

22  auditors for the company, did not lose its work product

23  protection merely by the fact that that information was

24  provided to the auditors, and, and as counsel has, you know,

25  mentioned in their -- our prior presentations, you know, there

1    is quite a bit of case law out there that supports the idea

2    that the work product of the company, of the client that's

3    provided to the auditors does not lose that protection, you

4    know, merely by, by being disclosed to the auditors.

5         THE COURT:  Yes, I, I think I understand that

6    argument, but it begs the question as to whether or not the

7    information in the first place carried that protection.

8         MS. ANDERSON:  Sure, absolutely.  And as, as we

9    understand your ruling, Your Honor, the ruling did not

10   encompass all of, you know, the work product that may have been

11   generated in the course of the internal investigation, and

12   maybe that's something, you know, we need clarification on.

13   It's our understanding that opinion work product, for example,

14   could still be asserted over, you know, materials that

15   constituted the mental impressions, conclusions, and opinions

16   of the attorneys carrying out the investigation.

17        Now, we, we do under- --

18        THE COURT:  And this may be a foolish question, but

19   Ken Sharp is who exactly?  What is his position as the author

20   of this document?

21        MS. ANDERSON:  I believe --

22        THE COURT:  Is he an attorney?

23        MR. ROBERTS:  I can address that, Your Honor.

24   Mr. Sharp is an officer of Orbital.  However, of course, as

25   Your Honor is aware, during the course of preparing for

24

1    litigation, internal investigation, often documents are still

2    being reviewed and have input from attorneys even if they're

3    not listed as the author on the particular document.

4                THE COURT:  Thank you.

5                And I, I picked that example because it actually had

6    an author, but on that first page, 9 of the 11 entries have

7    "Not Applicable" for, for author.  I'm trying to understand

8    again how the Court can evaluate this log on its face or how

9    the plaintiffs could challenge the log or whether or not the

10   Court should even hesitate to utter the words "review in

11   camera" any of these documents in order to get a better sense

12   of why they were selected for redaction or being withheld.

13               MS. ANDERSON:  Understood, Your Honor.  In, in some

14   cases, the specific author of the documents were not -- was not

15   readily available, but we did try to provide in the description

16   as much detail as possible, you know, surrounding the document

17   and the basis for which the work product protection is being

18   asserted, and, and I might add that these entries are really,

19   you know, no different from the types of entries that are, you

20   know, present on plaintiffs' own privilege logs.

21               THE COURT:  That doesn't help me, though, because

22   until I see a motion to compel for an inadequate privilege log

23   because you believe they've withheld something improperly, it

24   doesn't -- that doesn't help me.

25               MS. ANDERSON:  Sure.  Understood, Your Honor.

1        And as I mentioned before, the parties have never met

2   and conferred over any of these entries, and, you know, we've

3   had not -- we have not had any dialogue with the plaintiffs to

4   the extent that they might request more information or, you

5   know, require more detail in order to determine whether to

6   object to any particular entry, and as I, as I mentioned, we

7   are happy to do that, but, you know, as the log stands right

8   now, you know, our position is that, you know, we have

9   satisfied our obligations under Rule 26(b)(3).

10        THE COURT:  Thank you.

11        MS. ANDERSON:  Thank you.

12        MR. WARDEN:  Your Honor, if I may?

13        THE COURT:  You may.

14        MR. WARDEN:  So some of the names of the -- in the

15   Author column here are Deloitte personnel.  So, for example,

16   David Piper, you go to 20, Melinda Covert, and some of the

17   others on the last -- a couple of the others on the last page.

18   I suspect, though I'm not certain, that the "N/A" is because

19   it's a work paper that's not in the form of a memo.  So, for

20   example, that item No. 7 is likely a memo prepared by David

21   Piper, and you can, you can tell from the face of it.

22        So if, if you think --

23        THE COURT:  So let me, let me try and clarify the --

24   I appreciate that, and that helps me because as I look at the

25   acronyms and the names, they don't necessarily mean anything to

1    me.  They're not -- it's not clear on the face whether it's a

2    lawyer who drafted it, whether -- it didn't occur to me that

3    they would be Deloitte personnel at all.

4          It occurred to me that the argument here is that this

5    is work product created by the outside counsel, Hogan Lovells,

6    in connection with the internal investigation being provided

7    to, to Deloitte and that its protectible nature derives from

8    its creation by the outside law firm, which is a subject of

9    great controversy that's been briefed and argued and I have

10   ruled largely against.

11         And so my question is whether or not the documents

12   that refer to the internal investigation, in fact, simply

13   contain factual information collected during the investigation

14   which carries no protection, which I've already held and assume

15   that that order has been complied with based on representations

16   here today, or whether or not there's something qualitatively

17   different about the information in these documents that somehow

18   would still retain some degree of protection.

19         MR. WARDEN:  So --

20         THE COURT:  It's not really a question for you,

21   Mr. Warden, because it's not really your fight.

22         MR. WARDEN:  I appreciate that, Your Honor, because

23   I, I am far from prepared to answer that, and I think that's

24   really whether it's the opinion work product or fact work

25   product, I'm just trying to help the Court understand some of

1    the Author column.

2         So, for example, Dave Piper is a direc-, I believe

3    his position is director, and he prepares a memo based on a

4    number of discussions with the investigator -- investigators,

5    that's, that's likely No. 7.  The ones that have "N/A," you

6    know, if you think about workpapers in the olden days, they

7    have -- they were all hard copy, now they're all electronic, so

8    they probably have a preparer who's a, a relatively junior

9    person, then a reviewer or two.  So I think that's why some of

10   these are "N/A."

