UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| STEVEN KNURR, Individually and on Behalf of All Others Similarly Situated, | ) ) | Civil Action No. 1:16-cv-01031-TSE-MSN |
| Plaintiff, | ) ) ) | CLASS ACTION |
| vs. | ) ) | |
| ORBITAL ATK, INC., *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II. ARGUMENT ........................................................................................................3

    A.  Defendants concede that nearly every prerequisite for class certification
        has been satisfied in this case.................................................................................3

    B.  Common questions of reliance predominate because the Class is entitled to
        the fraud-on-the-market presumption of reliance ....................................................4

    C.  Defendants have failed to rebut the presumption of reliance ................................7

        1.  Defendants have failed to prove a lack of price impact by a
            preponderance of the evidence.....................................................................7

        2.  Unable to demonstrate a complete lack of price impact, Defendants
            improperly attempt to raise issues of materiality and loss causation.........12

    D.  Defendants' *Comcast* argument fails ...................................................................14

    E.  The Pension Trust and Wayne County are adequate class representatives ...........16

III. CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Angley v. UTI Worldwide Inc.*,
   311 F. Supp. 3d 1117, 1126 (C.D. Cal. 2018) ............................................................6

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)..............................................................................................12, 13

*Baker v. Seaworld Entm't, Inc.*,
   No. 14cv2129-MMA (AGS), 2017 WL 5885542 (S.D. Cal. Nov. 29, 2017) ...............8, 9, 16

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1998).....................................................................................................4

*Burges v. BancorpSouth, Inc.*,
   No. 3:14-CV-1564, 2017 WL 2772122 (M.D. Tenn. June 26, 2017) ................................9, 11

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989) ................................................................................1

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, HQ*,
   No. RWT 16-cv-2625, 2018 WL 280420 (D. Md. June 8, 2018)................................... *passim*

*City of Livonia Emps. Ret. Sys. v. Wyeth*,
   284 F.R.D. 173 (S.D.N.Y. 2012) ................................................................................17

*City of Sterling Heights Gen.Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
   No. 12-5275, 2015 WL 5097883 (D.N.J. Aug. 31, 2015) .................................................10, 16

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013).......................................................................................................2

*Cooper v. Thoratec Corp.*,
   No. 14-cv-0360 CW, 2018 WL 2117337 (N.D. Cal. May 8, 2018) .......................................11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011).................................................................................................12, 14

*Fangman v. Genuine Title, LLC*,
   No. RDB-14-0081, 2016 WL 6600509 (D. Md. Nov. 8, 2018)..............................................19

*Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*,
   Nos. 3:09-cv-00882, 3:09-01211, 2010 WL 1790763, at *3 (M.D. Tenn. Apr.
   30, 2010) ...................................................................................................................20

**Page**

*Gariety v. Grant Thornton*,
    368 F.3d 356 (4th Cir. 2004) ................................................................4

*Gebhardt v. ConAgra Foods, Inc.*,
    335 F.3d 824 (8th Cir. 2003) ................................................................9

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ..............................................................11

*Groupon, Inc. Sec. Litig.*,
    No. 12 C 2450, 2015 WL 1043321 (N.D. Ill. Mar. 5, 2015) ...........................6, 7, 16

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003) ..........................................................14, 19

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014) .................................................................2, 7, 8

*Hatamian v. Advanced Micro Devices, Inc.*,
    Case No.: 14-cv-00226 YGR, 2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ..........8, 9, 14, 16

*IBEW Local 98 Pension Fund v. Best Buy Co. Inc.*,
    818 F.3d 775 (8th Cir. 2016) ............................................................8, 9

*In re Am. Italian Pasta Co. Sec. Litig.*,
    No. 05-0725-CV-W-ODS, 2007 WL 927745 (W.D. Mo. Mar. 26, 2007) ...................17

*In re Banc of Cal. Sec. Litig.*,
    No. SACV 17-00118, 2018 WL 3868922, at *7 (C.D. Cal. May 31, 2018) ................13

*In re BancorpSouth, Inc.*,
    No. 17-0508, 2017 WL 4125647 (6th Cir. Sept. 18, 2017) ...............................8

*In re BearingPoint, Inc. Sec. Litig.*,
    232 F.R.D. 534 (E.D. Va. 2006) ...........................................................3

*In re Computer Scis. Corp. Sec. Litig.*,
    288 F.R.D. 112 (E.D. Va. 2012) ...................................................5, 6, 10, 17

*In re Finisar Corp. Sec. Litig.*,
    No. 5:11-cv-01252-EJD, 2017 WL 6026244 (N.D. Cal. Dec. 5, 2017) ..................10

*In re Gen. Elec. Sec. Litig.*,
    No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ..................17

**Page**

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
    Case 1:10-cv-03461-PAC, 2018 WL 3854757 (S.D.N.Y. Aug. 14, 2018) ............................11

*In re Heckman Corp. Sec. Litig.*,
    No. 10-378-LPS-MPT, 2013 WL 2456104 (D. Del. June 6, 2013).........................................15

*In re Mills Corp. Sec. Litig.*,
    257 F.R.D. 101 (E.D. Va. 2009) ............................................................................................18

*In re NII Holdings, Inc. Sec. Litig.*,
    311 F.R.D. 401 (E.D. Va. 2015) ...................................................................................6, 14, 16

*In re SLM Corp. Sec. Litig.*,
    No. 08 Civ. 1029 (WHP), 2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) ..................................12

*In re UTStarcom, Inc. Sec. Litig.*,
    No. C 04-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010)........................................17

*In re Vivendi S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)...........................................................................................9, 11

*Iron Workers Local No. 25, Pension Fund v. Credit-Based Asset Servicing &*
    *Securitization, LLC*,
    616 F. Supp. 2d 461 (S.D.N.Y. 2009)...................................................................................17

*Johnson v. Aljian*,
    257 F.R.D. 587 (C.D. Cal. 2009) ..........................................................................................18

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
    No. 0:15-2393-MGL, 2017 WL 427450 (D.S.C. Sept. 28, 2017) ...............................11, 15, 16

*Krogman v. Sterritt*,
    202 F.R.D. 467 (N.D. Tex. 2011) ............................................................................................1

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
    756 F. Supp. 2d 928 (N.D. Ill. 2010) ...................................................................................16

*Local 703, I.B. v. Regions Fin. Corp.*,
    282 F.R.D. 607 (N.D. Ala. 2012).........................................................................................18

