IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| STEVEN KNURR, et al., | ) |
| Plaintiff, | ) Civil Action No.: 1:16-cv-01031-TSE-MSN |
| v. | ) <u>CLASS ACTION</u> |
| ORBITAL ATK, INC., *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OF DEFENDANTS ORBITAL ATK, INC., DAVID W. THOMPSON, GARRETT E. PIERCE, BLAKE E. LARSON, AND HOLLIS THOMPSON <u>IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THEIR COMPLAINT</u>**

## I. INTRODUCTION

Over two years into this case, Plaintiffs are seeking leave to file their *third* complaint in yet another attempt to allege that Orbital ATK's senior officers fraudulently reported misstated financials related to a government ammunition contract sourced out of the Company's Lake City plant in Missouri (the "Lake City Contract"). As this Court is well aware, Plaintiffs have tried twice—and failed twice—to adequately allege that Orbital ATK executives had the culpable mental state necessary to sustain a securities fraud claim under § 10(b) of the Exchange Act and Rule 10b-5 (or controlled other individuals who engaged in the alleged fraud). Undeterred by those failures, and as trial creeps closer, Plaintiffs seek a third bite at the apple.

As a threshold matter, Plaintiffs' motion for leave to amend their complaint is both untimely filed and unduly delayed. The scheduling orders required Plaintiffs to (a) bring any new claims by June 22, and (b) move to amend their complaint *as soon as possible* after they became aware of the grounds for the motion. Plaintiffs have failed to satisfy either requirement.

But even if this Court were to excuse Plaintiffs' serious procedural errors (which it should not), the proposed Second Amended Complaint has the same deficiencies that Judge Ellis identified in his prior two opinions dismissing the § 10(b) and Rule 10b-5 claims (and related § 20(a) claim for control person liability) brought against Orbital ATK's executives. Specifically, Plaintiffs did not adequately allege then—and do not adequately allege now—that Orbital ATK's executives acted fraudulently when making statements in the Company's public financial filings about the Lake City Contract or otherwise should be subject to control person liability. Accordingly, the proposed amendment would be futile.

Thus, the Court should deny Plaintiffs' motion for leave to amend their complaint.

## II. BACKGROUND

A.      **Plaintiffs' Original Complaint and the Resulting September 26, 2017 Opinions**

Plaintiffs filed the first consolidated complaint in this matter on April 24, 2017, naming as defendants Orbital ATK and David Thompson, Garrett Pierce, Blake Larson, Mark DeYoung (the "Individual Defendants"). (ECF No. 53.) In that complaint, they brought four claims: (i) a § 10(b) and Rule 10b-5 claim, brought against both Orbital ATK and the Individual Defendants; (ii) a § 20(a) claim predicated on Plaintiffs' § 10(b) and Rule 10b-5 claim, brought against the Individual Defendants; (iii) a § 14(a) and Rule 14a-9 claim brought against Orbital ATK and the Individual Defendants other than Blake Larson; and (iv) a § 20(a) claim predicated on Plaintiffs' § 14(a) and Rule 14a-9 claim, brought against the Individual Defendants other than Blake Larson. The § 20(a) claims allege control person liability.

After briefing, Judge Ellis granted Defendants' motion to dismiss in part, dismissing the § 10(b) and Rule 10b-5 claim, as well as the related § 20(a) claim, on the grounds that Plaintiffs failed to allege sufficient facts to support a strong inference of scienter as to the Individual Defendants and also failed to adequately allege corporate scienter. (ECF No. 75.) As for Plaintiffs' § 14(a) and 14a-9 claim, as well as the related § 20(a) claim, Judge Ellis allowed those claims to proceed but narrowed their scope by dismissing any claim related to the Fairness Statement. (ECF No. 76.)

