UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| STEVEN KNURR, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>ORBITAL ATK, INC., et al.,<br><br>        Defendants. | Civil Action No. 1:16-cv-01031-TSE-MSN<br><br><u>CLASS ACTION</u> |

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Lead Plaintiff Construction Laborers Pension Trust of Greater St. Louis ("Pension Trust" or "Lead Plaintiff") and named plaintiff Wayne County Employees' Retirement System ("Wayne County") (collectively, "Plaintiffs"), by and through their undersigned counsel of record, respectfully submit this Memorandum of Law in Support of their Motion for Preliminary Approval of Class Action Settlement.

## I.  INTRODUCTION

As set forth in the Settlement Agreement ("Agreement"), attached hereto as Exhibit 1,[1] the Settlement provides for the payment of $108 million in cash to resolve this securities class action against all Defendants.  This is an outstanding recovery for the Class obtained after a hard-fought litigation among sophisticated parties and experienced counsel, and follows an extensive, arm's-length, mediation overseen by experienced mediator Gregory P. Lindstrom of Phillips ADR.

---

[1] Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Agreement.  All citations and internal quotation marks are omitted and emphasis is added, unless otherwise indicated.

- 1 -

The Settlement was reached by counsel with a keen understanding of the merits of the claims and at an advanced stage of the litigation.  Merits discovery, including the collection of over 4.7 million pages of documents obtained from Defendants and dozens of third parties and the completion of 26 depositions, was nearly finished.  Expert reports had been exchanged and Plaintiffs' motion for class certification was fully briefed.  The parties negotiated the Settlement before a highly skilled and experienced mediator, which included the exchange of detailed mediation statements and two full-day mediation sessions.  Finally, the Settlement represents a significant percentage of estimated recoverable damages and was negotiated by counsel with extensive experience in securities class actions who intelligently evaluated the merits of Plaintiffs' claims, including the risks to recovery and likelihood of ultimate success.

Plaintiffs respectfully request the Court take the first step in the approval process by granting preliminary approval of the proposed Settlement and certifying the proposed Class for the purposes of settlement, to which Defendants have stipulated and agreed.  At this stage, the Court is asked to: (i) evaluate the terms of the Settlement under Rule 23(e)(2), as recently amended, and the Fourth Circuit's standards for procedural fairness and substantive adequacy; and (ii) certify the Class for settlement purposes.  *See* Fed. R. Civ. P. 23(e); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991).  As set forth below, the proposed Settlement easily satisfies these standards.  The Settlement is a very good result for the Class as it provides for the all cash payment of $108 million, representing approximately 30% of Plaintiffs' estimate of reasonably recoverable damages suffered by the Class.[2]  This is a result approximately 5.75 to 12 times the average percentage recovery in securities class actions in 2017.  *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements – 2017 Review & Analysis*, at 7-8 (Cornerstone Research 2018),

---

[2]   It represents an even higher percentage if Defendants' expected arguments with respect to loss causation and damages had been accepted at summary judgment or trial since Defendants dispute Plaintiffs' estimated recoverable damages.

attached hereto as Exhibit 2. It is also at least double the percentage recovery of recent highly-successful securities class action settlements approved in this District. *See, e.g.*, *In re Computer Scis. Corp. Sec. Litig.*, No. 1:11-cv-00610-TSE-IDD, ECF No. 324 at ¶139 (E.D. Va. Aug. 15, 2013) (settlement recovery of approximately 14% of plaintiffs' damages estimate); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 842 n.3 (E.D. Va. 2016) (approving settlement which "represents approximately 15% of the damages" and noting that median settlements for securities class actions was "3.6 percent of estimated damages"). If the Court grants preliminary approval of the Settlement, notice will be given to the Class, informing them of their right to object or opt out of the Class and of the date set for a final Settlement Hearing.

The Settlement was ultimately reached only after intensive arm's-length negotiations over the course of several months. These negotiations were facilitated by, and included two in-person mediation sessions with, Gregory P. Lindstrom of Phillips ADR who is very experienced in the resolution of large and complex litigation, particularly in the area of securities class action litigation. With the benefit of substantial briefing and discussions, and an advanced factual record, Mr. Lindstrom made, and the Settling Parties accepted, a mediator's proposal to resolve the case for $108 million in cash on December 21, 2018.

Plaintiffs and their counsel approve of the Settlement. Plaintiffs are sophisticated institutional investors, with hundreds of millions of assets under management and experience in securities fraud litigation. Lead Counsel and Liaison Counsel have substantial securities litigation experience, have litigated dozens of cases to resolution, and are recognized as leading experts in the field. Plaintiffs retained these attorneys specifically because of their expertise and acumen in large complex securities matters like this one, as well as their experience with the Court. In accepting the mediator's proposal, Plaintiffs and Lead Counsel understood that there were serious risks in continued litigation. Although Plaintiffs believe strongly in the merits of their case, Defendants do

- 3 -

too.  At trial, Plaintiffs would have had the burden of proving each of the elements of their securities fraud claims – in a case that centers on tedious accounting principles – over Defendants' defenses. Notably, this Court dismissed the securities fraud claims against all of the individual defendants and only upheld the §10(b) claim in the amended complaint based on a corporate scienter theory after re-considering its prior ruling.  *See* ECF Nos. 75 and 99.  Trial would have been very expensive, and either party could have prevailed.

Plaintiffs submit that the proposed Settlement is fair, reasonable and adequate.  It represents a very good result and is in the best interests of the Class.

## II.    PROCEDURAL HISTORY OF THE LITIGATION

The Action was brought on behalf of a proposed class of: (i) all persons who held stock in Orbital Sciences Corporation ("Orbital Sciences") as of December 16, 2014 and exchanged shares of Orbital Sciences stock for shares of Orbital ATK, Inc. ("Orbital ATK" or the "Company") common stock on or around February 9, 2015 in connection with the merger between Alliant Techsystems Inc. ("Alliant") and Orbital Sciences[3]; and/or (ii) all persons who purchased Orbital ATK common stock between May 28, 2015 and August 9, 2016, inclusive (the "Class Period").

