UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| STEVEN KNURR, Individually and on Behalf of All Others Similarly Situated, ) ) | Civil Action No. 1:16-cv-01031-TSE-MSN |
| ) | |
| Plaintiff, ) | CLASS ACTION |
| ) | |
| vs. ) | |
| ) | |
| ORBITAL ATK, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND THE PLAN OF ALLOCATION

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

II.     SUMMARY OF THE LITIGATION ...................................................................3

III.    PLAINTIFFS HAVE PROVIDED NOTICE TO THE CLASS IN
        COMPLIANCE WITH RULE 23 AND DUE PROCESS ....................................4

IV.     THE SETTLEMENT WARRANTS FINAL APPROVAL....................................5

        A.      Standards for Final Approval of Class Action Settlements .....................5

        B.      The Settlement Is Fair and Was Negotiated at Arm's Length .................6

                1.      The Settlement Was Reached After Extensive Litigation ............7

                2.      The Settlement Negotiations Were Conducted over Several
                        Months, at Arm's Length, with an Experienced Mediator .......8

                3.      The Action Was Litigated and Settled by Counsel with Significant
                        Experience in Class Action Litigation .........................................9

        C.      The Settlement Is Adequate Considering the Costs, Risks, and Delay of
                Trial and Appeal ...................................................................................10

                1.      Plaintiffs Faced Risks to Establishing Liability at Trial ...........10

                2.      Plaintiffs Faced Risks to Establishing Damages at Trial ...........12

                3.      The Settlement Eliminates the Additional Costs and Delay of
                        Continued Litigation ..................................................................14

        D.      The Proposed Settlement Is Fair and Adequate Under the Additional
                Amended Rule 23(e)(2) Factors.............................................................15

                1.      Plaintiffs and Counsel Have Adequately Represented the Class...............16

                2.      The Proposed Method for Distributing Relief Is Effective........................16

                3.      Counsel's Fees Are Reasonable..................................................16

                4.      The Parties Have No Side Agreements Other than Opt-Outs...................17

                5.      The Settlement Treats Class Members Equitably ......................17

V.      THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE...........17

VI.     CERTIFICATION OF THE CLASS REMAINS WARRANTED ...................18

VII.    CONCLUSION...................................................................................................19

1539356_2

## TABLE OF AUTHORITIES

Page

**CASES**

*Brown v. Brewer*,
No. CV 06-3731-GHK, 2008 WL 6170885
(C.D. Cal. July 14, 2008) .......................................................................13

*Cozzarelli v. Inspire Pharms., Inc.*,
549 F.3d 618 (4th Cir. 2008) ................................................................10

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)...............................................................................12

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2014) ................................................................17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ...........................................................13, 15

*In re BankAtlantic Bancorp, Sec. Litig.*,
No. 07-61542-CIV, 2011 WL 1585605
(S.D. Fla. Apr. 25, 2011),
*aff'd sub. nom. Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ...............................................................13

*In re Comput. Scis. Corp. Sec. Litig.*,
890 F. Supp. 2d 650 (E.D. Va. 2012) ....................................................11

*In re Comput. Scis. Corp. Sec. Litig.*,
No. 1:11-cv-610-TSE-1DD, 2013 WL 12155436
(E.D. Va. Sept. 30, 2013).......................................................................18

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) .......................................... *passim*

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) ........................................................ *passim*

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
No. 08-CV-285 (DMC), 2010 WL 547613
(D.N.J. Feb. 9, 2010)..............................................................................15

*In re MicroStrategy, Inc. Sec. Litig.*,
148 F. Supp. 2d 654 (E.D. Va. 2001) ........................................... *passim*

*In re MicroStrategy, Inc. Sec. Litig.*,
150 F. Supp. 2d 896 (E.D. Va. 2001) ....................................................15

1539356_2

Page

*In re Neustar, Inc. Sec. Litig.*,
  No. 1:14cv885, 2015 WL 8484438
  (E.D. Va. Dec. 8, 2015) ........................................................................6, 7, 8, 10

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695 (CM), 2007 WL 4115809
  (S.D.N.Y. Nov. 7, 2007) ................................................................................14

*Robbins v. Koger Props. Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ...................................................................13

*Teachers' Ret. Sys. v. Hunter*,
  477 F.3d 162 (4th Cir. 2007) ...................................................................12, 13

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) .........................................................................9

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78j(b).............................................................................................. *passim*
  §78n(a).............................................................................................. *passim*
  §78u-4(a)(4) ...................................................................................7, 8, 16
  §78u-4(a)(7)).........................................................................................4
  §78u-4(e)(1) .........................................................................................14

Federal Rules of Civil Procedure
  Rule 23 ...........................................................................................4, 17
  Rule 23(a)......................................................................................18, 19
  Rule 23(b)(3)..................................................................................18, 19
  Rule 23(c)(2)(B).................................................................................4, 5
  Rules 23(e)(2)(C)...................................................................................15
  Rules 23(e)(2)(D)...................................................................................15
  Rule 23(e).............................................................................................1
  Rule 23(e)(2)................................................................................... *passim*
  Rule 23(e)(2)(A)....................................................................................15
  Rule 23(e)(2)(B).....................................................................................6
  Rule 23(e)(2)(C)(i).......................................................................6, 10, 14
  Rule 23(e)(3)......................................................................................5, 16

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and the Class, respectfully submit this memorandum in support of their motion for final approval of: (1) the proposed $108 million settlement of this Action on the terms and conditions set forth in the Settlement Agreement, dated January 30, 2019 ("Stipulation" or "Settlement") (ECF No. 439-1);[1] and (2) the Plan of Allocation.