11        But as to the contents, excuse me, and whether the

12   contents are protected work product or not, I'll, I'll defer to

13   the company on that.

14        THE COURT:  Thank you.

15        Ms. Anderson, let me have you come back to the podium

16   briefly first.  I mean, this is the real question, and I

17   appreciate you're arguing here for the first time, but for

18   better or worse, you're responsible for the position of the,

19   the defendants, and the issue that we addressed before, of

20   course, as I'm sure you're, you're very familiar with, is that

21   the internal investigation the Court found was something that

22   was pursued by the company for a business purpose that it began

23   prior to the instigation of litigation, and the mere fact that

24   companies know they might be sued when there is a financial

25   restatement doesn't by itself provide the protection of, of

1    work product, and that the factual information collected had to

2    be turned over and has been turned over.

3           And so the challenge that I have is determining

4    whether or not there are documents here in which Deloitte was

5    given information by Orbital in order to do its job, which

6    again is clearly for a business purpose and required both in

7    order to inform shareholders and to correctly inform the public

8    of what the financial status of the company was and to correct

9    the errors and problems that had arisen.

10          And the question is if David Piper at Deloitte wrote

11   a document based on information he received from Orbital

12   through its outside and investigative team of Hogan Lovells and

13   the outside auditors, Alvarez & Marsal, was that factual

14   information that was being given to him and then he factored

15   that in and included it in a memo, or was it somehow discussing

16   something that was uniquely attorney opinion and therefore --

17   and I would note that is a document that says "withheld," not

18   "redacted."

19          And so is that a, is that a document that you're

20   confident has been withheld after an analysis consistent with

21   what I've articulated and ruled on previously?

22          MS. ANDERSON:  Yes, Your Honor.  We made the

23   distinction and, you know, selecting documents over which to

24   claim, you know, work product protection between, you know, you

25   know, work product that consisted basically of a compilation of

1    facts that were gathered during the interviews and what we have

2    interpreted as opinion work product, and so what is reflected

3    here on the privilege log is, you know, information, entries

4    that reflect opinion work product that was provided to the

5    auditors that was, you know, generated by the company's counsel

6    during the course of the internal investigation, things that

7    included, you know, as I mentioned before, you know,

8    conclusions, opinions, not just a mere recitation of facts from

9    the witness interviews.

10           And we were very careful to parse it that way,

11   particularly given your prior rulings.

12           THE COURT:  Thank you.

13           MS. ANDERSON:  Thank you.

14           MR. JONES:  May I be heard briefly, Your Honor?

15           THE COURT:  Yes.

16           MR. JONES:  First, we welcome the, the narrowing of

17   the issues here.  This is, this is the first we've heard some

18   of those details, as so we, we do appreciate that.

19           I do want to, to make one point.  I, I take some

20   issue with the idea that we did not meet and confer with

21   company counsel for that.  I don't want to get into the details

22   of that, but, but I think that representation has been dealt

23   with in our papers.

24           I think the Court hit on the issue exactly here with

25   what's left.  A, a look at the face of the privilege logs that

30

1    we do have shows the deficiency and the assertions that are

2    being made by, by the company.  We detailed those deficiencies

3    in our paper to, to PwC's motion -- our motion to PwC's

4    workpapers, and frankly, the company didn't bother to defend

5    it.  It pointed to ours, said they did it, too, and I think

6    there's good reason for that.  These are not defensible.

7            As Your, as Your Honor noted, the vast majority of

8    these do not provide an author or provide an author that is an

9    auditor and not outside counsel, you know, hired to conduct the

10   internal investigation or a company personnel, you know,

11   preparing documentations at the, at the direction of counsel.

12           And none of these assertions -- or none of these

13   descriptions provide an assertion of any of this was prepared

14   in anticipation of litigation.

15           Moreover, 22 of the 39 documents relate specifically

16   to the internal investigation.  And as Your Honor has noted,

17   and you've already addressed this issue and found that that

18   investigation was done for business purposes, and to the extent

19   that factual information is, is contained therein, it needed to

20   be produced.

21           And I do -- I had not planned to do this, so I do not

22   have a copy, but I, I think it sheds some light on, on what

23   really has been done here.  I do have a, a document produced by

24   the company, it's marked "Confidential," so I, I think in

25   compliance with the procedures, this would be, need to be

1   sealed, and I -- but it sets forth what, an example of what has

2   been redacted in the description on the log that relates to the

3   internal investigation, and if, if Your Honor is willing, I'd

4   like to show it to the other side and hand it up to you so you

5   have a better context.

6          THE COURT:  I'm not sure now's the time to do that,

7   but I appreciate the offer, and depending on how I resolve this

8   matter, I may ask you to submit it in camera.

9          MR. JONES:  Thank you, Your Honor.  Those are the

10  points I'd like -- I would make right now.  If you have any

11  other questions, I'm happy to address them.

12         THE COURT:  Thank you.

13         I'll hear argument on the merger issue.  I'm going to

14  address how I resolve all these at the end of the hearing.

15         Let me see if we can speed things up here.  There was

16  a proposal on June 19 to limit the -- or narrow the focus of

17  the request with regard to the merger documents.  I believe

18  there's been some difference of opinion over the communication

19  after that, but are the plaintiffs still willing to narrow

20  their requests?  I understand that PwC was willing to accept

21  that as long as a couple of issues could be resolved, setting

22  aside all the other procedural issues here.

23         MR. JONES:  Yes, Your Honor.  We're willing to accept

24  a narrowed production of documents consistent with documents,

25  merger due diligence documents related to the Lake City

1    contract and company goodwill.