*Morris v. Wachovia Sec. Inc.*,
    223 F.R.D. 284 (E.D. Va. 2004) ..........................................................................................20

**Page**

*Neale v. Volvo Cars of N. Am., LLC,*
   794 F.3d 353 (3d Cir. 2015)......................................................................15

*Pirnik v. Fiat Chrysler Autos., N.V.,*
   No. 15-CV-7199 (JMF), 2018 WL 3130596 (S.D.N.Y. Jun 26, 2018) ...................12

*PolyMedica Corp. Sec. Litig.,*
   453 F. Supp. 2d 260 (D. Mass. 2006) ........................................................6

*Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.,*
   844 F. Supp. 2d 498 (S.D.N.Y. 2012)........................................................17

*Roach v. T.L. Cannon Corp.,*
   778 F.3d 401 (2d Cir. 2015)....................................................................15

*Schleicher v. Wendt,*
   No. 1:02-cv-1332-DFH-TAB, 2009 WL 761157 (S.D. Ind. Mar. 20, 2009) ..........6

*Shiring v. Tier Techs, Inc*
   244 F.R.D. 307 (E.D. Va. 2007).............................................................20

*Silverman v. Motorola, Inc.,*
   259 F.R.D. 163 (N.D. Ill. 2009)..............................................................17

*Sykes v. Mel S. Harris and Assocs. LLC,*
   780 F.3d 70 (2d Cir. 2015)......................................................................15

*Todd v. STAAR Surgical Co.,*
   No. CV-14-05263-MWF-RZ, 2017 WL 821662 (C.D. Cal. Jan. 5, 2017)..........7, 16

*United Food & Commercial Workers Union v. Chesapeake Energy Corp.,*
   281 F.R.D. 641 (W.D. Okla. 2012)...........................................................17

*Waggoner v. Barclays PLC,*
   875 F.3d 79 (2d Cir. 2017), *cert denied,* 138 S. Ct. 1702 (2018) .............5, 8, 11, 14

*Washtenaw Cty. Empls. Ret. Sys. v. Walgreen Co.,*
   No. 15-cv-3187, 2018 WL 1535156 (N.D. Ill. Mar. 29, 2018) ....................15, 16

*Willis v. Big Lots, Inc.,*
   242 F. Supp. 3d 634 (S.D. Ohio 2017) .......................................................9

*Willis v. Big Lots, Inc.,*
   No. 2:12-CV-604, 2017 WL 1074048 (S.D. Ohio Mar. 17, 2017)......................6

## I.    INTRODUCTION

Defendants concede that nearly every prerequisite to class certification has been satisfied in this federal securities action, challenging only the predominance requirement for Plaintiffs' §10(b) claim and the adequacy of proposed class representatives Construction Laborers Pension Trust of Greater St. Louis (the "Pension Trust") and Wayne County Employees Retirement System ("Wayne County").  Defendants' attacks on predominance and adequacy are not only contrary to the evidence in this case, but have been repeatedly rejected by courts in the Fourth Circuit and around the country.

First, common questions of reliance predominate because Plaintiffs have established that the market for Orbital ATK stock was efficient throughout the Class Period, entitling the Class to the fraud-on-the-market presumption of reliance.  Defendants' expert does not opine that the market for Orbital ATK stock was inefficient.  Nor could he, as Orbital ATK was a multi-billion dollar corporation that traded on one of the largest and most liquid markets in the world: the New York Stock Exchange ("NYSE").  This, and the other factors articulated by the Fourth Circuit and in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) ("*Cammer*") and *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2011) ("*Krogman*"), demonstrate market efficiency, and Defendants do not contend otherwise.  Instead, Defendants resort to criticizing limited aspects of the manner in which Plaintiffs' expert, Professor Steven P. Feinstein Ph.D., CFA ("Dr. Feinstein") performed his event study, which Defendants' own expert concedes is a "standard tool employed by financial economists in this context."  *See* Expert Report of Jordan Milev, Ph.D. (ECF No. 308-1) ("Milev Rpt.") at ¶22.  Dr. Feinstein's methodology and analyses are sound, and Defendants' criticisms do nothing to undercut his opinion that Orbital ATK stock traded in an efficient market.

Second, Defendants have failed to meet *their* burden of rebutting the presumption of reliance because they have failed to demonstrate a complete lack of price impact by a preponderance of the evidence.  Based on an incorrect and unsupported reading of the Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2414 (2014) ("*Halliburton II*"), Defendants argue they are only required to demonstrate that the alleged misrepresentations in this case did not cause the stock price to increase ("front-end" price impact) in order to rebut the presumption of reliance.  Numerous courts including those within the Fourth Circuit, have rejected that argument and, as a result, require defendants to demonstrate both a lack of front-end price impact *and* a lack of "back-end" price impact (*i.e.*, that the alleged corrective disclosure did not cause the stock price to decrease) in order to rebut the presumption.  That is particularly true where, as here, Plaintiffs allege that Defendants' misrepresentations and omissions maintained the inflation in Orbital ATK's stock price. Defendants cannot show a lack of price impact for the August 10, 2016 corrective disclosure, which Defendants' own expert concedes caused a statistically significant decline in the price of Orbital ATK stock.  Defendants' remaining "price impact" arguments are, in reality, nothing more than disguised materiality and loss causation arguments, which Supreme Court precedent dictates cannot be considered at class certification.

Third, common questions of damages predominate for Plaintiffs' §10(b) claims, and Defendants' argument based on *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ("*Comcast*"), an antitrust case, has been repeatedly rejected by courts in securities fraud class actions like this one.  Plaintiffs are relying on the well-established and widely accepted "out-of-pocket" damages model to calculate damages on a class-wide basis in this case.  Defendants' purported challenges

to Plaintiffs' damages methodology are based on pure speculation and they provide no credible argument that individualized damages issues will overwhelm this case.

Finally, Defendants' efforts to portray the Pension Trust and Wayne County as inadequate should be rejected.  Plaintiffs are precisely the type of institutional investors that Congress envisioned leading securities fraud class actions.  The Pension Trust and Wayne County have demonstrated that they are committed to vigorously prosecuting this case on behalf of the Class and, contrary to Defendants' arguments, are knowledgeable about the facts and claims alleged.  Defendants' argument that Plaintiffs' participation in a portfolio monitoring program somehow renders them inadequate is similarly misguided and is routinely rejected by courts.