B.      **Plaintiffs' First Amended Complaint and the Resulting March 2, 2018 Opinion**

Plaintiffs then filed an amended complaint on October 10, 2017, in which they added another Individual Defendant, Hollis Thompson, as well as allegations about his conduct as Orbital ATK's Principal Accounting Officer. (ECF No. 78.) Defendants moved to dismiss the all claims re-pled in the amended complaint (ECF No. 81 ("Defendants hereby move under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims brought against them by

2

Plaintiffs")), and Plaintiffs filed an opposition, again advocating for a "corporate scienter" theory that would allow their § 10(b) and Rule 10b-5 claim to proceed against Orbital ATK even if Judge Ellis found that their scienter allegations for Hollis Thompson were insufficient.

In his decision, Judge Ellis concluded that Plaintiffs had failed to adequately plead scienter for Hollis Thompson and accordingly dismissed the § 10(b) and Rule 10b-5 claim (and related § 20(a) claim) brought against him. (ECF No. 99 at 19.) Nonetheless, Judge Ellis accepted a "corporate scienter" theory, allowing Plaintiffs' § 10(b) and Rule 10b-5 claims to proceed solely against Orbital ATK based on allegations that lower-level employees provided false information to executives knowing that those executives would provide that false information to investors. (*Id.* at 27.)

C.  **Currently Pending Claims and Proposed New Claims in Plaintiffs' Proposed Second Amended Complaint**

On August 8, 2018, Plaintiffs moved for leave to amend their complaint ("Motion to Amend"), including a proposed, under seal Second Amended Complaint containing their new allegations. (ECF No. 347-1.). At the time of filing, the active claims in this litigation were as follows: (i) a § 10(b) and Rule 10b-5 claim against Orbital ATK; (ii) a § 14(a) and Rule 14a-9 claim against the Individual Defendants (other than Blake Larson and Hollis Thompson); and (iii) a § 20(a) claim, related solely to the 14(a) and Rule 14a-9 claim, against the Individual Defendants (other than Blake Larson and Hollis Thompson). By way of their Motion to Amend and proposed Second Amended Complaint, Plaintiffs now seek to add a § 10(b) and Rule 10b-5 claim against Mark DeYoung, Blake Larson, and Garrett Pierce and, apparently, a Section 20(a) claim related to the § 10(b) and Rule 10b-5 claim against all of the Individual Defendants.[1]

---

[1] *See* Declaration of Daniel L. Sachs ("Sachs Decl."), Exhibit A, E-mail from Jim Barz to Dan Sachs, Aug. 14, 2018 (stating that Plaintiffs seek to bring § 10(b) and Rule 10b-5 claims alleged in Count 1 against DeYoung, Larson, and Pierce but "are not seeking at this time to bring back

3

## III. ARGUMENT

The Court should deny Plaintiffs' Motion to Amend for three independent reasons. First, the Motion to Amend and proposed Second Amended Complaint were untimely filed. Second, Plaintiffs unduly delayed in moving to amend their complaint, and that undue delay will result in substantial prejudice to the Defendants. Third, the proposed amendment is futile because, even accepting Plaintiffs' new allegations as true, the proposed Second Amended Complaint still fails to adequately allege securities fraud claims against DeYoung, Larson, and Pierce and the related § 20(a) control person claim against all of the Individual Defendants.

### A.   PLAINTIFFS' MOTION TO AMEND IS UNTIMELY AND UNDULY DELAYED.

This Court made clear in its June 13 scheduling order that Plaintiffs were required to bring any "new claims" by June 22, 2018. (ECF No. 172 at 1.) In their proposed Second Amended Complaint, Plaintiffs apparently assert a § 10(b) and Rule 10b-5 claim against DeYoung, Larson, and Pierce, as well as a related § 20(a) claim against all of the Individual Defendants. Because Judge Ellis previously dismissed such claims, they are not currently pending and would be new claims in this action. Accordingly, Plaintiffs were required to move for leave to assert them by June 22. Having failed to do so, Plaintiffs' attempt to assert these claims now should be rejected. *Naden v. Saga Software, Inc.*, 11 F. App'x 381, 383 (4th Cir. 2001) (affirming denial of motion to amend complaint on grounds that it was untimely); *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 423 (D. Md. 2001) (denying amendment where plaintiffs failed to demonstrate "good cause" for any modification of the scheduling order to