The initial complaint was filed on August 12, 2016.  On November 10, 2016, the Court appointed Pension Trust as Lead Plaintiff and Robbins Geller Rudman & Dowd LLP as Lead Counsel.  On April 24, 2017, Lead Plaintiff filed its Complaint for Violations of the Federal Securities Laws ("Complaint"), which added Wayne County as named plaintiff and alleged violations of §§10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934.  The named defendants in the Complaint were Orbital ATK, D. Thompson, Garrett E. Pierce, Blake E. Larson, and Mark W. DeYoung.

---

[3]    Orbital Sciences and Alliant merged on February 9, 2015 (the "Merger"), at which time Orbital Sciences shareholders were issued Alliant stock, and Alliant, the surviving entity, changed its name to Orbital ATK.

As to the §14(a) claim, the Complaint alleged that the Joint Proxy Statement issued by Alliant and Orbital Sciences and signed by defendants D. Thompson, Pierce, and DeYoung on December 17, 2014, which was used to solicit shareholder approval of the Merger, contained materially false and misleading statements regarding: (i) Alliant's historical financial results; (ii) the performance of Alliant's largest contract, the $2.3 billion Lake City Contract; and (iii) Alliant's internal controls because the statements omitted to disclose that Alliant's financial results were materially misstated, that the Lake City Contract was operating at an approximately $375 million loss, and that Alliant suffered material weaknesses in internal controls.  As a result, Alliant was overvalued and Orbital Sciences shareholders were solicited to vote in favor of a merger that provided them with inadequate consideration.

As to the §10(b) claim, the Complaint alleged that during the Class Period, Defendants Orbital ATK, D. Thompson, Pierce, Larson, and DeYoung made false and misleading statements regarding: (i) Orbital ATK's financial results; (ii) the Lake City Contract's performance; (iii) Orbital ATK's internal controls; and (iv) purported synergies resulting from the Merger because the statements omitted to disclose, *inter alia*, that Orbital ATK's financial results were materially misstated, that the Lake City Contract was operating at an approximately $375 million loss, and that Orbital ATK suffered material weaknesses in internal controls.  As a result, Orbital ATK's stock price was artificially inflated, resulting in substantial damage to members of the Class when the truth was revealed.

Defendants fought hard to dismiss this case in successive motions to dismiss.  On May 30, 2017, Defendants filed their first motion to dismiss the Complaint.  On September 26, 2017, the Court issued two orders, one denying Defendants' motion to dismiss Lead Plaintiff's §14(a) claim and the other granting Defendants' motion to dismiss Lead Plaintiff's §10(b) claim without prejudice and with leave to amend.  In denying the §10(b) claim, the Court rejected Plaintiffs' argument that

- 5 -

the scienter of certain lower-level employees could be imputed to the Company "because plaintiffs do not allege that any of these employees made false or misleading statements."  ECF No. 75 at 39.

On October 10, 2017, Lead Plaintiff filed an Amended Complaint for Violations of the Federal Securities Laws ("Amended Complaint") adding the principal accounting officer, H. Thompson, as a defendant on the §10(b) claim and additional allegations supporting corporate scienter of Orbital ATK for the §10(b) claim.  Defendants again moved to dismiss the §10(b) claim, and on March 2, 2018, the Court granted the motion to dismiss defendant H. Thompson but denied it as to Orbital ATK.  In doing so, the Court reconsidered a prior opinion to find the scienter of non-speakers could be attributed to the corporation.  *See, e.g.*, ECF No. 99 (stating "[t]his more comprehensive analysis of relevant precedent discloses that, in contrast to the decision in *In re Computer Sciences*, circuit authority suggests that the scienter of lower-level employees can be imputed to the corporation for the purposes of securities fraud where those employees cause the corporation or its officers to make a misleading statement in SEC filings").  In addition, Defendants had sought permission to appeal the denial of their motion to dismiss the §14(a) claim, but the Court denied the motion for a certificate of appealability.  ECF No. 100.  On March 16, 2018, Defendants filed their answers denying liability and asserting defenses to the Amended Complaint.

Just as Defendants fought hard to dismiss the case, they fought hard to resist discovery. Because the PSLRA requires that all discovery be stayed during the pendency of a motion to dismiss, discovery in the Action did not commence until March 2, 2018.  Lead Plaintiff promptly engaged in extensive discovery and discovery motion practice.  Lead Plaintiff served document requests and subpoenas to more than 40 parties and non-parties, resulting in the production of over 4.7 million pages, issued other written discovery, and took or defended a total of 26 depositions, several of which were taken after Plaintiffs filed a motion to increase the number of permitted fact depositions.  *See* ECF Nos. 334, 358.

- 6 -

1523346_2

Discovery was hard fought and resulted in Lead Plaintiff having filed ten motions to compel, eight of which were granted in substantial part, two of which were resolved prior to ruling. *See, e.g.*, ECF Nos. 139, 164, 165, 269, 283, 431.   Among other documents, Lead Plaintiff successfully obtained orders compelling Defendants to produce: post-Class Period documents Defendants had refused to produce, fact witness interview memoranda from the Company's internal investigation, auditor workpapers withheld by Orbital ATK on the basis of privilege or work product, and hundreds of documents listed on Orbital ATK's internal investigation privilege log. *See, e.g.*, *id.* Defendants appealed several of these rulings pursuant to Fed. R. Civ. P. 72, and those motions were fully briefed and awaiting hearing. *See, e.g.*, ECF Nos. 275, 297, 411.   In addition to fact discovery, given the complicated nature of the case, Lead Plaintiff retained highly-qualified experts on the topics of accounting, merger due diligence, and damages and loss causation.   The parties exchanged expert reports and were preparing for expert depositions at the time of the mediator proposal.

On June 22, 2018, Lead Plaintiff filed its motion for class certification.   Defendants filed their opposition to class certification on July 20, 2018, and Lead Plaintiff filed its reply on August 17, 2018.   On August 8, 2018, Lead Plaintiff filed a motion for leave to file a Second Amended Complaint seeking to revive the §10(b) claim against DeYoung, Pierce, and Larson.   At the time the Settling Parties reached an agreement to settle the Action, Lead Plaintiff's motion for class certification, Defendants' Rule 72 objections, and Plaintiffs' motion for leave to amend were set for hearing on February 7, 2019, and pending before the Court.