## I.    INTRODUCTION

The $108 million all-cash settlement is an outstanding result for the Class.  Research has uncovered only three larger securities class action settlements in this district, making this the fourth largest securities class action settlement ever in the Eastern District of Virginia.  The recovery represents approximately 30% of estimated damages, more than double securities class action settlements recently approved in this district and more than ten times the reported median recovery in securities class action settlements in 2018.  The result is particularly remarkable given that Plaintiffs and the Class faced significant risks of receiving a drastically reduced recovery, or no recovery at all.  The fraud claims were initially dismissed, only to be partially revived when Lead Counsel further developed a theory of corporate scienter that this Court had previously rejected, and the non-fraud claims, while surviving dismissal, were the subject of a motion by Defendants for interlocutory appeal.

Defendants' aggressive litigation of the case continued after the pleading stage.  Defendants consistently maintained that Plaintiffs' legal theories were not viable, Plaintiffs could not prove that Orbital ATK employees had any intent to deceive the investing public, and Plaintiffs' loss causation and damages models could not survive summary judgment or be proven at trial.  In addition, Defendants firmly resisted discovery in what Magistrate Judge Nachmanoff described as "dilatory

---

[1]    All capitalized terms not defined herein shall have the same meanings as in the Stipulation.

tactics that have dragged out this litigation unnecessarily through extremely litigious and unnecessary fights over access to documents." Ex. A at 44.

Undeterred by Defendants' aggressive litigation tactics, Lead Counsel filed ten motions to compel, resolving two out of court, and substantially prevailing on the other eight. Lead Counsel also obtained and analyzed millions of pages of documents from the Company and more than 30 non-parties; took or defended 26 depositions; fully briefed Plaintiffs' motion for class certification and Defendants' Rule 72 Objections to various discovery rulings; retained experts on the issues of accounting, merger due diligence, loss causation, and damages; and prepared mediation briefs and responses to Defendants' mediation submissions. Diligently litigating this Action culminated in a highly favorable $108 million result for the Class. Plaintiffs and Lead Counsel obtained this result through their own diligence and investigation, and for example, without any benefit from regulatory agencies, as the SEC has not taken any disciplinary action or provided any recovery to the Class. Plaintiffs respectfully request that this Court grant final approval of the Settlement and Plan of Allocation.

First, Plaintiffs request that the Settlement be approved because it represents a very favorable result and bears the hallmarks of a fully informed, negotiated resolution between experienced parties and counsel. The Settlement was reached only after hard-fought litigation and arm's-length negotiations between the parties – including two separate mediations – assisted by an experienced mediator, Gregory P. Lindstrom of Phillips ADR. The Settlement confers an immediate benefit to the Class and eliminates the risks involved in proving liability and damages as well as the further risk, delay, and expense of trial and appeal. It is fair, reasonable, and adequate.

Second, the Plan of Allocation to distribute the Settlement to Class Members was developed with Plaintiffs' damages expert and tracks Plaintiffs' damages models, taking into account shares held, purchased, acquired, and sold. The Plan of Allocation distributes the Net Settlement Fund on a

1539356_2

*pro rata* basis, as determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants.  It too is fair, adequate, and reasonable.

## II.    SUMMARY OF THE LITIGATION

This Court is familiar with the Action and has granted preliminary approval to the Settlement.  ECF No. 446.  The underlying facts and law have been summarized in this Court's multiple opinions ruling on Defendants' successive motions to dismiss.  *See, e.g.*, ECF Nos. 75, 76, 99.  By way of overview, defendant Orbital ATK was formed when Orbital Sciences and Alliant merged in February 2015.  ECF No. 439-1 at 2 & n.2.  As part of the Merger, Orbital ATK retained Alliant's $2.3 billion Lake City Contract with the U.S. government for the manufacture of ammunition (bullets).  *See id.* at 2-3.  This securities class action alleges that Defendants made false and misleading statements regarding the performance of, and accounting for, the Lake City Contract, which omitted to disclose that the Lake City Contract would result in an approximately $375 million loss.  *See id.*  Plaintiffs alleged claims (i) pursuant to §14(a) of the Exchange Act on behalf of Orbital Sciences shareholders who tendered their shares in the Merger in exchange for allegedly inadequate consideration because the other company, Alliant, was overvalued, and (ii) pursuant to §10(b) of the Exchange Act on behalf of Orbital ATK shareholders who bought stock after the Merger at allegedly inflated prices between May 28, 2015 and August 9, 2016, inclusive (the "Class Period").  *See id.*

The merits of the case were strongly contested throughout the litigation and obtaining a favorable outcome was not certain from the outset of the case through the time of the Settlement.  Plaintiffs faced risks at the motion to dismiss stage and every stage thereafter and would have continued to face significant risks through trial and appeal.  Plaintiffs alleged that Defendants had no reasonable basis to report profits on the Lake City Contract, as it was bid far below historical costs and the cost cuts necessary to report a profit were unrealistic.  *See* ECF No. 78, ¶¶168, 222-223.  Defendants asserted the cost cuts were reasonable, noting that Orbital ATK did in fact achieve