2           THE COURT:  Thank you.

3           MR. SU:  So, Your Honor, absolutely respecting the

4    Court's desire to, to move this up and setting aside the

5    procedural issues, we have identified a set of workpapers that

6    relate to the issue -- the Lake City issue and then the

7    goodwill issue.  They comprise approximately 15 documents,

8    which comprise the company's workpapers, merger due diligence

9    workpapers on this issue.

10           I think what we're looking for, Your Honor, in

11    reaching that agreement is two things.  One is finality on this

12    question, and we think that the workpapers are absolutely an

13    appropriate way to demonstrate a record of what, what PwC did

14    with respect to those documents -- with respect to that

15    process.

16           And second, there is a, a reasonable fee issue here,

17    Your Honor, which we, we request, because obviously, there was

18    an extensive process undertaken to identify these 15 documents,

19    and the fact that there is a reimbursement provision as between

20    PwC and Orbital does not relieve plaintiffs of a -- of the

21    obligation under Rule 45 to provide a reasonable reimbursement

22    of fees.

23           Obviously, there's no intent to double-dip on the fee

24    issue, but because it quite clearly, this is a request from

25    plaintiffs, we would ask that PwC be entitled to fees

1   particularly because with respect to both the original

2   production of workpapers of 75 -- or roughly 7,000 documents

3   and this upcoming production today, PwC has not sought fees,

4   and so we've been tried -- trying to be judicious in what fees

5   that we seek, but once we get out of the workpaper zone where

6   there needs to be additional diligence done, we believe that

7   this is an appropriate request.

8           THE COURT:  What is that cost?

9           MR. SU:  I think it's roughly between 20 to 30 hours

10  of outside counsel attorney time to both work -- to perform the

11  review and, and prepare a set of documents.  And so I think if

12  we can achieve finality and have an agreement on costs, you

13  know, we're able to hopefully reach resolution on this topic.

14          Thank you very much.

15          THE COURT:  When you say there are approximately 15

16  documents, is that a reference to -- I believe in the papers,

17  there was a discussion of whether you would provide the final

18  and complete workpapers or perhaps the final and complete

19  workpapers along with whatever process was involved in getting

20  to that point, so that I think the plaintiffs' argument would

21  be they can see whether there were discrepancies in the

22  information that was being provided to PwC that might have

23  affected the information and the conclusions reached.

24          MR. SU:  Well, if I understand the Court's -- let me

25  see if I can respond and make sure we -- I understand the

34

1    Court's question.  Our proposal is that we produce the 15

2    documents because those would be the documents, the merger

3    workpapers that relate to Lake City, the Lake City contract and

4    goodwill, and that was out of a broader set of roughly 200, you

5    know, documents related to the merger due diligence overall.

6              Our proposal would be that we produce those 15

7    because they relate specifically to the issues that the

8    plaintiffs are asking about, and certainly as plaintiffs'

9    counsel noted, there is a 30(b)(6) deposition coming up for us

10   on the 19th, so there can be appropriate follow-up as

11   necessary, but our fee request is based on the time necessary

12   to identify the appropriate set, review that set, identify the

13   right documents, which are these 15 that we're talking about.

14             THE COURT:  Yes.  Thank you.  I appreciate that, but

15   I think the question that I was trying to ask was those 15

16   documents --

17             MR. SU:  Yes.

18             THE COURT:  -- relate to the subset, the agreed-upon

19   subset of Lake City and company goodwill --

20             MR. SU:  Yes.

21             THE COURT:  -- but do those 15 documents represent

22   the entire universe of documents related to those two issues or

23   just the final workpapers?

24             MR. SU:  The final, the final workpapers.

25             THE COURT:  Okay.

35

1          MR. SU:  And one of the reasons that we were -- not

2    to get back on the process -- the question too long, Your

3    Honor, but one of the issues -- one of the reasons that we

4    wanted to speak with the plaintiffs is, perhaps not

5    surprisingly, they have asked for all documents, and because

6    documents of the subpoena is referenced so, so broadly to, to

7    include -- I mean, the subpoena says to be interpreted in the

8    broadest possible sense under Rule 34, it was necessary for us

9    to try to come to ground on an appropriate scope and a

10   reasonable scope for us to search.

11         Now, once they review those documents, the 15

12   documents, if there is further follow-up or, or questions, they

13   can either do that with a Rule 30(b)(6) or have you entertain

14   it, but we think that this is an appropriate sequencing of

15   events, particularly as it relates to a third party.

16         THE COURT:  Thank you.

17         MR. SU:  Thank you, Your Honor.

18         THE COURT:  And am I correct in hearing that there is

19   an indemnification agreement or a reimbursement agreement with

20   Orbital but that PwC has not sought that reimbursement yet in

21   connection with this matter?

22         MR. SU:  Correct, although that's certainly in

23   process, and I can represent to the Court that with respect to

24   any fees that, that are either agreed upon or ordered by the

25   Court, we certainly would not double-dip or go back to Orbital

36

1    to seek those same fees.

2          THE COURT:  Thank you.

3          MR. SU:  Thank you, Your Honor.

4          MR. JONES:  May I be heard, Your Honor?

5          THE COURT:  Yes.

6          MR. JONES:  The Court hit on an important point here.

7    There is a, an important difference between the final set of

8    workpapers or the 15 documents that they have represented that

9    they're willing to produce and the work that underlies that.

10         As I mentioned before, the company has been clear

11   that they intend to rely on the work of PwC in terms of its

12   opinion with regard to due diligence in, in connection with the

13   merger.  In order to refute those -- that defense, we need to

14   understand the full scope of the work, what they did, what they

15   didn't do, what the company told them, what the company didn't

16   tell them.