## II.    ARGUMENT

### A.    Defendants concede that nearly every prerequisite for class certification has been satisfied in this case

Rule 23's requirements for class certification are to be construed liberally and are routinely met in federal securities fraud actions.  *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006) (Ellis, J.); *see also* Plaintiffs' Memorandum of Law in Support of Motion for Class Certification (ECF No. 218), ("Mot.") at 5-6 (citing cases).  Plaintiffs have shown that this case readily satisfies the requirements of Rule 23(a) and (b)(3).  Mot. at 6-19. Indeed, Defendants all but concede that class treatment is appropriate for Plaintiffs' §14(a) claims, as Defendants do not dispute that the requirements of numerosity, commonality, typicality, predominance and superiority have been satisfied.  Because Defendants' challenges to adequacy should be rejected, as discussed below, a class should be certified for Plaintiffs' §14(a) claims.  Defendants also concede that the requirements of numerosity, commonality, typicality, and superiority have been met for Plaintiffs' §10(b) claims.  Defendants' only challenges to class

certification on Plaintiffs' §10(b) claims are rote arguments as to predominance and adequacy, which have been repeatedly rejected in securities actions such as this one.

### B. Common questions of reliance predominate because the Class is entitled to the fraud-on-the-market presumption of reliance

Plaintiffs have demonstrated that the market for Orbital ATK stock was efficient throughout the Class Period, entitling the Class to the fraud-on-the-market presumption of reliance established in *Basic Inc. v. Levinson*, 485 U.S. 224, 227 (1998).[1]  Mot. at 13-17. Defendants *do not* contend that the market for Orbital ATK stock was inefficient, nor can they, as the factors courts consider in analyzing market efficiency are easily met in this case.[2]  Orbital ATK stock was actively traded on the NYSE, a fact which itself gives rise to a presumption that the market for Orbital ATK stock was efficient.  *See* Mot. at 13-14.  Additionally, the average weekly trading volume of Orbital ATK stock during the Class Period was more than 3.8% of the outstanding shares, and at least 16 analysts followed Orbital ATK.  In the Fourth Circuit, these factors alone are sufficient to demonstrate market efficiency.  Mot. at 13-14; *Gariety v. Grant Thornton*, 368 F.3d 356 (4th Cir. 2004).

Dr. Feinstein also examined market efficiency by reference to the additional factors set forth in *Cammer* and *Krogman*; Mot. at 14-17; Expert Report of Steven P. Feinstein, Ph.D., CFA (ECF No. 219-1) ("Feinstein Rpt."), ¶¶40-50.  Aside from their critiques of Dr. Feinstein's event study (*Cammer* factor 5), Defendants do not challenge his conclusions that the remaining four *Cammer* factors and the *Krogman* factors are evidence of the efficiency of the market for Orbital

---

[1]   Defendants do not dispute that the other prerequisites for invoking the fraud-on-the-market presumption of reliance have been satisfied in this case.  Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Opp.") at 13.

[2]   Transcript of Jordan Milev, Ph.D., August 8, 2018 (attached as Ex. A) ("Milev Tr.") at 99:7-15; 236:24-25 (testifying that his assignment did not include an analysis of whether Orbital ATK traded in an efficient market).

ATK stock.  Milev Tr. at 102:16-106:15 (testifying that he had no basis to dispute Dr. Feinstein's analysis of the *Cammer* and *Krogman* factors).  Because Defendants and their expert concede that these factors are satisfied, market efficiency is plainly established, regardless of Dr. Feinstein's event study.  *See, e.g.*, *In re Computer Scis. Corp. Sec. Litig.*, 288 F.R.D. 112, 120 (E.D. Va. 2012) (Ellis, J.) ("Fourth Circuit precedent does not require that the efficiency of the market be proved using an event study."); *Waggoner v. Barclays PLC*, 875 F.3d 79, 98 (2d Cir. 2017), *cert denied*, 138 S. Ct. 1702 (2018) (holding event study not required and market efficiency established where "four *Cammer* factors and the three *Krogman* factors[] weighed so clearly in favor of concluding that the market for [the security] was efficient that the Defendants did not even challenge them"); *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, HQ*, No. RWT 16-cv-2625, 2018 WL 280420, at *9 (D. Md. June 8, 2018) ("Because the first four *Cammer* factors are met in this case, in addition to the *Krogman* factors . . . the Court concludes that [the company's] stock was traded in an efficient market."); *see also* Mot. at 13-15.

Though not required to demonstrate market efficiency, Dr. Feinstein conducted an event study and collective event tests, which provide empirical evidence of the cause-and-effect relationship between the dissemination of company-specific information and movements in Orbital ATK's stock price (*Cammer* factor 5).  *See* Feinstein Rpt. at ¶¶101-166.  Defendants do not challenge Dr. Feinstein's use of an event study to test for market efficiency, which Defendants' expert admits is a "standard tool employed by financial economists."[3]  Nor do Defendants seek to strike or exclude any portion of Dr. Feinstein's analyses.  Rather, Defendants merely claim Dr. Feinstein's analyses were "highly generalized" and suffer from "bias and other

---

[3]   Milev Rpt., ¶22; *see also* Milev Tr. at 122:12-15 (same).

flaws." Opp. at 17-24. Defendants' criticisms misconstrue Dr. Feinstein's analyses and are unscientific, unsound and do nothing to undermine his opinion. *See* Rebuttal Report, Professor Steven P. Feinstein, Ph.D., CFA ("Feinstein Rebuttal") (attached as Ex. B); *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 412 (E.D. Va. 2015) (holding that selection bias and other critiques "do not successfully rebut Lead Plaintiffs' showing on the fifth *Cammer* factor").[4]

For example, contrary to Defendants' claim of "selection bias" (Opp. at 19-20), Dr. Feinstein's selection of news days – including the August 10, 2016 corrective disclosure – was based on objective criteria and reflects the generally accepted and widely used event study methodology. Feinstein Rebuttal at ¶¶24-39; *see also Groupon, Inc. Sec. Litig.*, No. 12 C 2450, 2015 WL 1043321, at *6 (N.D. Ill. Mar. 5, 2015) (rejecting selection bias arguments where "[Dr.] Feinstein first selected the news dates based on objective criteria (unexpected earnings-related reports) before studying any effect on price"); *see also, Emergent*, 2018 WL 2840420, at *7 (rejecting argument that inclusion of the corrective disclosure date was improper); *Willis v. Big Lots, Inc.*, No. 2:12-CV-604, 2017 WL 1074048 (S.D. Ohio Mar. 17, 2017) (same).[5] Defendants' further suggestion that Dr. Feinstein should have analyzed the stock reaction on the days of each false and misleading statement (*see* Opp. at 21-22) is erroneous, as Dr. Feinstein's review of objective criteria showed the announcements on certain of those days reported essentially expected information. *See* Feinstein Rpt. at ¶¶111-120; *Computer Scis.*, 288 F.R.D. at 121 (rejecting argument that every misstatement day must be analyzed "because there is no

---

[4]   *See also id.* (rejecting attacks on plaintiffs' expert's event study); *Angley v. UTI Worldwide Inc.*, 311 F. Supp. 3d 1117, 1126 (C.D. Cal. 2018) (rejecting purported flaws or biases in event study).