---

H. Thompson or D. Thompson in Count 1"). Because Plaintiffs admittedly are not bringing their claims against David Thompson and Hollis Thompson, they should have removed those individuals from their § 10(b) and Rule 10b-5 claim in the proposed Second Amended Complaint, but improperly failed to do so.

permit the belated amendment where plaintiffs had not been diligent in pursuing information related to their claims).[2]

In any event, even if the general August 8 deadline for amended pleadings were relevant here, Plaintiffs' Motion to Amend remains untimely because Plaintiffs did not file their supporting memorandum of law until August 10, two days after the court-ordered deadline. (ECF No. 356.) This failure is important because Plaintiffs' Motion to Amend, standing alone, does not "state with particularity the grounds for seeking the order" and thus fails to satisfy the basic requirements of Rule 7. Fed. R. Civ. Pro. 7(b). Indeed, Plaintiffs themselves acknowledge that the "reasons [for the amendment] are stated with particularity in the accompanying brief." (ECF No. 347 at 1.) Because the Motion to Amend fails to satisfy the requirements of Rule 7(b) absent a supporting memorandum, it should be denied as untimely. *See CNSP, Inc. v. City of Santa Fe*, Civ. No. 17-355 KG/SCY, 2018 WL 1322143, at *8 (D.N.M. Mar. 14, 2018), *appealed filed*, No. 18-2014 (10th Cir. Mar. 22, 2018) (denying motion to amend which contained only a "bare request" to amend and no "particular grounds upon which such a request would be based").

Nor do Plaintiffs appear to be operating in good faith in how they have approached this motion. The supporting memorandum of law specifically states that Plaintiffs are not proposing to add any new claims in the proposed Second Amended Complaint. (ECF No. 356 at 1.) When Defendants asked Plaintiffs about this assertion, given that the proposed Second Amended Complaint on its face appears to assert *all* of the claims previously dismissed in the case,

---

[2] To the extent Plaintiffs argue that their Motion to Amend seeks to modify the scheduling order and extend the deadline to file their new claims, this Court should reject that argument because Plaintiffs have not shown the requisite "good cause" for such relief. *See, e.g., Guerrero v. Deane*, No. 09-cv-1313, 2012 WL 3068767, at *2-3 (E.D. Va. Jul. 27, 2012) (stating that "[p]ursuant to the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of Virginia, a scheduling order may only be modified upon good cause" and denying untimely motion for failure to demonstrate such good cause).

Plaintiffs suddenly conceded that they were intending to bring *some* new claims in the proposed Second Amended Complaint (the § 10(b) and Rule 10b-5 claim against DeYoung, Larson, and Pierce).  *See infra* n. 1.  Plaintiffs also erroneously asserted that Judge Ellis did *not* dismiss the § 20(a) claim related to the alleged §10(b) and Rule 10b-5 claim, apparently in an effort to minimize the number of new claims they are seeking to bring and their related violations of the Court's scheduling order.

Plaintiffs also unduly delayed in filing their untimely Motion to Amend.  Under Rule 15(a), leave to amend should be denied when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile."  *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  When weighing whether the proposed amendment will cause prejudice, courts consider the nature and timing of the amendment, including whether plaintiff "unduly delayed" in seeking the amendment and the proximity to the trial date at the time the amendment is sought.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States ex rel. Carter v. Halliburton Co.*, 315 F.R.D. 56, 62 (E.D. Va. 2016), *aff'd*, 866 F.3d 199 (4th Cir. 2017) (suggesting that a "looming deadline of trial that might prevent [a party] from adequately responding to the amended complaint" would be prejudicial).  Generally speaking, the closer the case is to summary judgment or trial, and the more substantive the amendment, the more likely courts consider the proposed amendment prejudicial.  *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) ("the further the case progressed before judgment was entered,ent the more likely it is that the amendment will prejudice the defendant or that a court will find bad faith on the plaintiff's part").