During the Action, the parties engaged the services of mediator Gregory P. Lindstrom of Phillips ADR, who has extensive experience mediating complex class action litigations such as this Action.   The Settling Parties engaged in two all-day mediation sessions with Mr. Lindstrom, the details of which are discussed more fully below in §IV.   On December 21, 2018, Mr. Lindstrom

issued a mediator's proposal, which the Settling Parties accepted, agreeing to settle the Action in the amount of One Hundred Eight Million Dollars ($108,000,000.00).

## III.    THE SETTLEMENT TERMS

This Settlement requires Defendants to pay $108 million into the Escrow Account, which amount comprises the Settlement Fund.

Notice to the Class and the cost of settlement administration ("Notice and Administration Costs") will be funded by the Settlement Fund.  Agreement, ¶2.7.  Plaintiffs propose a nationally recognized class action settlement administrator, Gilardi & Co. LLC ("Gilardi"), to be retained here subject to the Court's approval.  The proposed notice plan and plan for claims processing is discussed below in §VII and in the Declaration of Michael Joaquin Regarding Notice and Administration ("Joaquin Declaration"), attached hereto as Exhibit 3.

Because the Settlement Fund is a "qualified settlement fund," within the meaning of Treas. Reg. §1.468B-1, the income earned on the Settlement Fund is taxable.  All Taxes and Tax Expenses (such as expenses of tax attorneys and/or accountants) shall be paid out of the Settlement Fund.

Plaintiffs intend to request an amount not to exceed $15,000 each pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.  Any such amounts the Court awards shall be paid from the Settlement Fund.

Lead Counsel will submit an application with its opening papers in support of final approval of the Settlement for: (a) an award of attorneys' fees in the amount of 28% of the Settlement Amount[4]; (b) payment of expenses or charges resulting from the prosecution of the Action of as

---

[4]    The actual fee will be decided by this Court at final approval, but note that the 28% fee is consistent with awards to class counsel in this District in other cases and will result in a lodestar multiplier less than 2.0 which is consistent with and even below other fee awards in this District. *See, e.g.*, *In re Celebrex Antitrust Litig.*, 2018 WL 2382091, at *5 (E.D. Va. Apr. 18, 2018) (awarding 33% fee in antitrust class action that resulted in 1.94 multiplier); *Genworth*, 210 F. Supp. 3d at 845 (awarding 28% fee that resulted in 1.97 multiplier on $219 million securities class action settlement ); *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 789-90 (E.D. Va. 2001) (awarding fee in securities class action settlement that resulted in multiplier of 2.6).

much as $1.3 million; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.  Such fees and expenses shall be paid from the Settlement Fund upon entry of the order awarding such fees and expenses.

Once Notice and Administration Costs, Taxes, Tax Expenses and Court-approved attorneys' fees and expenses and any award to the Plaintiffs for their costs and expenses pursuant to 15 U.S.C. §78u-4(a)(4) have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.  Any amount remaining following the distribution shall be redistributed in an economically feasible manner.  The Plan of Allocation treats all Class Members equitably based on the timing of their Orbital ATK common stock purchases, acquisitions and sales.

The Settling Parties have entered into a Supplemental Agreement which provides that if prior to the Settlement Hearing, the number of shares of Orbital ATK or Orbital Sciences common stock represented by valid claims by Persons who would otherwise be members of the Class, but who request exclusion from the Class, exceeds a certain amount, Orbital ATK shall have the option to terminate the Agreement.  Agreement, ¶7.3.

In exchange for the benefits provided under the Agreement, Class Members will release any and all claims against Defendants relating to or arising from: (i) the proxy solicitation in connection with the merger between Alliant and Orbital Sciences and the exchange of shares of Orbital Sciences stock (held as of December 16, 2014) in connection with that merger; or (ii) the purchase, acquisition or sale of Orbital ATK common stock during the Class Period; and (iii) the allegations, transactions, facts, matters or occurrences, representations or omissions, including the Lake City Contract's performance, Alliant's historical financial performance related thereto, or internal

controls related thereto, involved or set forth in, or related to the Amended Complaint or proposed

Second Amended Complaint.  Agreement, ¶1.18.

## IV.    ARM'S-LENGTH SETTLEMENT NEGOTIATIONS

The Settling Parties engaged in extensive arm's-length negotiations before Mr. Lindstrom.

The first in-person mediation session occurred on June 6, 2018.  In advance of the first mediation,

the parties exchanged and produced to Mr. Lindstrom detailed mediation statements addressing

liability and damages.  Over the course of the day of the first mediation, Mr. Lindstrom engaged in

extensive discussions with counsel and the carriers in an effort to find common ground between the

parties' respective positions.  The parties exchanged settlement demands and offers.  Although the

first mediation session ended without a settlement agreement and with the parties far apart, the

parties remained in communication with the mediator while litigation continued.

Following the first mediation session, and pursuant to the Court's pretrial schedule, the

parties continued with fact and expert discovery and performed much of the document analysis,

depositions, and briefing described above.  When the record was largely developed, approximately

five months after the first mediation session, on November 6, 2018, Mr. Lindstrom held another full-

day mediation session.  In advance of the second mediation session, the parties again exchanged and

provided to Mr. Lindstrom supplemental mediation materials, including detailed updates on the

proceedings since the first mediation.  In total, Plaintiffs provided more than 100 exhibits with their

mediation briefs.

During the second session, Mr. Lindstrom again engaged in extensive discussions with

counsel and the carriers, and the parties exchanged several additional rounds of settlement demands

and offers.  The session, however, ended with the parties at an impasse, and discovery resumed.