- 3 -

hundreds of millions in savings over prior costs, any errors were the result of misconduct by lower-level employees, and Defendants did not act with scienter. *See* ECF No. 68 at 20-24, 28-30. Many of Defendants' arguments were accepted as the Court granted motions to dismiss the Individual Defendants from the fraud claim. *See* ECF Nos. 77, 100. Thereafter, the parties supplemented their positions in briefing and expert reports as the litigation proceeded through discovery. *See* ECF No. 439 at 4-8. This Court and Magistrate Judge Nachmanoff collectively issued several opinions and orders regarding motions to dismiss and discovery motions, and, at the time settlement was reached, the parties had a scheduled hearing on the fully briefed Plaintiffs' motion for class certification and Defendants' Rule 72 Objections. *See id.* Additional relevant aspects of the Action are discussed below.

## III.   PLAINTIFFS HAVE PROVIDED NOTICE TO THE CLASS IN COMPLIANCE WITH RULE 23 AND DUE PROCESS

In granting preliminary approval of the Settlement, the Court approved Plaintiffs' proposed distribution and mailing of the Notice, which includes all the information required by Rule 23 and the PSLRA (15 U.S.C. §78u-4(a)(7)). *See* ECF No. 446, ¶7; ECF No. 439 at 26-27. Pursuant to this Court's order, and in compliance with Rule 23, Plaintiffs have provided "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

As detailed in the accompanying declaration of the Claims Administrator, as of April 26, 2019, over 115,700 copies of the Notice Package had been mailed to potential Class Members, brokers, and nominees; as of March 13, 2019, the Summary Notice had been published in *The Wall Street Journal* and transmitted over *Business Wire*; and on March 1, 2019, the Claims Administrator set up the settlement website (www.OrbitalSecuritiesLitigation.com), where copies of the Notice, Proof of Claim, Stipulation, Preliminary Approval Order, and Plaintiffs' Motion to Amend the Complaint (along with the un-redacted proposed amended complaint) are posted and available for download. *See* Declaration of Carole K. Sylvester Regarding Notice Dissemination, Publication,

- 4 -

and Requests for Exclusion Received to Date ("Sylvester Declaration"), ¶¶11-14.  This combination

of individual first-class mail to all Class Members who could be identified with reasonable effort,

supplemented by notice in an appropriate, widely circulated publication, transmitted over the

newswire, and set forth on internet websites, constitutes "the best notice . . . practicable under the

circumstances."  Fed. R. Civ. P. 23(c)(2)(B).

## IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.    Standards for Final Approval of Class Action Settlements

A "district court should approve a class action settlement it finds to be 'fair, reasonable, and

adequate.'"  *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 839 (E.D. Va. 2016) (Gibney, J.)

(granting final approval).[2]  Rule 23(e)(2), amended as of December 1, 2018, provides several factors

for district courts to consider in making this assessment:

> (2)    ***Approval of the Proposal.***  If the proposal would bind class members, the
> court may approve it only after a hearing and only on finding that it is fair,
> reasonable, and adequate after considering whether:
>
>> (A)    the class representatives and class counsel have adequately
>> represented the class;
>>
>> (B)    the proposal was negotiated at arm's length;
>>
>> (C)    the relief provided for the class is adequate, taking into account:
>>
>>> (i)    the costs, risks, and delay of trial and appeal;
>>>
>>> (ii)    the effectiveness of any proposed method of distributing relief
>>> to the class, including the method of processing class-member claims;
>>>
>>> (iii)    the terms of any proposed award of attorney's fees, including
>>> timing of payment; and
>>>
>>> (iv)    any agreement required to be identified under Rule 23(e)(3);
>>> and
>>
>> (D)    the proposal treats class members equitably relative to each other.

---

[2]    All citations are omitted throughout unless otherwise indicated.

1539356_2

Fed. R. Civ. P. 23(e)(2).

Amended Rule 23(e)(2)(B) (arm's-length negotiation) and amended Rule 23(e)(2)(C)(i) (adequacy of the settlement) are similar to the two-level analysis previously adopted by the Fourth Circuit, which "includes an assessment of both the procedural fairness of the settlement negotiations and the substantive adequacy of the agreement itself." *In re Neustar, Inc. Sec. Litig.*, No. 1:14cv885 (JCC/TRJ), 2015 WL 8484438, at *2 (E.D. Va. Dec. 8, 2015) (Cacheris, J.) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-60 (4th Cir. 1991)). Like Rule 23(e)(2)(B), this procedural fairness analysis ensures "that the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Jiffy Lube*, 927 F.2d at 158-59. And, like Rule 23(e)(2)(C)(i), the adequacy analysis "'weigh[s] the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement.'" *Neustar*, 2015 WL 8484438, at *2.

As discussed below, given the $108 million recovery obtained, the risks faced, and the procedural posture of the Action when an agreement was reached, the Settlement satisfies each of the Rule 23(e)(2) factors, as well as the Fourth Circuit's "fairness" and "adequacy" tests.