17         At a minimum, we need to understand the

18   communications and representations that were made by Alliant to

19   PwC with regard to Lake City contracting, company goodwill.  We

20   need to understand the communications between PwC and Orbital

21   with regard to the scope of the work, what was required, what

22   was, what was excluded.

23         I mean, but that, that is only one part of it.  We

24   also need to understand all the underlying work that PwC

25   performed in order to reach its findings and conclusions that

1    are encompassed in the final workpapers.

2           I would like to touch on the idea of, of costs.  We

3    do not think that shifting of costs here is appropriate.  As

4    the Court has mentioned and counsel confirmed, there's an

5    agreement between the company and PwC to reimburse it for its

6    costs, and we believe any shifting of costs to the plaintiffs

7    here would either result in double-dipping or the improper

8    shifting of costs between the parties, who have agreed to bear

9    their own costs with regard to discovery.

10          So we, we don't believe that's appropriate, and we

11   certainly don't believe that dozens of hours of attorney review

12   time would be appropriately included in any, in any such award.

13          So with those two issues, I'm happy to address any

14   questions the Court has, but that's all I have for the moment.

15          THE COURT:  Thank you.

16          With regard to the outstanding documents being

17   withheld with regard to the first two motions for the

18   workpapers from Deloitte and Pricewaterhouse, I regret but will

19   direct the parties to submit a sample for in camera review.  I

20   think it's the only fair way the Court can address this issue.

21          What I'm going to do is I'm going to permit the

22   plaintiffs to select ten entries from the Deloitte privilege

23   log of 39 documents, and I'm going to permit them to select ten

24   documents from the PwC privilege log.  We're going to have to

25   address the timing of when they will have that in order to give

1   them the opportunity to identify them.  This way, it will be a

2   selection that is, if they feel there are inadequate entries or

3   problematic issues, they will be able to control which ten I

4   will review.  I'm not going to review every single one.

5        I will review them in camera, and if I find that they

6   are not appropriately documents that have been redacted or

7   withheld, I may well resolve the issue in total; in other

8   words, I will find that all documents will have to be turned

9   over.  It is the only efficient mechanism for resolving this.

10        And so I would like those documents to be selected by

11  close of business today, which means that Pricewaterhouse and

12  Orbital will have to work together to give that final privilege

13  log to plaintiffs so that they can identify those in total

14  twenty documents, ten from Deloitte, ten from Pricewaterhouse.

15        I will look at them on Monday, and I will issue a

16  ruling by the end of the day if at all possible, so for

17  everyone to keep in mind, because depending on how I resolve

18  it, those documents will then need to be produced or not

19  produced.  If I find that they have been appropriately logged,

20  then, then so be it.

21        I'm going to grant the plaintiffs' motion with regard

22  to the merger papers based on their narrowing of their request

23  to the Lake City contract and the company goodwill.  I will,

24  however, require that in addition to the final and complete

25  workpapers, that the underlying workpapers be produced as well.

1          I am not going to shift the, the fees in this case,

2     and I'm sure that Orbital will meet its obligations to

3     reimburse Pricewaterhouse for the efforts that it has put in if

4     they are obligated to do so.

5          Is there any outstanding issue that I've failed to

6     address with regard to those first three motions?

7          MR. JONES:  Your Honor, I have just a clarification

8     with regards to when we'll receive the PwC privilege log.  In

9     order to meet the Court's deadline close of business today,

10    we'd need some time to, to review it.

11         THE COURT:  Well, you have the Deloitte privilege

12    log.

13         Counsel, do you have a sense of when you can provide

14    them with a copy of the final privilege log?

15         MR. SU:  I think we aim for early this afternoon,

16    Your Honor, as soon as we get back to the office.

17         THE COURT:  Okay.  By 3:00 today, I expect that the

18    privilege log will be transmitted to plaintiffs' counsel.  You

19    then have until the close of business to identify the twenty

20    documents, communicate that to Deloitte, Pricewaterhouse,

21    Orbital, all three of them, and then I will require that those

22    documents be provided by Monday at noon.  I'm not going to make

23    you show up at the courthouse at 8:30.  They need to be

24    hand-delivered in camera to chambers, those twenty documents,

25    ten and ten.

1          MR. SU:  Your Honor, may I ask a clarifying question

2    about the merger documents?

3          THE COURT:  You may.

4          MR. SU:  So as I understand it, the Court's granting

5    the motion as narrowed by the plaintiffs, and so the Court is

6    directing us to produce the 15 documents along with any

7    underlying workpapers as to those 15.

8          THE COURT:  Correct.

9          MR. SU:  Okay.  So, so we'll certainly go back and

10   see what under- -- what, if any, documents underlie those, and

11   we'll try to work with plaintiffs on, on that set.  I'm not

12   sure there's a precise definition for that, but we'll certainly

13   work in good faith, and if we have any -- if we're not able to

14   work it out, we'll certainly come back before Your Honor.

15         THE COURT:  That's fine.

16         MR. SU:  Okay.

17         THE COURT:  I would hope that that's not the case,

18   and we're going to have to address the timing of when you need

19   to produce those documents, and we'll do that in connection

20   with the final motion.

21         MR. SU:  Thank you, Your Honor.

22         THE COURT:  But I would hope that that can be done

23   promptly.

24         And this is not an issue, as I understand it, that

25   Orbital has any -- has interposed any concern about, so it's

1  purely a matter of identifying those documents and organizing

2  them internally.