[5]   Indeed, Dr. Feinstein "used a more rigorous approach" than the expert in *PolyMedica Corp. Sec. Litig.*, 453 F. Supp. 2d 260 (D. Mass. 2006) because, "[r]ather than cherry-pick days with the biggest changes in price, Dr. Feinstein collected a sample of days that he deemed contained important news." *Schleicher v. Wendt*, No. 1:02-cv-1332-DFH-TAB, 2009 WL 761157, at *7 (S.D. Ind. Mar. 20, 2009); *see also* Feinstein Rebuttal at ¶¶24-39.

reason to believe that the stock price would rise based on these announcements of essentially status quo, expected information"); *Todd v. STAAR Surgical Co.*, No. CV-14-05263-MWF-RZ, 2017 WL 821662, at *9 (C.D. Cal. Jan. 5, 2017) (rejecting selection bias arguments where Dr. Feinstein determined certain "announcements were unlikely to significantly affect valuation"). And Dr. Feinstein's identification of four days with statistically significant price movements is more than sufficient to show market efficiency throughout the Class Period.[6] *See Groupon*, 2015 WL 1043321, at *5 (holding two days was sufficient); *STAAR Surgical*, 2017 WL 821662 (three days); *Emergent*, 2018 WL 2840420, at *7 (one day).

In short, Defendants concede that the factors necessary to establish market efficiency have been satisfied. Dr. Feinstein's event study and collective tests simply confirm this admitted fact. Because the market for Orbital ATK stock was efficient throughout the Class Period, the Class is entitled to rely on the fraud-on-the-market presumption of reliance.

### C. Defendants have failed to rebut the presumption of reliance

#### 1. Defendants have failed to prove a lack of price impact by a preponderance of the evidence

Having demonstrated that Plaintiffs are entitled to invoke the fraud-on-the-market presumption of reliance in this case, the burden shifts to Defendants to rebut that presumption. In an attempt to do so, Defendants raise ineffective arguments that are contrary to Supreme Court precedent. To start, Defendants erroneously claim Plaintiffs have the burden "to show price impact." Opp. at 2, 14. It is *Defendants*, not Plaintiffs, who bear the burden of demonstrating a lack of price impact. *Halliburton II*, 134 S. Ct at 2414 (declining to require plaintiffs to prove

---

[6]   Defendants' claim that Dr. Feinstein only analyzed four or six dates during the Class Period is wrong, as it overlooks the fact that the event study methodology Dr. Feinstein used in this case compares the stock price movements on earnings announcement event dates with the stock price dynamics of *all* other days in the regression estimation period – 304 trading days in this case. Feinstein Rebuttal at ¶¶37-39.

price impact and placing the burden on defendants); *Hatamian v. Advanced Micro Devices, Inc.*, Case No.: 14-cv-00226 YGR, 2016 WL 1042502, at *7 (N.D. Cal. Mar. 16, 2016) ("Defendants misconstrue the burden to show no price impact and erroneously place it with Plaintiffs").  To do so, "Defendants must show by a preponderance of the evidence that the alleged misstatements caused ***no*** price impact whatsoever." *Emergent*, 2018 WL 2840420, at *6 (emphasis in original); *Waggoner*, 875 F.3d at 101 (holding that defendants must demonstrate a lack of price impact by preponderance of the evidence).

Defendants argue they have rebutted the presumption of reliance based on an incorrect reading of *Halliburton II*, which they claim means Defendants can prevail by demonstrating a lack of front-end price impact only (regardless of back-end price impact).  Opp. at 7-8.  This is wrong.  The Supreme Court in *Halliburton II* held the presumption may only be "'rebutted by appropriate evidence,' including evidence that the asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock."  134 S. Ct. at 2414.  Thus, the plain language of *Halliburton II* shows that "price impact may be demonstrated either at the time that the alleged misrepresentations were made, *or at the time of their correction*."  *In re BancorpSouth, Inc.*, No. 17-0508, 2017 WL 4125647, at *1 (6th Cir. Sept. 18, 2017); *see also Emergent*, 2018 WL 2840420, at *9 ("The Supreme Court in *Halliburton II* made clear that a corrective disclosure is an appropriate landmark from which to determine price impact."); *Baker v. Seaworld Entm't, Inc.*, No. 14cv2129-MMA (AGS), 2017 WL 5885542, at *37 (S.D. Cal. Nov. 29, 2017) ("Defendants cannot rebut the presumption of reliance by only arguing that the alleged misrepresentations did not affect the stock price.").[7]  Thus, in order to rebut the

---

[7]   In support of their disjunctive view of *Halliburton II*, Defendants primarily rely on the Eighth Circuit's decision in *IBEW Local 98 Pension Fund v. Best Buy Co. Inc*., 818 F.3d 775, 884 (8th Cir. 2016) (Opp. at 8, 9).  That non-binding, out-of-circuit decision not only conflicts

presumption of reliance, Defendants must demonstrate "that the alleged misstatements caused **no** price impact whatsoever" at the time of the alleged misstatements *and* at the time of the corrective disclosure.  *Emergent*, 2018 WL 2840420, at *6; *Burges v. BancorpSouth, Inc.*, No. 3:14-CV-1564, 2017 WL 2772122, at *9 (M.D. Tenn. June 26, 2017); *Hatamian*, 2016 WL 1042502, at *7 ("Price impact in securities fraud cases is not measured solely by price increase on the date of a misstatement; it can be quantified by decline in price when the truth is revealed.").