Adopting these well-settled principles, this Court mandated in its April 9 scheduling order that Plaintiffs amend their complaint "as soon as possible after counsel or the party

becomes aware of the grounds for the motion." (ECF No. 131 at 2.)[3] Put simply, Plaintiffs have failed to satisfy that requirement by waiting until the eleventh hour to amend their complaint despite long possessing the underlying materials from which they base their new allegations. *See United Co. v. Keenan*, No. CIV.A. 1:06CV00071, 2007 WL 1696822, at *1 (W.D. Va. June 8, 2007) (denying motion to amend based on magistrate's earlier finding that party "failed to file its Second Motion to Amend as soon as the necessity for altering the complaint became apparent"). Specifically, Plaintiffs' proposed amendments—the § 10(b) and Rule 10b-5 claim against DeYoung, Larson, and Pierce, as well as the related § 20(a) claim against all Individual Defendants—come *more than five months* after Defendants began producing to Plaintiffs large volumes of those individuals' documents. In fact, Plaintiffs' new allegations as to DeYoung, Larson, and Pierce appear to be based almost entirely on the written interview reports created during Orbital ATK's internal investigation that Defendants produced to Plaintiffs in mid-May.

For illustrative purposes, here are a few examples demonstrating Plaintiffs' undue delay. First, the purported quotations from Andy Crickenberger, (SAC ¶ 239), are paraphrased items taken from his interview report. *See* Sachs Decl. at ¶ 4. Second, the purported quotations from Garrett Pierce, (SAC ¶ 243), are likewise taken from his interview report. *See* Sachs Decl. at ¶ 4. Finally, Plaintiffs point to an email that Larson and Pierce received that discusses the quality of the unbilled receivable balance at Lake City. (*See* SAC ¶ 239.) Defendants produced this e-mail to Plaintiffs on April 6, 2018, as part of the first document production in this case, and it is the same document—the 145th page that was produced in this action—that was discussed at the August 10 hearing before this Court. *See* Sachs Decl. at ¶ 5.

---

[3] This Court commonly includes this exact mandate in its Rule 16(b) Scheduling Orders. *See Rattner v. Chubb Nat'l Ins. Co.*, 1:17-cv-00136 (ECF No. 35) (Nachmanoff, M.J.) (including the same language); *Del Castillo-Guzman v. Triple Canopy, Inc.*, 1:15-cv-00799 (ECF No. 19) (Nachmanoff, M.J.) (same).

Instead of diligently reviewing these relevant documents and moving to amend their complaint in a timely fashion, Plaintiffs impermissibly waited until the very last minute (or well beyond, given the June 22 deadline for new claims) to amend their pleadings. Courts in this Circuit routinely deny motions for leave to amend under similar circumstances. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 940 (4th Cir. 1995) (affirming denial of motion to amend in part because "[a]lthough this evidence was in Alpha's possession at least as early as March of 1993, it waited until June 25, the closing days of discovery, before filing its motion to amend"); *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, No. 4:08-cv-19, 2009 WL 10689737, at *4 (E.D. Va. Mar. 13, 2009) (denying motion to amend because moving party "knew substantially all of the predicate facts for its Counterclaim by October 2008, but waited until within a month of the then-scheduled trial date to assert its new claims").

Moreover, Plaintiffs' undue delay will have serious and prejudicial ramifications for Defendants, especially the Individual Defendants against whom Plaintiffs are seeking to add new claims at the eleventh hour. *See HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1010 (4th Cir. 1996) (holding that undue delay accompanied by prejudice to the non-movant is sufficient reason for denying leave to amend under Rule 15(a)). As this Court is aware, the trial in this matter likely will commence within a few months, leaving the Individual Defendants scant time to prepare a defense to these new claims. By bringing their motion for leave to amend at this late date—in violation of the Court's scheduling order—Plaintiffs have functionally made it impossible for the Individual Defendants to engage in any discovery that would assist their defense to the proposed new claims. The period for written discovery has expired and the final few weeks of the fact discovery period are already filled with numerous