After the second mediation session, Mr. Lindstrom continued discussions with the parties and

carriers.  On December 21, 2018, Judge Nachmanoff held a hearing on Plaintiffs' motions to compel,

*inter alia*, all documents: (i) identified on Orbital ATK's internal investigation privilege log, and (ii) withheld by Deloitte on the basis of Orbital ATK's purported privilege or work product. Following argument, Judge Nachmanoff ordered production of the approximately 1,200 documents. With all the foregoing as background, and following additional negotiations, Mr. Lindstrom ultimately made a mediator's proposal to settle the Action for $108 million in cash. The Settling Parties accepted Mr. Lindstrom's mediator's proposal, informed the Court of the proposed agreement in principle, and prepared the detailed Agreement and related papers.

## V.   PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW PLAINTIFFS TO NOTIFY THE CLASS

Federal Rule of Civil Procedure 23(e) requires judicial approval for a settlement of claims brought as a class action. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval."). The approval process typically takes place in two stages. In the first stage, a court provides preliminary approval of the settlement, pending a final settlement hearing, certifies the class for settlement purposes, and authorizes notice of the settlement to be given to the class. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827 (E.D.N.C. 1994).

Pursuant to Rule 23(e)(1), as recently amended, the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2)   ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)   the class representatives and class counsel have adequately represented the class;
> >
> > (B)   the proposal was negotiated at arm's length;
> >
> > (C)   the relief provided for the class is adequate, taking into account:

(i)      the costs, risks, and delay of trial and appeal;

(ii)     the effectiveness of any proposed method of distributing relief to the class, including **the method of processing class-member claims**;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)      the proposal treats class members equitably relative to each other.

Overlapping with Rule 23(e)(2)(B) (arm's length negotiation) and Rule 23(e)(2)(C)(i) (adequacy of the settlement based on the costs, risks, and delay of trial and appeal) is the two-level analysis in the Fourth Circuit, *Jiffy Lube*, 927 F.2d at 158-60, which "includes an assessment of both the procedural fairness of the settlement negotiations and the substantive adequacy of the settlement itself." *In re NeuStar, Inc. Sec. Litig.*, 2015 WL 5674798, at *9 (E.D. Va. Sept. 23, 2015). The procedural fairness factor ensures "that the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Jiffy Lube*, 927 F.2d at 158-59. The substantive adequacy analysis, on the other hand, "weigh[s] the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement." *NeuStar*, 2015 WL 5674798, at *11. As discussed below, the proposed Settlement for $108 million in cash easily satisfies each of the factors identified under Rule 23(e)(2), as well as the Fourth Circuit's "fairness" and "adequacy" analysis, and the standard for certification of a class for settlement purposes is met, such that Notice of the proposed Settlement should be sent to the Class in advance of a final Settlement Hearing.

### A.      The Proposed Settlement Is Procedurally Fair

The Rule 23(e)(2)(B) factor and the first hurdle under the Fourth Circuit's analysis is a procedural one – "whether the settlement was reached through good-faith bargaining at arm's length." *NeuStar*, 2015 WL 5674798, at *10; *see* Rule 23(e)(2)(B) ("the proposal was negotiated at

arm's length").  In making this determination, courts in the Fourth Circuit look at four factors: "'(1) the posture of the case at the time the settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation.'"  *NeuStar*, 2015 WL 5674798, at *10 (quoting *Jiffy Lube*, 927 F.2d at 159).  Each of these factors is satisfied as the settlement negotiations were at all times conducted at arm's length.

Looking to the first *Jiffy Lube* factor, the Court considers whether the case has progressed far enough to dispel any wariness of "'possible collusion among the settling parties.'"  *NeuStar*, 2015 WL 5674798, at *10 (quoting *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009)).  Here, there can be no question the Settlement was the result of arm's length negotiation in which there is no hint of collusion.  As discussed, Plaintiffs filed two detailed complaints, opposed Defendants' successive motions to dismiss and motion to appeal denial of the dismissal, completed highly contested fact discovery, filed and won or resolved 10 motions to compel, opposed Defendants' Rule 72 objections, moved for and briefed a motion to add substantial additional allegations to the Amended Complaint, moved for additional fact depositions to preserve out-of-state testimony for trial, served three expert reports, and filed and briefed a motion for class certification with additional expert reports filed in support.  Moreover, the Settling Parties and certain insurance carriers engaged in an extended negotiation process before an experienced mediator.  "These adversarial encounters dispel any apprehension of collusion between the parties."  *NeuStar*, 2015 WL 5674798, at *10.

The second *Jiffy Lube* factor is the extent of discovery.  "This factor permits the Court to ensure that all parties 'appreciate the full landscape of their case when agreeing to enter into the Settlement.'"  *NeuStar*, 2015 WL 5674798, at *10 (quoting *Mills*, 265 F.R.D. at 254).  Plaintiffs fought for and received more than 4 million pages of documents from Defendants and third parties,

subpoenaed and received documents from dozens of third parties, briefed 10 motions to compel, and took and defended 26 depositions. By the time settlement was reached, discovery was nearly complete, and the Settling Parties had an extensive factual record.

The third *Jiffy Lube* factor (the circumstances surrounding the negotiations) is also readily met here. The circumstances surrounding the negotiations are detailed above in §IV. Those negotiations were vigorous and adversarial throughout. In fact, when the parties could not reach compromise, the mediator proposed a settlement that was ultimately accepted.

Finally, the fourth factor (the experience of counsel in the area of securities class action litigation) is met. As recognized by this Court, Lead Counsel "has a long record of success in these types of cases" (ECF No. 41 at 14), and its experience is discussed at length in the Robbins Geller firm resume. ECF No. 219-6. As in *NeuStar*, "[c]ounsel in this case are affiliated with national law firms recognized for their experience in securities litigation and class representation." *NeuStar*, 2015 WL 5674798, at *11 (citing *Mills*, 265 F.R.D. at 256 ("[W]hen Class Counsel are nationally recognized members of the securities litigation bar, it is entirely warranted for this Court to pay heed to their judgment in approving, negotiating, and entering into a putative settlement.")). Moreover, the Court-appointed Lead Plaintiff, Pension Trust, and the named plaintiff, Wayne County, are sophisticated institutional investors that collectively care for hundreds of millions of dollars of their beneficiaries' investments, are experienced in securities class actions, and both Plaintiffs and their counsel approve of the proposed Settlement.