**B.   The Settlement Is Fair and Was Negotiated at Arm's Length**

The Rule 23(e)(2)(B) factor (arm's-length negotiation) and the first part of the Fourth Circuit's *Jiffy Lube* analysis consider a procedural issue – "whether the parties settled the case through good-faith, arm's length bargaining." *Genworth*, 210 F. Supp. 3d at 839. In making this determination, courts in the Fourth Circuit look to: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation." *Jiffy Lube*, 927 F.2d at 159.

1539356_2

### 1.      The Settlement Was Reached After Extensive Litigation

The first and second *Jiffy Lube* factors focus on whether the case has progressed far enough to dispel any wariness of "'possible collusion among the settling parties'" and to ensure  "all parties 'appreciate the full landscape of their case when agreeing to enter into the Settlement.'"  *Neustar*, 2015 WL 8484438, at \*3.  There is no bright-line amount of litigation or discovery that must be undertaken to satisfy these factors.  *See Jiffy Lube*, 927 F.2d at 159 (affirming settlement at a "very early stage in the litigation and prior to any formal discovery"); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 664-65 (E.D. Va. 2001) (approving settlement "early on" because it was "clear that plaintiffs 'ha[d] conducted sufficient informal discovery and investigation to . . . evaluate [fairly] the merits of Defendants' positions during settlement negotiations'").

Here, the Settlement was reached after the proceedings had reached a stage where a careful evaluation of the Action and the propriety of Settlement could be (and was) made.  For example, Plaintiffs and Lead Counsel had:

- researched, drafted, and filed two detailed complaints based on counsel's investigation that included, *inter alia*, analysis of SEC filings, public statements, documents received from a FOIA request, and financial analyst reports (*see* ECF Nos. 53, 78);

- researched and drafted oppositions to Defendants' successive motion to dismiss covering nuanced legal issues, including corporate scienter for §10(b) and the requisite culpability for §14(a) (*see* ECF Nos. 71, 84), and then researched and drafted an opposition to Defendants' motion for certification for interlocutory appeal (*see* ECF No. 92);

- researched and drafted opening and reply briefs in support of Plaintiffs' motion for class certification (*see* ECF Nos. 218, 367), and researched and drafted oppositions to two Rule 72 Objections filed by Defendants (*see* ECF Nos. 313, 325);

- served Defendants with requests for production, interrogatories, and requests for admission, subpoenaed more than 30 non-parties for production of documents, and obtained more than 4.7 million pages of documents from Defendants and non-parties (*see* Declaration of James E. Barz in Support of Motions for (1) Final Approval of Class Action Settlement and the Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and an Award to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Barz Decl."), ¶17);

- 7 -

- researched and drafted ten motions to compel, substantially prevailing on eight of them and resolving the other two (*see* ECF Nos. 133, 137, 139, 145, 147, 150, 159, 160, 161, 164, 165, 175, 202, 225, 227, 229, 232, 258, 263, 266, 269, 283, 381, 413, 426, 429, 431);

- presented oral argument on two motions to dismiss, eight motions to compel, and additional discovery motions (*see* ECF Nos. 73, 98, 143, 168, 242, 243, 244, 284, 359, 441);

- prepared for and took or defended 26 depositions, including 24 fact depositions and two expert depositions regarding Plaintiffs' motion for class certification (*see* Barz Decl., ¶17);

- drafted a proposed second amended complaint to reassert §10(b) claims against the Individual Defendants based on discovery, and researched and drafted briefs in support of Plaintiffs' motion to amend (*see* ECF Nos. 347, 348, 386);

- consulted and worked with three experts on highly complex issues – one on loss causation and damages, one on merger due diligence, and one on accounting and auditing – each of whom submitted a detailed expert report (*see* Barz Decl., ¶19); and

- drafted two mediation submissions with collectively more than 100 exhibits and participated in two separate full day mediations and numerous follow up communications with the mediator regarding settlement (*see* ECF No. 439 at 10-11).

Plaintiffs and Lead Counsel had sufficient information to "'evaluate [fairly] the merits of Defendants' positions during settlement negotiations.'" *MicroStrategy*, 148 F. Supp. 2d at 665; *see also Genworth*, 210 F. Supp. 3d at 840 (approving settlement following "extensive and hard-fought" process); *Neustar*, 2015 WL 8484438, at *3 (approving settlement where counsel's investigation provided sufficient information to evaluate defendants' positions).

### 2.   The Settlement Negotiations Were Conducted over Several Months, at Arm's Length, with an Experienced Mediator

The third *Jiffy Lube* factor considers "'the negotiation process by which the settlement was reached in order to ensure that the compromise [is] the result of arm's-length negotiations . . . necessary to effective representation of the class's interests.'" *Neustar*, 2015 WL 8484438, at *4.