3        MR. SU:  Yeah.  We'll certainly take a look at it,

4  Your Honor.  Thank you.

5        THE COURT:  Thank you.

6        Okay.  The motion to modify the scheduling order.  I

7  think as I read the papers, there originally was an agreement

8  to simply shift the expert disclosure dates and keep the end of

9  fact discovery and all of the related dates for briefing

10 dispositive motions and the pretrial conference on the same

11 schedule, that as a consequence of receiving another set of

12 documents right around the time that you were discussing that,

13 plaintiff shifted to asking essentially to move everything by a

14 month, including fact discovery and the related dates for

15 filing pretrial motions and the final pretrial conference.

16        Is that a correct summary?

17        MR. HERMAN:  That's correct, Your Honor.  We had an

18 agreement to extend the expert discovery -- the expert

19 disclosure date till July 23, which is two weeks from today.

20 In the last -- since mid-June, we've received a substantial

21 amount of documents, and we've learned today that more

22 documents are coming.  We can't possibly absorb those documents

23 timely to meet the deposition schedule.

24        And just -- the position we're in is caused by a

25 failure to adhere to the Court's deadlines, specifically, the

1    bulk production deadline and the Rule 26(f) report, which was

2    April 6.  We've gotten almost 90 percent of the documents long

3    after that.  The May 1 deadline of substantial completion,

4    we've received millions of pages of documents long after that,

5    with documents still being produced by various parties.

6            So the reason we're here today asking for the relief

7    is because of those deadlines.  We've worked diligently.  We

8    have 25 lawyers working actively on this case, Your Honor.  We

9    are prepared to issue some kind of disclosure today related to

10   the experts.  We'd prefer not to have to do that, and the

11   defendants did agree to kick that date two weeks, with Your

12   Honor's permission, but we think we need a full 30 to prepare

13   for the depositions.

14           On the depositions, we noticed a number of

15   depositions prior to today, prior to July 6, for the simple

16   reason we wanted to include the testimony and the expert

17   reports.  The only deposition that's taken place is a 30(b)(6)

18   of Orbital.  All of the individual defendants have been kicked

19   to later July, not at our request but at the defendants'

20   request, that the witnesses were unavailable until after the

21   deadline.

22           So we find ourselves in the position we're in because

23   of the failure to adhere to deadlines, the failure to, to

24   produce discovery timely, and we would ask for Your Honor's

25   indulgence to add time for us to absorb the millions of pages

1   of documents that we've got, to prepare the reports adequately

2   so we don't have to do it again, and to take the depositions in

3   a timely manner.

4          THE COURT:  Thank you.

5          Mr. Roberts?

6          MR. ROBERTS:  Your Honor, I won't belabor the course

7   of document discovery, which I think has been laid out in quite

8   excruciating detail in the papers before you, and so I --

9          THE COURT:  Excruciating is the right word.

10          MR. ROBERTS:  I'm sure it was, Your Honor, and I

11   apologize for having to do that, but it's not normally my

12   experience that when you ask for additional time in a -- for

13   scheduling, that you then include with it dozens of pages, as

14   the plaintiffs did, explaining every possible problem they

15   might have had with discovery in the entire case and forcing us

16   to respond that way.  I would prefer not to spend my time that

17   way, I assure you.

18          On that issue, though, Your Honor, I would simply

19   note that as it's laid out in our papers, the reason why

20   they're receiving documents at this time is because they asked

21   for them very late, because they negotiated in a way that's

22   completely inappropriate in this district.  That's why these

23   documents are coming at this time.

24          THE COURT:  Well, let me ask you this question:

25   We've addressed the privilege log with regard to the PwC and

44

1    Deloitte documents.  Is there a final, complete privilege log

2    for the rest of all responsive documents, or is that an ongoing

3    project?  And if so, what is the date that you foresee for

4    providing them with the final, ultimate, never-to-be-updated

5    privilege log with regard to discovery in this case?

6              MR. ROBERTS:  Well, as Your Honor points out, of

7    course, as you're continuing to produce documents pursuant to

8    requests, you then have to create a privilege log to, to go

9    along with it.  We believe that by Friday, we will have

10   satisfied all of the requests and all of the agreements we've

11   had with plaintiffs to provide documents.

12             THE COURT:  By this -- a week from today?

13             MR. ROBERTS:  No, I'm sorry, by today, Your Honor.

14             THE COURT:  By today, by July 6.

15             MR. ROBERTS:  I apologize.  Today, yes.

16             THE COURT:  That all responsive documents to all

17   versions of all requests, modifications, e-mails, whatever it

18   may be, that Orbital will have satisfied and produced all

19   documents, is that correct?

20             MR. ROBERTS:  That's certainly, that's certainly our

21   intention, Your Honor.

22             THE COURT:  That's the position you're taking,

23   representing in open court.

24             MR. ROBERTS:  That -- well, that is my -- I guess I

25   would say, Your Honor, as you know how these things go, there's

45

1    always possible -- possibility for strays that have, you know,

2    that have not come through.  And certainly we are doing a, a

3    privilege review for this last set that we are producing now

4    today.  So there may be an extension into next week as we

5    create that final privilege log for this final production, and

6    any strays that come off of that because they have been

7    determined not to be privileged would be produced as well.

8              THE COURT:  So, so two things, and I want to make

9    sure I'm asking the right questions and getting the right

10   information:  You're representing that you're making your best

11   efforts to produce the documents, to provide the plaintiffs

12   with the documents for all outstanding issues by the end of

13   today; is that correct?

14             MR. ROBERTS:  That's absolutely right.

15             THE COURT:  And the privilege log for any documents

16   that are withheld will also be provided today or it will be

17   provided a subsequent date after the documents themselves have

18   been produced.

19             MR. ROBERTS:  Right.  A subsequent date, Your Honor,

20   but we are doing it as quickly as possible and hope to have it

21   done --

22             THE COURT:  And what is that date that you foresee

23   for the final privilege log?