That is particularly true here because Plaintiffs allege that Defendants' misrepresentations and omissions maintained the inflated price of Orbital ATK stock.  *See In re Vivendi S.A. Sec. Litig.*, 838 F.3d 223, 259 (2d Cir. 2016) (holding that "securities-fraud defendants cannot avoid liability for an alleged misstatement merely because the misstatement is not associated with an uptick in inflation").  Plaintiffs allege, *inter alia*, that Defendants omitted to disclose that: (i) the Lake City Contract was operating at a $375 million loss (ii) Orbital ATK's financial statements were materially misstated in violation of Generally Accepted Accounting Principles; and (iii) the Company was suffering from material weaknesses in internal controls.  Mot. at 3-4.  Given the material omissions alleged in this case, it is unsurprising that Orbital ATK's stock price did not react in a statistically significant manner to every misrepresentation, as there is no evidence that

---

with the Eighth Circuit's own prior decision, *see Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 831-32 (8th Cir. 2003) (recognizing that "[i]f a stock does not appreciate as it would have absent the fraudulent conduct," *i.e.*, it maintains its value, "investors have suffered a harm"), it runs contrary to the overwhelming authority cited herein.  *See also, e.g.*, *Emergent*, 2018 WL 2840420, at *6; *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 657 (S.D. Ohio 2017).  *Best Buy* is also distinguishable on its facts, as defendants there had produced "overwhelming evidence of no price impact" based on plaintiffs' expert's testimony that price inflation was established by false statements that were held inactionable on other grounds and the operative actionable statements (made only two hours later) were substantively "'virtually the same.'"  818 F.3d at 783.  No such facts exist here.  *See also Seaworld*, 2017 WL 5885542, at *11 (distinguishing *Best Buy* because "the Eighth Circuit noted that the "allegedly 'inflated price' was established by [a] non-fraudulent" disclosure.).

investors had different expectations. *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, No. 12-5275, 2015 WL 5097883, at *12 (D.N.J. Aug. 31, 2015) ("[I]t also does not necessarily follow from the mere absence of a statistically significant change in the stock price that there was no price impact."); Feinstein Rpt. at ¶107. As this Court has expressly recognized:

> [T]he argument that there would be a positive impact on stock price from each of the allegedly false statements misstates [plaintiffs'] argument by suggesting that [the plaintiffs] [are] implying that the price of the stock rose as a result of the announcements, rather than simply remaining inflated because of these announcements. Additionally, this theory is not in keeping with the key principle underlying the efficient market theory, namely that in an efficient market material, unexpected information will be timely reflected in the stock price.

*Computer Scis.*, 288 F.R.D. at 120. Indeed, "[b]y logic, if a company persists in withholding material information for a given time, thus artificially inflating the stock price, it would be reasonable to conclude that a significant change in price would only occur when the truth was revealed and not necessarily when additional misrepresentations are made."[8] *Emergent*, 2018 WL 2840420, at *9.

Applying the correct legal standard, Defendants have not rebutted the presumption of reliance because they have failed to demonstrate a lack of price impact on August 10, 2016, the date of the corrective disclosure in this case. On that day, Defendants revealed that Orbital ATK would be restating its financial statements due to material misstatements relating to the Lake City Contract and that the Company was suffering from material weaknesses in internal controls. Mot. at 4. Dr. Feinstein's event study demonstrated, and Defendants' expert concedes, that there was a statistically significant decline – *more than 22%* – in the price of Orbital ATK stock on

---

[8] Thus, Defendants' claim that there was supposedly no statistically significant "*positive* price changes on 11 of the 13" dates when Defendants made misstatements (Opp. at 8-9) proves nothing. And Defendants' reliance on *Finisar* does not advance their cause, as the plaintiff there – unlike here – was "not proceeding on a price maintenance theory." *In re Finisar Corp. Sec. Litig.*, No. 5:11-cv-01252-EJD, 2017 WL 6026244, at *8 (N.D. Cal. Dec. 5, 2017).

10

August 10, 2016, in reaction to Defendants' disclosures.  Feinstein Rpt. at ¶145; Milev Rpt. at

¶¶69-70; Milev Tr. at 203:23-204:5; 205:21-25 (admitting that the news disclosed on August 10,

2016 relates to Plaintiffs' allegations).  Defendants' failure to prove lack of price impact on the

back-end is fatal to their efforts to rebut the presumption of reliance in this case.  *See Emergent*,

2018 WL 2840420, at *9 (rejecting defendants' argument that they have sufficiently rebutted the

presumption of reliance by demonstrating a lack of price impact after the alleged misstatements);

*KBC Asset Mgmt. NV v. 3D Sys. Corp*., No. 0:15-2393-MGL, 2017 WL 427450, at *8 (D.S.C.

Sept. 28, 2017) ("[T]he Court is unable to say Defendants have presented evidence sufficient to

convince it there was no price impact associated with the . . . disclosure.").  *Waggoner*, 875 F.3d

at 104 (affirming district court's finding that "lack of price movement on the dates of the alleged

misrepresentations does not rebut the *Basic* presumption.").[9]

Defendants' argument that Plaintiffs have failed to demonstrate when or how any

"preexisting inflation" was introduced into Orbital ATK's stock price is a red herring.  "How the

stock became inflated in the first place is irrelevant because each subsequent false statement

prevented the price from falling to its true value and therefore caused the price to remain

elevated."  *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 418 (7th Cir. 2015); *see*

*also Vivendi*, 838 F.3d at 259 (holding that "theories of inflation maintenance and inflation

introduction are not separate legal categories"); *Cooper*, 2018 WL 2117337, at *5 (finding that

---

[9]   *Cooper v. Thoratec Corp.*, No. 14-cv-0360 CW, 2018 WL 2117337, at *4 (N.D. Cal. May 8, 2018) (rejecting argument by defendants that lack of statistically significant price increase following misstatement date rebutted the presumption of reliance); *In re Goldman Sachs Grp., Inc. Sec. Litig.*, Case 1:10-cv-03461-PAC, 2018 WL 3854757, at *4 (S.D.N.Y. Aug. 14, 2018) (finding "not persuasive" defendants' "attempts to demonstrate the misstatements' complete lack of price impact" and concluding defendants failed to rebut the *Basic* presumption by a preponderance of the evidence); *BancorpSouth, Inc.*, 2017 WL 2772122, at *10 (certifying class where defendants "ha[d] not rebutted th[e] change[s] in the stock prices at the time of [the corrective] disclosure").

plaintiffs do "not need [to] allege separate theories of inflation introduction and inflation maintenance"); *Pirnik v. Fiat Chrysler Autos., N.V.*, No. 15-CV-7199 (JMF), 2018 WL 3130596, at *3 (S.D.N.Y. Jun 26, 2018) (granting class certification and rejecting defendants' assertions that Plaintiffs "must identify when and how any alleged inflation would have entered the stock").[10]   Additionally, because the manner and extent of any inflation is subject to common proof, it is not at issue on class certification. *In re SLM Corp. Sec. Litig.*, No. 08 Civ. 1029 (WHP), 2012 WL 209095, at *5 (S.D.N.Y. Jan. 24, 2012).