depositions, including the additional six depositions that the Court allowed Plaintiffs to take pursuant to its August 13 order.  Because this truncated preparation period would cause substantial prejudice to the Individual Defendants (particularly Hollis Thompson and Blake Larson, who currently have no active claims against them), Plaintiffs' unduly delayed effort to add new claims to this action should be denied.  *See Micro Strategy Servs. Corp. v. OpenRisk LLC*, No. 1:14CV1244 JCC/IDD, 2015 WL 2126924, at *3 (E.D. Va. May 6, 2015) (Ellis, J.) (denying motion for leave to amend counterclaims, noting the "proximity to trial, the fact that discovery ha[d] closed [and] the potential for the counterclaims to make th[e] trial more lengthy and complex"); *Dover Elevator Co. v. Arkanas State Univ.*, 64 F.3d 442, 448 (8th Cir. 1995) (holding that denial of motion to amend is proper when trial was less than month away and adding new theory of recovery would leave opposing party with inadequate time to prepare); *Estate of Shane Tasi v. Municipality of Anchorage*, No. 13-cv-00234-SLG, 2016 WL 4942323, at *2 (D. Alaska Apr. 3, 2016) (denying leave to amend to allege new claim and defendant when "Plaintiffs have known from the outset" about the allegations because allowing amendment would "cause extreme prejudice to Defendants").

**B.    PLAINTIFFS' MOTION TO AMEND IS FUTILE BECAUSE THE PROPOSED SECOND AMENDED COMPLAINT STILL FAILS TO ADEQUATELY PLEAD CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS.**

Plaintiffs' Motion to Amend should be denied for yet another reason: the proposed Second Amended Complaint does not cure the deficiencies that led Judge Ellis to dismiss the § 10(b) and Rule 10b-5 claim brought against DeYoung, Larson, and Pierce, and the related § 20(a) claim against all of the Individual Defendants, in the first instance.  Because Plaintiff's proposed Second Amended Complaint would be dismissed for the same reasons, Plaintiffs' Motion to Amend should be denied as futile.

9

1. **Plaintiffs' Proposed Second Amended Complaint Fails to Adequately Plead a § 10(b) and Rule 10b-5 Claim Against DeYoung, Larson, and Pierce.**

When determining whether an amendment should be denied as futile, a court must test the legal sufficiency of the factual allegations in the amended complaint by assessing whether the complaint would survive a motion to dismiss brought under Rule 12(b)(6). *See Clark v. BayDocs, Inc.*, No. 3:12CV896, 2013 WL 1333520, at *2 (E.D. Va. Mar. 29, 2013) ("In assessing a motion to amend . . . a court turns to the familiar standard in assessing a motion to dismiss."); Hart *v. Hanover Cty. Sch. Bd.*, No. 3:10-CV-794, 2013 WL 1867388, at *3-4 (E.D. Va. May 2, 2013), *aff'd*, 547 F. App'x 298 (4th Cir. 2013) (denying motion to amend complaint as "futile" because plaintiff did not allege sufficient circumstantial evidence to survive a motion to dismiss); *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir.2008) ("[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules.") (internal quotation marks omitted); *Saunders v. Clarke*, No. 3:15CV117, 2015 WL 1916929, at *3 (E.D. Va. Apr. 27, 2015) (denying proposed amendment to complaint on grounds that claims would not survive a motion to dismiss, and were therefore futile).