## B.     The Settlement Is Substantively Adequate

The Rule 23(e)(2)(C)(i) factor (adequacy of relief, taking into account the "costs, risks, and delay of trial and appeal") and the second hurdle under the Fourth Circuit's analysis is the substantive adequacy of the settlement. This factor is also readily satisfied. Here, the Court considers the following:

1523346_2

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*NeuStar*, 2015 WL 5674798, at *11 (quoting *Jiffy Lube*, 927 F.2d at 159). These factors weigh heavily in favor of finding the proposed Settlement adequate.

In regard to the merits of the case, although Plaintiffs and Plaintiffs' Counsel believe that the claims asserted are meritorious, continued litigation through trial – and likely appeals – posed significant risks that made any recovery uncertain. Both parties were strongly convinced of their legal and factual arguments; a resolution of this matter without trial was not certain, and at trial either party could potentially prevail. For example, Defendants deny that the statements that Plaintiffs challenged were, in fact, false and deny that the statements were made with scienter. The main allegedly false statements in the case centered around: (i) Orbital ATK's financial results; (ii) the Lake City Contract's performance; (iii) Orbital ATK's internal controls; and (iv) purported synergies from the merger with Orbital Sciences. Although the Court denied many of Defendants' arguments at the motion to dismiss stage, Defendants would argue at trial that the evidence demonstrates that they did not knowingly, negligently, or otherwise, make any material misstatements or omissions.

Indeed, the difficulties of proof were substantial. The underlying facts involved complicated issues of accounting and economics that are challenging for most laypersons to understand. Further, among other things, Defendants would have produced proof at trial that their outside auditor provided Defendants clean audit opinions on Alliant's pre-Class Period financial statements and Orbital ATK's Class Period financial statements, including the aspects of those financial statements concerning the Lake City Contract and internal controls. Defendants would have argued, as they successfully did in seeking to dismiss the fraud claims against the individual defendants, that if the

auditors could not detect the accounting misstatements then it could not be said that the Defendants acted with scienter or even negligence in failing to do so.

Even if the hurdles to establishing liability were overcome, the amount of damages that could be attributed to the allegedly false statements would be hotly contested.  Defendants would likely contend that most, if not all, of investors' losses were caused by factors other than their alleged misstatements during 2014 and 2015.

Plaintiffs would have to prevail on all of these issues at trial, and if they prevailed at trial, on the appeals that would likely follow.  In addition, Defendants raised legal challenges as to whether scienter, rather than negligence, was required for the §14(a) claim and as to whether lower level employees' scienter could be attributed to the corporation and undoubtedly would have pursued those issues on appeal.  Thus, there were very significant risks attendant to the continued prosecution of the Action.  Without settlement, the length of time and the amount of expense required to resolve all of these issues would be considerable.

The remaining factor – the degree of opposition to the Settlement – will be addressed at the final approval stage, after the Class Members have been given notice of the proposed Settlement and an opportunity to object.  To date, Plaintiffs are unaware of any potential objections to the Settlement by any Class Member.

## C.     The Remaining Amended Rule 23(e)(2) Factors Are Also Met

### 1.     Plaintiffs and Their Counsel Have Adequately Represented the Class

As explained above, Plaintiffs and their counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Action on their behalf, including, among other things, drafting the complaints, opposing Defendants' motions to dismiss, obtaining, reviewing and analyzing over 4.7 million pages of documents, taking and defending 26 depositions, filing 10 motions to compel, fully briefing Plaintiffs' motion for class certification, filing a motion for leave to

amend, and engaging in two full-day mediation sessions with the mediator.  Moreover, Lead Counsel has achieved a remarkable Settlement of $108 million which will provide significant relief to the Class.

### 2. The Proposed Method for Distributing Relief Is Effective

As demonstrated below in §VII and in the Joaquin Declaration submitted herewith, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective.  The notice plan includes direct mail notice to all those who can be identified with reasonable effort supplemented by the publication of the Summary Notice in *The Wall Street Journal* and over the *Business Wire*.  In addition, a settlement-specific website will be created where key documents will be posted, including the Agreement, Notice, Proof of Claim and Preliminary Approval Order.  Joaquin Decl., ¶17.  Gilardi estimates that the notice plan will reach approximately 95% of potential Class Members.  *Id.*, ¶19.

The claims process is also effective and includes a standard claim form which requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants.  The Plan of Allocation was prepared with the assistance of Plaintiffs' damages consultant and is based primarily on the expert's discounted cash flow analysis estimating the amount Alliant was artificially overvalued on the date of the Merger, and the expert's event study analysis estimating the amount of artificial inflation in the prices of Orbital ATK common stock during the Class Period.  A thorough claim review process, including how deficiencies are addressed, is also explained in the Joaquin Declaration.  *Id.*, ¶¶25-27.

### 3. Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  As discussed above (at §III), Lead Counsel intends to seek an award

of attorneys' fees in the amount of 28% of the Settlement Amount and expenses in an amount not to exceed $1.3 million, plus interest on both amounts. This fee request is in line with other settlements approved in recent cases in this District. *See, e.g.*, *Genworth*, 210 F. Supp. 3d at 845 (approving attorneys' fees in amount of 28% of settlement and noting courts grant up to 33% in similar class actions). In addition, Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award. *See In re Genworth*, 2016 U.S. Dist. LEXIS 132269, at *28 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order").

Further, as explained in the Notice, the Plaintiffs intend to request an amount not to exceed $15,000 each pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

### 4.     The Parties Have No Side Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Settling Parties have entered into a standard supplemental agreement which provides that if Class Members opt out of the Settlement such that the number of shares of Orbital ATK or Orbital Sciences common stock represented by such opt outs equals or exceeds a certain amount, Orbital ATK shall have the option to terminate the Settlement. Agreement, ¶7.3.