As set forth in further detail in Plaintiffs' preliminary approval memorandum, the Settling Parties and insurance carriers engaged in two separate, full-day mediations held five months apart,

overseen by an experienced mediator, Gregory P. Lindstrom of Phillips ADR.  *See* ECF No. 439 at 10-11.  Both mediations were accompanied by extensive briefing and exhibits on liability and damages, and neither resulted in an agreement.  *Id.* at 10.  Following the second mediation, Magistrate Judge Nachmanoff entered a ruling compelling Defendants to produce approximately 1,200 documents that had been withheld as purportedly privileged.  *Id.* at 11.  Mr. Lindstrom then held additional conferences with the parties and submitted his mediator's proposal.  *See id.*  This arm's-length negotiation process supports final approval.  *See Genworth*, 210 F. Supp. 3d at 840-41 (approving settlement reached following two mediation sessions); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (affirming settlement "proposed by an experienced third-party mediator after an arm's-length negotiation").

### 3. The Action Was Litigated and Settled by Counsel with Significant Experience in Class Action Litigation

The final *Jiffy Lube* fairness factor "'looks to the experience of class counsel in this particular field of law.'"  *Genworth*, 210 F. Supp. 3d at 841.  Where counsel is experienced, "it is 'appropriate for the court to give significant weight to the judgment of class counsel that the proposed settlement is in the interest of their clients and the class as a whole.'"  *MicroStrategy*, 148 F. Supp. 2d at 665.

Lead Counsel has many years of experience in complex securities class action (*see* ECF No. 219-6), and, as recognized by this Court in approving Lead Counsel, "has a long record of success in these types of cases" (ECF No. 41 at 14).  Lead Counsel staffed the litigation team with highly experienced attorneys who dedicated thousands of hours to the litigation.  *See* Barz Decl., ¶21. Based on its extensive experience in the securities bar and in this case, Lead Counsel determined that the Settlement is in the best interest of the Class after weighing the substantial benefits of the Settlement against the numerous obstacles to a better recovery after continued litigation.  *See id.*, ¶8. Moreover, Plaintiffs are institutional investors with significant interests in obtaining the largest possible settlement, and they too believe that the Settlement is in the best interest of the Class.  *See*

- 9 -

Declaration of Don Willey on Behalf of Lead Plaintiff Construction Laborers Pension Trust of Greater St. Louis ("Pension Trust Decl."), ¶5; Declaration of Gerard Grysko on Behalf of Named Plaintiff Wayne County Employees' Retirement System, ¶5 ("Wayne County Decl."). These facts further support the fairness of the Settlement. *See Genworth*, 210 F. Supp. 3d at 841 (holding that counsel's "many years of experience in complex class actions . . . demonstrat[ed] the fairness of the Settlement"); *Neustar*, 2015 WL 8484438, at *4 (finding opinions of counsel and institutional plaintiff further supported that the settlement was fair).

## C.   The Settlement Is Adequate Considering the Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) and the second part of the Fourth Circuit's *Jiffy Lube* analysis address the substantive adequacy of the settlement. Rule 23(e)(2)(C)(i) advises district courts to consider "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). These adequacy factors weigh in favor of finding the proposed Settlement adequate.[3]

### 1.   Plaintiffs Faced Risks to Establishing Liability at Trial

To prevail on their claims at trial, Plaintiffs would have the burden of establishing the liability of Defendants for both the §10(b) and §14(a) claims to the satisfaction of the jury and the Court. As the Fourth Circuit has recognized, the "substantive elements of a securities fraud claim are demanding." *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 623 (4th Cir. 2008). Plaintiffs would have to prove, *inter alia*, that Defendants made statements that were false and misleading and material to investors. *See* ECF No. 99 at 6; ECF No. 76 at 8. For the §10(b) claim, Plaintiffs would

---

[3]   In *Jiffy Lube*, the Fourth Circuit provided five adequacy factors that overlap with Rule 23(e)(2)(C): (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. 927 F.2d at 159. The fourth factor is irrelevant to this Action, the fifth factor supports approval, as there have been no objections to the Settlement to date, and the other factors are addressed within the Rule 23(e)(2)(C)(i) analysis.

also need to prove that the statements were made with scienter – that is, "with a mental state embracing intent to deceive, manipulate, or defraud."  ECF No. 99 at 6.  For the §14(a) claim, Plaintiffs would need to prove the statements were negligently made.  *See* ECF No. 76 at 17.

Although Plaintiffs believe their claims are meritorious, further litigation posed a significant threat to class-wide recovery.  Defendants were likely to argue that the alleged misstatements regarding the Lake City Contract (*see* ECF No. 78, ¶¶77-95), the Company's accounting policy (*see id.*, ¶¶96, 99), and merger synergies (*see id.*, ¶¶64-76) were true or at least not materially misleading.  Defendants were also likely to argue that none of the alleged misstatements were material, since the price of Orbital ATK stock rose significantly after the initial decline.  *See* ECF No. 68 at 10-11 & n.11.