24             MR. ROBERTS:  Certainly no later than next Friday,

25   Your Honor.

46

```
 1                 THE COURT:  The 13th of July.

 2                 MR. ROBERTS:  Correct.

 3                 THE COURT:  Okay.

 4                 MR. ROBERTS:  But I hope to have it done sooner.  We

 5    are, we are moving as quickly as we can.

 6                 THE COURT:  Thank you.

 7                 MR. ROBERTS:  On the scheduling, Your Honor, I think

 8    it's pretty clear what happened here.  So we did have an

 9    agreement with the plaintiffs.  They've reversed themselves.

10    And most noticeably, what they reversed themselves on was

11    extending the fact discovery deadline, and when they did that

12    and came to the Court, first they didn't bring to me their new

13    schedule to ask me if I would agree with it.  I told them

14    specifically I'd be happy to review it in realtime, no delay.

15    They said:  We're not going to show it to you.  We're just

16    going to the Court.

17                 So I don't think they met their meet and confer

18    requirements.  That's why we said that in the papers, and I

19    don't think there's any excuse for that.  The e-mails make it

20    perfectly clear what happened.

21                 The second thing is, though, is that I think it

22    became clear what their real goal was, and that was to move the

23    fact discovery deadline.  Why is that necessary to move it?

24    It's a little unclear.  We have all of the depositions

25    scheduled.  They have the documents.  Plaintiffs have not
```

1  indicated to us that they want to move the depositions to have

2  further time to, to do the documents.

3       So what becomes clear, and we've obviously flushed

4  them out on this in our papers by raising it with the Court, is

5  that what they actually want to do is ask for more depositions.

6  That's their real goal here in moving the fact discovery

7  deadline.

8       We disagree with that.  We think 15 depositions are

9  adequate here, nor do we think it's an appropriate method of

10  doing that, by basically coming to the Court, saying:  We'd

11  like to extend this deadline, we won't tell you why, and then

12  have you later --

13       THE COURT:  Well, let me interrupt you, Mr. Roberts.

14       Mr. Herman, do you intend to ask for more

15  depositions?

16       MR. HERMAN:  Until we've had a chance to review the

17  several million pages of documents, I can't tell you that we

18  aren't going to ask for more depositions, Your Honor.

19       THE COURT:  Okay.  Thank you.

20       MR. ROBERTS:  So, Your Honor, that's the conundrum we

21  have.  We're, we're perfectly willing to move the date for

22  experts.  We're not being unreasonable here.  We understand

23  that there's a need to have, you know, more time for the

24  experts to review these materials, but we're, we're not in

25  agreement on the notion that we should have an open-ended sort

48

1   of fact discovery movement of the month and that that can then

2   be filled in any way the plaintiffs want to fill it.  So I

3   think that's, that's really the crux of our difference here on

4   this point.

5        And I would just add one other item, Your Honor.  I,

6   I'm constantly being shocked in this case as to the

7   representations that are being made, and I'd like to address

8   just one that was made here today, which is that we had somehow

9   stuffed depositions of the defendants into the end of the

10  discovery period.

11       Your Honor, I can go through each one.  Hollis

12  Thompson, the plaintiffs asked for July 9.  He's on July 10 --

13       THE COURT:  I have not focused on that issue, but if

14  you'd like me to focus on it, I can.

15       MR. ROBERTS:  Well, I -- only, Your Honor, because

16  they're using this as support for the notion that the fact

17  discovery deadline has to be moved.  I would only say they,

18  they --

19       THE COURT:  Well, to be candid with you, Mr. Roberts,

20  my greatest concern is whether or not we're going to have

21  another round of motions after we get to the point where

22  Orbital takes the position that they've provided all of their

23  documents and that they've provided their final privilege log,

24  and I'll, I'll address all of those issues in whatever order

25  comes out today.

1          And I'm not saying that we will or that we won't.

2    The history of this case suggests to me that as much as I would

3    like to think that discovery can end and we're -- we've

4    resolved every issue, I'm, I'm hesitant to put too much into

5    that, into that hope, and so I'm trying to fashion a -- the

6    last thing I want to do is extend discovery.  It's not good for

7    the Court.  But I also want to make sure that we've given

8    everyone a fair shake to get what they need in this case and

9    move towards, towards the ultimate resolution of it on

10   dispositive motions.

11          MR. ROBERTS:  Well, and I think I -- I certainly

12   appreciate it, Your Honor.  I think I was just getting to the

13   fair shake part, which was to say that, you know, the

14   defendants unilaterally superimposed a bunch of dates, and

15   almost all of those dates within one or two days of the dates

16   we agreed to have the defendants be, be deposed, and so there

17   was no, you know, movement of these dates off to the end or

18   anything of that, of that like.

19          And, in fact, I would note that in the last two weeks

20   of the discovery period, we only, to my knowledge only

21   currently have two depositions in this case that are, that are

22   scheduled for those last two weeks.  So it's hardly -- two

23   depositions of, I should say, Your Honor, of individuals which

24   we represent.

25          And so it's not a scenario that, as I see it, where

50

1    we're being crammed on that point.

2              THE COURT:  Thank you.

3              MR. HERMAN:  May I make two brief points, Your Honor?

4    And I'll sit down.

5              First, to clarify what I said, the depositions moved

6    from before the expert disclosure date, which is today, to

7    after, and we laid it out in our papers.  I won't belabor the

8    point, but that's, that's exactly what's happened.