### 2.   Unable to demonstrate a complete lack of price impact, Defendants improperly attempt to raise issues of materiality and loss causation

Under the guise of "price impact," Defendants also raise a number of arguments that, in reality, relate to the elements of materiality and loss causation, neither of which Plaintiffs are required to prove at class certification. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 474 (2013) (holding proof of materiality not required at class certification); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) ("*Halliburton I*") (holding proof of loss causation not required at class certification).   Defendants' disguised materiality and loss causation arguments should be rejected.

Defendants contend that Alliant and Orbital ATK "consistently reinforced with investors" and "consistently supplied investors" with the "exact same message concerning the Lake City Contract" and, as a result, it is unsurprising that Defendants' misstatements did not cause a

---

[10]   Given the overwhelming case law against their position, it is unsurprising that Defendants cite no authority for their dubious argument that Plaintiffs must show price impact following Alliant's announcement on October 1, 2012 – over two years before the start of the Class Period in this case – that it had won the bid for the Lake City contract.  Opp. at 11-13.  It is also unsurprising that Defendants' expert was similarly unable to cite any academic literature or case law supporting the propriety of his price impact analysis of October 1, 2012.  *See* Milev Tr. at 143:11-145:21.

statistically significant price reaction.[11]  Opp. at 11-13.  In other words, Defendants are arguing that their statements were not material or, alternatively, that the truth was known to the market. In either scenario, Supreme Court precedent makes clear that Plaintiffs are not required to prove materiality at class certification.  *Amgen Inc.*, 568 U.S. at 481 (recognizing that a "truth-on-the-market" defense is essentially a "method of refuting an alleged misrepresentation's materiality" which is not proper at class certification); *In re Banc of Cal. Sec. Litig.*, No. SACV 17-00118 AG (DFMx), 2018 WL 3868922, at *7 (C.D. Cal. May 31, 2018) (defendants' arguments regarding when and how information was made available to the market goes to "issues of materiality and loss causation that are inappropriate to decide on a certification motion.").  Moreover, Defendants fail to point to any time prior to August 10, 2016, when either Alliant or Orbital ATK disclosed that the Lake City Contract was operating at a loss, that the Company's financial statements falsely failed to report that loss, and that the Company had related material weaknesses in internal controls – because such disclosures do not exist.  *See* Opp. at 11-13; Feinstein Rpt. at ¶¶119-20, 140-45.

Defendants next argue that the undisputed statistically significant decline following Defendants' corrective disclosure on August 10, 2016 "does not prove that any specific alleged misstatement inflated the stock price in the first place," purportedly because of the existence of confounding factors, which Defendants claim Dr. Feinstein's analysis did not account for.[12]  This argument relates to loss causation; "it is not price impact."  *Halliburton I*, 563 U.S. at 814.

---

[11]  Defendants never challenged materiality at the motion to dismiss stage and their belated attempts to do so now at class certification, where proof of materiality is not required, should be rejected.

[12]  In support of this argument, Defendants point to the price of Orbital ATK stock after the Class Period in this case.  Opp. at 16.  Whether the price of Orbital ATK stock went up after the Class Period, and even after the PSLRA's 90-day look back, is entirely irrelevant and Defendants cite no authority in support of their argument.

Indeed, "[t]he fact that a subsequent loss may have been caused by factors other than the revelation of a misrepresentation has nothing to do with whether an investor relied on the misrepresentation in the first place, either directly or presumptively through the fraud-on-the-market theory." *Id*. at 813. Moreover, "merely suggesting that another factor also contributed to an impact on a security's price," which is all Defendants have done here, "does not establish that the fraudulent conduct complained of did not *also* impact the price of the security." *Waggoner*, 875 F.3d at 105 (emphasis in original); *Hatamian*, 2016 WL 1042502, at *9 (disregarding defendants' argument that plaintiffs' expert methodology was required to "disaggregate the price inflation attributable to particular theories of liability" as a premature issue of loss causation.).

In sum, because Defendants have failed to rebut the fraud-on-the-market presumption of reliance in this case, common questions of reliance predominate. Plaintiffs' motion for class certification should be granted.

### D. Defendants' *Comcast* argument fails

Plaintiffs have proffered a viable, widely accepted and generally applied out-of-pocket method for calculating damages under §10(b), thereby satisfying the requirements of Rule 23(b)(3). Mot. at 17-18. Relying on *Comcast*, an antitrust case, Defendants suggest Plaintiffs should put forth a "more specific model" at this stage and complain that "any number of additional factors could have had a far more substantial impact on the price of Orbital ATK." Opp. at 25. These musings have no bearing on class certification.

To start, Defendants' arguments are contrary to established Fourth Circuit case law. *See In re NII Holdings*, 311 F.R.D. at 413 ("[T]he Fourth Circuit has not articulated any requirement of a fulsome classwide damages model at the certification stage."); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003) (holding that where individual damages inquiries are necessary, "if common questions predominate over individual questions as to liability, courts

generally find the predominance standard of Rule 23(b)(3) to be satisfied"). Moreover, Defendants do not cite a single securities case where a class was not certified on *Comcast* grounds.[13] For good reason. *Comcast* is distinguishable and has repeatedly been found inapplicable to assessing predominance for securities fraud cases, and whether "additional factors" impacted the price of Orbital ATK stock is a class-wide issue, such that courts consistently reject at class certification the same arguments Defendants raise here. *See, e.g.*, *In re Heckman Corp. Sec. Litig.*, No. 10-378-LPS-MPT, 2013 WL 2456104, at *14 (D. Del. June 6, 2013) ("[W]hile *Comcast* addresses class action certification, it was not in regard to a securities fraud litigation, which have generally been certified for class status. Instead, *Comcast* addresses antitrust litigation."); *see also Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374 (3d Cir. 2015) ("A close reading of [*Comcast*] makes it clear that the predominance analysis was specific to the antitrust claim at issue."); *KBC Asset Mgmt. NV*, 2017 WL 4297450, at *7 (holding that the class certification stage of proceedings does not require plaintiff to "make an allowance for any damages caused by things other than Defendants' alleged fraud"); *Washtenaw Cty. Empls. Ret. Sys. v. Walgreen Co.*, No. 15-cv-3187, 2018 WL 1535156, at *4 (N.D. Ill. Mar. 29, 2018) ("[T]he impact of the additional information disclosed during the class period. . . is common to the class, and therefore does not call into question whether damages can be calculated on a class wide basis.").