With respect to the scienter element of Plaintiffs' § 10(b) and Rule 10b-5 claim, the Fourth Circuit has made clear that "[t]o establish scienter, a plaintiff must prove that the defendant acted with 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 884 (4th Cir. 2014) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007)). At the pleading stage, a plaintiff must therefore allege that defendants "either knowingly or recklessly defrauded investors[.]" *Id.* at 885. In addition, the Private Securities Litigation Reform Act ("PSLRA") "imposes a heightened pleading standard on fraud allegations in private securities complaints," and general

allegations of scienter are not sufficient. *Id.* at 885. Therefore, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with [the requisite scienter]." 15 U.S.C. § 78u-4(b)(1)(B), (2)(A). The court must also "take into account plausible opposing inferences" negating pleaded facts give rise to a 'strong' inference of scienter. *Tellabs, Inc*, 551 U.S. at 323. A complaint survives a dismissal motion "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

Applying the heightened scienter pleading standard, Judge Ellis dismissed the § 10(b) and Rule 10b-5 claim against the Individual Defendants in his September 26, 2017 decision. Specifically, Judge Ellis held that (i) Plaintiffs' allegations "rest[ed] on little more than the individual defendants' positions as high-level corporate executives and as such, are not adequate to support a strong inference of scienter"; (ii) Plaintiffs' allegations of "red flags" failed to put the Individual Defendants on notice that the Lake City Contract was operating at a loss because the allegations "d[id] not show that defendants actually received information that the Lake City Contract was operating at a loss owing to the failure to cut costs"; (iii) Plaintiffs' allegations of "red flags" also failed because they were comprised of fully public knowledge; (iv) Plaintiffs' allegations actually suggested diligence rather than scienter, reflecting that defendants took a reasonable time to investigate the potential issues surrounding the Lake City contract; (v) Plaintiffs' allegations about the misstatement and termination of employees likewise failed to show "strong evidence" of scienter; and (vi) Defendants' decision to affirmatively disclose the accounting problem supported a strong inference that they "were not acting with scienter but rather were endeavoring in good faith to inform the investing public." (ECF No. 75 at 21-25.)

11

As with their prior complaints, Plaintiffs' proposed Second Amended Complaint likewise fails to show that DeYoung, Larson, and Pierce acted with scienter. Although Plaintiffs' proposed Second Amended Complaint contains new factual allegations, it ultimately is just more of the same. For instance, Plaintiffs rely on the fact that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But as Judge Ellis originally held, Pierce and Larson's efforts to investigate potential concerns about the Lake City Contract reflect their diligence, not scienter. (ECF No. 75 at 21.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; indeed, courts have recognized that such diligence efforts understandably take time and thus refuse to infer scienter when executives undertake a comprehensive process to understand the context, causes, and responses related to a potential accounting issue. *See Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 761 (7th Cir. 2007) ("Taking the time necessary to get things right is both proper and lawful. Managers cannot tell lies but are entitled to investigate for a reasonable time, until they have a full story to reveal."). Moreover, as Judge Ellis has already held, Plaintiffs' allegations of scienter are further weakened by the fact that, as a result of their investigation, Orbital ATK's management (including the Individual Defendants themselves) were the first to disclose the potential future loss on the Lake City contract. (ECF No. 75 at 26); *Yates v. Mun. Mortgage & Equity, LLC*, 744 F.3d 874, 888 (4th Cir. 2014).

Plaintiffs also mistakenly infer scienter from their allegation that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See Oklahoma Firefighters Pension & Ret. Sys. v. K12, Inc*., 66 F. Supp. 3d 711, 717 (E.D. Va. 2014) (holding that the fact that defendant's promotional marketing program "started later than it should have" did not lead to inference of scienter). Indeed, despite the slow start to the cost saving efforts, Plaintiffs themselves concede that Lake City cut approximately $400 million in costs related to the contract. (ECF No. 75 at 26); (SAC ¶¶ 134, 172.) These savings obviously provided Larson and Pierce with a basis to believe that the Lake City operations had not only realized some of the projected cost savings, but also could expect to achieve the necessary additional savings in the future.[4]

Next, Plaintiffs attempt to allege scienter by claiming that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ These allegations have nothing to do with the relevant issues in this case—i.e., whether Pierce and Larson knew that the *Lake City Contract* was a loss contract during the alleged class period—and thus seem to be an attempt by Plaintiffs to muddy the waters on the issue of scienter. *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc*., 576 F.3d 172, 183 (4th Cir. 2009) ("Defendants' state-of-mind with respect to the company's internal controls is a question distinct from the critical question here, which is defendants' state-of-mind with respect to misstating or omitting material financial information in BearingPoint's financial statements.").