### 5.     Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), looks at whether Class Members are treated equitably. As reflected in the Plan of Allocation (Agreement, Ex. A-1 at 15-20), which tracks Plaintiffs' expert's damages methodology, the Settlement treats Class Members equitably relative to each other, based on the timing of their Orbital ATK common stock purchases, acquisitions and sales, and by providing that each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund based on their recognized losses.

*     *     *

Each factor identified under Rule 23(e)(2), including the procedural fairness and substantive adequacy of the $108 million recovery, as required by the Fourth Circuit, is satisfied.  Given the litigation risks involved, the complexity of the underlying issues and the skill of defense counsel, the $108 million recovery is remarkable.  It could not have been achieved without full commitment by Plaintiffs and their counsel.  Plaintiffs and Plaintiffs' Counsel respectfully submit that the Settlement is both fair and adequate and that it meets each of the Rule 23(e)(2) factors such that notice of the Settlement should be sent to the Class.

## VI.    CERTIFICATION OF A CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In granting preliminary settlement approval, the Court is also respectfully requested to certify the proposed Class for purposes of the Settlement under Rules 23(a)(1)-(4), 23(b) and 23(e) of the Federal Rules of Civil Procedure.  Certification of a settlement class is not disputed.

As set forth in paragraph 1.3 of the Agreement, the Settling Parties have stipulated to the following Class definition:

> (i) all persons who held stock in Orbital Sciences as of December 16, 2014 and exchanged shares of Orbital Sciences stock for shares of Orbital ATK common stock on or around February 9, 2015 in connection with the merger between Alliant and Orbital Sciences; and/or (ii) all persons who purchased Orbital ATK common stock between May 28, 2015 and August 9, 2016, inclusive.

Excluded from the Class are Defendants and members of their immediate families, any entity in which a Defendant has a controlling interest, and the legal representatives, heirs, successors, or assigns of any such excluded party.  In addition, any persons who exclude themselves by submitting a valid and timely request for exclusion that is accepted by the Court, are excluded from the Class.

Courts have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See, e.g.*, *NeuStar*, 2015 WL 5674798, at *2; *Mills*, 265 F.R.D. at 255.  A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue.  *See Amchem Prods., Inc. v.*

- 19 -

*Windsor*, 521 U.S. 591, 620 (1997) (explaining that, when determining whether to certify a settlement class, courts need not consider the last factor, "whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *NeuStar*, 2015 WL 5674798, at *8.

Here, as further set forth in Plaintiffs' motion for class certification for litigation purposes, and supporting expert declarations, previously filed with the Court and incorporated by reference herein, ECF Nos. 218, 219 and 367, the requirements for certifying a class are met.

### A.    The Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

### 1.    Numerosity

"In securities class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period."  *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009); *see also In re BearingPoint, Inc.*, 232 F.R.D. 534, 538 (E.D. Va. 2006) (noting that numerosity is "seldom disputed in securities fraud cases").  Here, more than 52 million shares of Orbital Sciences stock were eligible to vote on the Merger, and, after the Merger, more than 58 million shares of Orbital ATK stock were outstanding on the NYSE.  *See* ECF No. 219-1 (Declaration of Steven P. Feinstein, PH.D., CFA), at ¶¶29, 87; ECF No. 219-2 (Orbital Sciences Corp., Current Report (Form 8-K) (Jan. 27, 2015)).  Orbital ATK stock was actively traded during the Class Period, with an average daily volume of over 450,000 shares and an average weekly

volume of over two million shares. *See* ECF No. 219-1 at ¶¶52-53. Thus, numerosity is satisfied. *See, e.g.*, *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 105 (E.D. Va. 2009) (holding numerosity established where company "had millions of shares outstanding during the Class Period"); *Ganesh, L.L.C. v. Computer Learning Ctrs., Inc.*, 183 F.R.D. 487, 489 (E.D. Va. 1998) (same, where 5.1 million shares were actively traded on the NASDAQ).

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not mean that members of the class must have identical factual and legal claims in all respects." *Mills*, 257 F.R.D. at 105. Commonality is routinely established in securities cases like this one because "[m]embers of a proposed class in a securities case are especially likely to share common claims and defenses." *BearingPoint*, 232 F.R.D. at 539 (citing cases). In general, "where putative class members [in a securities case] have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied." *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012) (certifying class with §10(b) and §14(a) claims).

Here, Plaintiffs' and the Class's claims all arise out of the same alleged course of conduct – Defendants' material misstatements and omissions concerning the Lake City Contract loss, the Company's inflated financial performance, and the material weaknesses in internal controls. Defendants' material misrepresentations and omissions were made to the investing public in press releases, SEC filings (including the Joint Proxy), and conference calls, and injured each Class Member who exchanged Orbital Sciences shares (held as of December 14, 2016) for Orbital ATK stock in the Merger, or acquired Orbital ATK stock during the Class Period (or both). Thus, virtually all of the questions of law or fact at issue are common to Pension Trust, Wayne County, and Class Members, including:

- whether Defendants violated the Exchange Act;

- whether Defendants' public statements misrepresented or omitted material facts;

- whether Defendants acted with the requisite culpability when making material misstatements or omissions;

- whether Defendants' misstatements or omissions caused the alleged damages; and

- whether certain Defendants were control persons.

These common issues of law and fact satisfy Rule 23(a)(2).  *See, e.g.*, *In re Heckmann Corp. Sec. Litig.*, 2013 WL 2456104, at *11 (D. Del. June 6, 2013) (holding commonality satisfied where the common issues were: "(1) whether defendants violated sections 10(b), 14(a), and 20(a) of the Securities Exchange Act; (2) whether material facts were misrepresented or omitted in the proxy, SEC filings, press releases, or other statements to the public; and (3) whether defendants' misrepresentations or omissions caused the alleged losses"); *In re NII Holdings, Inc.*, 311 F.R.D. 401, 406 (E.D. Va. 2015) (certifying class where common questions included whether the defendants made false statements or omissions, whether those statements or omissions were material, and whether the statements were made with the requisite culpability).