Plaintiffs' burden to prove scienter faced several additional challenges.  First, Defendants were likely to continue to argue that Plaintiffs' "corporate scienter" theory, alleging that the scienter of certain lower-level non-speaker employees could be imputed to the Company, should be rejected for the reasons argued in Defendants' motion to dismiss and under this Court's prior decision in *In re Comput. Scis. Corp. Sec. Litig.*, 890 F. Supp. 2d 650, 664 (E.D. Va. 2012).  *See* ECF No. 86 at 16-20.  Indeed, this Court initially rejected Plaintiffs' corporate scienter theory, but after amendment and further briefing, reconsidered its *Computer Sciences* decision and upheld the claim.  *See* ECF No. 99 at 25-27.[4]

Second, to prevail at trial, Plaintiffs would have to prove that the lower-level employees knew of or recklessly disregarded the alleged Lake City loss at the start of the Class Period and acted with an intent to deceive.  *See* ECF No. 99 at 6.  The Company would continue to argue that two independent auditing firms signed off on the Company's financial statements, hundreds of millions of dollars in savings had been achieved, Lake City employees were confident that savings would be

---

[4]   Without corporate scienter, the fraud claim would have failed because this Court dismissed the §10(b) claim against the Individual Defendants.  *See* ECF Nos. 77, 100.

achieved, and the implementation of a new software system concealed the losses from Orbital ATK employees.  *See* ECF No. 68 at 6-7, 20, 28-29; ECF No. 150-2 at 3-4.  Defendants have always maintained that "the Company is not aware of any evidence that any Lake City personnel falsified the [profits] or intentionally misled any corporate-level personnel or any auditors."  ECF No. 150-2 at 3.

Relatedly, establishing negligence prior to the Merger for the §14(a) claim would face challenges.  To start, Defendants maintain that Plaintiffs need to establish scienter – not negligence – for the §14(a) claim and would continue to do so on appeal.  *See* ECF No. 88.  Defendants would also continue to argue that even negligence could not be proven by Plaintiffs because, for example, the Lake City Contract had just begun prior to the Merger; the same factors noted above that weigh against scienter would also weigh against negligence; and Thompson and Pierce reasonably relied on Alliant's representations and the Orbital Sciences employees who conducted a due diligence investigation.  *See* ECF No. 68 at 36-39.

Third, the risks of establishing liability at trial would be compounded by the complexity of the issues.  Given that both parties had identified accounting and due diligence experts, it is likely that the trial would become a battle of well-qualified experts, leaving it to the jury to decide who was more credible.  There is no guarantee that a jury would find in favor of Plaintiffs or that the legal issues raised by Defendants would not prevail on appeal.  *See Genworth*, 210 F. Supp. 3d at 841-42 ("Even with a strong case, the plaintiffs nonetheless face a large risk before a jury.").

### 2. Plaintiffs Faced Risks to Establishing Damages at Trial

Even if Plaintiffs were successful in proving liability, there were additional risks to Plaintiffs' ability to prove loss causation and damages.  To prove loss causation, a plaintiff must show a causal connection between the material misrepresentation and the economic loss.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).  Pleading and developing evidence of loss causation can be difficult and uncertain.  *See, e.g.*, *Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162 (4th Cir. 2007) (affirming

dismissal of complaint on loss causation grounds).  Lead Counsel knows from its experience in winning securities fraud trials that sustaining a jury's determination of loss causation post trial and on appeal can be perilous.  *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (reversing judgment and remanding for new trial on loss causation).[5]

Defendants were likely to challenge loss causation and damages at summary judgment,  trial, and on appeal.  For the §10(b) claim, for example, Defendants would argue that the alleged misstatements had no impact on the price of Orbital ATK stock, and the stock price decline on August 10, 2016 was the result of non-fraud related news.  *See* ECF No. 307 at 7-17.  Defendants would also argue that the initial stock decline was excessive and an overreaction.  *See id.* at 16.  If accepted, Defendants' arguments could decrease or eliminate §10(b) damages.

For the §14(a) claim, Plaintiffs pursued a damages model that required Plaintiffs' expert to revalue Alliant's pre-merger valuation in light of the Lake City loss, and then determine the amount by which the Merger consideration undercompensated Orbital Sciences shareholders.  *See* Barz Decl., ¶10.  To do so, Plaintiffs' expert had to adjust the earnings, terminal values, and other inputs in the "discounted cash flow" models used by Orbital Sciences' and Alliant's financial advisors before the Merger.  *See id*.  Defendants would have raised several challenges:

- First, because the model did not rely on the August 10, 2016 stock decline, Defendants were likely to argue that Plaintiffs could not prove "a causal link between the defendant's misrepresentation and the decline in the stock value." *Hunter*, 477 F. 3d at 188.[6]

---

[5]   *See also, e.g.*, *In re BankAtlantic Bancorp, Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd sub. nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (overturning jury verdict and granting defendants judgment as a matter of law on basis of loss causation); *Robbins v. Koger Props. Inc.*, 116 F.3d 1441 (11th Cir. 1997) (same).

[6]   *But see Brown v. Brewer*, No. CV 06-3731-GHK (JTLx), 2008 WL 6170885, at *5 (C.D. Cal. July 14, 2008) (holding that in §14(a) cases, loss causation can be established by showing the proxy "was an essential link in the approval of the merger").

- Second, Defendants have emphasized that the Merger consideration was negotiated and the consideration may not have been different if the Lake City loss was known. *See* ECF No. 150-3 at 5-6.

- Third, Defendants would likely attack the inputs used by Plaintiffs' expert.