9              Secondly, we narrowed -- we issued one set of

10   document requests on March 6, and we have consistently narrowed

11   those.  We've asked for less search terms, less hits on

12   documents, less custodians.  If that's more requests, then that

13   must be what he's referring to.  We've not issued subsequent

14   document requests after March 6.

15             THE COURT:  I understand.

16             MR. HERMAN:  Okay.  Thank you, Your Honor.

17             THE COURT:  Thank you.

18             This matter is before the Court on motions to modify

19   the scheduling order, and as I think the parties are well

20   aware, motions to extend discovery are disfavored, sometimes

21   strongly disfavored, and the parties initially made an effort

22   to extend discovery at the outset, and Judge Ellis decided that

23   he would limit that extension, and, you know, we're now having

24   to grapple with those challenges.

25             I am going to provide relief with regard to the

1    expert disclosure dates.  The plaintiffs are not required to

2    disclose their expert report today.

3            Extending the fact discovery is the more challenging

4    issue.  I'm going to do two things.  I'm going to modify the

5    schedule as follows:  The plaintiffs' expert report will be due

6    August 6, as requested; the opposition on August 24; rebuttal,

7    if any, on September 7.  All expert discovery must be completed

8    by September 14.

9            I will reluctantly extend the fact discovery until

10   September 7.  I believe the date suggested was September 10,

11   which is a Monday.  I'm ending fact discovery on September 7.

12           That will push the other dates as follows:  Pretrial

13   motions will be due September 21, oppositions October 5,

14   replies October 12.  Oral argument if Judge Ellis decides to

15   hold it will be October 19.

16           The final pretrial conference will be moved to

17   November 15.  I believe that the third Friday -- the third

18   Thursday of November is Thanksgiving, and he'll be holding

19   final pretrials the week before; and therefore, the 26(a)

20   disclosures will be due November 12 and objections on

21   November 26.

22           I'm going to grant this extension with the following

23   limitations:  There will be no other extensions of any kind,

24   and I'm foreclosing even asking for such extensions.

25           I am foreclosing asking for further discovery, and I

52

1    believe the plaintiff has emphasized the fact that the only

2    requests made have been the March 6 requests, and everything

3    since then has been an effort to try and obtain those

4    documents.  Whether they're viewed as narrowing or expanding is

5    a difference left to the lawyers, but there can be no new

6    requests for discovery.

7            I am in no way permitting the expansion of the number

8    of depositions, and I am very clearly admonishing counsel to be

9    very careful if there are requests to expand the depositions

10   and that the bar will be set extremely high.  As you heard from

11   other motions here this morning, having made strategic

12   decisions earlier in a case does not give you leave to make

13   other decisions later on because you think it might be helpful.

14   It would have to be a demonstration that despite all best

15   efforts, there was no way of possibly knowing that such a

16   deposition would be necessary.

17           I'm going to require that defendants provide a final

18   and complete privilege log by next Friday at noon.  I'm doing

19   so based on counsel's representation that all documents that

20   are not being withheld will have been provided by the end of

21   today.

22           I'm going to require that all documents be provided,

23   if any are to be provided, after my review of the sample

24   privilege documents on Monday, by Friday at noon the 13th, so

25   that's directed to Deloitte and Pricewaterhouse.  If for some

53

1    reason the issue is not resolved by Monday by close of

2    business, I will address that because I don't want the Court to

3    be creating a problem, but if there are any documents that are

4    to be turned over.

5              Actually, let me clarify that.  With regard to

6    Deloitte and Pricewaterhouse setting aside the privilege log

7    and those documents which will not be turned over unless

8    further action by the Court, what is the, the time by which

9    those documents that are outstanding will be provided?  Are

10   there any left at all that have not been provided by Deloitte

11   other than 39 at this point?  I don't think so.

12             MR. WARDEN:  All, all the workpapers have -- within

13   the scope of the agreement with plaintiffs have been produced.

14             THE COURT:  Is that correct?

15             MR. JONES:  As to workpapers, you're correct.  That's

16   correct, Your Honor, but we have continuing discussions with

17   regard to production of e-mails specifically, search terms and

18   (inaudible).

19             THE COURT:  Well, that's not before me, but I

20   recommend that you resolve that as quickly as possible given

21   the timelines that I'm setting out --

22             MR. JONES:  Yes, Your Honor.

23             THE COURT:  -- but that's fine.

24             MR. SU:  Your Honor, from PwC's perspective, the

25   7,700, as aforementioned, will be produced by the end of the

1   day.  We expect sometime next week to be able to produce the 15

2   documents that we've talked about.

3          I'll just be frank with Your Honor, the underlying

4   workpapers may be a bit of a challenge as we try to get our

5   arms around them, even if there are any that exist, but we'll

6   undertake to do that as soon as possible, but there's no

7   question the 15 will be produced next week.

8          THE COURT:  Okay.  And I'll require that they be

9   produced by Friday at noon on the 13th.

10          MR. SU:  Yes, Your Honor.

11          THE COURT:  Is there any outstanding issue that I

12   have failed to address this morning on the part of the

13   plaintiffs?

14          MR. HERMAN:  The only open issue, Your Honor, would

15   be the motion to seal, and we can stand on the papers unless

16   you would like to hear argument on that.

17          THE COURT:  I do not need to hear argument on motions

18   to seal, thank you.

19          MR. ROBERTS:  Your Honor, if I may add just a couple

20   of clarifying points?

21          THE COURT:  Yes.

22          MR. ROBERTS:  Your Honor, as I, as I noted when we

23   talked previously, the -- one thing about a privilege review,

24   of course, is you're looking over the documents to see whether

25   they should be put on a privilege log or should otherwise be

55

1    produced, so, of course, what would also happen next week would

2    be the production of any documents that have been determined

3    not to be privileged and were not on a log, and I just wanted

4    to clarify that point because Your Honor had said by today,

5    all, all documents being produced.