To be sure, Plaintiffs' damages methodology is consistent with their theory of liability, and Defendants cannot and do not refute this point. Opp. at 24-26. Plaintiffs have a cohesive

---

[13]   *See also Emergent*, 2018 WL 2840420, at *11.  The cases Defendants do cite (Opp. at 24-25) confirm their arguments should be rejected.  *See, e.g.*, *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015) (vacating district court's order denying class certification on *Comcast* grounds, and reaffirming that "individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)"); *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) (rejecting *Comcast* arguments in affirming class certification).

class and courts have employed Plaintiffs' proffered methodology for calculating damages without manageability issues. *See Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 933-34 (N.D. Ill. 2010) (post-trial order providing mechanical calculation of damages). This Court should reject Defendants' *Comcast* arguments, just as court upon court has in assessing virtually identical damages methodologies for §10(b) claims. *See, e.g.*, *Walgreen*, 2018 WL 1535156, at *3 (granting class certification where plaintiffs proposed "to calculate damages using the out-of-pocket method, a commonly used method which measures damages as the artificial inflation per share at the time of purchase less the artificial inflation at the time of sale"); *accord, e.g.*, *Emergent*, 2018 WL 2840420, at *11; *STARR Surgical*, 2017 WL 821662, at *10-11; *Seaworld*, 2017 WL 5885542, at *14; *KBC Asset Mgmt. NV*, 2017 WL 427450, at *7; *Hatamian*, 2016 WL 1042502, at *9; *In re NII Holdings*, 311 F.R.D. at 413; *Prudential Fin.*, 2015 WL 5097883, at *13; *Groupon*, 2014 WL 5245387, at *2.

    **E.**    **The Pension Trust and Wayne County are adequate class representatives**

In their opening brief, the Pension Trust and Wayne County demonstrated that they are adequate class representatives under Rule 23(a)(4) and that Robbins Geller is more than qualified to serve as counsel to the Class. *See, e.g.*, Mot. at 8-11; Declaration of Craig C. Reilly in Support of Plaintiffs' Motion for Class Certification ("Reilly Decl.") at Exs. D & E. Defendants do not challenge the adequacy of class counsel, but raise a number of unsupported and speculative attacks on the adequacy of the Pension Trust and Wayne County, all of which are contrary to the case law and belied by the record in this case. Indeed, the energy Defendants have devoted to their attacks on the Pension Trust and Wayne County shows Defendants "actually consider[] [Plaintiffs] to be [] strong and potentially effective opponent[s]. If [Defendants] truly thought that [Plaintiffs] would not vigorously and competently pursue [their]

duties as class representative[s], it is unlikely that [Defendants] would fight so hard to prevent the appointment of [them] as class representative[s]." *Computer Scis.*, 288 F.R.D. at 125 n.14.

Defendants argue that Plaintiffs are not adequate class representatives because they purportedly are not in control of the case, citing the existence of a portfolio monitoring agreement between Robbins Geller and the Pension Trust and Wayne County. Opp. at 26-28. But courts routinely recognize the importance of such portfolio monitoring agreements and hold they are no bar to certification.[14] *See e.g.*, *Wyeth*, 284 F.R.D. at 180 ("courts routinely appoint institutional investors with monitoring agreements as lead plaintiffs and class representatives"); *Silverman v. Motorola, Inc.*, 259 F.R.D. 163, 173 (N.D. Ill. 2009) (rejecting defendants' argument that plaintiffs were inadequate class representatives because they had monitoring agreements with counsel).[15]

Defendants also argue that the Pension Trust's and Wayne County's reliance on counsel in this complex securities fraud case somehow renders them inadequate. Contrary to Defendants' argument, however, there is nothing improper about class representatives relying on their counsel for litigation strategy, especially in complex securities fraud class actions like this

---

[14] Defendants cite *Iron Workers Local No. 25, Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009) in support of their argument. "Defendants fail to observe, however, that in *Iron Workers*, Judge Rakoff nonetheless appointed a lead plaintiff who was represented by counsel as part of a monitoring agreement." *City of Livonia Emps. Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 180 (S.D.N.Y. 2012). Defendants also ignore a subsequent opinion by Judge Rakoff approving the same type of monitoring agreement at issue here. *See Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 844 F. Supp. 2d 498, 499-500 (S.D.N.Y. 2012).

[15] *See also*, *In re Gen. Elec. Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *6 (S.D.N.Y. July 29, 2009) (rejecting defendants' argument that potential lead plaintiff "abdicated its oversight role" because counsel may have performed free monitoring services); *In re Am. Italian Pasta Co. Sec. Litig.*, No. 05-0725-CV-W-ODS, 2007 WL 927745, at *5 (W.D. Mo. Mar. 26, 2007) (rejecting claim that monitoring agreement rendered plaintiff inadequate class representative); *United Food & Commercial Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 655 (W.D. Okla. 2012); *In re UTStarcom, Inc. Sec. Litig.*, No. C 04-04908 JW, 2010 WL 1945737, at *8 (N.D. Cal. May 12, 2010).

one.  *Emergent*, 2018 WL 2840420, at *4 ("[D]eference to legal counsel on details of the litigation is permissible and does not undermine the plaintiff's adequacy, especially in complex cases."); *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 109 (E.D. Va. 2009) ("[A] class representative is allowed to rely on counsel to keep him abreast of developments and make strategic decisions in a class action lawsuit.").[16]  Far from having "done nothing beyond providing documents" in this case, the Pension Trust and Wayne County have (i) reviewed all relevant pleadings; (ii) responded to interrogatories and requests for admission; (iii) sat for a deposition and intend to testify at trial if necessary; (iv) monitored this litigation by participating in calls with counsel and receiving written and oral updates on the litigation; and (v) jointly discussed the parties' efforts to stay this case and attempt mediation.  *See* Reilly Decl. at Ex. D at ¶¶3-11 and Ex. E at ¶¶3-11; Declaration of Daniel Lewis in Support of Opp. at Ex. D ("Willey Tr.") at 27:18-21; 70:9-71:2; 72:4-6; 28:7-29:1; 71:17-72:6; 72:24-73:8 and Ex. E ("Grysko Tr.") at 31:8-9; 35:8-21; 35:22-36:4; 74:10-76:4; 77:1-11.