---

[4] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ As Judge Ellis previously held, the simple knowledge that a contract's costs were higher than what was proposed does not amount to the sufficiently specific allegations required to show scienter. (ECF No. 75 at 22); *In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379, 388 (4th Cir. 2005) (holding that allegations that contract had substantial cost overruns did not establish a strong inference of scienter).

13

Put simply, Plaintiffs fail to causally connect their "vendor management" allegations to Larson or Pierce's knowledge of the profitability of the Lake City Contract, and as a result, the allegations cannot support a strong inference of scienter. (ECF No. 75 at 25); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012) (dismissing complaint where plaintiffs "fail[ed] to allege facts that provide an analytical link between the particular facts supplied [in the complaint] and the ultimate conclusion that Juniper could not meet its overall revenue and growth goals."); *In re Stonepath Grp., Inc. Sec. Litig.*, 397 F. Supp. 2d 575, 588 (E.D. Pa. 2005) (dismissing on scienter grounds and finding "mere fact that there were three restatements" irrelevant because they addressed different problems than those alleged in plaintiffs' complaint).

Finally, Plaintiffs' new allegation related exclusively to Pierce— fails to show Pierce's scienter. As Judge Ellis previously held, Plaintiffs have consistently raised purported red flags in their pleadings that fail to pass muster under governing law; one of these purported and rejected red flags was the existence of a Securities and Exchange Commission investigation related to the Lake City Contract. (ECF No. 75 at 31.) Plaintiffs' new

*See Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 628 n.2 (4th Cir. 2008) (stating that allegation of SEC investigation is "too speculative to add much, if anything, to an inference of scienter"); *Patel v. L-3 Commc'ns Holdings Inc.*, 2016 WL 1629325, at *10 n.1 (S.D.N.Y. Apr. 21, 2016) (dismissing 10b-5 claim for lack of scienter and rejecting plaintiffs' allegations

14

about ongoing investigation because "[g]overnment investigations on their own do not create a strong inference of scienter."); *Thorpe v. Walter Inv. Mgmt. Corp.*, 111 F. Supp. 3d 1336, 1376 (S.D. Fla. 2015) ("unless the investigation reveals each defendant's state of mind for the alleged fraud, the effect of the investigation on the scienter analysis is limited"). Here, ███████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ That piece of information certainly did not provide Pierce with knowledge that the Lake City Contract was in a future loss position, and thus falls far short of satisfying Plaintiffs' scienter pleading requirement.[5]

### 2. Plaintiffs Fail to Allege a Cognizable § 20(a) Claim Based on Their § 10(b) and Rule 10b-5 Claim.

Plaintiffs also appear to be re-pleading a § 20(a) claim based on their § 10(b) and Rule 10b-5 claim. When asked to clarify the nature of their claims being alleged in their proposed Second Amended Complaint, Plaintiffs stated that they were bringing § 10(b) and Rule 10b-5 claims against DeYoung, Larson, and Pierce but were not re-pleading any related § 20(a) claim because, in their view, that claim is still pending in the case. *See* Sachs Decl., Exhibit A. As a threshold matter, that is incorrect. As explained above, Judge Ellis, in his original decision on Defendants' first motion to dismiss, explicitly dismissed Plaintiffs' § 10(b) and Rule 10b-5 claim and the related § 20(a) claim. (ECF No. 75 at 41 ("In sum, plaintiffs' § 10(b) claims against

---

[5] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

15

Orbital ATK and the individual defendants, as well as their § 20(a) claims against Thompson, Pierce, and Larson, must be dismissed for failure to state a claim for relief.")). Although Judge Ellis later allowed Plaintiffs' § 10(b) and Rule 10b-5 claim to proceed against only Orbital ATK on a corporate scienter theory, he did ***not*** revive Plaintiffs' corresponding § 20(a) claim, an unsurprising result given that Plaintiffs themselves explicitly stated that they were only re-pleading the dismissed claims (including the § 20(a) claim) to preserve them for appeal. (ECF No. 78 at n. 1.) Accordingly, Plaintiffs' § 20(a) claim related to their § 10(b) and Rule 10b-5 claim is not currently part of this case.