### 3.   Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied where "the class representative is part of the class and possesses the same interest and suffers the same injury as the class members."  *In re Computer Scis.*, 288 F.R.D. 112, 122 (E.D. Va. 2012).  Here, both Wayne County and the Pension Trust are part of the Class, possess the same interest as the Class, and suffer the same injury as the Class.  Wayne County, like other Class Members with §14(a) claims, exchanged shares of Orbital Sciences stock for shares of Orbital ATK stock in connection with the Merger and suffered harm from the misrepresentations and omissions in the Joint Proxy.  *See* ECF No. 53-2 at ¶4; ECF No. 78 at ¶¶15, 260, 292.  The Pension Trust, like other Class Members

§10(b) claims, purchased shares of Orbital ATK stock after the Merger and suffered harm from the Class Period misrepresentations and omissions contained in the SEC filings, press releases, and conference calls.  *See* ECF No. 53-1 at Schedule A; ECF No. 78 at ¶¶14, 250.  Plaintiffs and all other Class Members seek to recover damages for injuries caused by the statements disseminated by Defendants.  *See* ECF No. 219-4 (Declaration on Behalf of the Pension Trust); ECF No. 219-5 (Declaration on Behalf of Wayne County).  Plaintiffs' claims are typical of those of the Class because "as goes the claim[s] of the named plaintiff[s], so go the claims of the class."  *NII Holdings*, 311 F.R.D. at 407; *see also BearingPoint*, 232 F.R.D. at 539 (holding typicality satisfied where the plaintiff's claims "represent the essential claims of the proposed plaintiff class"); *Bank of Am.*, 281 F.R.D. at 139 (holding typicality satisfied for §10(b) and §14(a) claims).

### 4.     Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The primary purpose of the adequacy requirement "is to detect and avoid potential conflicts between lead plaintiffs and other class members."  *Computer Scis.*, 288 F.R.D. at 118.  It is generally satisfied where the representative "(i) does not have interests that are adverse to the interests of the class, (ii) has retained competent counsel, and (iii) is otherwise competent to serve as class representative."  *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 435-36 (E.D. Va. 2000) (Ellis, J.).  Here, Plaintiffs' interests are aligned with – and not antagonistic to – those of the Class.  Plaintiffs are large pension funds that, like Class Members, exchanged thousands of shares of Orbital Sciences stock for Orbital ATK stock in the Merger or purchased thousands of shares of Orbital ATK stock at artificially inflated prices after the Merger.  *See* ECF Nos. 53-1, 53-2.  Thus, Plaintiffs and the proposed Class have precisely the same interest in achieving the maximum recovery possible (*see* ECF No. 219-4 at ¶¶5, 7; ECF No. 219-5 at ¶¶5, 7).

1523346_2

Plaintiffs also understand the role and obligations of class representatives and have protected, and will continue to protect, the Class's interest.  *See* ECF No. 219-4 at ¶¶5-8; ECF No. 219-5 at ¶¶5-8.  For example, Plaintiffs have demonstrated their competency and ability to serve as class representatives by, *inter alia*, filing certifications attesting that they would competently fill their role as class representatives (ECF Nos. 53-1, 53-2), overseeing the litigation through the pleadings, motions to dismiss, discovery, and now settlement phases, and participating in discussions with Lead Counsel concerning case developments, strategies, significant filings, and settlement.  Further, Plaintiffs have searched for and produced documents in discovery, responded to written discovery, and provided deposition testimony.  Clearly, Pension Trust and Wayne County are competent and aligned with the Class.  *See NII Holdings*, 311 F.R.D. at 407 (holding adequacy established where plaintiffs were "sizeable pension funds that have a strong incentive to seek the largest possible recovery on behalf of their beneficiaries" and plaintiffs "filed certifications attesting that they would competently fulfill their role as Class Representatives").

Plaintiffs have also engaged Robbins Geller as Lead Counsel.  The firm has extensive experience litigating securities class actions both before courts in this Circuit and throughout the country.  *See* ECF No. 219-6 (firm resume).  This Court has already found that "[t]here is no question that Robbins Geller is qualified to litigate this class action lawsuit – it has a long record of success in these types of cases."  ECF No. 41 at 13-14.  Since appointment as Lead Counsel, Robbins Geller engaged in extensive and hard-fought motion, discovery, and settlement practice.  Counsel are qualified, experienced, and able to prosecute this Action.  *See NII Holdings*, 311 F.R.D. at 408 (holding adequacy established where counsel were "highly-experienced," had "a proven track record" in litigating securities actions, and had "already undertaken substantial work" in the action).

**B.      Rule 23(b)(3) Is Satisfied**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 614-15.  Certification of the Class for settlement serves these purposes.  Courts in this District have explained that "[s]ecurities fraud actions typically meet the Rule 23(b)(3) requirement because the claims relate to acts or omissions of the same defendants and damages of individual class members might be too small to provide incentive for the individuals to sue." *Mills*, 257 F.R.D. at 109; *BearingPoint*, 232 F.R.D. at 542 (same).

The predominance and superiority requirements are readily satisfied.  For the reasons fully set forth in Plaintiffs' papers in support of class certification (ECF No. 218 at 11-16; ECF No. 367 at 4-16), questions common to all Class Members predominate over any questions affecting only individual Class Members.  As the Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud.  *Amchem*, 521 U.S. at 625; *see also NeuStar*, 2015 WL 5674798, at *5.

Proceeding as a class action is also superior to other available methods for resolution of the Class Members' claims.  *See, e.g.*, *BearingPoint*, 232 F.R.D. at 545 ("class actions are a particularly appropriate and desirable means to resolve claims based on alleged violations of the securities laws").

## VII.    NOTICE TO THE CLASS SHOULD BE APPROVED

As discussed above and outlined in the Settling Parties' agreed-upon form of proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), attached hereto as Exhibit 4, upon the Court's preliminary approval of the Settlement, Plaintiffs will notify Class Members of the Settlement by mailing the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release form ("Proof of Claim") (collectively, the "Claim Package," Exhibits A-1 and A-2 to the Preliminary Approval Order) to all Class Members who can be identified with reasonable effort.  Specifically, the Claims Administrator will utilize resources of data to reasonably identify Class Members, including: (i) lists generated by the stock transfer agent that Defendants provide that identify potential Class Members (*see* Joaquin Decl., ¶6); and (ii) a proprietary list maintained by the Claims Administrator of the largest and most common banks, brokerage firms, and nominees, who will then be required to send the Claim Package to Class Members or provide the Claims Administrator with contact information. Preliminary Approval Order, ¶9; Joaquin Decl., ¶8.[5]

Additionally, Lead Counsel will cause the Summary Notice (Exhibit A-3 to the Preliminary Approval Order) to be published in *The Wall Street Journal* and over the *Business Wire*.  Preliminary Approval Order, ¶11.