- Fourth, Defendants would likely argue that the PSRLA's cap on damages would reduce or eliminate §14(a) damages because the stock price after the Merger was less than the 90-day trading average following the August 10, 2016 disclosure. *See* 15 U.S.C. §78u-4(e)(1).[7]

Although Plaintiffs believe the law and evidence support their damages claims, as this Court has noted, the determination of loss causation and damages "would have become 'a battle of experts at trial, with no guarantee of the outcome in the eyes of the jury.'" *MicroStrategy*, 148 F. Supp. 2d at 667. The parties would have engaged in briefing to exclude each other's experts and, in the end, it is "'virtually impossible to predict with any certainty which testimony would be credited.'" *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *10 (S.D.N.Y. Nov. 7, 2007).

### 3. The Settlement Eliminates the Additional Costs and Delay of Continued Litigation

Rule 23(e)(2)(C)(i) advises district courts to consider the costs and delay of continued litigation absent a settlement. The foregoing risks demonstrate that several complex and nuanced issues would be the subject of ongoing litigation, and it is well-established that litigation of securities class actions is costly and time consuming. *See, e.g.*, *Genworth*, 210 F. Supp. 3d at 842 ("Taking this case through trial and any appeals would involve a great deal of effort and expense, especially in light of the unknown outcome of such actions."); *MicroStrategy*, 148 F. Supp. 2d at 667 (noting continued litigation "would likely have been protracted and costly, requiring extensive expert testimony concerning the company's accounting practices").

---

[7]   Plaintiffs do not believe the 90-day lookback would apply to their §14(a) damages model, as Plaintiffs would not "seek[] to establish damages by reference to the market price of a security." *Id.*

If not for this Settlement, the Action would have continued to be fiercely contested.  The parties would complete a hearing on Plaintiffs' class certification motion and Defendants' Rule 72 Objections and brief and argue motions to exclude experts, motions for summary judgment, motions *in limine* and other pretrial motions, as well as prepare exhibits and witnesses for trial, and complete a likely multi-week trial.  Once all that was done, even if Plaintiffs could recover a judgment larger than the Settlement after trial, the additional delay, through trial, post-trial motions, and the appellate process, could last for years, with costs compounding throughout that time.  *See MicroStrategy*, 148 F. Supp. 2d at 667 ("[T]here is little doubt that a jury verdict for either side would only have ushered in a new round of litigation in the Fourth Circuit and beyond, thus extending the duration of the case and significantly delaying any relief for plaintiffs.").[8]

A prolonged period of pretrial proceedings and a lengthy and uncertain trial and appeals would not serve the interest of the Class in light of the immediate monetary benefits provided by the Settlement.  As in *MicroStrategy*, "the old adage, 'a bird in the hand is worth two in the bush,' applies with particular force here."  *In re MicroStrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 904 (E.D. Va. 2001).

**D.      The Proposed Settlement Is Fair and Adequate Under the Additional Amended Rule 23(e)(2) Factors**

In addition to the costs, risks, and delay of continued litigation, Rule 23(e)(2)(A) advises district courts to consider whether "the class representatives and class counsel have adequately represented the class," and Rules 23(e)(2)(C)-(D) advise district courts to consider "the effectiveness of any proposed method of distributing relief to the class," the "terms of any proposed award of

---

[8]      *See also In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. 08-CV-285 (DMC), 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) ("'[E]ven a victory at trial is not a guarantee of ultimate success.  If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment.  An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.'"); *Household*, 787 F.3d 408 (ordering new trial six years after verdict and thirteen years after case was commenced).

attorney's fees, including the timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2). These factors also confirm the fairness and adequacy of the Settlement.

### 1.    Plaintiffs and Counsel Have Adequately Represented the Class

In prosecuting this Action, Plaintiffs have produced documents, responded to discovery, sat for depositions, regularly communicated with counsel, and overseen the Action. *See* Pension Trust Decl., ¶4; Wayne County Decl., ¶4. Lead Counsel has investigated claims, drafted complaints, opposed motions to dismiss, filed and briefed motions to compel and for class certification, analyzed millions of pages of documents, taken or defended 26 depositions, and engaged in mediations. *See* §IV.B.1. Plaintiffs and Lead Counsel have adequately represented the Class, as reflected in the work and by the resulting $108 million Settlement. *See also* ECF No. 439 at 23-24.

### 2.    The Proposed Method for Distributing Relief Is Effective

As discussed above in §III and in the Claims Administrator's declarations submitted in this Action (ECF No. 439-3; Sylvester Declaration), the method of the proposed notice and claims administration process is effective and provides Class Members with the necessary information to receive their *pro rata* share of the Settlement. The claims process is similar to that commonly used in securities class action settlements, such as *MicroStrategy* and *Genworth* from this district, and it provides for straightforward cash payments based on the trading information provided.

### 3.    Counsel's Fees Are Reasonable

Lead Counsel's request for an award of attorneys' fees was fully disclosed in the Notice and is reasonable and appropriate, as detailed in Lead Counsel's accompanying Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses and an Award to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Fee Brief"). As to timing, because the entire Settlement Fund will be distributed to Class Members until it is no longer economically feasible to do so, there

is no risk that counsel will be paid but Class Members will not. *Cf. Eubank v. Pella Corp.*, 753 F.3d 718, 726-27 (7th Cir. 2014) (rejecting settlement where attorneys would receive fees based on inflated settlement value, as defendants were likely to pay only a fraction of the purported settlement value to the class).