6            THE COURT:  That's fine.  I understand that.  I would

7    expect that whatever documents may come off the privilege list

8    next week would be far smaller than the documents produced

9    today.

10           MR. ROBERTS:  Of course, Your Honor.

11           The other thing, Your Honor, I would like to just

12   make sure to raise is that, of course, you had ordered a

13   production today of documents largely from third parties, in

14   fact, entirely from third parties:  Dickinson Wright, Hogan

15   Lovells, and Alvarez & Marsal, the entities that were in

16   attendance at these witness interviews, and you had ordered the

17   production of all notes, all draft memos of those witness

18   interviews to be produced today.

19           My understanding is that all of those entities indeed

20   are producing those materials today, but I did want to seek in

21   light of Your, Your Honor's comments today a little bit of

22   clarification on that because I don't think those -- those

23   entities are not to my knowledge producing all factual

24   information related to the investigation.  They are producing

25   those categories:  notes, draft memos, everything going towards

56

1   these witness -- the raw materials that led up to the formation

2   of the witness interview reports.

3           And I think if there is -- I don't believe anything

4   more than that was before Your Honor, and I believe that's

5   consistent with everything that, that you said, but I certainly

6   want to make sure that we are -- we and these other entities,

7   these third-party entities are not missing any further

8   instructions that you are looking for on, on that topic.

9           THE COURT:  I'm not sure -- you know, it's not been

10  briefed.  It's not before me.  I'm not sure that it's helpful

11  for me to provide an advisory view on that.

12          MR. ROBERTS:  No, I, I appreciate that, Your Honor.

13  I just, of course, we're very sensitive to the notion that we

14  want to make sure we are producing exactly, you know, what's

15  required to be produced, and so --

16          THE COURT:  Well, the best way to solve that problem

17  is to err on the side of producing more rather than less.

18          MR. ROBERTS:  Well, of course, Your Honor, and we, we

19  had instructed all of these third-party entities and given them

20  the exact language that was contained in, in Your Honor's

21  remarks on June 25 to do so.  So I guess I want to say that we

22  are clearly doing our, our best to convey that.  I know that

23  the plaintiffs have also conveyed their views as well, at least

24  to Alvarez & Marsal, so, you know, we're doing our best on

25  this, on this topic.

57

1          THE COURT:  This raises an important point that I

2     will end with.  This is a case in which I think the parties

3     should make yet another attempt to resolve it.  There's been a

4     lot of money and time spent on this case, and there is still a

5     lot of money and time to be spent on this case.

6          I know that the parties engaged in a good faith

7     effort to resolve it through a private mediator and that that

8     was not successful; however, this Court is always willing to

9     provide an opportunity for the parties to have a mediation that

10    doesn't cost anybody any money, and I'm certainly willing to do

11    that.

12         Given the nature of the case and the fact that there

13    has been so much litigation of a non-dispositive nature and

14    that there's the possibility that there could be more, I would

15    not in any way fault the parties for wanting to have someone

16    else mediate a settlement conference if you felt that that was

17    worthwhile.  I'm not requiring it, but I do think that it would

18    be worthwhile.

19         My colleague, Judge Brinkema, occasionally,

20    especially in complicated matters, and this would qualify, has

21    been willing to mediate settlements, and she would be willing

22    to do so in this case, and she has time.  I'm not suggesting

23    that you're required to go to her over me, but I wouldn't -- I

24    would encourage you to discuss this when you leave.  It might

25    be a good time, and she may have the ability to fit you in to

58

1    do that.

2           So that is what I will leave you with.  I will issue

3    an order promptly.  I will expect the sample documents to be

4    provided by Monday at noon, and I hope that you'll be able to

5    pursue the rest of discovery without needing intervention of

6    the Court.

7           MR. ROBERTS:  Thank you, Your Honor.

8           A VOICE:  Thank you, Your Honor.

9           A VOICE:  Thank you.

10          A VOICE:  Thank you, Your Honor.

11          THE COURT:  Mr. Reilly, do you want to address the

12    Court?

13          MR. REILLY:  I have one quick question, and we'll

14    discuss this among counsel.  We had talked about the last time

15    a hearing date for the class certification motion, whether the

16    Court wants to consider the date.  The briefing schedule for

17    that stays the same under your modified schedule.  Just rather

18    than jam a date on --

19          THE COURT:  There's no reason to change it, is there?

20          MR. REILLY:  The briefing schedule, not at all, Your

21    Honor.

22          THE COURT:  For a class certification.

23          MR. REILLY:  That's all --

24          THE COURT:  And you don't have an oral argument date

25    scheduled with Judge Ellis for that?

1          MR. REILLY:  Correct.  We did not include it in our

2    proposed order the last time we submitted one by agreement, and

3    rather than simply notice it for a date that suits the parties,

4    we thought we would -- and knowing how busy Judge Ellis's

5    schedule is --

6          THE COURT:  I'll look into that.

7          MR. REILLY:  Or I could file a request for

8    designation of a hearing.

9          THE COURT:  That's fine.  Either way is fine.

10          MR. REILLY:  Thank you, Your Honor.

11          THE COURT:  Okay.  Thank you.  Court will be in

12    recess.

13                          (Which were all the proceedings

14                           had at this time.)

15

16              CERTIFICATE OF THE TRANSCRIBER

17      I certify that the foregoing is a correct transcript from

18    the official electronic sound recording of the proceedings in

19    the above-entitled matter.

20

21                    _____
                                 /s/
22                        Anneliese J. Thomson

23

24

25