Finally, Defendants cite cherry-picked testimony from the Pension Trust and Wayne County depositions in an effort to portray them as inadequate class representatives with no knowledge of the facts of this case.  Defendants' attacks are "at best, hyperbolic and, at worst, consist of taking deposition testimony out of context and presenting it in a manner that borders on misleading."  *Johnson v. Aljian*, 257 F.R.D. 587, 596 (C.D. Cal. 2009).  In the Fourth Circuit, "[i]t is hornbook law . . . that in a complex lawsuit . . . the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative."  *Gunnells*, 348 F.3d at 430 (4th Cir. 2003); *Fangman v. Genuine Title, LLC*, No. RDB-14-0081, 2016 WL 6600509,

---

[16]  Defendants' own authority recognizes that "class representatives may rely on their chosen counsel to litigate the case without such reliance making them inadequate the appropriateness of relying on class counsel."  *See* Opp. at 27 n.3 (citing *Local 703, I.B. v. Regions Fin. Corp.*, 282 F.R.D. 607, 617 (N.D. Ala. 2012)).

at *11 (D. Md. Nov. 8, 2018) (observing that class representatives need not have "extensive knowledge of the intricacies of litigation, rather . . . general knowledge of what the action involves and a desire to prosecute the action vigorously" is all that Rule 23 requires").  A full consideration of the record reveals that the Pension Trust and Wayne County easily meet this standard.

Here, the Pension Trust (i) identified the dates of the Class Period (Willey Tr. at 23:8-15; 33:14-19); (ii) identified each Defendant by name and title (*id*. at 69:14-22); (iii) understood Plaintiffs' claims (*id*. at 30:13-25; 69:10-13; 68:25-69:9); (iv) described the Lake City Contract and Orbital ATK's restatement (*id*. at 29:16-30:1); and (v) understood its role as class representative (*id*. at 36:20-37:16; 71:7-16; 72:18-23).[17]

Likewise, Wayne County (i) described its claims, specifically identifying the relevant sections of the Securities and Exchange Act of 1934 (Grysko Tr. at 23:22-24:19; 28:2-14; 30:6-17; 63:3-15); (ii) identified Defendants by name; (iii) described Defendants' "false and fraudulent statements" both before and after the merger that failed to disclose Orbital ATK was "losing money" on the "aggressively bid" Lake City contract, which resulted in the Company's restatement; (iv) identified the dates of the Class Period; and (v) understood its role as class representative (*id*. at 34:16-22; 35:8-14; 36:5-12).  *See Emergent*, 2018 WL 2840420, at *5 (finding institutional investor plaintiff adequate because it "demonstrated that he has reviewed the Amended Complaint when it was filed and was familiar with its contents, has a general idea of the alleged misconduct and the legal basis of the lawsuit, and receives regular reports and

---

[17]   Defendants argue that the Pension Trust did not know whether it was asserting §§10(b) or 14(a) claims, which is entirely irrelevant and incorrect.  *Fangman*, 2016 WL 6600509, at *11 (rejecting defendants' attacks to adequacy based on plaintiffs' lack of knowledge regarding their specific claims).  Moreover, the Pension Trust's testimony confirms it understood the "different" claims being brought by itself and Wayne County.  Willey Tr. at 34:3-9.

communications from counsel regarding the progress of the case."); *see also Morris v. Wachovia Sec. Inc.*, 223 F.R.D. 284, 296 (E.D. Va. 2004) (finding plaintiff sufficiently adequate where he indicated he saw the complaint, was able to describe it, knew claims being asserted in class action form, and understood his duty to pursue litigation the class's behalf, and made decisions with advice of counsel).[18]   Because both the Pension Trust and Wayne County, as institutional investors, are prototypical class representatives, Plaintiffs' motion for class certification should be granted.   *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, Nos. 3:09-cv-00882; 3:09-01211, 2010 WL 1790763, at *3 (M.D. Tenn. Apr. 30, 2010) (the PSLRA's legislative history reflects Congress' intent to favor "institutional investors" due to their "financial resources and experience to satisfy their fiduciary duties to the class.").

## III.   CONCLUSION

Because Defendants' challenges to predominance and adequacy fail, and Plaintiffs have met the requirements for certification under Rule 23, Plaintiffs' motion for class certification should be granted.

DATED:  August 17, 2018                THE OFFICE OF CRAIG C. REILLY
                                       CRAIG C. REILLY, VSB #20942


                                       */s/ Craig C. Reilly*
                                       ─────────────────────────────────
                                       CRAIG C. REILLY

---

[18]   *Shiring v. Tier Techs, Inc.*, where this Court found the proposed class representative to be inadequate, does not support Defendants' position as it presents unique facts that are absent here. 244 F.R.D. 307 (E.D. Va. 2007).  Opp. at 27-28.  There, the plaintiff was an individual subject to a unique defense because he purchased his stock while employed by the defendant, his credibility was questionable because he submitted two false certifications, and he had no knowledge of who was being sued in the lawsuit, what claims were alleged, or whether an amended complaint was filed.  No such facts exist here.

111 Oronoco Street
Alexandria, VA  22314
Telephone:  703/549-5354
703/549-2604 (fax)
craig.reilly@ccreillylaw.com

***Liaison Counsel***

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
JAMES E. BARZ
FRANK RICHTER
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
JOHN C. HERMAN
PETER M. JONES
Monarch Tower, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
MAUREEN E. MUELLER
KATHLEEN B. DOUGLAS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

***Lead Counsel for Plaintiff***

VANOVERBEKE MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

***Additional Counsel for Plaintiff Wayne County
Employees' Retirement System***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2018, I filed the foregoing pleading or paper through

the Court's CM/ECF system, which sent a notice of electronic filing to all registered users:


*/s/ Craig C. Reilly*
Craig C. Reilly, Esq.
VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-5355
EMAIL craig.reilly@ccreillylaw.com
*Liaison Counsel for Lead Plaintiff*