In any event, Plaintiffs' apparent attempt to re-plead this § 20(a) claim in their proposed Second Amended Complaint must fail. First, Plaintiffs provide *no* new factual allegations concerning their control allegations. Accordingly, the amendment is clearly futile.[6] *See, e.g., In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1101 n. 12 (C.D. Cal. 2008) ("Additionally, the Section 20(a) claim is deficient because Plaintiffs have failed to adequately allege, with particularity, that each Defendant possessed 'a significant degree of day-to-day operational control, amounting to the power to dictate another party's conduct or operations.' Generalized allegations that Defendants Tomkinson and Johnson had direct and supervisory control over Impac's day-to-day operations are insufficient to meet this standard.") (citation omitted); *Panoqicz v. Hancock*, No. CIV.A. DKC 11-2417, 2015 WL 4231712, at *7 (D. Md. July 9, 2015), *aff'd sub nom*, *Panowicz v. Hancock*, 670 F. App'x 83 (4th Cir. 2016) (denying

---

[6] That Judge Ellis has allowed one type of § 20(a) claim to proceed against David Thompson, Garrett Pierce, and Mark DeYoung has no bearing on a § 20(a) claim predicated on entirely different conduct during an entirely different time period. Indeed, that one set of Individual Defendants had adequate "control" over Orbital ATK's joint proxy process in December 2014 in no way means that all of the Individual Defendants had control over Orbital ATK's Lake City-related operations and statements from the time period of May 2015 to August 2016 in a manner that could suggest possible control person liability.

plaintiff's motion to amend complaint in part because plaintiff failed to make any new allegations against defendant to support his claim); *Battle v. Burwell*, No. PWG-14-2250, 2017 WL 1246344, at *4 (D. Md. Apr. 5, 2017) (denying motion to amend complaint on grounds of futility because plaintiff's third amended complaint made "no new allegations" against defendant).

Second, § 20(a)'s intended purpose is to "catch the man who stands behind the scenes and controls the man who is in a nominal position of authority," *see* Lowenfels & Bromberg, *Controlling Person Liability Under Section 20(a) of the Securities Exchange Act and Section 15 of the Securities Act*, 53 The Business Lawyer 1, 7 (1997), and thus prohibit executives and officers from using lower-level employees to commit fraud. Because Judge Ellis has held that the only properly alleged fraud in this case flows from the *opposite* scenario—Orbital ATK's lower level employees deceiving its executives and officers—application of § 20(a) here would be misguided. (ECF No. 99 ("Because the AC alleges facts that warrant a strong inference of scienter with respect to lower-level employees who furnished information for misleading statements, plaintiffs have adequately stated a § 10(b) claim against the corporate defendant and the defendants' motion to dismiss in this regard must be denied.").)

### IV. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for leave to amend their complaint.

Dated:  August 22, 2018
         Washington, DC

Respectfully submitted,

 /s/ Lyle Roberts
Lyle Roberts (Va. Bar No. 45808)
George Anhang (*pro hac vice*)
SHEARMAN & STERLING
401 9th Street, N.W.
Suite 800
Washington, DC 20004

17

Telephone: (202) 508-8000
Facsimile: (202) 508-8100
lyle.roberts@shearman.com
george.anhang @shearman.com

Daniel C. Lewis (*pro hac vice*)
Paula Anderson (*pro hac vice*)
SHEARMAN & STERLING
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
daniel.lewis@shearman.com

*Counsel for Defendants Orbital ATK, Inc., David W. Thompson, Garrett E. Pierce, Blake E. Larson, and Hollis Thompson*