The Notice advises Class Members of the terms of the Settlement, Lead Counsel's forthcoming motion for attorneys' fees and expenses, and the proposed Plan of  Allocation  for distributing the Net Settlement Fund.  The Notice further details:  (i) the procedures for objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses; (ii) how Class Members can exclude themselves from (opt out of) the Class; and (iii) the date, time,

---

[5]    Plaintiffs request that the Court approve retention of Gilardi as the claims administrator for this case.  Gilardi has successfully administered numerous complex securities class action settlements to date.  Joaquin Decl., ¶4.

and location of the final Settlement Hearing.  The Notice explains that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proofs of Claim pursuant to the proposed Plan of Allocation appended to the Notice and subject to this Court's approval.  The Proof of Claim (Exhibit A-2 to the Preliminary Approval Order) is the customary form utilized in complex securities class action settlements such as this.

In short, the Notice and Summary Notice fairly apprise the prospective members of the Class of the terms of the proposed Settlement and of the options that are open to them in connection with the proceedings.  The manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process, Rule 23, and the PSLRA.  It is also similar to other notice programs that courts have approved and that have been used successfully in other securities class action settlements within the Fourth Circuit and nationwide.[6]

## VIII.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs request that this Court enter the Settling Parties' agreed-upon form of Preliminary Approval Order, submitted herewith, which among other things, will:

(i)      preliminarily approve the Settlement on the terms set forth in the Agreement;

(ii)     certify the proposed Class for purposes of the Settlement;

(iii)    approve the form and content of the Notice and Summary Notice attached as Exhibits A-1 and A-3 to the Preliminary Approval Order;

(iv)     find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA; and

(v)      set a schedule and procedures for: disseminating the Notice and publication of the Summary Notice; requesting exclusion from the Class; objecting to the Settlement,

---

[6]    *See, e.g.*, *In re Star Sci., Inc. Sec. Litig.*, No. 3:13-CV-00183-JAG (E.D. Va. Mar. 2, 2015) (Order approving of similar notice program in securities class action); *In re Computer Scis. Corp. Sec. Litig.*, No. 1:11-cv-00610-TSE-IDD, ECF No. 313 (E.D. Va. May 24, 2013) (Order approving of similar notice program in securities class action).

the Plan of Allocation or Lead Counsel's application for attorneys' fees and expenses; submitting papers in support of final approval of the Settlement; and the final Settlement Hearing.

The following schedule tracks the dates provided in the Court's Order Setting Deadlines and Hearings for Seeking Final Approval of Settlement, dated January 15, 2019 (ECF No. 435), for the Settlement-related events in this case.

| Event | Proposed Due Date | Date/Deadline |
|---|---|---|
| Date for commencing the mailing of the Notice and Proof of Claim to Class Members (the "Notice Date") | 14 calendar days after entry of Preliminary Approval Order | February 22, 2019 |
| Deadline for publishing the Summary Notice | 14 calendar days after the Notice Date | March 8, 2019 |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | 35 calendar days prior to Settlement Hearing | April 19, 2019 |
| Deadline for requesting exclusion from the Class or filing objections | 21 calendar days prior to Settlement Hearing | May 3, 2019 |
| Deadline for filing reply papers | 7 calendar days prior to Settlement Hearing | May 17, 2019 |
| Deadline for submitting Proofs of Claim | 90 calendar days after the Notice Date | May 23, 2019 |
| Settlement Hearing | At least 100 calendar days after entry of the Preliminary Approval Order | May 24, 2019 |

## IX.     CONCLUSION

Plaintiffs respectfully request that the Court: (i) certify the proposed Class for the purposes of the Settlement; (ii) approve the proposed form and manner of notice to Class Members; and (iii) schedule a hearing on Plaintiffs' motion for final approval of the Settlement and Lead Counsel's

motion for an award of attorneys' fees and expenses.  The Settling Parties' agreed-upon form of

proposed Preliminary Approval Order is submitted herewith.

DATED:  January 30, 2019                    Respectfully submitted,

                                            THE OFFICE OF CRAIG C. REILLY
                                            CRAIG C. REILLY, VSB #20942


                                                    */s/ Craig C. Reilly*
                                            CRAIG C. REILLY

                                            111 Oronoco Street
                                            Alexandria, VA  22314
                                            Telephone:  703/549-5354
                                            703/549-2604 (fax)
                                            craig.reilly@ccreillylaw.com

                                            Liaison Counsel

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            JAMES E. BARZ
                                            FRANK RICHTER
                                            200 South Wacker Drive, 31st Floor
                                            Chicago, IL  60606
                                            Telephone:  312/674-4674
                                            312/674-4676 (fax)

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            DARREN J. ROBBINS
                                            THEODORE J. PINTAR
                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101-8498
                                            Telephone:  619/231-1058
                                            619/231-7423 (fax)

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            MAUREEN E. MUELLER
                                            KATHLEEN B. DOUGLAS
                                            120 East Palmetto Park Road, Suite 500
                                            Boca Raton, FL  33432
                                            Telephone:  561/750-3000
                                            561/750-3364 (fax)

                                            Lead Counsel for Plaintiff

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiff Wayne County
Employees' Retirement System

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2019, I filed the foregoing pleading or paper through the

Court's CM/ECF system, which sent a notice of electronic filing to all registered users:

*/s/ Craig C. Reilly*
Craig C. Reilly, Esq.
VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-5355
EMAIL craig.reilly@ccreillylaw.com
*Liaison Counsel for Lead Plaintiff*

- 30 -