### 4. The Parties Have No Side Agreements Other than Opt-Outs

The Settling Parties have entered into a supplemental agreement which provides that if the number of shares of Orbital ATK or Orbital Sciences stock represented by Class Members who have opted out equals or exceeds a certain amount, Orbital ATK shall have the option to terminate the Settlement. ECF No. 439-1, ¶7.3. This is standard practice for these cases and the Settling Parties have no other side agreement.

### 5. The Settlement Treats Class Members Equitably

As reflected in the Plan of Allocation (ECF No. 439-1 (Notice) at 15-20) and discussed below in §V, the Settlement treats Class Members equitably relative to each other, based on the amount and timing of their stock holdings, purchases, acquisitions, and sales, and by providing that each Authorized Claimant shall receive its *pro rata* share of the Net Settlement Fund based on recognized losses.

Thus, each factor identified under Rule 23(e)(2) is satisfied. Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and request that the Court grant final approval.

## V. THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

The Plan of Allocation establishes the method by which the Net Settlement Fund will be distributed to Class Members who submit valid Proofs of Claim. Approval of a plan of allocation under Rule 23 is governed by the same standard applicable to the Settlement – the plan must be fair and adequate. *See Genworth*, 210 F. Supp. 3d at 842-43. Here, the Plan of Allocation was developed in the same manner it is typically done in securities class action cases.

The Plan of Allocation was drafted with Lead Counsel's damages expert to fairly distribute the available Settlement proceeds based on Plaintiffs' theory of damages and consistent with Plaintiffs' allegations. *See* Barz Decl., ¶10. Plaintiffs' damages expert has estimated potential class-wide damages to be $356.6 million, consisting of $206 million for the §10(b) claim and $150.6 million for the §14(a) claim. *See id.*, ¶17. Based on these estimates, the proposed Plan of Allocation allocates 57.8% of the Net Settlement Fund to §10(b) claims and 42.2% of the Net Settlement Fund to §14(a) claims. ECF No. 439-1 (Notice) at 17. Once allocated, the Plan of Allocation distributes the Net Settlement Fund on a *pro rata* basis, as determined by the ratio that the Authorized Claimant's Recognized Loss bears to the total Recognized Loss of all Authorized Claimants. *See id.* at 16. Calculation of an Authorized Claimant's Recognized loss will depend upon several factors, including when the stock was held, purchased, acquired, or sold. *See id.* at 17-20. This method of distributing settlement funds is fair, reasonable, and adequate. *See, e.g.*, *Genworth*, 210 F. Supp. 3d at 840 (approving plan of allocation that "distributes the net Settlement Fund on a *pro rata* basis, 'as determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all authorized claimants'"); *MicroStrategy*, 148 F. Supp. 2d at 668 (same); *In re Comput. Scis. Corp. Sec. Litig.*, No. 1:11-cv-610-TSE-1DD, 2013 WL 12155436 (E.D. Va. Sept. 30, 2013) (same).

## VI.   CERTIFICATION OF THE CLASS REMAINS WARRANTED

The Court previously, for settlement purposes only, preliminarily (1) approved this Action as a class action pursuant Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and (2) appointed Plaintiffs as class representatives and Lead Counsel as class counsel. ECF No. 446, ¶¶2-5. Nothing has changed to alter the propriety of certification for settlement purposes and, for all the reasons stated in Plaintiffs' preliminary approval brief (ECF No. 439 at 20-25) and briefs and declarations in support of class certification (ECF Nos. 218, 219 and 367), Plaintiffs request that the

- 18 -

Court grant final certification of the Class and appointment of Plaintiffs as class representatives and Lead Counsel as class counsel, for settlement purposes only, pursuant to Rules 23(a) and (b)(3).

## VII.   CONCLUSION

The Settlement is a highly favorable, fair, and adequate result, particularly given the arm's-length settlement negotiations, the stage of litigation and discovery at the time of settlement, the presence of experienced counsel for all parties, the considerable risk, expense, and delay if the Action were to continue, and the substantial, certain, and immediate benefit of the Settlement to the Class. The Plan of Allocation is equitable to Class Members and is necessarily fair, reasonable, and adequate. Therefore, and for all the reasons stated above and in the accompanying declarations and Fee Brief, Plaintiffs respectfully request that this Court approve the Settlement and the Plan of Allocation as fair, reasonable, and adequate, and certify the Class for settlement purposes only.

DATED:  April 26, 2019                    Respectfully submitted,

THE OFFICE OF CRAIG C. REILLY
CRAIG C. REILLY, VSB #20942


_/s/ Craig C. Reilly_
CRAIG C. REILLY

111 Oronoco Street
Alexandria, VA  22314
Telephone:  703/549-5354
703/549-5355 (fax)
craig.reilly@ccreillylaw.com

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ
FRANK RICHTER
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)

1539356_2

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
MAUREEN E. MUELLER
KATHLEEN B. DOUGLAS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

Lead Counsel for Plaintiff

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiff Wayne County
Employees' Retirement System

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 26, 2019, I filed the foregoing pleading or paper through the

Court's CM/ECF system, which sent a notice of electronic filing to all registered users.

<u>/s/ Craig C. Reilly</u>
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
T:  703/549-5354
F: 703/549-5355
E: craig.reilly@ccreillylaw.com
*Liaison Counsel for Lead Plaintiff*